# EXHIBIT 1

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**07/07/2015** at 12:12:33 PM

Clerk of the Superior Court
By Justin Jones, Deputy Clerk

1   ROBBINS GELLER RUDMAN
    & DOWD LLP
2   PATRICK J. COUGHLIN (111070)
    DAVID W. MITCHELL (199706)
3   ALEXANDRA S. BERNAY (211068)
    CARMEN A. MEDICI (248417)
4   JENNIFER N. CARINGAL (286197)
    655 West Broadway, Suite 1900
5   San Diego, CA 92101
    Telephone: 619/231-1058
6   619/231-7423 (fax)

7   Attorneys for Plaintiff

8             SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                     COUNTY OF SAN DIEGO

10                      CENTRAL DIVISION

| | |
|---|---|
| 11  PERSIAN GULF INC., Individually and on Behalf of All Others Similarly Situated, ) | Case No. 37-2015-00022430-CU-AT-CTL |
| 12                ) | <u>CLASS ACTION</u> |
| 13        Plaintiff, ) | COMPLAINT FOR VIOLATIONS OF |
| 14      vs. ) | CALIFORNIA'S CARTWRIGHT ACT AND UNFAIR COMPETITION LAW |
| 15  BP WEST COAST PRODUCTS LLC; CHEVRON U.S.A. INC.; ) | |
| 16  TESORO REFINING & MARKETING COMPANY LLC; ) | |
| 17  EQUILON ENTERPRISES LLC (D/B/A SHELL OIL PRODUCTS US); ) | |
| 18  EXXONMOBIL REFINING & SUPPLY COMPANY; ) | |
| 19  VALERO ENERGY CORPORATION; CONOCOPHILLIPS; ) | |
| 20  ALON USA ENERGY, INC.; KERN OIL & REFINING CO. and ) | |
| 21  DOES 1-25, inclusive, ) | |
| 22        Defendants. ) | <u>DEMAND FOR JURY TRIAL</u> |

23

24

25

26

27

28

Plaintiff Persian Gulf Inc. ("Persian Gulf" or "plaintiff") hereby brings this action for damages and other relief against defendants BP West Coast Products LLC ("BP West"); Chevron U.S.A. Inc. ("Chevron"); Tesoro Refining & Marketing Company LLC ("Tesoro"); Equilon Enterprises LLC (d/b/a Shell Oil Products US) ("Shell"); ExxonMobil Refining & Supply Company ("ExxonMobile"); Valero Energy Corporation ("Valero"); ConocoPhillips; Alon USA Energy, Inc. ("Alon"); and Kern Oil & Refining Co. ("Kern Oil") ( collectively "defendants") for violations of California's Cartwright Act (California Business & Professions Code §16700, *et seq.*) and Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §17200, *et seq.*). Plaintiff makes all allegations upon information and belief except as to those paragraphs that are based on plaintiff Persian Gulf's personal knowledge.

## THE CONSPIRACY

1.      For years Californians have seen tremendous spikes in gasoline prices, seemingly untethered to normal market forces of supply and demand. Various reasons have been posited for these giant spikes, including the unique nature of California's gas market. However, a number of spikes over the years were not the result of California's market structure (though perhaps enabled by it), but instead are the result of anticompetitive conduct on the part of the major gas refineries operating in the state.

2.      In early 2012 the crude oil markets experienced a suspicious combination of rising production, falling demand, increasing inventories and increasing prices. The suspicious circumstances were detailed in a June 2012 report by McCullough Research, which found that sudden price shifts provided "a significant windfall for refineries and retailers on the West Coast."[1] The refineries blamed the increased prices on decreased supply because of a fire at a Washington BP refinery and other maintenance shutdowns in California. The evidence, however, did not to support that theory. Instead, the fire and shutdowns were cover for the refiners' scheme to create a false shortage in order to force prices up and reap windfall profits.

3.      Data from the Energy Information Administration ("EIA") during that time showed that the refineries serving West Coast states had capacity on hand to meet significant shortfalls, such as one caused by a fire or a shutdown because of unscheduled maintenance. In such a highly concentrated

---

[1]      Robert McCullough, *Analysis of West Coast Gasoline Prices*, McCullough Research (June 5, 2012) at 2, *available at* www.mresearch.com/pdfs/470.pdf.

industry, "a single actor or a very few actors acting together can set the price in the market." *Id.* at 5. Because the market is so concentrated, the West Coast is highly sensitive to fluctuations in supply, and primed for manipulation. After the fire at the Washington plant, the degree of market concentration increased significantly. With the market so concentrated, the timing of the various unscheduled maintenance shutdowns in the California refineries in early 2012 becomes suspect. "In a competitive market, maintenance would have been delayed to take advantage of the rising West Coast prices." *Id.*

4. In May and October of 2012, California saw two massive gasoline price spikes, resulting in California consumers paying more than $4 a gallon – and in some areas more than $5 a gallon. These spikes occurred while the rest of the country experienced a decline in gas prices.

5. Another report issued soon after the October 2012 spike by McCullough Research concluded that during the May and October spikes there were market anomalies present, and that during those two periods gas refiners in California were seeing an "enormous windfall profit."[2] Further, the report determined that in both the May and October spikes, "the underlying data now available contradicts the industry explanations." *Id.* at 1.

6. The report urged an investigation into the spikes, which was then picked up by several Democratic senators. Those senators wrote to then-Attorney General Eric H. Holder, Jr. and asked the Department of Justice to investigate "possible market manipulation and false reporting by oil refineries which may have created a perception of a supply shortage, when in fact refineries were producing."[3] The senators further noted that "[a]nomalous, uncompetitive market dynamics may have forced West Coast drivers to pay $1.3 billion more at the pump during the May 2012 price spike than they should have, according to an analysis by McCullough Research. Even a one cent per gallon increase in gasoline prices cost California consumers an extra $150 million per year, according to the Federal Trade Commission (FTC)." *Id.* That investigation is ongoing.

---

[2]    Robert McCullough, Sean Long & Jil Heimensen, *May and October 2012 Gasoline Price Spikes on the West Coast*, McCullough Research (Nov. 15, 2012) ("McCullough Report") at 20, *available at* http://www.mresearch.com/pdfs/489.pdf.

[3]    Press Release, Maria Cantwell United States Senator for Washington, *6 West Coast Senators Urge DOJ Investigate Western Gas Price Spike* (Nov. 27, 2007), *available at* http://www.cantwell.senate.gov /public/index.cfm/press-releases?ID=7e55a196-cfbb-4b2b-b03f-d7bc52013ab1.

7.    Senator Dianne Feinstein also wrote to the Federal Trade Commission ("FTC") requesting an investigation. Senator Feinstein expressed concern that the FTC had failed "to take action to protect California consumers from malicious trading schemes in the California gasoline market."[4] She requested that the FTC "open an immediate investigation into price spikes in California, to begin collecting relevant data on California's gasoline markets, and to establish a permanent market monitoring team." *Id.* She also requested that the "FTC immediately seek data sharing agreements that will allow it to monitor gasoline and oil markets actively and effectively. Data on prices, trading activity, refinery output, demand, stocks, and other information are vital to determine if trading activities reflect fraud, manipulation, or other malicious trading practices." *Id.*

8.    Senator Feinstein closed her letter with a call for serious and aggressive enforcement: "California's consumers are all too familiar with energy price spikes which cannot be explained by market fundamentals, and which turn out years later to have been the result of malicious and manipulative trading activity. . . . I call on the FTC to act immediately and aggressively to protect California's consumers." *Id.* To date, while it is believed investigations are ongoing, no action has been taken regarding the May and October 2012 spikes, despite significant evidence that the price spikes were the result of manipulative and collusive conduct by defendants.

9.    In addition to the 2012 spikes, on June 30, 2015, evidence was presented at the California Energy Commission's Petroleum Market Advisory Committee meeting in Berkeley that demonstrated that more recent spikes in gas prices appear to again not be based on normal market forces but instead are part of a broader anticompetitive scheme by the defendants.

10.    According to Consumer Watchdog, a non-profit consumer advocacy group, since February 2015, California retail gasoline prices have risen by more than $1.25 per gallon. In Southern California, the gap with average U.S. gasoline prices hit an unprecedented $1.30 per gallon.

11.    A series of reports by Consumer Watchdog has chronicled how oil refiners in the state have dried up the market and reaped profits through unprecedented exports of gasoline from California

---

[4]    Letter from Senator Dianne Feinstein to FTC Chairman Jon Leibowitz (Oct. 7, 2012), *available at* http://www.feinstein.senate.gov/public/index.cfm/press-releases?ID=64731006-6bc2-406e-ba27-dc423a2aae9a.

and by taking an unprecedented number of refineries off line for suspicious, frequently unscheduled maintenance. By controlling and shrinking local supplies of gasoline, the refiners steadily increase their California profits, even as drivers in other parts of the country enjoy moderate prices.

12. As a direct result of the anticompetitive and unlawful conduct alleged herein, plaintiff and the Class (as defined below) paid, and have continued to pay, artificially inflated prices for gasoline from at least February 2012 through the present.

**Details of the May and October 2012 Price Spikes**

13. In May 2012, the price of gas spiked and affected prices in California, Oregon and Washington. Refiners blamed the May spike on the February 18, 2012 fire at Cherry Point refinery in Washington state. In October 2012, the price of gas again spiked, which the refiners blamed on an August 6, 2012 fire at Chevron's Richmond refinery. The length of delay between the cause and effect makes these explanations suspect, because if a decline in product levels causes price increases, prices should have risen soon after the outages and not two or three months later. Further, inventories actually *increased* up to and during the price spikes, which, in a competitive market, should have brought prices down. As the McCullough Report notes, "[t]he argument that the price spikes on the West Coast are caused by supply shortages is contradicted by the increasing gasoline inventories during the period of extraordinary prices." *Id*. at 1.

14. Analysts have been skeptical of the industry's justifications for the radical price increases, with some speculating that the companies are artificially increasing pump prices. *See* Joseph Rose, *Oregon, Washington Gas Prices Face 'Prolonged Period' of Increases After Chevron Refinery Fire*, The Oregonian (Aug. 21, 2012), *available at* http://blog.oregonlive.com/commuting/2012/08/ oregon_washington_gas_prices_f.html.

15. Consumer Watchdog said that the report raises the specter of "criminal conduct" "reminiscent of the Enron-like manipulation of the California energy market." Ronald D. White, *Consumer advocates say refineries may have falsified information*, L.A. Times (Nov. 16, 2012), *available at* http://articles.latimes.com/2012/nov/16/business/la-fi-mo-call-for-investigation-20121116.

16. The refineries' explanation for the price spikes is not consistent with the principles of supply and demand and is inconsistent with the structure of the industry. The California refinery

system as a whole had plenty of stock and capacity to manage several plant shutdowns. Refineries' production schedules are not perfectly matched to changes in seasonal demand – gas sales peak in the summer months, while gas production is relatively flat over the year with a dip in February. Typically, the market has adjusted smoothly to the seasonal factors and gas prices remain stable (tracking the cost of crude and other inputs) even when sales exceed production, with the price spikes in 2012 being exceptions.

17.     In light of the increased output (*see* ¶13, *supra*), the refineries' explanation that the price increases were due to a supply shortage caused by the refinery outages makes no sense.

18.     Take for example the Richmond refinery, which was blamed for the October 2012 gas spike. Data tracking the Richmond refinery's FCC and TKC (measurable components of the gas oil processing at the refinery) demonstrate that the Richmond refinery was in fact still emitting mono-nitrogen oxides ("NOx") during this period of "closure." McCullough Report at 12.[5] These inconsistencies bring into doubt the accuracy and reliability of the maintenance and outage reports provided by the refineries to California. Similarly, Shell's Martinez refinery reported a shutdown from April 27 to May 16, but the emissions data indicates that the refinery started operating sometime between May 6th and May 11th.

19.     This evidence indicates that the producers had coordinated operations. Since the West Coast is essentially an "island" in the realm of refineries, with ownership concentration in seven major firms (each of which is vertically integrated), the possibility of market power is enhanced. A review of the NOx emissions levels plausibly demonstrates that California refineries had either: (i) a production relationship; and/or (ii) an agreement to allocate production targets over time in order to maintain higher prices.[6]

---

[5]     During other cases of market manipulation in California, announcements by power producers about plant outages "have been discovered to be intentionally unreliable." *See United States v. Reliant Energy Servs., Inc.*, No. 04-cr-125, Indictment (N.D. Cal. Apr. 8, 2004) (Dkt. No. 1) at 5 (where Reliant was charged with disseminating false and misleading rumors and information about the availability and maintenance status of the defendant's power plants).

[6]     NOx is routinely monitored at refineries. It is a by-product of the production process. When units are off-line, no chemical reactions are taking place and no emissions result. Where the suspect units were previously taken off line, the emissions report showed zero pounds of emissions. "This was not the case in May 2012." McCullough Report at 12.

20.     Below is a chart that reports the R² from regressions between NOx emissions from eleven of the California refineries, revealing a pattern consistent with coordinated production levels between refineries.  If there was no coordination, the data would likely reflect normal seasonal patterns with all refineries increasing and decreasing production at similar times, but that is not present here, as there is no seasonal correlation among the refineries.



McCullough Report at 18.

21.     October 2012 prices were $0.66 a gallon higher than they would be normally, given the historical patterns of oil prices and gas inventories.  In the past, sales for the month of October have averaged more than one billion gallons per month.  If the historical averages held and the numbers were adjusted for variations in the market for fixed costs, this would mean defendants received windfall profits of about $25 million a day.   Using the same overcharge calculation, consumers paid approximately $1.3 billion more at the pump during the May 2012 price spike than they should have absent the defendants' conduct.

22.     This windfall is supported by historical data.  *See* Jamie Court & Liza Tucker, *New Report: Oil Refiners' Profits Spike With Gasoline Price Spikes*, Consumer Watchdog (May 5, 2015), *available  at* http://www.consumerwatchdog.org/newsrelease/new-report-oil-refiners%E2%80%99-profits-spike-gasoline-price-spikes (finding that profits for Tesoro and Valero were "twice as high as the refiners' average quarterly profit in quarters where gasoline prices spiked"); *id.* (quoting a Chevron General Manager, who stated:  "Margins increased earnings by $435 million driven by unplanned industry downtime and tight product supply on the US West Coast.").

23.     Below is a chart comparing actual retail gas prices to forecasted retail prices:



McCullough Report at 19.

24.     The California Energy Commission later claimed that a minor plant problem (a "power failure" or "flaring") at ExxonMobil's Torrance refinery was to blame for the instantaenous increase in wholesale prices in October 2012.[7]  However, evidence shows that the price began spiking before the Torrance refinery's issues were publicly announced.  The explanation that the price spiked $0.35 a gallon within 45 minutes of the first substantive coverage by the media is contrary to how the market

---

[7]  Robert McCullough, *The Year of Living Dangerously: Retail Gasoline Prices and Fundamentals*, McCullough Research (July 2, 2013) ("2013 McCullough Report") at 1, *available at* http://www.mresearch.com/pdfs/521.pdf.

typically reacted to this type of news.  Indeed, the Torrance facility reported 27 other similar events in 2012, none of which set off price increases anywhere near the scale of those seen on October 1st.

25.     The evidence indicates that the major oil companies likely had advance, secret notice that gas supplies were about run low in October 2012.  After the Torrance facility "flare" on October 1st, "'all the majors came out and bought.'"  2013 McCullough Report at 8.  The major oil companies would not have bought in the open market based on the information available at the time in the marketplace, which indicated only a minor problem at the plant. Instead, this run up would have happened only if ExxonMobil informed its competitors of operating problems prior to informing the regulators and media.  Additionally, the NOx data does not support evidence of a full plant closure and press releases by the company overstated the problem.

26.     Not surprisingly, the Western States Petroleum Association ("WSPA"), an industry group made up of the defendants here and detailed below, at ¶¶54-63, issued a critique of the McCullough Report several months after it was published. McCullough Research issued a rebuttal, noting that the WSPA's report "does not offer an explanation for the price spikes, nor does it perform any analyses that would justify its opinions."[8]  Further, the McCullough Rebuttal noted that "WSPA's response provides no explanation, additional data, or statistical analyses for the price spikes in May and October 2012. Its proposed variable changes are neither substantive nor explanatory." *Id*. at 16. Moreover, McCullough noted that based on its "experience with Enron, we suggest that erroneous information in the media can be a form of market manipulation. . . .  Since little information is available on refinery operations, an erroneous press release may have significant impacts on market prices. . . .  [T]here is evidence that this was a factor in both May and October 2012." *Id*. at 16-17.

27.     Another way in which the refineries agreed to control the supply was by using a "short squeeze."  In October 2012, *Reuters*, citing numerous sources, reported that the behavior of the spike in gasoline prices was consistent with what would have occurred if there were a "short squeeze" intended to drive up prices, with parties intentionally withholding supply after one supplier had run out of fuel.

---

[8]     *See* Robert McCullough, *Response to McCullough Research Report May and October 2012 Gasoline Price Spikes on the West Coast: A Rebuttal by McCullough Research*, McCullough Research (Feb. 25, 2013) ("McCullough Rebuttal") at 1, *available at* http://www.mresearch.com/pdfs/511.pdf.

COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S CARTWRIGHT ACT AND UNFAIR COMPETITION LAW

Erwin Seba, *RPT-Traders see signs of squeeze behind L.A. gasoline spike*, Reuters (Oct. 5, 2012), *available at* http://www.reuters.com/article/2012/10/06/gasoline-squeeze-idUSL1E8L5HZA20121006. Indeed, industry sources told *Reuters* that "fundamental factors alone" could not explain the price increase. *Id.*

28.     Senator Feinstein's letter to the FTC also addressed the possible short squeeze. She requested that "the FTC immediately initiate an investigation to determine if the price spike in Southern California this week results from an illegal short squeeze." *See* n.4, *supra*. She further noted that "[m]ultiple trade sources say Tesoro Corporation was caught short on supply. In the severely concentrated Los Angeles gasoline market, the few sellers were reportedly able to squeeze Tesoro either through collusion or use of market power. . . . Publically available data appears to confirm that market fundamentals are not to blame for rising gas prices in California." *Id.*

**Details of the 2015 Price Spikes**

29.     Like the 2012 spikes, a series of suspicious refinery closures and slowdowns preceded the recent spikes in price, defying input costs. This conduct continues. According to industry insiders, refinery maintenance schedules were inexplicably moved forward, despite a lack of local supply. "California's oil refiners are the only industry in America that make a fortune when their factories break down," said Jamie Court, president of Consumer Watchdog. "The oil companies are acknowledging to investors that that they have been getting fat off the shutdowns in their own refineries even as they refuse to appear before legislators in Sacramento."[9]

30.     Another method the West Coast refineries use to control and restrict supply and drive up price is exporting gasoline outside of California. In December 2014 refineries exported the most gasoline in history. June data, still being examined, shows another record export month. Californians paid $3.6 billion more for their gasoline than the average U.S. motorist based on the added pump price from February through May of 2015. "Oil companies created a shortage by selling abroad, and then

---

[9]     *Tesoro CEO Admits Refinery "Disruption" and Shutdowns = Big Profits, Echoing Chevron Statements About Pump Spike*, Consumer Watchdog (May 8, 2015), *available at* http://www.consumerwatchdog.org/newsrelease/tesoro-ceo-admits-refinery-%E2%80%9Cdisruption%E2%80%9D-and-shutdowns-big-profits-echoing-chevron-statem.

shutting down refineries, and have made billions at the expense of Californians who are paying a huge premium due to the state's low inventories," Consumer Watchdog's Cody Rosenfield said.

31.     In the month of December, West Coast refiners exported 2.7 million barrels, or 113 million gallons of gasoline.  The exports also constituted the most exports in a quarter, ever. During the fourth quarter of 2014, oil companies exported an amount that represents almost a third of California's current gasoline supply.

32.     As to refinery shutdowns and capacity reductions, memos from West Coast oil refiners from the 1990s and released in 2011 by Senator Ron Wyden (D. Or.) suggest that the practice of reducing capacity is a deliberate business strategy that has been employed by the refineries for a number of years. An internal Chevron memo, for example, stated:  "'A senior energy analyst at the recent API [American Petroleum Institute] convention warned that if the U.S. petroleum industry doesn't reduce its refining capacity, it will never see any substantial increase in refinery margins.'" [10]

33.     A letter to a number of western state attorneys general noted that:  "Since the beginning of February, California's fourteen oil refineries have suffered ten serious slowdowns or shutdowns, many due to questionable causes or timing.  The timing of these overlapping outages raises questions about their true necessity, and about whether some refinery capacity may have been taken off line in order to drive up prices and profits for oil refiners at [a] time when some of their crude operations have been yielding less profits."[11]

---

[10]  *Pump Jacking California's Protection:  The Threat of Oil Industry Influence & Market Manipulation*, Consumer Watchdog (Dec. 15, 2014) at 7, *available at* http://www.consumerwatchdog .org/resources/OilIndustryManipulationReport.pdf.

[11]  Letter from Jaime Court, Liza Tucker and Cody Rosenfield to States Attorneys (May 21, 2015), *available at* http://www.consumerwatchdog.org/resources/ltrusattorneyspricemanip5-21-15ltrhd2_ 0.pdf.

COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S CARTWRIGHT ACT AND UNFAIR COMPETITION LAW

34. The following chart details the recent suspicious plant closings:

| Date | Company | Refinery | Amount of Statewide Capacity | Type of Outage | Claimed Reason | Industry Sources |
|---|---|---|---|---|---|---|
| 2/2/2015 | Tesoro | Martinez | 8.70% | Unplanned | Tesoro said it would close its Martinez refinery in the face of a steelworkers' strike for "safety" reasons. | Refineries can run without a full staff once operations are well under way. Weeks later Tesoro's CEO, Geoff Goff, told investors that the company could continue to operate its refineries indefinitely with reduced staffing levels despite the strike. Steelworkers complained that management increasingly used contract workers to run refineries. They would have also been available to run the Martinez facility, raising questions about the "safety" reason for full closure of Martinez. |
| 2/18/2015 | ExxonMobil | Torrance | 7.80% | Unplanned | An "incident" on the Torrance refinery's premises. | Major explosion and fire blew off sections of a 12-story electrostatic precipitator that cuts pollution. Industry sources said the refinery had made operating errors that led to the accident and that the refinery will not come back on line again until July or August. Company reputedly may not bring facility back on line at all, or close it down completely. That would further reduce the state's refining capacity. |
| 4/17/2015 | Tesoro | Martinez | 8.70% | Unplanned | Never publicly disclosed. | A fire prompted a shutdown of a gas oil hydrotreater for several days. |
| 4/21/2015 | Chevron | Richmond | 12.90% | Unplanned | Chevron notifies local officials of the shutdown of an unspecified unit and said flaring was part of "normal refinery | No information. |

COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S CARTWRIGHT ACT AND UNFAIR COMPETITION LAW

| Date | Company | Refinery | Amount of Statewide Capacity | Type of Outage | Claimed Reason | Industry Sources |
|---|---|---|---|---|---|---|
| | | | | | operations." | |
| 4/21/2015 | Tesoro | Martinez | 8.70% | Unplanned | Never disclosed. | Offline temporarily due to "operational glitches." |
| 4/23/2015 | Chevron | El Segundo | 14.50% | Planned | Company would not comment. | Chevron reportedly had an "unplanned" problem with one reformer unit and moved up planned maintenance schedule. The outage will last until at least mid-June and could include an unknown number of other units. The necessity of the maintenance and how much capacity is or will be affected is unclear. |
| 5/9/2015 | Tesoro | Martinez | 8.70% | Unplanned | Never disclosed. | Two compressors out on May 9 and 10. |
| 5/13/2015 | Phillips 66 | Wilmington | 7.30% | Planned | None; would not identify units. | Work may focus on hydrocracker used for diesel production, which was scheduled to have maintenance in June. Unclear if related to the failure of a nearby hydrogen plant that supplies this blending component. No information about effect on production output. |
| 5/18/2015 | Phillips 66 | San Francisco | 4.10% | Unplanned | Phillips 66 does not reveal reasons, but states operations continue. | Flaring triggered by an unplanned breakdown. Effect on production output unknown. |
| 5/19/2015 | Tesoro | Martinez | 8.70% | Unplanned | Declined to identify unit involved, said only that plant operations continue. | No information. |

COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S CARTWRIGHT ACT AND UNFAIR COMPETITION LAW

| Date | Company | Refinery | Amount of Statewide Capacity | Type of Outage | Claimed Reason | Industry Sources |
|---|---|---|---|---|---|---|
| 5/19/2015 | Tesoro | Carson | 12.60% | Planned | Never disclosed. | Due to planned maintenance on a hydrotreater. Company set to perform work on hydrocracker in July. No information on effect on production output. |

*See* n.11, *supra* at 4-6.

35.     Unsurprisingly, the first quarter of 2015 was one of the most profitable for California refiners in recent history. "Despite refiners' claims that their costs were rising, profits per barrel of gasoline in California actually increased by a staggering amount – disputing industry assertions that higher costs were merely being passed to consumers."[12]

36.     Tesoro, the state's second biggest refiner, shut down its Martinez refinery in early February and had to buy gasoline on the spot market to fulfill contracts, yet it still made a first quarter 2015 profit of $119 million. Tesoro's CEO Greg Goff trumpeted this news: "In California, crack spreads [difference between crude oil costs and wholesale prices] have improved related to the unplanned and planned refinery maintenance activities." He also noted: "There's no question that during the first quarter with what happened to Tesoro as a result of the disruption at the Martinez refinery because of the labor disruption and then with other operating and planned maintenance things across the whole system, it was very supportive to the margin environment there."[13]

---

[12]     *Consumer Watchdog's Analysis for the California Attorney General and California Energy Commission's Protection Market Advisory Committee*, Consumer Watchdog (June 30, 2015) at 6, *available at* http://www.consumerwatchdog.org/resources/wholesalegasolinemanipulaitonanalysis.pdf.

[13]     *Tesoro (TSO) Gregory James Goff on Q1 2015 Results – Earnings Call Transcript* (May 8, 2015), *available at* http://seekingalpha.com/article/3160256-tesoro-tso-gregory-james-goff-on-q1-2015-results-earnings-call-transcript?page=4&p=qanda&l=last.

COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S CARTWRIGHT ACT AND UNFAIR COMPETITION LAW

37.     Jeff Gustavson, a Chevron general manager made similar comments on an investor call. "Margins increased earnings by $435 million driven by unplanned industry downtime and tight product supply on the US West Coast."[14]

38.     Materials presented on June 30, 2015 by the California Energy Commission support the fact that "[r]efinery problems have been significant and sustained during 2015," and that "[t]hese issues have occurred with a backdrop of lower-than normal inventory levels."[15] The Commission also noted: "Strong price spikes at refinery wholesale level quickly transferred through to distribution terminals and retail." *Id.*

39.     The following chart shows the low gasoline inventory levels, which can "exacerbate price responses to refinery issues." Further aggravating the issue, refineries know that running on short supply of California's special CARB-complaint gasoline (gasoline with 5.7% ethanol as an oxygenate), which is not generally imported into the state, creates a situation where a substitute is not generally available, so when a refinery goes down, gas prices go up and the refineries profit.

[14]   *Consumer Watchdog Asks US Attorneys To Investigate Refinery "Maintenance" Issues Driving CA Gas Price Spikes*, Reuters (May 21, 2015), *available at* http://www.reuters.com/article/2015/05/21/watchdog-refineries-idUSnPn25pM5j+84+PRN20150521.

[15]   Gordon Schremp, *Recent Fuel Price Trends, Market Overview & Contributing Factors: Petroleum Market Advisory Committee Meeting* (June 30, 2015), *available at* http://www.energy.ca.gov/assessments/petroleum_market/2015-06-30/presentations/Recent_Fuel_Price_Trends_Market_Overview_and_Contributing_Factors.pdf.

COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S CARTWRIGHT ACT AND UNFAIR COMPETITION LAW



*Id.*

## BACKGROUND ON WEST COAST REFINERIES

**Gas Market in California Is Vulnerable to
Manipulation Because of Its Structure and Characteristics**

40.     In addition to the factual data detailed above, which details production coordination between some refineries as well as the windfall profits achieved during the spikes, other characteristics of the market make collusion particularly attractive in this market.  Specifically, the market: (1) has high barriers to entry; (2) has inelasticity of demand; and (3) is highly concentrated.

**High Barriers to Entry**

41.     A collusive arrangement that raises product prices above competitive levels would, under basic economic principles, attract new entrants seeking to benefit from the supracompetitive pricing.  Where there are significant barriers to entry, however, new entrants are less likely to enter the market.  Thus, barriers to entry help to facilitate the formation and maintenance of a cartel.

42.     There are substantial barriers that preclude, reduce, or make entry more difficult into the gasoline market.  A new entrant into the business would face costly and lengthy start-up costs, including multi-million dollar costs associated with research and development, manufacturing plants and equipment, energy, transportation, distribution, infrastructure, skilled labor and long-standing customer relationships.

43.     In addition to the costs of building a new refinery, given the nature of the product and California's unusual position in the market, any new entrant would have to comply with the various and complex regulations, including environmental regulations, imposed by state and federal agencies. Compliance with the regulations would require extensive testing and the receipt of government approvals, all of which would take years.

44.     Barriers to entry have only grown in the years since the Senate Report was issued.[16]

**The Demand for Gasoline in California Is Inelastic**

45.     "Elasticity" is a term used to describe the sensitivity of supply and demand to changes in one or the other. For example, demand is said to be "elastic" if an increase in the price of a product results in diminished revenues, with declines in the quantity sold of that product outweighing the effects of higher prices. For products with a highly elastic demand, customers have many feasible alternatives for cheaper products of similar quality, and cut purchases sharply in the face of even a small price increase.

46.     For a cartel to profit from raising prices above competitive levels, market demand must be relatively less elastic at competitive prices where an increase in price would result in a net increase in profit. A less elastic demand is a market characteristic that facilitates collusion, allowing producers to raise their prices without triggering customer substitution and sufficient lost sales revenues as to offset the beneficial effect of higher prices on profits for products they still continue to sell.

47.     Gasoline sales are highly inelastic. People and businesses tend to have set driving patterns and purchase a similar amount of gasoline no matter what the price. A 2002 report by the Senate Majority Staff of the Permanent Subcommittee on Investigations, has noted that "demand for gasoline in California is inelastic."[17]

---

[16]    Jamie Court, Cody Rosenfield and Liza Tucker, *Price Spiked: How Oil Refiners Gouge California and What It Costs*, Consumer Watchdog (last visited June 26, 2015) at 2, *available at* http://www.consumerwatchdog.org/resources/PriceSpiked.pdf.

[17]    United States Senate, *Majority Staff of the Permanent Subcommittee on Investigations, Gas Prices: How are they really set?* ("Senate Report") (released Apr. 30 & May 2, 2002) at 106, *available at* http://www.hsgac.senate.gov/subcommittees/investigations/hearings/gas-prices_how-are-they-really-set.

**The Market for Gasoline in California Is Highly Concentrated**

48.     The West Coast is an "island" in the North American gasoline market because there are no gas pipelines across the Rockies.  California itself is a smaller island within the West Coast because California law mandates a specific formulation for gas during spring and summer months.  There are 19 refineries on the West Coast, but ownership is concentrated with major oil companies owning two or three refineries each.  This is exactly the type of environment where market power is likely to exist.



Western States Petroleum Association, *available at* https://www.wspa.org/sites/default/files/uploads /documents/Energy%20Alerts/WSPA%20General%20Fact%20Sheet.pdf (last visited June 29, 2015).

49.     The Senate Report noted that California is the second largest gasoline market in the world, following only the United States as a whole.  As in other markets, the Senate Report noted "[a] small decrease in supply will produce a large increase in price."  Senate Report at 106.  Further, the report noted that the California refining industry is an oligopoly where the top two refiners control nearly half the state's capacity, the top four "refiners owned nearly 80 percent of California capacity," and the top seven players (all of which are defendants herein) account for more than 92% of the

market.[18]  The Senate Report cites a number of documents from a lawsuit brought against the refiners in 1996 alleging an anticompetitive scheme by the refiners in relation to gasoline meeting the specifications of the California Air Resources Board ("CARB").  The Senate Report concluded that the evidence produced in the case showed recognition by a number of the refiners and petroleum industry consultants that the small number of large refiners in California possess a significant degree of market power.

50.     For example, a document generated by Chevron in 1993 as part of a strategic study that was produced during discovery in *Aguilar v. Atlantic Richfield Co.*, No. 700810 (Cal. Super. Ct., San Diego Cnty.), and referred to in the Senate Report, also states that a few large refiners dominate the West Coast and have a significant effect on the market.  The Chevron document contrasts the high returns of the refiners in the West Coast market with the lower returns of refiners in the Gulf Coast and attributes the difference, in part, to the concentrated nature of the West Coast market:  "USWC market appears to allow better average returns than USGC [Gulf Coast].  The better performers generate [returns on capital employed] greater than 12% . . . . ***Market is dominated by a limited number of large, committed refiner/marketers whose individual actions can have significant market impact***."  Senate Report at 109 (emphasis in original).

51.     Another document relied upon by the Senate in its report was an "Energy Briefing Note" that was generated in 1996 by the PIRA Energy Group, a petroleum industry consulting organization, and presented to all of its "retainer clients," including Mobil, regarding the impact of the introduction of CARB-compliant gasoline on refining margins.  *Id.* at 109-110.  The Briefing Note reported that the supply/demand balance in California was likely to be "tight," and would remain so, partially as a result of the market structure in which a few refiners in the state had sufficient market power and motivation to maintain prices above marginal costs:  "The CARB 2 balance appears to be tight in California.  Add in the remoteness of the California market, the unique characteristics of CARB 2, the requirement for domestic shippers to use higher cost Jones Act shipping, ***and the small number of companies involved, all of whom share a motivation to recoup costs and not undermine the market.  The implication is***

---

[18]  *See* California Energy Commission, *Gasoline Market Share in California for 2014* (updated Apr. 2015), *available at* http://energyalmanac.ca.gov/gasoline/market_share/index.html.

*that prices on average will do quite a bit more than cover marginal costs*, which will mainly comprise the incremental oxygenate cost, although not during the extended phase-in period." *Id.* at 110 (emphasis in original).

52.    As the Senate Report found, "this PIRA memo presents a classic description of a market failure. In a purely competitive market, prices do not rise above marginal costs, which are the costs of producing an additional unit of the product." *Id.*

53.    The Senate Report, in looking at California, found "the high degree of vertical integration between the refining and marketing sectors raises prices within the state and raises the barriers for others to enter into the market or import gasoline, thus helping to keep the supply/demand balance tight and to sustain higher prices." *Id.* at 111.

**Opportunity to Collude – Trade Associations**

54.    Defendants BP West, Chevron, Tesoro, Shell, ExxonMobil, Valero, ConocoPhillips, Alon and Kern Oil, various of their subsidiaries and defendant-affiliated entities are all members of an interconnected group of trade associations and organizations engaged in extensive lobbying and other activities related to the gas market. These associations, which hold regular meetings, provide numerous opportunities for defendants to conspire.

55.    Since the early 1900s, oil and gas companies such as Alon USA, Chevron USA, ConocoPhilips, ExxonMobil, Shell, Tesoro Corporation, and Valero have been members of industry trade associations such as the WSPA; American Petroleum Institute ("API"); American Fuel & Petrochemical Manufacturers ("AFPM"); Society of Independent Gasoline Marketers of America ("SIGMA"); and Petroleum Marketers Association of America ("PMAA"). These trade associations are dominated and controlled by the defendants, as their representatives, predecessors and affiliates actively participated in the trade associations' management and oversight. Further, most of the revenue earned by the trade associations comes from membership fees and other payments from defendants related to research, lobbying, trade shows, and conferences. While the stated purpose of these trade associations is to ensure that consumers continue to have reliable access to petroleum and petroleum products, plaintiff alleges certain members of these trade organizations have conspired amongst

themselves to use these trade organizations to engage in anticompetitive discussions involving pricing, supply and production levels.

56. The trade associations provided a mechanism and venue through which the conspiracy was facilitated, implemented and monitored. Defendants met regularly prior to and following the price spikes in May and October 2012, attending sponsored meetings, conventions, and conferences hosted by these associations.

57. For example, Chevron, ConocoPhillips, ExxonMobil Corporation, Shell Oil Products Company, Tesoro and Valero are all members of WSPA. The dates that WSPA held meetings and conferences include but are not limited to: January 13-14, 2010; October 6, 2010; February 1-3, 2011; October 4-6, 2011; October 2-3, 2012; and October 1-2, 2013.

58. Chevron Products Company and defendants ConocoPhilips (board member), ExxonMobil (board member) and Shell are all members of API. The dates that API held meetings and conferences include but are not limited to: April 26-28, 2010; November 15-17, 2010; May 16-18, 2011; November 14-16, 2011; March 19-23, 2012; November 12-16, 2012; November 11-13, 2013; and April 22-26, 2013.

59. Alon USA, Chevron Products Company, Shell Chemical Company, Tesoro Corporation, and defendants ConocoPhilips, ExxonMobil and Valero (board member) are all members of AFPM. The dates that AFPM held meetings and conferences include but are not limited to: March 28-30, 2010; March 27-29, 2011; April 2-3, 2012; March 11-13, 2012; March 24-26, 2013; and March 17-19, 2013.

60. Alon, Inc., Chevron Corporation, Shell Oil, Valero Marketing and Supply Company and defendants ExxonMobil and Tesoro are all members of SIGMA. The dates that SIGMA held meetings and conferences include but are not limited to: April 29-May 2, 2010; July 19-21, 2010; November 12-14, 2010; and November 3-6, 2011.

61. Defendants ExxonMobil and Shell and Chevron Products Company and Valero Marketing and Supply Company are all members of PMAA. The dates that PMAA had meetings and conferences include but are not limited to: October 4-5, 2010; September 30-October 1, 2011; February 22-24, 2011; and February 21-23, 2012.

62. Not surprisingly, through various organizations, such as WSPA and API, defendants also are active in lobbying efforts related to the gas industry. WSPA and API members recognized their common interests in promoting the interests of the industry as a whole and collaborated in lobbying regulatory agencies to further such interests. Because members have a convenient forum to consult each other regarding policy positions, they can ensure that they maintain a united stance.

63. For example, from 2010-2013, ConocoPhilips spent $48,289,514 for lobbying efforts; Valero spent $2,903,000; Tesoro spent $4,547,287; and ExxonMobil spent $51,570,000. Likewise, API also spent $32,550,000 lobbying the oil and gas industry for the same period. *See* Center for Responsive Politics, *available at* http://www.opensecrets.org (last visited June 29, 2015).

**Investigations**

64. Senators and representatives have urged the government to delve into the price spikes over the years. For example, following the issuance of the McCullough Report, Rep. Peter DeFazio of Oregon wrote the then-attorney general Eric Holder calling the lack of progress on an investigation into high West Coast gas prices "intolerable."[19] DeFazio noted in the letter that he had written "to the so-called Gas Price Fraud Working Group calling for an investigation. Nothing happened. I wrote to the president and raised the issue of market manipulation by California refineries. Nothing. It's time for the Department of Justice to step up and do what they are supposed to do: crack down on, or at least investigate, illegal energy market activity." *Id.*

65. DeFazio continued: "Basically, this independent research shows that California refineries were misleading the public. Refinery outages and maintenance shutdowns just provided a convenient excuse and explanation for 'declining' gas production so they could jack up the price of refined gasoline . . . . Hugely profitable oil companies who continue to look for every opportunity to rip off American drivers need to be held accountable for their blatant market manipulation. Enough is enough. Serious action is needed now." *Id.*

---

[19] Press Release, Congressman Peter DeFazio Representing the 4th District of Oregon, *DeFazio to AG Holder: Lack of Progress on Gas Price Investigation is "Intolerable"* (Nov. 19, 2012), *available at* http://defazio.house.gov/media-center/press-releases/defazio-to-ag-holder-lack-of-progress-on-gas-price-investigation-is.

66.    DeFazio's letter further claimed "these devastatingly high gas prices on the West Coast appear to be a result of market abuses by a handful of California refineries – not the 'dynamics of supply and demand' as the oil and gas industry has facetiously claimed for decades while laughing all the way to the bank." The Congressman further noted: "The behavior of California refineries over the last six months has been suspicious at best and malicious at worst." *Id.*

67.    In April 2011, then-Attorney General Holder announced the creation of the Oil and Gas Price Fraud Working Group ("Working Group") "to help identify civil or criminal violations in the oil and gasoline markets, and to ensure that American consumers are not harmed by unlawful conduct."[20]

68.    The Working Group is co-chaired by the Commodities Futures Trading Commission, FTC and the National Association of Attorneys General. Other Working Group members include the Department of the Treasury, the Federal Reserve Board, the Securities and Exchange Commission, the Department of Justice's Criminal Division, Civil Division, and Antitrust Division, the Federal Bureau of Investigations, the United States Attorney's Office for the Western District of New York, the Executive Office for United States Attorneys, as well as the Departments of Agriculture and Energy.

69.    When the Working Group was formed, the intention was to explore whether there was any evidence of manipulation of oil and gas prices, collusion, fraud, or misrepresentations at the retail or wholesale levels that would violate state or federal laws and that has harmed consumers or the federal government as a purchaser of oil and gas, and to evaluate developments in commodities markets, including an examination of investor practices, supply and demand factors, and the role of speculators and index traders in oil futures markets.

70.    To date, the Working Group has issued no reports regarding the May and October price spikes, although it is believed that based on calls to action by members of Congress, an investigation is ongoing.

---

[20]    United States Department of Justice, *Protecting Consumers at the Pump:  The Oil and Gas Price Fraud Working Group* (Apr. 22, 2011), *available at* http://www.justice.gov/opa/blog/protecting-consumers-pump-oil-and-gas-price-fraud-working-group.

COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S CARTWRIGHT ACT AND UNFAIR COMPETITION LAW

## VENUE AND JURISDICTION

71.     This Complaint is filed, and these proceedings are instituted, pursuant to Cal. Bus. & Prof. Code §§16750(a) and 17203 to obtain relief and recover damages that plaintiff and members of the Class have sustained due to defendants' violations, as hereinafter alleged, of the Cartwright Act and the UCL.

72.     This Court has personal jurisdiction over each of the defendants as co-conspirators as a result of the acts of any of the defendants occurring in California in connection with defendants' violations of the Cartwright Act and/or the UCL.  No portion of this Complaint is brought pursuant to federal law.  California law applies to plaintiff's and the Class members' claims.

73.     All defendants conduct business in the state and are within the jurisdiction of the Court for purposes of service of process.

74.     Greater than two-thirds of the members of the proposed plaintiff class are citizens of California.

75.     Venue is proper in this County pursuant to the provisions of Cal. Bus. & Prof. Code §16750(a) and California Code of Civil Procedure §§395(a) and 395.5.

76.     Plaintiff is a resident of San Diego County and many of the unlawful acts occurred in California and, more particularly, in San Diego County.  All defendants do business in San Diego County and venue is proper in the Central Division of this Court.

## PARTIES

77.     Plaintiff Persian Gulf Inc., d/b/a a "76" gas station, is a California-based corporation with its principal place of business in Escondido, California.  During the Class Period, Persian Gulf directly purchased gasoline from one or more of the defendant refineries.

78.     Defendant BP West Coast Products LLC owns and operates a network of gas and fueling stations in California, Oregon, Washington, Nevada, and Arizona.  It was founded in 1978 and is based in La Palma, California.  BP West operates as a subsidiary of BP p.l.c.

79.     Defendant Chevron U.S.A. Inc. explores, extracts, and produces crude oil, natural gas, and natural gas liquids.  Chevron also refines, markets, and distributes products derived from petroleum, other than natural gas liquids.  Chevron was formerly known as Gulf Oil Corporation.  Chevron is based

in San Ramon, California, and operates as a subsidiary of Chevron Corporation. Chevron runs two refineries, one in Richmond and one in El Segundo. According to Chevron, its Richmond refinery is among the country's largest and most important refineries, processing up to 240,000 barrels of crude oil a day – more than any other Bay Area refinery.

80. Defendant Tesoro Refining & Marketing Company LLC offers refining and marketing of motor fuels and petroleum products. Tesoro was formerly known as Tesoro West Coast Company, LLC and changed its name to Tesoro Refining & Marketing Company LLC in January 2002. Tesoro, incorporated in 1996, is based in San Antonio, Texas, and operates as a subsidiary of Tesoro Corporation. Tesoro runs the Los Angeles and Martinez refinery, the second largest refinery in Northern California.

81. Defendant Equilon Enterprises LLC (d/b/a Shell Oil Products US) operates refineries and crude oil pipelines in the western United States and markets petroleum products via Shell-branded outlets in the West and Midwest. Shell's Martinez refinery has been in operation since 1915.

82. Defendant ExxonMobil Refining & Supply Company operates as a subsidiary of Exxon Mobil Corporation. The ExxonMobil Torrance refinery covers 750 acres, employs approximately 650 employees and 550 contractors, processes an average of 155,000 barrels of crude oil per day and produces 1.8 billion gallons of gasoline per year.

83. Defendant Valero Energy Corporation operates as an independent petroleum refining and marketing company in the United States, Canada, the Caribbean, the United Kingdom, and Ireland. It operates through two segments, Refining and Ethanol. The Refining segment is involved in refining, wholesale marketing, product supply and distribution, and transportation operations. This segment produces conventional and premium gasoline, CARB-compliant gasoline, reformulated gasoline blendstock for oxygenate blending, diesel fuels, low-sulfur and ultra-low-sulfur diesel fuels, CARB diesel fuel, distillates, jet fuels, asphalts, petrochemicals, lubricants, and other refined products. Valero was founded in 1955 and is based in San Antonio, Texas. Valero acquired the Benicia refinery in 2000. Approximately 70% of the refinery's product slate is CARB-compliant gasoline, California's clean-burning fuel. The refinery also has significant asphalt production capabilities and produces 25% of the asphalt supply in Northern California. Valero's Wilmington refinery was commissioned in 1969. The

Wilmington refinery processes a blend of California and foreign crude oil, as well as unfinished feedstocks from local and foreign sources.

84. Defendant ConocoPhillips operates the San Francisco refinery, which is comprised of two facilities linked by a 200-mile pipeline: the Santa Maria facility is located in Arroyo Grande, California, while the Rodeo facility is in the San Francisco Bay Area. ConocoPhillips is based in Houston, Texas.

85. Defendant Alon USA Energy, Inc., headquartered in Dallas, Texas, is an independent refiner and marketer of petroleum products, operating primarily in the South Central, Southwestern and Western regions of the United States. Rosedale Highway refinery has been in operation for more than 70 years. The Alon Bakersfield refinery has a capacity of 70,000 barrels per day and comprises more than 600 acres of land.

86. Defendant Kern Oil & Refining Co. operates as an oil refining and marketing company. It produces and supplies gasoline and diesel fuel to customers primarily in California. Kern Oil was formerly known as Kern County Refinery, Inc. and changed its name to Kern Oil & Refining Co. in January 1982. Kern Oil was founded in 1934 and is based in Bakersfield, California, with an additional office in Long Beach, California.

87. Each of the defendants is a participant in the California gasoline refinery market.

88. The true names and capacities of defendants sued herein under California Code of Civil Procedure §474 as Does 1 through 25, inclusive, are presently not known to plaintiff, who therefore sues these defendants by such fictitious names. Plaintiff will seek to amend this Complaint and include these Doe defendants' true names and capacities when they are ascertained. Each of the fictitiously named defendants is responsible in some manner for the conduct alleged herein and for the injuries suffered by the Class.

## CLASS ALLEGATIONS

89. Plaintiff brings this action individually and as a class action under the provisions of §382 of the California Code of Civil Procedure on behalf of the members of the following Class:

All persons or entities that purchased gasoline directly from a defendant during the Class Period (February 1, 2012 to present) and were damaged thereby. Excluded from the Class are defendants, their parent companies, subsidiaries and affiliates, any co-

COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S CARTWRIGHT ACT AND UNFAIR COMPETITION LAW

conspirators, governmental entities and instrumentalities of the government, states and their subdivisions, agencies and instrumentalities.

90. The Class is ascertainable and is one for which records should readily exist.

91. Plaintiff does not know the exact size of the Class, but because the nature of the trade and commerce involved, plaintiff believes that there are hundreds or thousands of Class members as above described, the exact number and their identities being known to defendants and their co-conspirators.

92. There is a well-defined community of interest among plaintiff and the members of the Class. Because defendants have acted in a manner generally applicable to the Class, questions of law and fact common to members of the Class predominate over questions, if any, that may affect only individual members of the Class. Such generally applicable conduct is inherent in defendants' wrongful and anticompetitive conduct.

93. Among the questions of law and fact common to the Class are: (a) whether defendants and their co-conspirators engaged in an agreement, combination, or conspiracy to fix, raise, elevate, maintain, or stabilize prices of gasoline in California; (b) the identity of the participants of the alleged conspiracy; (c) the duration of the conspiracy alleged herein and the acts performed by defendants and their co-conspirators in furtherance of the conspiracy; (d) whether the alleged conspiracy violated the Cartwright Act; (e) whether the alleged conspiracy violated the UCL; (f) whether the conduct of defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of plaintiff and the other members of the Class; (g) the effect of defendants' alleged conspiracy on the prices of gasoline in California during the Class Period; (h) the appropriate class-wide measure of damages; and (i) the appropriate nature of class-wide injunctive or other equitable relief.

94. There are no defenses of a unique nature that may be asserted against plaintiff Persian Gulf individually, as distinguished from the other members of the Class, and the relief sought is common to the Class.

95. Plaintiff Persian Gulf is a member of the Class and its claims are typical of the claims of the other members of the Class. Plaintiff was damaged by the same wrongful conduct of defendants.

96.     Plaintiff will fairly and adequately protect the interests of other Class members because it has no interests that are antagonistic to, or that conflict with, those of any other Class member. Plaintiff Persian Gulf is committed to the vigorous prosecution of this action and has retained competent counsel, experienced in litigation of this nature, to represent it and the other members of the Class.

97.     A class action is the superior method for the fair and efficient adjudication of this controversy. Class treatment will enable a large number of similarly situated parties to prosecute their claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that would result if individual actions were pursued.

98.     This case is also manageable as a class action. Plaintiff knows of no difficulty to be encountered in the prosecution of this action that would preclude its maintenance as a class action.

99.     Defendants' unlawful acts alleged in this Complaint had a substantial effect on commerce and caused antitrust injury to plaintiff and the Class.

100.    Defendants' unlawful acts had the purpose and effect of manipulating the price of gasoline sold in California.

101.    As a direct result of defendants' violations, plaintiff and the members of the Class have been damaged in their property or business.

102.    As a direct and foreseeable result of defendants' unlawful anticompetitive acts, the price of gasoline sold in California was manipulated and inflated.

## ANTICOMPETITIVE CONDUCT BY THE DEFENDANTS

103.    Defendants are horizontal competitors.

104.    The conspiracy consisted of a continuing agreement, understanding, or concerted action between and among defendants and their co-conspirators in furtherance of which defendants fixed, maintained, or made artificial prices for gasoline sold in California during the Class Period. Defendants' conspiracy constitutes a *per se* violation of the Cartwright Act and is an unreasonable and unlawful restraint of trade and an unlawful, unfair or fraudulent practice under the UCL.

105.    At all relevant times, other corporations, individuals and entities willingly conspired with defendants in their unlawful and illegal conduct. Numerous individuals and entities participated

actively during the course of and in furtherance of the scheme described herein. The individuals and entities acted in concert by joint ventures and by acting as agents for principals, in order to advance the objectives of the scheme to benefit defendants and themselves through the manipulation of gasoline prices in California.

### PLAINTIFF'S CLAIMS ARE TIMELY

106. Plaintiff brings its claims within the statute of limitations.

107. Even though plaintiff's claims are timely, facts indicating defendants were engaging in misconduct that caused gasoline prices in California to be artificially manipulated were actively concealed by defendants.

### PLAINTIFF AND THE CLASS SUFFERED ANTITRUST INJURY

108. Plaintiff has suffered significant injury as a result of defendants' gasoline price manipulation conspiracy.

109. Defendants' price-fixing conspiracy had the following effects, among others: (a) price competition has been restrained or eliminated with respect to gasoline sold in California; (b) the price of gasoline sold in California has been fixed, raised, maintained, or stabilized at artificially inflated levels; and (c) purchasers of gasoline sold in California have been deprived of free and open competition. During the Class Period, plaintiff and the members of the Class paid supracompetitive prices for gasoline sold in California.

110. By reason of the alleged violations of California laws, plaintiff and the members of the Class have sustained injury to their businesses or property, having paid higher prices for gasoline sold in California than they would have paid in the absence of defendants' illegal contract, combination, or conspiracy, and, as a result, have suffered damages in an amount presently undetermined. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

111. In formulating and effectuating the contract, combination, or conspiracy, defendants and their co-conspirators engaged in anticompetitive activities, the purpose and effect of which were to fix, maintain, suppress, inflate, and otherwise make artificial the price of gasoline sold in California.

112. Plaintiff suffered antitrust injury in that it paid more for gasoline from defendants than it would have paid had the manipulation not occurred.

113.    Injury to plaintiff and the Class also resulted from defendants' deprivation of the benefits of free and open competition in the market for gasoline sales.

114.    Plaintiff suffered antitrust injury as a result of defendants' actions.

**FIRST CAUSE OF ACTION**

**Violations of the Cartwright Act**

115.    Plaintiff incorporates by reference the preceding allegations.

116.    The acts and practices detailed above violate the Cartwright Act, Cal. Bus. & Prof. Code §16700, *et seq.*

117.    It is appropriate to bring this action under the Cartwright Act because many of the illegal agreements were made in California, the purchasers reside in California, the refineries at issue are in the state and because other overt acts in furtherance of the conspiracy and overcharges flowing from those acts occurred in California.

118.    As detailed above, the anticompetitive conduct described constitutes a per se violation of California's antitrust laws and is an unreasonable and unlawful restraint of trade. The anticompetitive effects of defendants' conduct far outweigh any purported non-pretextual, pro-competitive justification.

119.    As a proximate result of defendants' unlawful conduct, plaintiff and the members of the Class it seeks to represent have been injured in their business or property in violation of the Cartwright Act, Cal. Bus. & Prof. Code §16700, *et seq.*, by paying supracompetitive prices for gasoline during the Class Period. Such overcharges are the type of injury the antitrust laws were designed to prevent and flow directly from defendants' unlawful conduct. Plaintiff Persian Gulf and members of the Class are proper entities to bring a case concerning this conduct.

120.    Plaintiff and members of the Class have standing to and hereby seek monetary relief, including treble damages, together with other relief, as well as attorneys' fees and costs, as redress for defendants' Cartwright Act violations.

**SECOND CAUSE OF ACTION**

**Violations of the Unfair Competition Law**

121.    Plaintiff incorporates by reference the preceding allegations.

122.    Plaintiff brings this claim under §§17203 and 17204 of the Cal. Bus. & Prof. Code to enjoin, and obtain restitution and disgorgement of all monetary gains that resulted from acts that violated §17200 of the Cal. Bus. & Prof. Code, commonly known as the UCL.

123.    Plaintiff and the members of the Class have standing to bring this action under the UCL because they have been harmed and have suffered injury by being forced to pay inflated, supracompetitive prices for gasoline sold in California during the Class Period.

124.    In formulating and carrying out the alleged agreement, understanding and conspiracy, defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to, the acts, practices and course of conduct set forth herein, and these acts constitute unfair competition in violation of the UCL.

125.    Defendants' conspiracy had the following effects, among others: (a) price competition in the market for gasoline sold in California during the Class Period was restrained, suppressed, and/or eliminated; (b) prices for gasoline sold in California during the Class Period sold by defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels; and (c) plaintiff and members of the Class who purchased gasoline sold in California during the Class Period directly from defendants have been deprived of the benefits of free and open competition.

126.    As a direct and proximate result of defendants' anticompetitive conduct, plaintiff and members of the Class have been injured in their business or property by paying more for gasoline sold in California during the Class Period purchased directly from defendants than they would have paid in absence of the conspiracy.

127.    The anticompetitive behavior, as described above, is unfair, unconscionable, unlawful, and fraudulent, and in any event it is a violation of the policy or spirit of the UCL.

# PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that the Court:

A.  Certify this lawsuit as a class action pursuant to §382 of the California Code of Civil Procedure, and enter an order appointing plaintiff as the class representative and plaintiff's counsel as class counsel;

B.  Enter a judgment awarding plaintiff and the Class damages against defendants as a result of defendants' unlawful conduct alleged in this Complaint, plus treble damages and all other available damages, including any statutory or liquidated damages or otherwise;

C.  Award to plaintiff and the Class their costs of suit, including reasonable attorneys' and experts' fees and expenses; and

D.  Award any other and further relief as the Court may deem just and proper.

# DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury on all issues that can be tried to a jury.

DATED: July 8, 2015

ROBBINS GELLER RUDMAN
&amp; DOWD LLP
PATRICK J. COUGHLIN
DAVID W. MITCHELL
ALEXANDRA S. BERNAY
CARMEN A. MEDICI
JENNIFER N. CARINGAL

s/ Patrick J. Coughlin
PATRICK J. COUGHLIN

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiff

I:\Admin\CptDraft\Antitrust\Gas Refinery CPT.docx

COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S CARTWRIGHT ACT AND UNFAIR COMPETITION LAW

EXHIBIT 2

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Patrick J. Coughlin (111070)<br>ROBBINS GELLER RUDMAN & DOWD LLP<br>655 West Broadway, Suite 1900<br>San Diego, CA 92101<br>TELEPHONE NO.: 619/231-1058  FAX NO.: 619/231-7423<br>ATTORNEY FOR *(Name):* Plaintiff Persian Gulf Inc. | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**07/07/2015** at 12:12:33 PM<br><br>Clerk of the Superior Court<br>By Justin Jones, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS:
CITY AND ZIP CODE: San Diego CA 92101
BRANCH NAME: Central Division

CASE NAME:
Persian Gulf Inc. v. BP West Coast Products LLC, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER:<br>37-2015-00022430-CU-AT-CTL |
|---|---|---|
| ☑ Unlimited   ☐ Limited<br>(Amount          (Amount<br>demanded        demanded is<br>exceeds $25,000)  $25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:  Judge Katherine Bacal<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☑ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. This case ☑ is ☐ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   - a. ☑ Large number of separately represented parties
   - b. ☑ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   - c. ☑ Substantial amount of documentary evidence
   - d. ☑ Large number of witnesses
   - e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   - f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary  b. ☑ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action *(specify):* Two
5. This case ☑ is ☐ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: July 8, 2015

Patrick J. Coughlin
_____
(TYPE OR PRINT NAME)

(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice– Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award *(not unpaid taxes)*
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint Case *(non-tort/non-complex)*
    Other Civil Complaint *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

**CIVIL CASE COVER SHEET**

# EXHIBIT 3

# SUMMONS
## *(CITACION JUDICIAL)*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**07/07/2015** at 12:12:33 PM

Clerk of the Superior Court
By Justin Jones,Deputy Clerk

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

BP WEST COAST PRODUCTS LLC;
(Additional Parties Attachment form is attached)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

PERSIAN GULF INC., Individually and on Behalf of All Others
Similarly Situated

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Superior Court of San Diego County | CASE NUMBER:<br>*(Núm 37-2015-00022430-CU-AT-CTL* |
|---|---|

330 West Broadway
San Diego CA 92101

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Patrick J. Coughlin, Robbins Geller, et al. 655 W Broadway, Ste. 1900 San Diego, CA  92101  619/231-1058

| DATE:  07/07/2015<br>*(Fecha)* | Clerk, by<br>*(Secretario)* | J. Jones | , Deputy<br>*(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Persian Gulf Inc. v. BP West Coast Products LLC, et al. | |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

CHEVRON U.S.A. INC.;
TESORO REFINING & MARKETING
   COMPANY LLC;
EQUILON ENTERPRISES LLC (D/B/A
   SHELL OIL PRODUCTS US);
EXXONMOBIL REFINING & SUPPLY
   COMPANY;
VALERO ENERGY CORPORATION;
CONOCOPHILLIPS;
ALON USA ENERGY, INC.;
KERN OIL & REFINING CO. and
DOES 1-25, inclusive

Page   1   of   1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

EXHIBIT 4

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| BRANCH NAME: | Central |
| TELEPHONE NUMBER: | (619) 450-7069 |

**PLAINTIFF(S) / PETITIONER(S):**   Persian Gulf Inc

**DEFENDANT(S) / RESPONDENT(S):**   BP West Coast Products LLC et.al.

PERSIAN GULF INC VS. BP WEST COAST PRODUCTS LLC [IMAGED]

| NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE on MANDATORY eFILE CASE | CASE NUMBER:<br>37-2015-00022430-CU-AT-CTL |
|---|---|

## CASE ASSIGNMENT

Judge:  Katherine Bacal                                        Department: C-69

**COMPLAINT/PETITION FILED:** 07/07/2015

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 02/19/2016 | 09:30 am | C-69 | Katherine Bacal |

A case management statement must be completed by counsel for all parties or self-represented litigants and timely filed with the court at least 15 days prior to the initial case management conference. (San Diego Local Rules, Division II, CRC Rule 3.725).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of ADR* options.

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT), THE ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730), A STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) (SDSC FORM #CIV-359), AND OTHER DOCUMENTS AS SET OUT IN SDSC LOCAL RULE 2.1.5.

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS:  The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time.  General civil cases consist of all civil cases except: small claims proceedings, civil petitions, unlawful detainer proceedings, probate, guardianship, conservatorship, juvenile, parking citation appeals, and family law proceedings.

COMPLAINTS:  Complaints and all other documents listed in SDSC Local Rule 2.1.5 must be served on all named defendants.

DEFENDANT'S APPEARANCE:  Defendant must generally appear within 30 days of service of the complaint.  (Plaintiff may stipulate to no more than 15 day extension which must be in writing and filed with the Court.) (SDSC Local Rule 2.1.6)

JURY FEES:  In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

MANDATORY eFILE: Case assigned to mandatory eFile program per CRC 3.400-3.403 and SDSC Rule 2.4.11. All documents must be eFiled at www.onelegal.com.  Refer to General Order 051414 at www.sdcourt.ca.gov for guidelines and procedures.

*ALTERNATIVE DISPUTE RESOLUTION (ADR):  THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO TRIAL, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. PARTIES MAY FILE THE ATTACHED STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (SDSC FORM #CIV-359).

# EXHIBIT 5

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
07/30/2015 at 03:37:00 PM
Clerk of the Superior Court
By E-Filing, Deputy Clerk

| *Attorney or Party without Attorney:* | | | | For Court Use Only |
|---|---|---|---|---|
| Patrick J. Coughlin, Esq., Bar #111070 | | | | |

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
*Telephone No:* 619-231-1058    *FAX No:* 619-231-7423

*Ref. No. or File No.:*

*Attorney for:* Plaintiff

*Insert name of Court, and Judicial District and Branch Court:*

San Diego County Superior Court

*Plaintiff:* Persian Gulf Inc., et al.
*Defendant:* BP West Coast Products LLC, et al.

| **Proof Of Service** | *Hearing Date:* | *Time:* | *Dept/Div:* | *Case Number:* |
|---|---|---|---|---|
| **Summons; Complaint** | | | | 37201500022430CUATCTL |

*1. At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the Summons; Class Action Complaint; Civil Case Cover Sheet; Notice of Case Assignment and Case Management Conference on Mandatory eFile Case; ADR Information; Stipulation to Use of ADR (blank)

*3. a. Party served:*     BP West Coast Products LLC
   *b. Person served:*     Vivian Imperial, Person Authorized to Accept Service

*4. Address where the party was served:*     C T Corporation
                                       818 W. 7th Street
                                       Suite 930
                                       Los Angeles, CA 90017

*5. I served the party:*
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Thu., Jul. 09, 2015 (2) at: 10:40AM

*6. The "Notice to the Person Served" (on the Summons) was completed as follows:*
   *on behalf of:* BP West Coast Products LLC
   *Other:* limited liability company

*7. Person Who Served Papers:*
   a. N. Mendoza Janer
   b. **Class Action Research & Litigation**
      P O Box 740
      Penryn, CA 95663
   c. (916) 663-2562, FAX (916) 663-4955

Recoverable Cost Per CCP 1033 5(a)(4)(B)
   d. *The Fee for Service was:*
   e. I am: (3) registered California process server
        *(i)* Independent Contractor
        *(ii) Registration No.:*    2720
        *(iii) County:*    Orange

8. *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

   *Date: Mon, Jul. 13, 2015*

Judicial Council Form POS-010
Rule 2.150.(a)&(b) Rev January 1, 2007

Proof Of Service
Summons; Complaint

(N. Mendoza Janer)

*patcou.150604*

# EXHIBIT 6

| Attorney or Party without Attorney: | | | | For Court Use Only |
|---|---|---|---|---|
| Patrick J. Coughlin, Esq., Bar #111070<br>Robbins Geller Rudman & Dowd LLP<br>655 West Broadway, Suite 1900<br>San Diego, CA 92101<br>*Telephone No:* 619-231-1058    *FAX No:* 619-231-7423 | | | | |

**Attorney or Party without Attorney:**
Patrick J. Coughlin, Esq., Bar #111070
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
*Telephone No:* 619-231-1058    *FAX No:* 619-231-7423

*Ref. No. or File No.:*

*Attorney for:* Plaintiff

*Insert name of Court, and Judicial District and Branch Court:*
San Diego County Superior Court

*Plaintiff:* Persian Gulf Inc., et al.
*Defendant:* BP West Coast Products LLC, et al.

For Court Use Only (stamp, rotated): ELECTRONICALLY FILED / Superior Court of California, / County of San Diego / 07/30/2015 at 03:39:00 PM / Clerk of the Superior Court / By E-Filing, Deputy Clerk

| **Affidavit Of Service**<br>**Summons; Complaint** | *Hearing Date:* | *Time:* | *Dept/Div:* | *Case Number:*<br>37201500022430CUATCTL |
|---|---|---|---|---|

*1.  At the time of service I was at least 18 years of age and not a party to this action.*

2.  I served copies of the Summons; Class Action Complaint; Civil Case Cover Sheet; Notice of Case Assignment and Case Management Conference on Mandoatory eFile Case; ADR Information; Stipulation to Use of ADR (blank)

*3.  a. Party served:* — Chevron U.S.A. Inc.
    *b. Person served:* — Lynanne Gares, Person Authorized to Accept Service.

*4.  Address where the party was served:* — Prentice Hall
    2711 Centerville Road
    Wilmington, DE 19808

*5.  I served the party:*
    a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Mon., Jul. 13, 2015 (2) at: 12:30PM

6.  *The "Notice to the Person Served" (on the Summons) was completed as follows:*
    on behalf of:  Chevron U.S.A. Inc.
    Under (corporation)

*7. Person Who Served Papers:*
    a. Brian Schofield
    **b. Class Action Research & Litigation**
    P O Box 740
    Penryn, CA 95663
    c. (916) 663-2562, FAX (916) 663-4955

*Fee for Service:*
I Declare under penalty of perjury under the laws of the State of DELAWARE that the foregoing is true and correct.

7/20/15
*(Date)*

*(Signature)*

8.  *STATE OF DELAWARE, COUNTY OF* New Castle

*Subscribed and sworn to (or affirmed) before me on this* 20 *day of* July 2015 *by Brian Schofield*

*proved to me on the basis of satisfactory evidence to be the person who appeared before me.*

DENNIS SCHOFIELD
NOTARY PUBLIC
STATE OF DELAWARE
My commission expires Nov. 3, 2015

Affidavit Of Service
Summons; Complaint

*(Notary Signature)*

patcou.150605

EXHIBIT 7

| Attorney or Party without Attorney: | | | | For Court Use Only |
|---|---|---|---|---|
| Patrick J. Coughlin, Esq., Bar #111070 | | | | |
| Robbins Geller Rudman & Dowd LLP | | | | |
| 655 West Broadway, Suite 1900 | | | | |
| San Diego, CA 92101 | | | | |
| Telephone No: 619-231-1058    FAX No: 619-231-7423 | | | | |
| | | Ref. No. or File No.: | | |
| Attorney for: Plaintiff | | | | |

| Insert name of Court, and Judicial District and Branch Court: |
|---|
| San Diego County Superior Court |
| Plaintiff: Persian Gulf Inc., et al. |
| Defendant: BP West Coast Products LLC, et al. |

| **Affidavit Of Service**<br>**Summons; Complaint** | Hearing Date: | Time: | Dept/Div: | Case Number:<br>37201500022430CUATCTL |
|---|---|---|---|---|

*1. At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the Summons; Class Action Complaint; Civil Case Cover Sheet; Notice of Case Assignment and Case Management Conference on Mandoatory eFile Case; ADR Information; Stipulation to Use of ADR (blank)

3. a. *Party served:*      Conocophillips
    b. *Person served:*     Lynanne Gares, Person Authorized to Accept Service.

4. *Address where the party was served:*     Corporation Service Company
                                             2711 Centerville Road, Suite 400
                                             Wilmington, DE 19808

5. *I served the party:*
    a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Thu., Jul. 09, 2015 (2) at: 2:00PM

6. *The "Notice to the Person Served" (on the Summons) was completed as follows:*
    *on behalf of:* Conocophillips
    Under (corporation)

7. *Person Who Served Papers:*                          *Fee for Service:*
    a. Terrence Sweeney                    I Declare under penalty of perjury under the laws of the State of
    b. **Class Action Research & Litigation**      DELAWARE that the foregoing is true and correct.
       P O Box 740
       Penryn, CA 95663
    c. (916) 663-2562, FAX (916) 663-4955      7/17/15
                                           *(Date)*                   *(Signature)*

8. *STATE OF DELAWARE, COUNTY OF* New Castle

    *Subscribed and sworn to (or affirmed) before me on this* 17 *day of* July 2015 *by Terrence Sweeney*

    *proved to me on the basis of satisfactory evidence to be the person who appeared before me.*

               DENNIS SCHOFIELD
               NOTARY PUBLIC        **Affidavit Of Service**
               STATE OF DELAWARE      **Summons; Complaint**        *(Notary Signature)*     *patcou.150610*
        My commission expires Nov. 3, 2015



EXHIBIT 8

| Attorney or Party without Attorney: | | | | For Court Use Only |
|---|---|---|---|---|
| Patrick J. Coughlin, Esq., Bar #111070<br>Robbins Geller Rudman & Dowd LLP<br>655 West Broadway, Suite 1900<br>San Diego, CA 92101<br>Telephone No: 619-231-1058 FAX No: 619-231-7423 | | | | ELECTRONICALLY FILED<br>Superior Court of California,<br>County of San Diego<br>07/30/2015 at 03:15:00 PM<br>Clerk of the Superior Court<br>By E-Filing, Deputy Clerk |
| Attorney for: Plaintiff | | Ref. No. or File No.: | | |
| Insert name of Court, and Judicial District and Branch Court: | | | | |
| San Diego County Superior Court | | | | |
| Plaintiff: Persian Gulf Inc., et al. | | | | |
| Defendant: BP West Coast Products LLC, et al. | | | | |
| **Affidavit Of Service**<br>**Summons; Complaint** | Hearing Date: | Time: | Dept/Div: | Case Number:<br>37201500022430CUATCTL |

*1. At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the Summons; Class Action Complaint; Civil Case Cover Sheet; Notice of Case Assignment and Case Management Conference on Mandoatory eFile Case; ADR Information; Stipulation to Use of ADR (blank)

3. a. *Party served:*      Equilon Enterprises LLC (D/B/A Shell Oil Products US)
    b. *Person served:*     Amy McLaren, Person Authorized to Accept Service, Caucasian, Female, 32 Years Old, Brown Hair, Sitting, 180 Pounds.

4. *Address where the party was served:*     The Corporation Trust Company
                                                  1209 Orange Street
                                                  Wilmington, DE 19801

5. *I served the party:*
a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Thu., Jul. 09, 2015 (2) at: 11:37AM

6. *The "Notice to the Person Served" (on the Summons) was completed as follows:*
*on behalf of:* Equilon Enterprises LLC (D/B/A Shell Oil Products US)
*Other:* limited liability company

7. *Person Who Served Papers:*
   a. Terrence Sweeney
   b. **Class Action Research & Litigation**
     P O Box 740
     Penryn, CA 95663
   c. (916) 663-2562, FAX (916) 663-4955

*Fee for Service:*
I Declare under penalty of perjury under the laws of the State of DELAWARE that the foregoing is true and correct.

7/17/15        Terrence Sweeney
    *(Date)*                          *(Signature)*

8. *STATE OF DELAWARE, COUNTY OF* New Castle

*Subscribed and sworn to (or affirmed) before me on this* 17 *day of* July 2015    *by Terrence Sweeney*

*proved to me on the basis of satisfactory evidence to be the person who appeared before me.*

DENNIS SCHOFIELD
NOTARY PUBLIC
STATE OF DELAWARE
My commission expires Nov. 3, 2015

    Delivra Sch
**Affidavit Of Service**
**Summons; Complaint**          (Notary Signature)        *patcou.150607*

EXHIBIT 9

| Attorney or Party without Attorney: | | | | For Court Use Only |
|---|---|---|---|---|

Attorney or Party without Attorney:
Patrick J. Coughlin, Esq., Bar #111070
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone No: 619-231-1058          FAX No: 619-231-7423

Ref. No. or File No.:

Attorney for: Plaintiff

Insert name of Court, and Judicial District and Branch Court:
San Diego County Superior Court

Plaintiff: Persian Gulf Inc., et al.

Defendant: BP West Coast Products LLC, et al.

| Affidavit Of Service Summons; Complaint | Hearing Date: | Time: | Dept/Div: | Case Number: 37201500022430CUATCTL |
|---|---|---|---|---|

*1. At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the Summons; Class Action Complaint; Civil Case Cover Sheet; Notice of Case Assignment and Case Management Conference on Mandoatory eFile Case; ADR Information; Stipulation to Use of ADR (blank)

3. *a. Party served:*
   *b. Person served:*

Equilon Enterprises LLC (D/B/A Shell Oil Products US)
Amy McLaren, Person Authorized to Accept Service, Caucasian, Female, 32 Years Old, Brown Hair, Sitting, 180 Pounds.

*4. Address where the party was served:*

The Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

*5. I served the party:*
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Thu., Jul. 09, 2015 (2) at: 11:37AM

*6. The "Notice to the Person Served" (on the Summons) was completed as follows:*
   *on behalf of:* Equilon Enterprises LLC (D/B/A Shell Oil Products US)
   *Other:* limited liability company

*7. Person Who Served Papers:*
   a. Terrence Sweeney
   b. **Class Action Research & Litigation**
      P O Box 740
      Penryn, CA 95663
   c. (916) 663-2562, FAX (916) 663-4955

*Fee for Service:*
I Declare under penalty of perjury under the laws of the State of DELAWARE that the foregoing is true and correct.

7/17/15                    Terrence Sweeney
   *(Date)*                           *(Signature)*

*8. STATE OF DELAWARE, COUNTY OF* New Castle

*Subscribed and sworn to (or affirmed) before me on this* 17 *day of* July 2015 *by Terrence Sweeney*

*proved to me on the basis of satisfactory evidence to be the person who appeared before me.*

DENNIS SCHOFIELD
NOTARY PUBLIC
STATE OF DELAWARE
My commission expires Nov. 3, 2015

Affidavit Of Service
Summons; Complaint

_____
(Notary Signature)

patcou.150607



EXHIBIT 10

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
07/30/2015 at 03:31:00 PM
Clerk of the Superior Court
By E. Filing, Deputy Clerk

| Attorney or Party without Attorney: | | | | For Court Use Only |
|---|---|---|---|---|
| Patrick J. Coughlin, Esq., Bar #111070 Robbins Geller Rudman & Dowd LLP 655 West Broadway, Suite 1900 San Diego, CA 92101 *Telephone No:* 619-231-1058 *FAX No:* 619-231-7423 | | | | |
| | | *Ref. No. or File No.:* | | |
| *Attorney for:* Plaintiff | | | | |

| *Insert name of Court, and Judicial District and Branch Court:* |
|---|
| San Diego County Superior Court |

| *Plaintiff:* Persian Gulf Inc., et al. |
|---|
| *Defendant:* BP West Coast Products LLC, et al. |

| **Affidavit Of Service** **Summons; Complaint** | *Hearing Date:* | *Time:* | *Dept/Div:* | *Case Number:* 37201500022430CUATCTL |
|---|---|---|---|---|

*1. At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the Summons; Class Action Complaint; Civil Case Cover Sheet; Notice of Case Assignment and Case Management Conference on Mandaotory eFile Case; ADR Information; Stipulation to Use of ADR (blank)

*3. a. Party served:* Exxonmobil Refining & Supply Company
*b. Person served:* Paula Glaser, Person Authorized to Accept Service, Caucasian, Female, 60 Years Old, White Hair, Blue Eyes, 5 Feet 5 Inches, 148 Pounds

*4. Address where the party was served:* Corporate Services Company
320 Somerulos Street
Baton Rouge, LA 70802

*5. I served the party:*
a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Mon., Jul. 13, 2015 (2) at: 9:07AM

*6. The "Notice to the Person Served" (on the Summons) was completed as follows:*
*on behalf of:* Exxonmobil Refining & Supply Company
Under (corporation)

*7. Person Who Served Papers:*
a. Michael Thibodeaux
**b. Class Action Research & Litigation**
P O Box 740
Penryn, CA 95663
c. (916) 663-2562, FAX (916) 663-4955

*Fee for Service:*
I Declare under penalty of perjury under the laws of the State of LOUISIANA that the foregoing is true and correct.

7/21/15

*(Date)*      *(Signature)*

*8. STATE OF LOUISIANA, COUNTY OF*

*Subscribed and sworn to (or affirmed) before me on this ___ day of _____ by Michael Thibodeaux*

*proved to me on the basis of satisfactory evidence to be the person who appeared before me.*

Affidavit Of Service
Summons; Complaint

*(Notary Signature)*

*patcou.150608*

# EXHIBIT 11

| Attorney or Party without Attorney: | | | | | For Court Use Only |
|---|---|---|---|---|---|
| Patrick J. Coughlin, Esq., Bar #111070<br>Robbins Geller Rudman & Dowd LLP<br>655 West Broadway, Suite 1900<br>San Diego, CA 92101<br>Telephone No: 619-231-1058　FAX No: 619-231-7423<br><br>Attorney for: Plaintiff | | Ref. No. or File No.: | | | ELECTRONICALLY FILED<br>Superior Court of California,<br>County of San Diego<br>07/30/2015 at 03:33:00 PM<br>Clerk of the Superior Court<br>By E-Filing, Deputy Clerk |

| Insert name of Court, and Judicial District and Branch Court: |
|---|
| San Diego County Superior Court |

| Plaintiff: Persian Gulf Inc., et al. |
|---|
| Defendant: BP West Coast Products LLC, et al. |

| Proof Of Service<br>Summons; Complaint | Hearing Date: | Time: | Dept/Div: | Case Number:<br>37201500022430CUATCTL |
|---|---|---|---|---|

*1. At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the Summons; Class Action Complaint; Civil Case Cover Sheet; Notice of Case Assignment and Case Management Conference on Mandaotory eFile Case; ADR Information; Stipulation to Use of ADR (blank)

| 3. *a. Party served:* | Kern Oil & Refining Co. |
|---|---|
| *b. Person served:* | Deann Castro, Person Authorized to Accept Service, Caucasian, Female, 50 Years Old, Blond Hair, 5 Feet 6 Inches, 185 Pounds |

4. *Address where the party was served:*　　7724 East Panama Lane
　　　　　　　　　　　　　　　　　　　　　Bakersfield, CA 93307

5. *I served the party:*
　a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Thu., Jul. 09, 2015 (2) at: 9:01AM

6. *The "Notice to the Person Served" (on the Summons) was completed as follows:*
　*on behalf of:* Kern Oil & Refining Co.
　Under CCP 416.10 (corporation)

7. *Person Who Served Papers:*
　a. Jackie Brazeal
　b. **Class Action Research & Litigation**
　　P O Box 740
　　Penryn, CA 95663
　c. (916) 663-2562, FAX (916) 663-4955

Recoverable Cost Per CCP 1033.5(a)(4)(B)

　d. *The Fee for Service was:*
　e. I am: (3) registered California process server
　　　*(i)* Independent Contractor
　　　*(ii) Registration No.:*　560
　　　*(iii) County:*　Kern

8. *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

　Date: *Mon, Jul. 13, 2015*

Judicial Council Form POS-010<br>Rule 2.150.(a)&(b) Rev January 1, 2007　　　　Proof Of Service<br>Summons; Complaint　　　　　(Jackie Brazeal)　　patcou.150612

EXHIBIT 12

| Attorney or Party without Attorney: | | | | For Court Use Only |
|---|---|---|---|---|

Attorney or Party without Attorney:
Patrick J. Coughlin, Esq., Bar #111070
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone No: 619-231-1058    FAX No: 619-231-7423

Ref. No. or File No.:

Attorney for: Plaintiff

Insert name of Court, and Judicial District and Branch Court:
San Diego County Superior Court

Plaintiff: Persian Gulf Inc., et al.

Defendant: BP West Coast Products LLC, et al.

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

07/30/2015 at 03:35:00 PM

Clerk of the Superior Court
By E-Filing, Deputy Clerk

| **Proof Of Service Summons; Complaint** | Hearing Date: | Time: | Dept/Div: | Case Number: 37201500022430CUATCTL |
|---|---|---|---|---|

*1. At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the Summons; Class Action Complaint; Civil Case Cover Sheet; Notice of Case Assignment and Case Management Conference on Mandoatory eFile Case; ADR Information; Stipulation to Use of ADR (blank)

*3. a. Party served:*  Tesoro Refining and Marketing Company, LLC
   *b. Person served:*  Becky De George, Person Authorized to Accept Service, Caucasian, Female, 48-53 Yrs Old, Blonde Hair, 170 Lbs.

*4. Address where the party was served:*  Corporation Service Company
2710 Gateway Oaks Drive
Suite 150N
Sacramento, CA 95833

*5. I served the party:*
  a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Thu., Jul. 09, 2015 (2) at: 3:27PM

*6. The "Notice to the Person Served" (on the Summons) was completed as follows:*
  *on behalf of:*  Tesoro Refining and Marketing Company, LLC
  *Other:*  limited liability company

*7. **Person Who Served Papers:***
  a. Robert J. Mason
  **b. Class Action Research & Litigation**
    P O Box 740
    Penryn, CA 95663
  c. (916) 663-2562, FAX (916) 663-4955

Recoverable Cost Per CCP 1033.5(a)(4)(B)
  d. *The Fee for Service was:*
  e. I am: (3) registered California process server
    *(i)* Independent Contractor
    *(ii) Registration No.:*  03-007
    *(iii) County:*  Placer

*8. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

*Date: Mon, Jul. 13, 2015*

(Robert J. Mason)

Judicial Council Form POS-010
Rule 2.150.(a)&(b) Rev January 1, 2007

Proof Of Service
Summons; Complaint

*patcou.150606*

EXHIBIT 13

| Attorney or Party without Attorney: | | | | For Court Use Only |
|---|---|---|---|---|
| Patrick J. Coughlin, Esq., Bar #111070<br>Robbins Geller Rudman & Dowd LLP<br>655 West Broadway, Suite 1900<br>San Diego, CA 92101<br>*Telephone No:* 619-231-1058　　*FAX No:* 619-231-7423 | | | | |

*Attorney for:* Plaintiff

| | | Ref. No. or File No.: | | |
|---|---|---|---|---|

*Insert name of Court, and Judicial District and Branch Court:*

San Diego County Superior Court

*Plaintiff:* Persian Gulf Inc., et al.

*Defendant:* BP West Coast Products LLC, et al.

| **Affidavit Of Service**<br>**Summons; Complaint** | *Hearing Date:* | *Time:* | *Dept/Div:* | *Case Number:*<br>37201500022430CUATCTL |
|---|---|---|---|---|

*1. At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the Summons; Class Action Complaint; Civil Case Cover Sheet; Notice of Case Assignment and Case Management Conference on Mandoatory eFile Case; ADR Information; Stipulation to Use of ADR (blank)

*3. a. Party served:*            Valero Energy Corporation
   *b. Person served:*       Amy McLaren, Person Authorized to Accept Service, Caucasian, Female, 32 Years Old, Brown Hair, Sitting, 180 Pounds.

*4. Address where the party was served:*     The Corporation Trust Company
                                            1209 Orange Street
                                            Wilmington, DE 19801

*5. I served the party:*
  a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Thu., Jul. 09, 2015 (2) at: 11:37AM

*6. The "Notice to the Person Served" (on the Summons) was completed as follows:*
  *on behalf of:*   Valero Energy Corporation
  Under (corporation)

*7. Person Who Served Papers:*                     *Fee for Service:*
  a. Terrence Sweeney                          I Declare under penalty of perjury under the laws of the State of
  **b. Class Action Research & Litigation**       DELAWARE that the foregoing is true and correct.
    P O Box 740
    Penryn, CA 95663              7/17/15         *Terrence Sweeney*
    c. (916) 663-2562, FAX (916) 663-4955                              
                                     *(Date)*                             *(Signature)*

*8. STATE OF DELAWARE, COUNTY OF* New Castle

   *Subscribed and sworn to (or affirmed) before me on this* 17 *day of* July 2015    *by Terrence Sweeney*

   *proved to me on the basis of satisfactory evidence to be the person who appeared before me.*

DENNIS SCHOFIELD
NOTARY PUBLIC
STATE OF DELAWARE
My commission expires Nov. 3, 2015

                               **Affidavit Of Service**       *Dennis Schofield*
                               **Summons; Complaint**         *(Notary Signature)*
                                                                     *patcou.150609*

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
07/30/2015 at 03:35:00 PM
Clerk of the Superior Court
By E-Filing Deputy Clerk

EXHIBIT 14

| Attorney or Party without Attorney:<br>Patrick J. Coughlin, Esq., Bar #111070<br>Robbins Geller Rudman & Dowd LLP<br>655 West Broadway, Suite 1900<br>San Diego, CA 92101<br>Telephone No: 619-231-1058   FAX No: 619-231-7423 | | | | For Court Use Only<br><br>ELECTRONICALLY FILED<br>Superior Court of California,<br>County of San Diego<br><br>07/30/2015 at 03:03:00 PM |
|---|---|---|---|---|
| Attorney for: Plaintiff | | Ref. No. or File No.: | | Clerk of the Superior Court<br>By Lee McAlister, Deputy Clerk |
| Insert name of Court, and Judicial District and Branch Court:<br>San Diego County Superior Court | | | | |
| Plaintiff: Persian Gulf Inc., et al.<br>Defendant: BP West Coast Products LLC, et al. | | | | |
| **Affidavit Of Service**<br>**Summons; Complaint** | Hearing Date: | Time: | Dept/Div: | Case Number:<br>37201500022430CUATCTL |

*1. At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the Summons; Class Action Complaint; Civil Case Cover Sheet; Notice of Case Assignment and Case Management Conference on Mandoatory eFile Case; ADR Information; Stipulation to Use of ADR (blank)

*3. a. Party served:*            Alon USA Energy, Inc.
   *b. Person served:*         Amy McLaren, Person Authorized to Accept Service, Caucasian, Female, 32 Years
                                    Old, Brown Hair, Sitting, 180 Pounds.

*4. Address where the party was served:*      The Corporation Trust Company
                                             1209 Orange Street
                                           Wilmington, DE 19801

*5. I served the party:*
   a. by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive
   process for the party (1) on: Thu., Jul. 09, 2015 (2) at: 11:37AM

6. The "Notice to the Person Served" (on the Summons) was completed as follows:
   on behalf of: Alon USA Energy, Inc.
   Under (corporation)

7. *Person Who Served Papers:*
   a. Terrence Sweeney
   b. Class Action Research & Litigation
     P O Box 740
     Penryn, CA 95663
   c. (916) 663-2562, FAX (916) 663-4955

                       *Fee for Service:*
                       I Declare under penalty of perjury under the laws of the State of
                       DELAWARE that the foregoing is true and correct.

    7/17/15
     *(Date)*                           *(Signature)*

8. *STATE OF DELAWARE, COUNTY OF* New Castle
   *Subscribed and sworn to (or affirmed) before me on this*  17  *day of*  July  2015  *by Terrence Sweeney*
   *proved to me on the basis of satisfactory evidence to be the person who appeared before me.*

DENNIS SCHOFIELD
NOTARY PUBLIC
STATE OF DELAWARE
My commission expires Nov. 3, 2015

Affidavit Of Service
Summons; Complaint           *(Notary Signature)*       *patcon.130611*

# EXHIBIT 15



| Page | Case Number Search | Participant Name Search | Date Search |

| Unlawful Detainer Search | Printer Friendly Version | FAQ |

Cart

# Register of Actions (ROA)

## Case Information

| | | | |
|---|---|---|---|
| Case Number: | **37-2015-00022430-CU-AT-CTL** | Date Filed: | 07/07/2015 |
| Case Title: | Persian Gulf Inc vs. BP West Coast Products LLC [E-File] | Case Status: | Pending |
| Case Category: | Civil - Unlimited | Location: | Central |
| Case Type: | Antitrust/Trade Regulation | Judicial Officer: | Katherine Bacal |
| Case Age: | 29 days | Department: | C-69 |

## Future Events

| Event Date | Event Time | Location | Event Type |
|---|---|---|---|
| 02/19/2016 | 09:30 AM | C-69 | Civil Case Management Conference - Complaint |

| | | 1 | | |

## Participants

| Name | Role | Representation |
|---|---|---|
| Alon USA Energy Inc | Defendant | |
| BP West Coast Products LLC | Defendant | |
| Chevron USA Inc | Defendant | |
| ConocoPhillips | Defendant | |
| Equilon Enterprises LLC; DBA : Shell Oil Products US | Defendant | |
| ExxonMobil Refining & Supply Company | Defendant | |
| Kern Oil & Refining Co | Defendant | |
| Persian Gulf Inc | Plaintiff | COUGHLIN, PATRICK J |
| Tesoro Refining & Marketing Company LLC | Defendant | |
| Valero Energy Corporation | Defendant | |

| | | 1 | | |

## Representation

| Name | Address | Phone Number |
|------|---------|--------------|
| COUGHLIN, PATRICK J | 1900 655 West Broadway San Diego CA 92101 | |

|  |  | 1 |  |  |

## Register of Actions

| **All Entries** | **Filing Entries** | **Minutes Entries** | **Scheduling Entries** |
|---|---|---|---|

🔍 Enter text to search

|  |  | 1 |  |  |

| ROA# | Entry Date | Short/Long Entry | Filed By | Document | Cart |
|------|-----------|------------------|----------|----------|------|
| 17 | 07/30/2015 | Proof of Service of 30-day Summons & Complaint - Personal filed by Persian Gulf Inc. Refers to: Alon USA Energy Inc | Persian Gulf Inc (Plaintiff) | Proof of Service of 30-day Summons & Complaint - Substitute | Add to Cart |
| 16 | 07/30/2015 | Proof of Service filed by Persian Gulf Inc. | Persian Gulf Inc (Plaintiff) | Proof of Service | Add to Cart |
| 15 | 07/30/2015 | Proof of Service filed by Persian Gulf Inc. | Persian Gulf Inc (Plaintiff) | Proof of Service | Add to Cart |
| 14 | 07/30/2015 | Proof of Service filed by Persian Gulf Inc. | Persian Gulf Inc (Plaintiff) | Proof of Service | Add to Cart |
| 13 | 07/30/2015 | Proof of Service filed by Persian Gulf Inc. | Persian Gulf Inc (Plaintiff) | Proof of Service | Add to Cart |
| 12 | 07/30/2015 | Proof of Service filed by Persian Gulf Inc. | Persian Gulf Inc (Plaintiff) | Proof of Service | Add to Cart |
| 11 | 07/30/2015 | Proof of Service filed by Persian Gulf Inc. | Persian Gulf Inc (Plaintiff) | Proof of Service | Add to Cart |
| 10 | 07/30/2015 | Proof of Service filed by Persian Gulf Inc. | Persian Gulf Inc (Plaintiff) | Proof of Service | Add to Cart |

| 9 | 07/30/2015 | Proof of Service filed by Persian Gulf Inc. | Persian Gulf Inc (Plaintiff) | Proof of Service | **Add to Cart** |
|---|---|---|---|---|---|
| 8 | 07/30/2015 | Proof of Service filed by Persian Gulf Inc. | Persian Gulf Inc (Plaintiff) | Proof of Service | **Add to Cart** |
| 7 | 07/07/2015 | Case initiation form printed. | | Notice of Case Assignment SD | **Add to Cart** |
| 6 | 07/07/2015 | Civil Case Management Conference scheduled for 02/19/2016 at 09:30:00 AM at Central in C-69 Katherine Bacal. | | | |
| 5 | 07/07/2015 | Case assigned to Judicial Officer Bacal, Katherine. | | | |
| 4 | 07/07/2015 | Summons issued. | | | |
| 3 | 07/07/2015 | Original Summons filed by Persian Gulf Inc. Refers to: BP West Coast Products LLC; Chevron USA Inc; Tesoro Refining & Marketing Company LLC; Equilon Enterprises LLC; ExxonMobil Refining & Supply Company; Valero Energy Corporation; ConocoPhillips; Alon USA Energy Inc; Kern Oil & Refining Co | Persian Gulf Inc (Plaintiff) | Original Summons | **Add to Cart** |
| 2 | 07/07/2015 | Civil Case Cover Sheet filed by Persian Gulf Inc. Refers to: BP West Coast Products LLC; Chevron USA Inc; Tesoro Refining & Marketing Company LLC; Equilon Enterprises LLC; ExxonMobil Refining & Supply Company; Valero Energy Corporation; ConocoPhillips; Alon USA Energy Inc; Kern Oil & Refining Co | Persian Gulf Inc (Plaintiff) | Civil Case Cover Sheet | **Add to Cart** |
| | | Complaint filed by Persian Gulf Inc. Refers to: BP West Coast Products LLC; Chevron | | | |

| 1 | 07/07/2015 | Products LLC; Chevron USA Inc; Tesoro Refining & Marketing Company LLC; Equilon Enterprises LLC; ExxonMobil Refining & Supply Company; Valero Energy Corporation; ConocoPhillips; Alon USA Energy Inc; Kern Oil & Refining Co | Persian Gulf Inc (Plaintiff) | Complaint | Add to Cart |

| | | | 1 | | |

**THE INFORMATION IN THIS REGISTER OF ACTIONS IS PROVIDED AS IS, WITHOUT WARRANTY BY THE SAN DIEGO SUPERIOR COURT AS TO CONTENT OR ACCURACY OF THE INFORMATION.** The Entry Date on the Register of Actions may not always reflect the actual filing date of a document and not all documents filed with the Court are listed on the Register of Actions. It is recommended that users refer to the case file for confirmation.