1   DANIEL G. SWANSON, SBN 116556
      dswanson@gibsondunn.com
2   STEVEN E. SLETTEN, SBN 107571
      ssletten@gibsondunn.com
3   DAVID S. HAN, SBN 247789
      dhan@gibsondunn.com
4   GIBSON, DUNN & CRUTCHER LLP
    333 South Grand Avenue
5   Los Angeles, CA 90071-3197
    Telephone:  213.229.7000
6   Facsimile:   213.229.7520

7   Attorneys for Defendant
    CHEVRON U.S.A. INC.

8   [Additional Counsel on Signature Pages]

9

10              UNITED STATES DISTRICT COURT

11            SOUTHERN DISTRICT OF CALIFORNIA

12

| 13 | PERSIAN GULF INC., individually and on behalf of all others similarly situated, | CASE NO. 3:15-cv-01749-L-BGS |
|---|---|---|
| 14 | | **DEFENDANTS' REPLY BRIEF IN SUPPORT OF JOINT MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| 15 | Plaintiff, | |
| 16 | v. | [Fed. R. Civ. P. 12(b)(6)] |
| 17 | BP WEST COAST PRODUCTS LLC; CHEVRON U.S.A. INC.; TESORO REFINING & MARKETING COMPANY LLC; EQUILON ENTERPRISES LLC (D/B/A SHELL OIL PRODUCTS US); EXXONMOBIL REFINING & SUPPLY COMPANY; VALERO MARKETING & SUPPLY COMPANY; CONOCOPHILLIPS; ALON USA ENERGY, INC. and DOES 1-25, inclusive, | **SPECIAL BRIEFING SCHEDULE ORDERED PER LOCAL RULE 7.1(E):  Pursuant to Court Order (Dkt. 80), Defendants' Reply Brief shall be filed and served no later than November 23, 2016** |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | Defendants. | **Hearing:** |
| 23 | | Date:       Dec. 5, 2016 |
| 24 | | Time:       10:30 a.m.<br>Place:       Courtroom 5B<br>Judge:      Hon. M. James Lorenz |

25

26

27

28

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................. 1

II.   ARGUMENT......................................................................................... 1

      A.    The Law Requires Plaintiff to Plead a Plausible Case............................... 1

      B.    The Alleged Conspiracy to Restrict Refinery Output in California Is Neither Plausible as Pleaded nor Rational in Concept............................. 3

            1.    The Claimed Conspiracy Makes No Economic Sense ................... 3

            2.    There Is No Actual Parallel Conduct Pleaded ................................ 4

            3.    The "Plus Factors" Are Ambiguous at Best and Largely Irrelevant ................................................................................. 5

      C.    The FAC Should Now Be Dismissed with Prejudice ............................. 10

III.  CONCLUSION ................................................................................. 10

Gibson, Dunn &
Crutcher LLP

REPLY BRIEF
CASE NO. 15-CV-01749

1

# TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*Advanced Microtherm, Inc. v. Norman Wright Mech. Equip. Corp.*,
525 F. App'x 612 (9th Cir. 2013) .................................................................. 6

5

6

*Advanced Microtherm, Inc. v. Norman Wright Mechanical Equipment
Corporation*,
2009 WL 302003 (N.D. Cal. Feb. 6, 2009) .................................................. 5

7

8

*Aguilar v. Atl. Richfield Co.*,
25 Cal. 4th 826 (2001) .............................................................................. 10

9

10

*American Tobacco Company v. United States*,
328 U.S. 781 (1946) ................................................................................ 5, 6

11

12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................ 2, 3

13

14

*B & R Supermarket, Inc. v. Visa, Inc.*,
2016 WL 5725010 (N.D. Cal. Sept. 30, 2016) ............................................ 8

15

16

*Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.*,
2016 WL 3880989 (N.D. Cal. July 18, 2016) .............................................. 2

17

18

*Bell Atlantic Corporation v. Twombly*,
550 U.S. 544 (2007) ................................................................................ 1, 2

19

20

*In re Century Aluminum Co. Sec. Litig.*,
729 F.3d 1104 (9th Cir. 2013) .................................................................... 2

21

22

*City of Moundridge v. Exxon Mobil Corp.*,
429 F. Supp. 2d 117 (D.D.C. 2006)............................................................ 8

23

24

*In re Domestic Airline Travel Antitrust Litigation*,
2016 WL 6426366 (D.D.C. Oct. 28, 2016) .............................................. 6, 7

25

*Eclectic Props. E. LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ...................................................................... 2

26

27

*Fragale & Sons Beverage Company v. Dill*,
760 F.2d 469 (3d Cir. 1985) ....................................................................... 9

28

# TABLE OF AUTHORITIES

Page(s)

*Kendall v. Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008) ................................................................ 2, 3

*In re Linerboard Antitrust Litig.*,
  504 F. Supp. 2d 38 (E.D. Pa. 2007) ....................................................... 8, 9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) .................................................................................. 4

*Milliken & Company v. CNA Holdings, Inc.*,
  2011 WL 3444013 (W.D.N.C. Aug. 8, 2011) ............................................. 7

*In re Musical Instruments & Equip. Antitrust Litig.*,
  798 F.3d 1186 (9th Cir. 2015) ................................................................... 7

*In re Petroleum Products Antitrust Litigation*,
  906 F.2d 432 (9th Cir. 1990) ................................................................ 4, 10

*Prime Healthcare Servs. v. Serv. Emps. Int'l Union*,
  2013 WL 3873074 (S.D. Cal. July 25, 2013) ............................................ 2

*Salameh v. Tarsadia Hotel*,
  726 F.3d 1124 (9th Cir. 2013) ................................................................. 10

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ................................................................... 2

*Superior Offshore Int'l, Inc. v. Bristow Grp. Inc.*,
  738 F. Supp. 2d 505 (D. Del. 2010) .......................................................... 8

*In re Tableware Antitrust Litigation*,
  363 F. Supp. 2d 1203 (N.D. Cal. 2005) .................................................. 7, 8

*U.S. v. U.S. Gypsum Co.*,
  438 U.S. 422 (1978) .................................................................................. 9

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
  865 F. Supp. 2d 1002 (C.D. Cal. 2011) ..................................................... 8

*William O. Gilley Enterprises, Inc. v. Atlantic Richfield Company*,
  588 F.3d 659 (9th Cir. 2009) ................................................................... 10

iii

## I.      INTRODUCTION

Plaintiff's Opposition reveals that the First Amended Complaint ("FAC"), like the original Complaint, rests on illusory allegations of "parallel conduct" and a litany of supposed "plus factors" that refute rather than support any finding of collusive behavior.  Plaintiff purports to infer collusion from concededly non-parallel conduct—for example some Defendants adhered to plant maintenance schedules while others deviated from them—and ignores that its theory of serious self-inflicted injuries by some Defendants for the purported benefit of others makes no economic sense.  At the same time, Plaintiff admits (as this Court has recognized) that the FAC depicts the California oil refining business as an oligopoly where independent actions by individual refiners, acting in their own financial interest, can drive prices and profits higher for a time, particularly during supply disruptions.  In other words, the FAC pleads facts showing that no collusion is required to produce the price fluctuations seen in the market.

In the face of these and other dispositive shortcomings, Plaintiff seeks to invert the normal pleading rules.  Plaintiff argues that unless Defendants justify every action in a complex and dynamic marketplace over a five-year period, it is "plausible" to conclude that the observed price increases were the result of illegal collusion.  On that basis, Plaintiff claims the right to fish for evidence of a conspiracy, without having pleaded any facts showing that Defendants agreed to set prices or restrict output.  This faulty logic, which represents Plaintiff's core theory of the case, violates the pleading principles laid out in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), and its progeny and also defies common sense.  The FAC falls far short of what is required to state a valid antitrust claim, and because this is Plaintiff's second failed attempt it should be dismissed with prejudice.

## II.      ARGUMENT

### A.      The Law Requires Plaintiff to Plead a Plausible Case

As Plaintiff concedes (Opp. at 3-4), to survive a motion to dismiss, an antitrust claim must be supported by facts demonstrating the claim is not just "conceivable," but

that it is in fact "*plausible*."  *Twombly*, 550 U.S. at 557 (emphasis added); *see also*

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiff cannot rely on "ultimate facts"

or "legal conclusions," but must "plead the necessary evidentiary facts to support those

conclusions."  *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047-48 (9th Cir. 2008).

Contrary to Plaintiff's assertion (Opp. at 3-4 (citing *Starr v. Baca*, 652 F.3d 1202 (9th

Cir. 2011))), Defendants do not advocate a "probability" standard but seek only to ap-

ply the teaching of *Twombly*.  "When faced with two possible explanations, only one

of which can be true and only one of which results in liability, plaintiffs cannot offer

allegations that are 'merely consistent with' their favored explanation but are also con-

sistent with the alternative explanation.  Something more is needed, such as facts tend-

ing to exclude the possibility that the alternative explanation is true."  *In re Century*

*Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (citations omitted; dis-

tinguishing *Starr*).  In particular, Plaintiff "must allege facts at the pleading stage

'tending to exclude the possibility of independent action.'"  *Prime Healthcare Servs. v.*

*Serv. Emps. Int'l Union*, 2013 WL 3873074, at *7 (S.D. Cal. July 25, 2013) (internal

citation omitted).[1]  Plaintiff has not done so here.  "[A]n allegation of parallel conduct

and a bare assertion of conspiracy will not suffice."  *Starr*, 652 F.3d at 1213 (quoting

*Twombly*, 550 U.S. at 556).  It is Plaintiff's burden to allege facts stating a "plausible"

claim of an illicit agreement among the defendants, to plead sufficient "factual en-

hancement" to push its claim across "the line between possibility and plausibility."

*Eclectic Props. E. LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014)

(quoting *Twombly,* 550 U.S. at 557).[2]

---

[1]  *Accord Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.*, 2016 WL 3880989, at *9-10 (N.D. Cal. July 18, 2016).  *See also Iqbal*, 556 U.S. at 678 ("Where a com- plaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (in- ternal quotations and citations omitted).

[2]  These pleading requirements are especially important in antitrust conspiracy cases, "because discovery in antitrust cases frequently causes substantial expenditures and gives the plaintiff the opportunity to extort large settlements even where he does not

Gibson, Dunn & Crutcher LLP

REPLY BRIEF
CASE NO. 15-CV-01749

**B.** **The Alleged Conspiracy to Restrict Refinery Output in California Is Neither Plausible as Pleaded nor Rational in Concept**

    **1.** **The Claimed Conspiracy Makes No Economic Sense**

Plaintiff largely ignores the discussion in Defendants' Motion of how the theory underlying the Plaintiff's claim of collusion makes no economic sense. For example, Plaintiff persists in its claim that Defendants intentionally and collusively brought refinery accidents, explosions, and fires upon (some of) themselves for the purpose of restricting output (for all). Plaintiff even adds the nonsensical assertion that "willful" failures to correct hazardous conditions at certain refineries were deliberate, collusive schemes to cause supply disruptions, rather than individual refiners' decisions about their own perceived best interest to continue operating and maximize production. Opp. at 9; FAC ¶¶ 51-52. Yet, at the same time, Plaintiff contends that adopting the *opposite* stance and adhering to plant maintenance schedules to prevent hazardous conditions is somehow also proof of conspiracy. Such heads-I-win, tails-you-lose pleading is the hallmark of an implausible case.

Even apart from the farcical nature of these allegations, Plaintiff identifies no parallel or coordinated dimension to the alleged willful safety violations, refinery slowdowns, and closures. Plaintiff doesn't "plead the necessary evidentiary facts" to even hint at an inference of collusion regarding Defendants' refinery operations. *Kendall*, 518 F.3d at 1047-48. There is no claimed common pattern where Defendants rotate the burdens or somehow share the costs of employing these self-damaging mechanisms. Nor is there any explanation of how the "winners" in this conspiratorial lottery compensate the "losers." And of course certain companies would suffer massive financial harm from their self-inflicted refinery breakdowns while their competitors (other defendants) reap unusually high profits. Plaintiff claims that ExxonMobil chose

---

have much of a case." *Kendall*, 518 F.3d at 1047. Plaintiff is not entitled to "unlock the doors of discovery" on its speculative and tenuous antitrust conspiracy case when it has offered no facts that indicate any conspiracy ever existed. *Iqbal*, 556 U.S. at 678-79.

to leave its only California refinery off line for an extended period to keep supply tight so that its competitors could enhance their profits.  What is the rationale for accepting such unshared and unrecouped losses?  And any such conspiracy "is incalculably more difficult to execute than an analogous plan undertaken by a single [party]."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 590 (1986).  When Plaintiff's very theory of conspiracy lacks all common sense, contravenes rational economic behavior, is inherently extremely difficult to execute, *and* finds no support in the facts, the Court can and should conclude that Plaintiff has failed to plead a plausible claim.

### 2.    There Is No Actual Parallel Conduct Pleaded

Plaintiff's claim of parallel conduct once again focuses on the prices Defendants charged, which supposedly moved in unison.  *See* Opp. at 12-14, 4-5.  But the parallel pricing allegation is not based on actual prices individual Defendants charged over the relevant time period, but rather on the *average* prices charged and set by *retailers* such as Plaintiff.  *See*, *e.g.*, Opp. at 4; FAC ¶ 11.  An aggregated average price metric, however, says nothing as to what an individual Defendant's prices were, let alone that Defendants' prices collectively moved in tandem across a broad geographic area.  One can easily imagine a scenario where individual Defendants unilaterally raised or lowered prices by various amounts in different cities and regions, but the average of all their prices across the state increased.  The fact that average prices fluctuated widely over the course of the alleged conspiracy period is more consistent with competition and not the sort of "parallel" price movement that courts have found can support an inference of conspiracy.  Even in *In re Petroleum Products Antitrust Litigation* (cited by Opp. at 14), where there was a "pattern" of repeated "sharp" increases in average prices that plaintiff alleged were too "high," the Ninth Circuit held the parallel prices indicated there did not support an inference of conspiracy.  906 F.2d 432, 442-45 (9th Cir. 1990).  Here, Plaintiff's allegations do not rise even to that level, nor has Plaintiff alleged anything in the FAC about prices charged by any individual Defendant.

Gibson, Dunn & Crutcher LLP

4

Plaintiff's other allegations of supposed parallel conduct, which in fact are simply individual actions of only some Defendants at certain particular times, are equally unavailing.  The various refinery shutdowns and slowdowns, for example, occurred at different times over the course of several years and resulted from dissimilar events—e.g., plant explosions, labor disputes, unplanned maintenance—that Plaintiff cannot plausibly claim were coordinated in advance.  *See*, *e.g.*, FAC ¶¶ 2, 49-54; Opp. at 5-6.  Plaintiff's allegations relating to gasoline exports and imports likewise show no parallel conduct among the several Defendants.  They focus almost entirely on dissimilar actions by two Defendants (ExxonMobil's decision not to import more CARB gasoline than needed to cover its contractual obligations and Chevron U.S.A.'s decision to export certain of its refined products) during a narrow time period (the summer of 2015).  FAC ¶¶ 55-69; Opp. at 6.  Parallel conduct is also not shown by Plaintiff's allegations that the Western State Petroleum Association ("WSPA"), a trade organization, declined to appear at hearings held by the California Energy Commission or to provide confidential, defendant-specific, data to the CEC.  FAC ¶¶ 25-28; Opp. at 6-7.  The WSPA's actions are irrelevant to whether Defendants acted in parallel to fix prices.

### 3. The "Plus Factors" Are Ambiguous at Best and Largely Irrelevant

As is detailed in Defendants' Motion (at 10-18), the so-called "plus factors" on which Plaintiff relies do not support a reasonable inference of price fixing.

<u>High Profits</u>:  The fact that profits may ebb and flow over time as market conditions change is neither surprising nor suspicious, and does not suggest a market-wide price fixing conspiracy.  Plaintiff cites the cases *Advanced Microtherm, Inc. v. Norman Wright Mechanical Equipment Corporation*, 2009 WL 302003, at *1 (N.D. Cal. Feb. 6, 2009), and *American Tobacco Company v. United States*, 328 U.S. 781 (1946).  Opp. at 15. Neither case involved circumstances remotely similar to those here.  *Advanced Microtherm* was a discovery ruling in a bid-rigging case:  the court did not even analyze whether the alleged profits evidenced a conspiracy—and the Ninth Circuit affirmed the district court's subsequent judgment in favor of the defendant as a

REPLY BRIEF
CASE NO. 15-CV-01749

matter of law rejecting the conspiracy claim on the ground that "realizing high profits . . . would not have supported a jury verdict without more." *Advanced Microtherm, Inc. v. Norman Wright Mech. Equip. Corp.*, 525 F. App'x 612, 614 (9th Cir. 2013). In *American Tobacco*, the three defendant tobacco companies charged "absolutely identical" prices for more than 10 years during which they reaped extraordinary profits, which declined after competition led them to lower prices in unison to drive out the new entrants, and then raised prices together once the new competition had been quashed. 328 U.S. at 805-07. Plaintiff alleges no such facts here that support an inference that any alleged high profits stemmed from conspiracy rather than from normal market forces. The FAC alleges nothing new about excess profits that warrants a different conclusion than the Court already reached.

Acting Against Interest (Exports/Imports): Setting aside the rhetoric of Plaintiff's Opposition and focusing on the FAC's allegations, Plaintiff's claim that Defendants acted against their own self-interest during periods of price escalation does not add up and, as the Court has already found, fails to support any claim of conspiracy. Order at 9. The FAC alleges no facts that suggest Defendants coordinated their export or import decisions. Plaintiff instead assails *individual* decisions made by ExxonMobil and Chevron U.S.A. in 2015 (FAC ¶¶ 59-61, 64-66, 68-69), but nothing in the FAC leads to a fair inference that any decision by one Defendant—whether regarding the use of a particular tanker to import oil or the decision made to export gasoline from California—was made against that Defendant's individual self-interest, let alone in concert with any other Defendant. And to the extent any operating refiner's actions had the effect of reducing supply (or not increasing supply), which if accepted on their face is all that Plaintiff's allegations suggest, the Court has already correctly observed that each Defendant could independently and rationally choose to act this way because "a decrease in [gasoline] supply could increase all Defendants' margins." Order at 9.

Plaintiff's argument also can draw no support from *In re Domestic Airline Travel Antitrust Litigation*, where four airlines were alleged to have conspired to fix

prices by reducing capacity.  2016 WL 6426366 (D.D.C. Oct. 28, 2016).  Unlike this case, the plaintiffs there alleged a "host" of "factual allegations that that tended to exclude the possibility of independent action on the part of Defendants."  *Id.* at \*13.  Among other things, the complaint included (1) detailed economic data regarding the defendant airlines' capacity, prices, and other financial variables, which were compared to the same data from non-defendant airlines; (2) detailed descriptions of concurrent statements by individual defendants that they themselves would limit their own capacity and that the rest of the industry should do the same; and (3) allegations showing that such statements "were a deviation from past business practices."  *Id.* at \*8-10, \*13.  The FAC contains no comparable allegations.

Government Investigations:  Forced to accept the truism that "[a]llegations of a government investigation do not necessarily suggest a collusive agreement" (Order at 11 (citing *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1196 (9th Cir. 2015))), Plaintiff argues that such allegations may still "bolster [] plausibility" enough to overcome *Twombly* (Opp. at 24).  But once again, Plaintiff's cases (Opp. at 24-25) are inapposite.  In *Milliken & Company v. CNA Holdings, Inc.*, the plaintiffs alleged that one of the alleged conspirators had admitted participation in parallel criminal antitrust violations in exchange for corporate amnesty from criminal prosecution. 2011 WL 3444013, at \*10-13 (W.D.N.C. Aug. 8, 2011).  Here, not only has there been no admission of parallel criminal conduct, the cited investigations have not resulted in any finding of misconduct or charge of any kind.  The decision in *In re Tableware Antitrust Litigation,* 363 F. Supp. 2d 1203 (N.D. Cal. 2005), is even farther off the mark. The court there held the plaintiffs had adequately pled a conspiracy claim under the lenient pre-*Twombly* standard.  *Id.* at 1204-05.  But even under that lenient standard, the court emphatically denied that the allegation of a government investigation "bolstered" the adequacy of the pleading:

> The court must reject out-of-hand the significance plaintiffs attach to the fact that their complaint is directed toward the subject of the Attorney General of New York's investigation of (and out-of-court settlement with)

some of defendants. . . . Simply saying 'me too' after a governmental investigation does not state a claim.

*Id.* at 1205; *accord Superior Offshore Int'l, Inc. v. Bristow Grp. Inc.*, 738 F. Supp. 2d 505, 517 (D. Del. 2010) (initiation of government investigation "do[es] not enhance the plausibility of Plaintiff's claim and do[es] not warrant subjecting Defendants to the burdens of antitrust discovery").

Trade Association Meetings:  Likewise groundless is Plaintiff's assertion that it has alleged more than "mere participation" in trade association meetings.  Plaintiff argues that it has alleged various meeting dates.  Opp. at 23.  But Plaintiff does not—and cannot—point to any facts in the FAC regarding the content of those meetings or that offer any reason to believe the meetings were used for any unlawful purpose.  This is a far cry from the cases Plaintiff cites as holding that trade association activities support finding a conspiracy.  *B & R Supermarket, Inc. v. Visa, Inc.,* 2016 WL 5725010, at *8 (N.D. Cal. Sept. 30, 2016) (in a case alleging an agreement on liability rules related to smart cards, plaintiff alleged that the trade association was formed specifically to address smart card issues and that one of its meetings was expressly focused on what kind of model would be adopted); *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1025–26 (C.D. Cal. 2011) (defendant insurers used their trade association to create a rate database that they thereafter used to eliminate competition as to those rates).

Pretextual Statements:  Plaintiff's "pretext" argument fails on multiple levels.  Plaintiff first asserts that to be "pretextual," a non-conspiratorial explanation for a supply disruption need not be false (Opp. at 16) but, unsurprisingly, Plaintiff cites no authority for that proposition.  Moreover, the cases Plaintiff does cite hold explicitly that purportedly pretextual explanations for conduct are not enough:  "'For evidence of pretext to support an inference of conspiracy … it must be supported by additional evidence of opportunity to conspire, direct evidence of an agreement, or other circumstantial evidence of restraint of trade.'"  *In re Linerboard Antitrust Litig.,* 504 F. Supp. 2d 38, 53 (E.D. Pa. 2007) (quoting *City of Moundridge v. Exxon Mobil Corp.*, 429 F.

Gibson, Dunn & Crutcher LLP

Supp. 2d 117, 134 (D.D.C. 2006)).  In *Linerboard*, the court denied summary judgment based on "extensive and interconnected evidence"—including parallel conduct, public invitations to both increase prices and reduce production, and price and output discussions between competitors—that "tend[ed] to exclude the possibility of independent action."  504 F. Supp. 2d at 49, 54-62.[3]  As discussed, Plaintiff alleges nothing like that here.  Indeed, Plaintiff alleges nothing that can properly be called "pretext."  For example, that a defendant was "comfortable" operating some of its refineries with "reduced staffing levels" during a strike (Opp. at 9) does not show that non-operation of a particular refinery was pretextual.  And it is beyond absurd for Plaintiff to argue (*see id.*) that a regulatory citation for "willful" safety violations in the wake of a major refinery explosion shows that closing the refinery for needed repairs was pretextual.

Public Information Services and Exchange Agreements:  Plaintiff asserts that third-party data gathering services like OPIS and Platts allow Defendants to "share" information on price.  Opp. at 23-24.  But Plaintiff identifies nothing sinister about these services and cites no case suggesting that the existence of such publications, or the fact that industry participants "access" them (along with other subscribers), supports an inference of conspiracy.  Nor does Plaintiff have any answer to the cases holding that the availability of such market data can "render markets more, rather than less, competitive."  *U.S. v. U.S. Gypsum Co.*, 438 U.S. 422, 441 n.16 (1978).  Indeed, Plaintiff asserts that "lack of transparency" to the public regarding industry supply and other issues "facilitates collusion."  Opp. at 6-7 (citing FAC ¶¶ 72-73).  Having alleged the value of publicly available information, Plaintiff cannot at the same time argue that Defendants' access to services providing such information supports an inference of conspiracy.  And nothing in the FAC remotely supports Plaintiff's claim that there is a

---

[3]  Similarly, in *Fragale & Sons Beverage Company v. Dill* (cited by Opp. at 17), a case alleging a concerted refusal to deal, the court reversed a grant of summary judgment where the plaintiff offered extensive direct and circumstantial evidence belying the alleged conspirators' claims that each had independently decided not to deal with the plaintiff.  760 F.2d 469, 474 (3d Cir. 1985).

Gibson, Dunn &
Crutcher LLP

REPLY BRIEF
CASE NO. 15-CV-01749

1  "high level of inter-firm communications" among Defendants.  Opp. at 10.  In fact, the

2  FAC pleads no such communications at all.  *Cf. Petroleum Products*, 906 F.2d at 460-

3  61 (defendants directly shared among themselves internal "demand forecasts," "pro-

4  duction capabilities," and detailed "supply projections").

5       Plaintiff cites *William O. Gilley Enterprises, Inc. v. Atlantic Richfield Company*,

6  588 F.3d 659 (9th Cir. 2009) arguing that exchange agreements "**could** be used to fa-

7  cilitate coordinated activity."  Opp. at 23 (emphasis added).  But that does not help

8  Plaintiff because there are no facts alleged that any exchange agreement **was** used for

9  that purpose.  Nor does Plaintiff deny that "exchange agreements have long been rec-

10  ognized as procompetitive in purpose and effect."  *Aguilar v. Atl. Richfield Co.*, 25

11  Cal. 4th 826, 863 (2001).  This defeats any assertion that the mere entry into an ex-

12  change agreement to obtain needed supply is evidence of unlawful conduct—and

13  Plaintiff alleges no more than that.  In fact, the exchange agreements provide the op-

14  portunity to enhance, not restrict, supply by making it possible for refiners who have

15  gas available to sell it to those refineries (like ExxonMobil, *see* FAC ¶ 56) that are

16  down or restricted due to planned or unplanned maintenance and/or repairs.

17  **C.     The FAC Should Now Be Dismissed with Prejudice**

18       Plaintiff has now had two opportunities to plead a case based on facts and rea-

19  sonable inferences but instead relies on speculation and conjecture derived primarily

20  from a consumer watchdog group with an obvious agenda.  The FAC can and should

21  now be dismissed with prejudice.  *See Salameh v. Tarsadia Hotel*, 726 F.3d 1124,

22  1133 (9th Cir. 2013) ("A district court's discretion to deny leave to amend is 'particu-

23  larly broad' where the plaintiff has previously amended.").

24                    **III.     CONCLUSION**

25       For all the foregoing reasons, Defendants respectfully request that Persian

26  Gulf's First Amended Complaint be dismissed, in its entirety, with prejudice.

27

28

1   Dated: November 23, 2016

2

3

DANIEL G. SWANSON
STEVEN E. SLETTEN
DAVID S. HAN
GIBSON, DUNN & CRUTCHER LLP

4

5

6

By:   s/ Steven E. Sletten
                STEVEN E. SLETTEN

7

8

9

Attorneys for Defendant CHEVRON U.S.A.
INC.
Email:  ssletten@gibsondunn.com

10

11

JONES DAY LLP

12

13

By:   s/ David C. Kiernan
                DAVID C. KIERNAN

14

15

16

17

Attorneys for Defendant
TESORO REFINING & MARKETING COM-
PANY LLC
Email:  dkiernan@jonesday.com

18

19

MORGAN LEWIS & BOCKIUS LLP

20

21

By:   s/ Kent M. Roger
                KENT M. ROGER

22

23

24

25

Attorneys for Defendant
EQUILON ENTERPRISES LLC
doing business as SHELL OIL PRODUCTS US
Email:  kent.roger@morganlewis.com

26

27

28

Gibson, Dunn &
Crutcher LLP

11

REPLY BRIEF
CASE NO. 15-CV-01749

O'MELVENY & MYERS LLP


By:   s/ Charles C. Lifland
          CHARLES C. LIFLAND

Attorneys for Defendant
EXXON MOBIL REFINING & SUPPLY CO.
Email:  clifland@omm.com

WILSON TURNER KOSMO LLP


By:   s/ Robin A. Wofford
          ROBIN A. WOFFORD

Attorneys for Defendant
EXXON MOBIL REFINING & SUPPLY CO.
Email:  rwofford@wilsonturnerkosmo.com

COZEN O'CONNOR


By:   s/ Michael De Leeuw
          MICHAEL DE LEEUW

Attorneys for Defendant
ALON U.S.A. ENERGY, INC.
Email:  mdeleeuw@cozen.com

SULLIVAN & CROMWELL


By:   s/ Diane L. McGimsey
          DIANE L. MCGIMSEY

Attorneys for Defendant
BP WEST COAST PRODUCTS LLC
Email:  mcgimseyd@sullcrom.com

Gibson, Dunn &
Crutcher LLP

REPLY BRIEF
CASE NO. 15-CV-01749

NORTON ROSE FULBRIGHT

By: ___s/ John C. Gray_____
          JOHN C. GRAY

Attorneys for Defendant
CONOCO PHILIPS
Email:  john.gray@nortonrosefulbright.com

GLYNN & FINLEY LLP


By: ___s/ Robert Phelps_____
          ROBERT PHELPS

Attorneys for Defendant
VALERO MARKETING AND SUPPLY
COMPANY
Email:  bphelps@glynnfinley.com

**Signature Certification**

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures Manual, I hereby certify that the content of this document is acceptable to David C. Kiernan, counsel for Tesoro Refining & Marketing Company, LLC; Kent M. Roger, counsel for Equilon Enterprises LLC doing business as Shell Oil Products US; Charles C. Lifland and Robin A. Wofford, counsel for Exxon Mobil Refining & Supply Co.; Michael De Leeuw, counsel for Alon U.S.A. Energy, Inc.; Diane Lee McGimsey, counsel for BP West Coast Products LLC; Bob Phelps, counsel for Valero Marketing and Supply Company; and John C. Gray, counsel for Conoco Phillips, and that I have obtained each of the foregoing person's authorization to affix his or her electronic signature to this document.


By: ___s/ Steven E. Sletten_____
          STEVEN E. SLETTEN