1  **O'MELVENY & MYERS LLP**
   CHARLES C. LIFLAND (108950)
2  DAWN SESTITO (214011)
   400 South Hope Street, 18th Floor
3  Los Angeles, California 90071-2899
   Telephone: (213) 430-6000
4  Facsimile: (213) 430-6407
   E-mail: clifland@omm.com
5  E-mail: dsestito@omm.com

6  Attorneys for Defendant
7  EXXONMOBIL REFINING & SUPPLY
   COMPANY

8  [Additional Counsel For Defendant
   ExxonMobil Refining & Supply Company
9  On Next Page]

10

11             **UNITED STATES DISTRICT COURT**

12            **SOUTHERN DISTRICT OF CALIFORNIA**

13

14  PERSIAN GULF INC., Individually and      Case No. 3:15-cv-01749-L-AGS
    on Behalf of All Others Similarly
15  Situated,                                **CLASS ACTION**

16              Plaintiff,                    **DEFENDANTS' JOINT
                                             OPPOSITION TO PLAINTIFF'S
17          v.                               MOTION FOR AN ORDER
                                             PERMITTING DISCLOSURE OF
18  BP WEST COAST PRODUCTS LLC;              HIGHLY CONFIDENTIAL
    CHEVRON U.S.A. INC.; TESORO             INFORMATION TO
19  REFINING & MARKETING                     PLAINTIFF'S CONSULTANT
    COMPANY LLC; EQUILON
20  ENTERPRISES LLC (D/B/A SHELL             Complaint Filed: July 7, 2015
    OIL PRODUCTS US); EXXONMOBIL
21  REFINING & SUPPLY COMPANY;               Date:      June 26, 2019
    VALERO MARKETING AND SUPPLY             Time:      2:00 p.m.
22  COMPANY; PHILLIPS 66; ALON USA
    ENERGY, INC.; KERN OIL &                 Magistrate: Hon. Andrew G. Schopler
23  REFINING CO. and DOES 1-25,              Courtroom: 5th Fl (Ste 5160)
    Inclusive,
24                                           Trial Date:   Not Set
                Defendants.
25

26

27

28

1

**O'MELVENY & MYERS LLP**
M. RANDALL OPPENHEIMER (77649)

2

1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

3

Telephone:  (310)553-6700
Facsimile:   (310) 246-6779 (fax)

4

E-mail:  roppenheimer@omm.com

5

WILSON TURNER KOSMO LLP
ROBIN A. WOFFORD (137919)

6

FREDERICK W. KOSMO, JR. (138036)
HUBERT KIM (204957)

7

KATHERINE M. MCCRAY (243500)
402 West Broadway, Suite 1600

8

San Diego, California  92101
Telephone:  (619) 236-9600

9

Facsimile:   (619) 236-9669
E-mail:  rwofford@wilsonturnerkosmo.com

10

E-mail:  fkosmo@wilsonturnerkosmo.com
E-mail:  hkim@wilsonturnerkosmo.com

11

E-mail:  kmccray@wilsonturnerkosmo.com

12

Co-Counsel for Defendant

13

EXXONMOBIL REFINING & SUPPLY COMPANY

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-ii-                          Case No. 3:15-cv-01749-L-AGS

DEFTS' OPPO TO MTN RE DISCLOSURE OF HIGHLY CONFIDENTIAL INFO

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................ 1

II. RELEVANT FACTUAL BACKGROUND ........................................................ 3

III. LEGAL STANDARD .................................................................................... 5

IV. ARGUMENT ................................................................................................ 7

     A.    Rosenfield Is Not Qualified Under the Protective Order to Have
          Access to Defendants' Highly Confidential Information and
          Plaintiff Will Not Be Prejudiced If Access Is Denied. ........................... 7

     B.    There Is A Risk Of Disclosure Of Defendants' Highly Confidential
          Information If The Court Grants Rosenfield Access. .......................... 10

     C.    Plaintiff's Gripe About The Number Of Documents Designated as
          FCO Materials Is Immaterial. ........................................................... 13

V. CONCLUSION ............................................................................................ 14

DEFTS' OPPO TO MTN RE DISCLOSURE OF HIGHLY CONFIDENTIAL INFO

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Semiconductor Materials Am. Inc. v. Applied Materials Inc.*,
No. 95-20169, 1996 WL 908654 (N.D. Cal. Oct. 28, 1996)..........................5, 8

*Alcoa, Inc. v. Universal Alloy Corp.*,
No. 1:15-CV-01466-ELR, 2016 U.S. Dist. LEXIS 187915 (N.D. Ga.
Mar. 2, 2016) ................................................................................................6, 12

*BASF Corp. v. U.S.*,
321 F. Supp. 2d 1373 (Ct. Intl. Trade 2004) .......................................5, 8, 9, 11

*Brown Bag Software v. Symantec Corp.*,
960 F.2d 1465 (9th Cir. 1992)..........................................................................6, 10

*FTC v. Advocate Health Care Net.*,
162 F. Supp. 3d 666 (N.D. Ill. 2016).................................................................. 10

*GPNE Corp. v. Apple Inc.*,
No. 5:12-cv-2885-LHK (PSG), 2014 WL 1027948 (N.D. Cal. Mar.
13, 2014) ............................................................................................................ 10

*High Point Sarl. v. Sprint Nextel Corp.*,
No. 09-2269-CM/DJW, 2013 U.S. Dist. LEXIS 17366 (D. Kan. Feb.
8, 2013) ................................................................................................................ 6

*In re Am. Express Anti-Steering Rules Antitrust Litig. (No II)*,
No. -10-CV-04496 (NGG) (RER), 2012 WL 13098456 (E.D.N.Y.
Nov. 16, 2012) ................................................................................................5, 8

*Litton Indus., Inc. v. Chesapeake & Ohio Railway Co.*,
129 FRD 528 (E.D. Wisc. 1990) ...................................................................... 12

*Nellson N. Operating, Inc. v. Elan Nutrition, LLC*,
238 F.R.D. 544 (D. Vt. 2006)............................................................................. 3

*On Command Video Corp. v. LodgeNet Entm't Corp.*,
976 F.Supp. 917 (N.D. Cal. 1997)..................................................................... 12

DEFTS' OPPO TO MTN RE DISCLOSURE OF HIGHLY CONFIDENTIAL INFO

*Shoen v. Shoen*,
   5 F.3d 1289 (9th Cir. 1993) ............................................................... 13

*Streck, Inc. v. Research & Diagnostics Sys.*,
   250 F.R.D. 426 (D. Neb. 2008) ........................................................... 6

*Symantec Corp. v. Acronis Corp.*,
   No. 11-5310 EMC (JSC), 2012 WL 3582974 (N.D. Cal. Aug. 20,
   2012) ................................................................................................... 11

*Telular Corp. v. Vox2, Inc.*,
   No. 00 C 6144, 2001 WL 641188 (N.D. Ill. June 4, 2001) ................ 5

*United States v. Nat'l Med. Enters.*,
   792 F.2d 906 (9th Cir. 1986) ............................................................. 12

*Wang Labs., Inc. v. CFR Assocs., Inc.*,
   125 F.R.D. 10 (D. Mass. 1989) .......................................................... 10

**Statutes**

Cal. Civ. Code § 1641 ................................................................................ 12

DEFTS' OPPO TO MTN RE DISCLOSURE OF HIGHLY CONFIDENTIAL INFO

## I. **INTRODUCTION**

Plaintiff Persian Gulf Inc. asks the Court to overrule Defendants' reasonable objection to allowing blogger and avowed anti-fossil fuel activist, Cody Rosenfield, access to Defendants' most sensitive information. Only a few years out of college, Mr. Rosenfield lacks the credentials to be qualified as an independent expert, and has no training or background in engineering, economics, business, statistics, data analysis, oil and gas operations, or any other field pertinent to this antitrust case. His total work experience amounts to only a handful of years as a consumer and environmental advocate with a record of misrepresenting facts to promote his agenda. His "experience" strongly suggests that this Court should sustain the Defendants' objection and not allow Mr. Rosenfield access to their most sensitive and confidential business plans, strategies, and information.

Nothing in Mr. Rosenfield's background shows that he possesses any experience or training to qualify him as an expert on any issue in this matter. To the contrary, he is an unabashed advocate and purported "journalist" who has an undisputed anti-industry bent including many affiliations with avowed oil and gas industry opponents. Mr. Rosenfield describes his "work" as "*reveal[ing]* the manipulation [by oil-and-gas companies]," including going "undercover" to do so.[1] His CV discloses that he *presently* receives grant funding from Essential Information, an organization that "provide[s] provocative information *to the public*."[2] Mr. Rosenfield also continues to work with the Torrance Refinery Action Alliance, which

---

[1] Declaration of Dawn Sestito in Support of Defendants' Joint Opposition to Plaintiff's Motion for an Order Permitting Disclosure of Highly Confidential Information to Plaintiff's Consultant ("Sestito Decl.") (filed concurrently herewith). Exh. A, Cody Rosenfield, Ask Me Anything, Reddit, https://www.reddit.com/r/IAmA/comments/7nq4m5/i_investigate_oil_companies_that_manipulate/ (last visited June 12, 2019).

[2] Exh. B to Sestito Decl., Essential Information, https://www.essentialinformation.org/ (last visited June 12, 2019).

DEFTS' OPPO TO MTN RE DISCLOSURE OF HIGHLY CONFIDENTIAL INFO

1   advocates against certain refinery operations.  Mr. Rosenfield previously worked for

2   Consumer Watchdog, which described its mission as "*exposing* oil and gas

3   companies."[3]  While there, he published an article falsely alleging that ExxonMobil

4   was "hiding [a tanker] at critical times to keep California supplies short,"[4] which he

5   later *refused to correct* after ExxonMobil provided specific information proving that

6   the tanker was undergoing legally-mandated maintenance in Singapore's shipyards

7   during the time in question in contrast to his rank speculation.[5]

8        Plaintiff asks the Court to overrule Defendants' reasonable objection to

9   exposing their most sensitive business information to Mr. Rosenfield, but it ignores

10  Defendants' concerns, fails to identify the correct legal standard, *see* Section III, *infra*,

11  and makes no attempt to establish (or even articulate) any prejudice that might result

12  from denying Mr. Rosenfield access.  Nor does Plaintiff explain how Mr. Rosenfield

13  qualifies as an expert whose learned opinion could assist the trier of fact.[6]

14       The Protective Order in this case protects Defendants' legitimate interests by

15  allowing them to *reasonably withhold* permission for Plaintiff's proposed experts to

16  see their most sensitive information.  (Dkt. 184, ¶ 8.)  Because Defendants have not

17  "unreasonably withheld" permission for Mr. Rosenfeld to access these highly

---

18

19  [3] *See* Exh. I to Sestito Decl., *Holding Big Oil Accountable*, Consumer Watchdog, https://www.consumerwatchdog.org/holding-big-oil-accountable.

20  [4] Exh. D to Sestito Decl., Cody Rosenfield, *Against the Tide: How Missing Tankers*
21  *Pumped Up Gas Prices and Refiner Profits*, Consumer Watchdog (Feb. 8, 2016), *available at* https://www.consumerwatchdog.org/sites/default/files/2017-
22  09/reportagainstthetide.pdf.

23  [5] *See* Exh. E  to Sestito Decl., Letter From ExxonMobil to Jamie Court (Feb. 19,
24  2016); Exh. G to Sestito Decl., Jamie Court, Consumer Watchdog, https://www.consumerwatchdog.org/newsrelease/consumer-watchdog-report-finds-
25  oil-refiners-rigged-imports-and-exports-inflate-ca-gas-pr (last visited June 12, 2019).
26  The article contains other falsehoods that ExxonMobil corrected in this letter, including the amount of gasoline and gasoline components ExxonMobil imported in
27  2015.  Rosenfield ignored these facts too.

28  [6] *See* Exh. 1 to Bernay Decl. (Dkt. No. 213-3, "CV").

DEFTS' OPPO TO MTN RE DISCLOSURE OF HIGHLY CONFIDENTIAL INFO

confidential materials, the Court should deny Plaintiffs' motion and sustain Defendants' objection.  Should the Court deem more information is necessary, Defendants would be willing to engage in further discovery by deposing Mr. Rosenfield on issues relevant to this motion.[7]

## II.  RELEVANT FACTUAL BACKGROUND

On February 4, 2019, the Court entered the Stipulated Protective Order, finding "good cause" to protect documents and information containing "trade secrets or other confidential research, technical, cost, price, marketing or other commercial information."  (Dkt. 184 at 1.)  The Protective Order established three tiers of information:

1. ***Non-confidential information***: documents without any sensitive business information, such as public documents;

2. ***Confidential information***: documents for which the "unrestricted disclosure of such information could be potentially prejudicial to the business operations of such designating party." (*Id.* ¶ 4(a).)

3. ***Confidential – For Counsel Only ("FCO") information***: "information is among that considered to be the most sensitive by the designating party, including but not limited to trade secret or other confidential research, development, financial, pricing, or other highly sensitive commercial information." (*Id*. ¶ 4(b).)

This dispute relates only to FCO materials.

The Protective Order directs that FCO materials may be shared with only a narrow set of individuals, including counsel of record, certain client representatives, and *independent* experts.  Before viewing FCO materials, individuals must sign "Exhibit A: Agreement To Be Bound By Protective Order."  (*Id.* at 14, "Confidentiality Agreement").  Pursuant to the Protective Order, a party may reasonably object to the disclosure of FCO materials to specific individuals identified

---

[7] Depositions are a proper tool to evaluate an expert's risk of disclosure.  *See Nellson N. Operating, Inc. v. Elan Nutrition, LLC*, 238 F.R.D. 544, 545-47 (D. Vt. 2006).

-3-                    Case No. 3:15-cv-01749-L-AGS

DEFTS' OPPO TO MTN RE DISCLOSURE OF HIGHLY CONFIDENTIAL INFO

by an opposing party even if the individual signs the Confidentiality Agreement. (*Id.* ¶ 8.) Defendants have granted access to FCO materials—without objection—to Plaintiff's designated experts: Michael A. Williams, Ph.D, Justine Hastings, Ph.D, and Mr. Robert McCullough, M.A.[8]

On April 22, 2019, Plaintiff informed Defendants that it intended to disclose Defendants' FCO materials to Mr. Rosenfield.[9] On May 3, 2019, Defendants objected to the disclosure of FCO materials to Mr. Rosenfield and described in detail the reasons for their objection,[10] including:

- He is not qualified under the Protective Order to access FCO materials as an "independent expert."

- He is an activist who touts that his "work is to reveal the manipulation [by oil and gas companies]";

- He admits that he "has gone undercover at [oil and gas] industry conferences";

- His ongoing financial ties to Essential Information, an organization that seeks to "provide provocative information to the public"; and

- His ongoing affiliation with the Torrance Refinery Action Alliance ("TRAA"), a group that seeks changes to refinery operations and that formed "after an explosion at the ExxonMobil Torrance Refinery"—an event at issue in this case.[11]

---

[8] Exh. J to Sestito Decl., Letter from George C. Aguilar to Defendants (Feb. 12, 2019).

[9] Bernay Letter to Defense Counsel, Apr. 22, 2019, Exh. 1 to Declaration of Alexandra S. Bernay in Support of Plaintiff's Motion for an Order Permitting Disclosure of Highly Confidential Information to Plaintiff's Consultant ("Bernay Decl.") (Dkt. 213-3).

[10] Exh. K to Sestito Decl., Letter from Dawn Sestito to Alexandra S. Bernay (May 3, 2019).

[11] Exh. C to Sestito Decl., About TRAA, Torrance Refinery Action Alliance, https://www.traasouthbay.com/traa-fights-mhf-oil-refineries/ (last visited June 12, 2019).

-4-   Case No. 3:15-cv-01749-L-AGS

DEFTS' OPPO TO MTN RE DISCLOSURE OF HIGHLY CONFIDENTIAL INFO

1       Plaintiff replied on May 6, 2019, but challenged no facts Defendants presented

2  in support of their objection.[12]  Defendants sent a follow-up letter on May 13, 2019.[13]

3  The Parties have since met and conferred, but have not resolved this dispute.[14]

4  Plaintiff filed its motion on May 22, 2019.  (Dkt. 213.)

5  ## III.  **LEGAL STANDARD**

6       After issuing a protective order, and "[w]hen . . . disclosure of confidential

7  information to a third-party consultant is opposed by the disclosing party," courts

8  must "balance the movant's interest in selecting the consultant most beneficial to its

9  case, considering the specific expertise of this consultant and whether other

10  consultants possess similar expertise, against the disclosing party's interest in

11  protecting confidential commercial information from disclosure to competitors."

12  *BASF Corp. v. U.S.*, 321 F. Supp. 2d 1373, 1378 (Ct. Intl. Trade 2004); *Advanced*

13  *Semiconductor Materials Am. Inc. v. Applied Materials Inc.*, No. 95-20169, 1996 WL

14  908654, at *3 (N.D. Cal. Oct. 28, 1996) ("[T]he court must balance [the receiving

15  party's] interest in electing the experts most beneficial to its case with [the producing

16  party's] interest in protecting its trade secrets from disclosure to competitors."); *In re*

17  *Am. Express Anti-Steering Rules Antitrust Litig. (No II)*, No. -10-CV-04496 (NGG)

18  (RER), 2012 WL 13098456, at *2 (E.D.N.Y. Nov. 16, 2012) ("Where, as here, a

19  dispute over the release of confidential information to a third party consultant is

20  governed by a protective order, the court will consider the competing interests of the

21  parties as to the dissemination and use of this sensitive information."); *Telular Corp.*

22  *v. Vox2, Inc.*, No. 00 C 6144, 2001 WL 641188, at *1 (N.D. Ill. June 4, 2001) ("[T]he

23  Court must balance Telular's interest in selecting the expert most beneficial to its case

---

24

25  [12] Exh. L to Sestito Decl., Letter from Alexandra S. Bernay to Dawn Sestito (May 6,

26  2019).

27  [13] Exh. M to Sestito Decl., Letter from Dawn Sestito to Alexandra S. Bernay (May 13,

28  2019).

[14] *Id.* ¶ 24.

1   with Vox2's interest in protecting its trade secrets from disclosure to its

2   competitors.").[15]

3         As these cases explain, when the risk of disclosure of the producing party's

4   highly confidential information outweighs any prejudice to the receiving party from

5   *not* showing the confidential information to a consultant, courts must deny the

6   requested disclosure.  Plaintiff cites no authority to the contrary.[16]

7

8

9

10

11  [15] This standard mirrors the Ninth Circuit's balancing test for determining "when
    protective orders for trade secrets may be appropriate."  *Brown Bag Software v.*

12  *Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992).  In this Circuit, courts "balance
    the risk to [the producing party] of inadvertent disclosure of trade secrets to

13  competitors against the risk to [the receiving party] that protection of [the producing

14  party's] trade secrets impaired prosecution of [the receiving party's] claims," after
    "examin[ing] factually all the risks and safeguards surrounding inadvertent

15  disclosure" and "the nature of the claims and of a party's opportunity to develop its

16  case through alternative discovery procedures."  *Id.*

17  [16] Plaintiff's statement that "courts routinely overrule objections to disclosure" applies
    *only* when the party seeking disclosure demonstrates the potential for significant

18  prejudice in trying their case if the objection is sustained or when the objecting party

19  fails to identify a potential harm from disclosing the documents, neither of which is
    present here.  For example, in *Advanced Semiconductor* the court allowed disclosure

20  because the individual in question had "extensive credentials" and was uniquely

21  positioned "to convey highly technical information to lay persons."  In *Streck, Inc. v.*
    *Research & Diagnostics Sys.*, 250 F.R.D. 426, 430 (D. Neb. 2008), the court held that

22  prior work of the Ph.D. scientist in question did "not fall within the topic area covered

23  by the patents-in-suit" and thus was unlikely to result in harm to the disclosing party.
    Similarly, in *High Point Sarl. v. Sprint Nextel Corp.*, No. 09-2269-CM/DJW, 2013

24  U.S. Dist. LEXIS 17366, at *32-33 (D. Kan. Feb. 8, 2013), the objecting party failed

25  to establish the potential for harm and the court held that the individual was
    eminently-qualified in the area.  Finally, Plaintiff's reliance on *Alcoa, Inc. v.*

26  *Universal Alloy Corp.*, No. 1:15-CV-01466-ELR, 2016 U.S. Dist. LEXIS 187915, *3-

27  5 (N.D. Ga. Mar. 2, 2016) is misguided because it relates to a *motion to amend* a
    protective order that *did not allow* the parties to object to the disclosure of confidential

28  information in stark contrast to the dispute presently before this Court.

1

## IV. **ARGUMENT**

2       The Court needs no scale to balance the dueling interests here.  On the one

3 hand, Mr. Rosenfield does not qualify under the Protective Order as an independent

4 expert and Plaintiff has not offered any rationale for how they would be prejudiced in

5 prosecuting their case if Mr. Rosenfield was barred from viewing FCO materials.  On

6 the other hand, Mr. Rosenfield's background and own statements present a concrete

7 risk of disclosure for Defendants' most sensitive business records—after all, he boasts

8 that his personal mission is to "reveal" information about the oil and gas industry.

9    **A.**  **Rosenfield Is Not Qualified Under the Protective Order to Have
Access to Defendants' Highly Confidential Information and Plaintiff
Will Not Be Prejudiced If Access Is Denied.**

10

11       Mr. Rosenfield is not a qualified expert and, therefore, should not have access

12 to FCO materials pursuant to the terms of the Protective Order and the legal balancing

13 test.  Plaintiff's motion does not state otherwise.

14       First, the Protective Order is not a carte blanche invitation to disclose FCO

15 materials to anyone with an interest in the case.  Its purpose is the opposite: it limits

16 disclosure of FCO materials to specific classes of individuals with defined roles, such

17 as certain "in-house counsel," "witnesses," "independent experts," or a "party's

18 insurer."  (*See* Dkt. 184 ¶ 8.)  Mr. Rosenfield simply is not an "independent expert"

19 under any plausible definition and thus is not allowed to view FCO materials under

20 the Protective Order.  He graduated college in 2014, just a year before this case was

21 filed, with a degree in *political science*.  (CV at 1.)  He has authored no academic

22 papers or anything equivalent.  Instead, he worked at Consumer Watchdog for three

23 years, writing press releases and advocacy blog posts, authoring at least one article

24 that ExxonMobil publicly debunked without correcting it.[17]  (*Id.*)  Mr. Rosenfield then

25 moved to the Coalition for Clean Air where he spent 14 months working on "Port and

26 Freight Regulatory Advocacy," which has little do with the oil and gas industry.  (*Id.*

27

28

[17] *See* Exhs. E & G.

DEFTS' OPPO TO MTN RE DISCLOSURE OF HIGHLY CONFIDENTIAL INFO

at 3.)  Mr. Rosenfield lists no current employment aside from his affiliations with Essential Information and TRAA.  *Id.*  Nothing in his CV—focused entirely on public policy advocacy—suggests that he has engaged in any scholarly or academic activities while he was with any of these organizations.  Nor is there any suggestion that he acquired any experience in economics, the oil and gas industry, or any other field relevant to this antitrust case to a degree where he is necessary to assist Plaintiff for a legitimate purpose.  Mr. Rosenfield has no education relevant to the case, no experience in the industry, and no specialized technical knowledge or skills that would qualify him as an "independent expert" under the Protective Order.[18]

Second, Plaintiff mischaracterizes the legal test and argues that "Mr. Rosenfield's experience . . . has no relevance here."  (Mot. at 4 n.10.)  But the Protective Order speaks directly to this issue by limiting proper disclosure only to "experts."  And just as important, case after case—including some cited by Plaintiff—stand for proposition that the Court must consider experience and qualifications when weighing the need for an expert to view confidential information.  *See BASF Corp.*, 321 F. Supp. 2d at 1381 (noting the expert denied access to confidential materials does not "posses[] qualifications to be an expert witness in this case"); *Advanced Semiconductor*, 1996 WL 908654, at *3 (same); *In re Am. Express Anti-Steering Rules Antitrust Litig. (No II)*, 2012 WL 13098456, at *3 ("it is unclear that [alternative] experts *possess the relevant payment services expertise* necessary to help the United States effectively litigate this case." (emphasis added)).  Expertise is a significant part of what must be balanced.

---

[18]  Mr. Rosenfield's proposed addition to the case appears to be an attempt by Plaintiffs to learn whatever basis he (or others at Consumer Watchdog) had for the assertions in those articles without running into the same "journalist privilege" shield that Consumer Watchdog has asserted against Defendants.  *See, e.g.*, Exh. F to Sestito Decl., *Consumer Watchdog Supplemental Privilege Log* (Nov. 11, 2018) (asserting "First Amendment journalists' privilege").

DEFTS' OPPO TO MTN RE DISCLOSURE OF HIGHLY CONFIDENTIAL INFO

Having ignored the express terms of the Protective order and the legal balancing test (and even if they could demonstrate that Rosenfield was an independent expert), Plaintiff fails to show any prejudice on its ability to prosecute its case in light of Defendants' objection.  Plaintiff only vaguely states that Mr. Rosenfield "has detailed and specific knowledge regarding the very matters upon which this case centers."  (Mot. at 4.)  But the scope of his "specific knowledge" remains a mystery, and his limited professional experience suggests no relevant expertise.  To the extent Mr. Rosenfield offers any relevant knowledge or skills, Plaintiff can surely secure those from a genuine expert who does not pose a similar risk of disclosure.  Defendants have already allowed three other experts identified by Plaintiffs (in this and the related cases) to view their FCO materials, including two Ph.D. economists and an adjunct professor and consultant with experience in the industry.[19]  Defendants did not object to these individuals because they appear to have expertise relevant to the case issues and have not publicly stated that they want to expose and publicly reveal information about Defendants.[20]

Given Plaintiff's failure to articulate how Mr. Rosenfield is an "independent expert" under the Protective Order and—even if he met that test—any prejudice it would experience if he is not allowed to view Defendants' most confidential materials, the Court must deny Plaintiff's motion.  *See, e.g.*, *BASF Corp.*, 321 F. Supp. 2d at 1378 (denying expert access to confidential material in part because

---

[19] On February 12, 2019, counsel in *Bartlett, et al. v. BP West Coast Products LLC, et al.* disclosed Kristine S. Hastings, Ph.D. and Michael A. Williams, Ph.D. as potential experts to see FCO materials.  Defendants did not object to the request as to those individuals.  Exh. J to Sestito Decl.

[20] To the extent Plaintiff believes Rosenfield has specialized knowledge in tanker movements—and, to be clear, he does not—that information is public and already available to him.  Rosenfield stated that he uses "AIS tracking to monitor the vessels" and that "*[a]nyone* can check out all the ships on the ocean at www.marinetraffic.com or vesselfinder.com" and that anyone can see "ship history" for a fee.  Exh. A.

receiving party failed to establish expert had any unique expertise); *Symantec Corp.*, 2012 WL 3582974, at *3 (prohibiting disclosure because, *inter alia*, no showing that consultant had expertise others do not possess); *GPNE Corp. v. Apple Inc.*, No. 5:12-cv-2885-LHK (PSG), 2014 WL 1027948, at *2 (N.D. Cal. Mar. 13, 2014) (denying permission to expert to see highly confidential information because the plaintiff "has not identified any unique qualifications or knowledge that make [the expert] better suited than any other expert to serve.").[21]

### B.   There Is A Risk Of Disclosure Of Defendants' Highly Confidential Information If The Court Grants Rosenfield Access.

On the other side of the scale is the risk of disclosure.  When analyzing the risk of disclosure, the Court must make a "careful and sensitive assessment of the *entire setting*" in which an individual functions.  *FTC v. Advocate Health Care Net.*, 162 F. Supp. 3d 666, 669 (N.D. Ill. 2016) (emphasis added).[22]  Here, Mr. Rosenfield's background and own statements indicate he presents a risk of intentional or inadvertent disclosure of information from documents this Court held should be protected from public disclosure by entering the Protective Order.

Mr. Rosenfield functions as "an energy and environmental advocate" who regularly publishes articles and blog posts about the industry.  (CV at 1.)  He has dedicated his brief career to publishing information (frequently misinformation) about oil and gas companies.  Mr. Rosenfield has said publicly that "my work is to *reveal* [in his opinion] the manipulation [by oil-and-gas companies]" and he advocates for

---

[21] Rosenfield's "status as a consultant, rather than a testifying expert, further undercuts a claim that he is essential to Plaintiff's case." *Symantec Corp.*, 2012 WL 3582974 at *3.

[22] This is in stark contrast to Plaintiff's claim that cases sustaining an objection are "all wholly distinguishable." (Mot. at 4, n.8.)  Plaintiff's reliance on *Wang Labs., Inc. v. CFR Assocs., Inc.*, 125 F.R.D. 10 (D. Mass. 1989) is misplaced because the legal test is *not* whether the individual "had worked for the opposing party" as Plaintiff suggests; it is a balancing between the likelihood of harm to the objecting party and prejudice to the other party if the objection was sustained.  *See* Section III, *supra*.

-10-                Case No. 3:15-cv-01749-L-AGS

"*complete transparency*" in "refinery operations."[23]  Motivated by those goals, he

worked with Consumer Watchdog and Essential Information—organizations

dedicated to publishing unflattering and inaccurate information about Defendants.

(CV at 1-3.)  He continues to receive grant funding from Essential Information,

presumably to help the organization fulfill its goal of providing what it views as

"provocative information to the public."  Mr. Rosenfield's CV also shows that he

provides "analysis [and] assistance" to TRAA, which works to ban refineries from

using hydrofluoric acid—a topic discussed in Defendants' operations-related

documents.  (CV at 3.)  Mr. Rosenfield has even publicly boasted about going

"undercover" to expose the oil and gas industry, suggesting that he is willing to hide

his identity and engage in deception to achieve his goals.[24]  These statements and

affiliations present a "tangible risk that [he] will not be able to separate the highly

confidential information he gleans from reviewing Defendant's [materials] with his

consulting and publication work in that same . . . field."  *Symantec Corp. v. Acronis

Corp.*, No. 11-5310 EMC (JSC), 2012 WL 3582974, at *3 (N.D. Cal. Aug. 20, 2012);

*BASF Corp.*, 321 F. Supp. 2d at 1380 ("It is very difficult for the human mind to

compartmentalize and selectively suppress information once learned, no matter how

well-intentioned the effort may be to do so.").  In light of the "entire setting" of Mr.

Rosenfield's career as an anti-oil and gas advocate, he poses a risk of disclosure.

Rather than grappling with these concrete concerns, Plaintiff suggests that Mr.

Rosenfield's signature on the Confidentiality Agreement automatically resolves them

because a Court may "impose sanctions where a party has violated a discovery

order."[25]  (Mot. at 4.)  But this ignores Defendants' negotiated-for right to object,

---

[23] Exh. A.

[24] *Id*.

[25] None of these cases stand for the proposition that post hoc sanctions can take the
place of sustaining a reasonable objection to *prevent* disclosure.  These cases merely
affirm the uncontroversial point that "a magistrate may impose [an] order . . . to
compensate the opposite party."  *On Command Video Corp. v. LodgeNet Entm't*

1   which they have exercised here.  The Protective Order entered by the Court includes

2   the specific right for either party to object to the disclosure of FCO materials to a

3   proposed individual—a right Plaintiff and Defendants agreed to *in addition to* the

4   Confidentiality Agreement.  The Southern District endorses this additional layer of

5   protection for highly sensitive materials by including a nearly identical provision in its

6   model protective order.[26]  Thus, the mere existence of the Confidentiality Agreement

7   does not automatically resolve this issue as Plaintiff suggests because that would

8   render provisions of the Protective Order a dead letter.  (Mot. at 2-4); *cf.* Cal. Civ.

9   Code § 1641("The whole of a contract is to be taken together, *so as to give effect to*

10  *every part*, if reasonably practicable, each clause helping to interpret the other.")

11  (emphasis added); *see Alcoa*, 2016 U.S. Dist. LEXIS 187019 at *3-5 (denying order to

12  amend protective order for failure to show changed circumstances).  Moreover,

13  Defendants should not be burdened with the task of policing Mr. Rosenfield's

14  activities to ensure he abides by the Protective Order.  *See Litton Indus., Inc. v.*

15  *Chesapeake & Ohio Railway Co*., 129 FRD 528, 531 (E.D. Wisc. 1990) ("Even with

16  stern sanctions of unauthorized disclosure, how does one practically police a

17  protective order?").

18         Plaintiff also argues that violating the Protective Order would jeopardize

19  Rosenfield's career as a litigation consultant (Mot. at 4), but fails to mention that

20  Rosenfield *has no career as a litigation consultant* to jeopardize because this is his

21  first case and nothing suggests he intends to pursue litigation consulting as a career.

22  Indeed, Mr. Rosenfield's typical work is publishing information on the internet, which

23  his former employer, Consumer Watchdog, has claimed is protected by the "journalist

24

25  *Corp.*, 976 F.Supp. 917, 921 n.2 (N.D. Cal. 1997); *see Westinghouse Elec. v. Newman & Holtzinger, P.C.*, 992 F.2d 932, 935 (9th Cir. 1993) (denying argument Fed. R. Civ.

26  P. 37 preempted breach of protective order); *United States v. Nat'l Med. Enters.*, 792

27  F.2d 906, 910 (9th Cir. 1986) (affirming $3,000 sanction).

[26] *See* Model Protective Order, Southern District of California, available at

28  https://www.casd.uscourts.gov/_assets/pdf/forms/Model%20Protective%20Order.pdf.

DEFTS' OPPO TO MTN RE DISCLOSURE OF HIGHLY CONFIDENTIAL INFO

1    privilege," which in turn could conceivably shield his disclosure of FCO materials

2    from scrutiny.  *See Shoen v. Shoen*, 5 F.3d 1289, 1294 (9th Cir. 1993).

3        Finally, there is no dispute that the disclosure of FCO materials could

4    irreparably harm Defendants. This is why a Protective Order was entered in the first

5    place.  Defendants have produced materials, like pricing, strategy, and financial

6    information, that squarely fall within the definition of FCO material under the

7    Protective Order.[27]  The definition of FCO materials was specifically negotiated by

8    the parties to protect Defendants' sensitive documents and prevent competitors from

9    gaining an unfair competitive advantage.  If FCO material were to find its way into the

10   hands of some of the organizations listed on Mr. Rosenfield's CV or to competitors,

11   those organizations easily could use that information to harm Defendants.

### C.    Plaintiff's Gripe About The Number Of Documents Designated as FCO Materials Is Immaterial.

        In a last-ditch effort, Plaintiff argues that the Court should allow Mr. Rosenfield

to view FCO materials simply because Plaintiff believes Defendants designated too

many documents as FCO.  (*See* Mot. at 5.)  The number of documents designated as

FCO material is beside the point.[28]  The Protective Order—*which Plaintiff agreed

to*—spells out a *separate process* for disputes over documents' confidentiality

designations that Plaintiff is required to follow if it has legitimate concerns.  (*See* Dkt.

184 ¶ 15.)[29]

---

[27] Sestito Decl. ¶¶ 7-9.

[28] Exhibit H to Sestito Decl., Letter to Xan Bernay from Cheryl L. O'Connor (June, 5, 2019).

[29] Plaintiff's complaint that "vast swaths of documents" are marked as FCO materials largely stems from an agreement between Plaintiff and Defendants aimed at expediting discovery.  This compromise allowed Defendants to mark all documents previously produced to government agencies as FCO materials so that Defendants would not need to re-review the documents for confidentiality and thus produce them more expeditiously.  Exh. H.  Most Defendants did just that *pursuant to the agreement with Plaintiff* and produced these documents to Plaintiff months ago.  The parties

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## V.  <u>Conclusion</u>

The Court should deny Plaintiff's motion and sustain Defendants' reasonable objection preventing Mr. Rosenfield from accessing Defendants' FCO materials.

---

continue to discuss re-designating certain documents in these productions as appropriate under the provisions of the Protective Order.

DEFTS' OPPO TO MTN RE DISCLOSURE OF HIGHLY CONFIDENTIAL INFO

Dated:  June 12, 2019

**O'MELVENY & MYERS LLP**

By:   _s/ Dawn Sestito_
**O'MELVENY & MYERS LLP**
DAWN SESTITO
M. RANDALL OPPENHEIMER
CHARLES C. LIFLAND

**WILSON TURNER KOSMO LLP**
ROBIN A. WOFFORD
FREDERICK W. KOSMO, JR.
KATHERINE M. MCCRAY
HUBERT KIM

Attorneys for Defendant
EXXONMOBIL REFINING &
SUPPLY CO.

Dated:  June 12, 2019

**BAKER & HOSTETLER, LLP**

By:   _s/ Carl W. Hittinger_
CARL W. HITTINGER

Counsel for Defendant
ALON U.S.A. ENERGY, INC.

Dated:  June 12, 2019

**SULLIVAN & CROMWELL LLP**

By:   _s/ Robert A. Sacks_
ROBERT A. SACKS

Counsel for Defendant
BP WEST COAST PRODUCTS LLC

Dated:  June 12, 2019

**GIBSON DUNN & CRUTCHER LLP**

By:   _s/ Steve E. Sletten_
STEVE E. SLETTEN

-15-                   Case No. 3:15-cv-01749-L-AGS

DEFTS' OPPO TO MTN RE DISCLOSURE OF HIGHLY CONFIDENTIAL INFO

1

2

Counsel for Defendant
CHEVRON U.S.A. INC.

3    Dated:  June 12, 2019          **MORGAN LEWIS & BOCKIUS LLP**

4

5    By:    s/ *Kent M. Roger*
            KENT M. ROGER

6

7    Counsel for Defendant
     EQUILON ENTERPRISES LLC doing

8    business as SHELL OIL PRODUCTS
     US

9

10   Dated:  June 12, 2019          **NORTON ROSE FULBRIGHT**

11

12   By:    s/ *Joshua D. Lichtman*
            JOSHUA D. LICHTMAN

13

14   Counsel for Defendant
     PHILLIPS 66

15

16   Dated:  June 12, 2019          **JONES DAY**

17

18   By:    s/ *David C. Kiernan*
            DAVID C. KIERNAN

19

20   Counsel for Defendant
     TESORO REFINING & MARKETING

21   COMPANY LLC

22

23   Dated:  June 12, 2019          **HAWXHURST HARRIS LLP**

24

25   By:    s/ *Gerald E. Hawxhurst*
            GERALD E. HAWXHURST

26

27   Counsel for Defendant
     VALERO MARKETING AND

28   SUPPLY COMPANY

-16-          Case No. 3:15-cv-01749-L-AGS

1

## **Signature Certification**

2        Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies

3    and Procedures Manual, I hereby certify that the content of this document is

4    acceptable to Carl W. Hittinger, counsel for Alon U.S.A. Energy, Inc.; Robert A.

5    Sacks, counsel for BP West Coast Products LLC; Steven E. Sletten, counsel for

6    Chevron U.S.A. Inc.; Kent M. Roger, counsel for Equilon Enterprises LLC doing

7    business as Shell Oil Products US; Joshua D. Lichtman, counsel for Phillips 66; David

8    Kiernan, counsel for Tesoro Refining & Marketing Company LLC; and Gerald E.

9    Hawxhurst, counsel for Valero Marketing and Supply Company, and that I have

10   obtained each of the foregoing person's authorization to affix his or her electronic

11   signature to this document.

12

13                                    By: s/ *Dawn Sestito*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFTS' OPPO TO MTN RE DISCLOSURE OF HIGHLY CONFIDENTIAL INFO