ROBBINS GELLER RUDMAN & DOWD LLP
PATRICK J. COUGHLIN (111070)
STEVEN W. PEPICH (116086)
DAVID W. MITCHELL (199706)
ALEXANDRA S. BERNAY (211068)
CARMEN A. MEDICI (248417)
LONNIE A. BROWNE (293171)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
patc@rgrdlaw.com
stevep@rgrdlaw.com
davidm@rgrdlaw.com
xanb@rgrdlaw.com
cmedici@rgrdlaw.com
lbrowne@rgrdlaw.com

Attorneys for Plaintiff Persian Gulf Inc.
[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERSIAN GULF INC., Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>BP WEST COAST PRODUCTS LLC, et al.,<br><br>Defendants. | Case No. 3:15-cv-01749-L-AGS<br><br>CLASS ACTION<br><br>DATE: November 4, 2019<br>TIME: 10:30 a.m.<br>CTRM: 5B<br>JUDGE: Hon. M. James Lorenz |
| RICHARD BARTLETT, et al., Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BP WEST COAST PRODUCTS LLC, et al.,<br><br>Defendants. | Lead Case No. 18-cv-01374-L-AGS (consolidated with No. 18-cv-01377-L-AGS)<br><br>CLASS ACTION |

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT ALON USA ENERGY, INC.'S
MOTION FOR SANCTIONS UNDER RULE 11 AND 28 U.S.C. §1927

4827-7156-5994.v1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................. 1

II.  BACKGROUND ............................................................. 2

     A.   Alon's 2012 Shutdown ............................................ 3

          1.   Alon's Suspicious Actions and Representations
               Surrounding the Spring 2012 Price Spike .................. 3

          2.   The McCullough Report and Responses to It ............. 6

          3.   Correcting the April 20, 2012 Allegation ................. 7

     B.   Alon's Participation in California's Gasoline Refinery Market .......... 8

     C.   Alon's Conduct Is Part and Parcel of the Pleaded Theory of
          Liability .................................................. 10

     D.   Other Indicia of Alon's Anticompetitive Conduct ........................... 11

     E.   Alon Waited Nearly Seven Years to Take Issue with Widely
          Disseminated Information Regarding Its Bakersfield Refinery ......... 12

III. PLAINTIFFS COMPLIED WITH RULE 11 AND ALON'S
     MOTION FOR SANCTIONS SHOULD BE DENIED ............................ 13

     A.   The "Extraordinary" Rule 11 Remedy Is to Be Exercised with
          "Extreme Caution" ............................................... 13

     B.   Plaintiffs Have Not Vexatiously Increased the Litigation ................. 18

IV.  THE CLAIMS AGAINST CONSUMER PLAINTIFFS LACK
     MERIT ........................................................ 20

V.   ALON'S ALTERNATIVE REQUEST IS MERITLESS ........................... 23

VI.  CONCLUSION ............................................................. 24

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ass'n of Women with Disabilities Advocating Access v. Mouet*,
    No. 06-CV-02240-JM(LSP), 2007 U.S. Dist. LEXIS 2258
    (S.D. Cal. Jan. 11, 2007) ....................................................................... 17

*Avedisian v. Mercedes-Benz USA, LLC*,
    No. CV 12-00936 DMG, 2014 U.S. Dist. LEXIS 2127
    (C.D. Cal. Jan. 2, 2014) ......................................................................... 15

*B.K.B. v. Maui Police Dep't*,
    276 F.3d 1091 (9th Cir. 2002) ............................................................... 15

*Coffey v. Healthtrust, Inc.*,
    1 F.3d 1101 (10th Cir. 1993) ................................................................. 16

*Cortina v. Wal-Mart Stores, Inc.*,
    No. 13-cv-02054-BAS-DHB, 2016 U.S. Dist. LEXIS 119192
    (S.D. Cal. Sept. 1, 2016)......................................................................... 23

*CreAgri, Inc. v. Pinnaclife, Inc.*,
    No. 11-CV-6635-LHK, 2014 U.S. Dist. LEXIS 77484
    (N.D. Cal. June 3, 2014) ........................................................................ 16

*Dig. Empire Ltd. v. Compal Elecs. Inc. Grp.*,
    No. 14cv1688 DMS (KSC), 2015 U.S. Dist. LEXIS 187449
    (S.D. Cal. Dec. 11, 2015) ....................................................................... 17

*Fink v. Gomez*,
    239 F.3d 989 (9th Cir. 2001) ................................................................. 14

*Garr v. U.S. Healthcare*,
    22 F.3d 1274 (3rd Cir. 1994)............................................................ 17, 18

*Himaka v. Buddhist Churches of Am.*,
    917 F. Supp. 698 (N.D. Cal. 1995).......................................................... 15

*In re Connetics Corp. Sec. Litig.*,
    542 F. Supp. 2d 996 (N.D. Cal. 2008)...................................................... 16

4827-7156-5994.v1

| | Page |
|---|---|

*In re Keegan Mgmt. Co., Sec. Litig.*,
    78 F.3d 431 (9th Cir. 1996) ................................................................. 14, 15, 22

*Johns v. Bayer Corp.*,
    No. 09CV1935 DMS (JMA), 2010 U.S. Dist. LEXIS 62804
    (S.D. Cal. June 24, 2010) ................................................................. 22

*Operating Eng'rs Pension Tr. v. A-C Co.*,
    859 F.2d 1336 (9th Cir. 1988) ................................................................. 13

*Reyes v. Flourshings Plus, Inc.*,
    No. 19cv261 JM (WVG), 2019 U.S. Dist. LEXIS 128049
    (S.D. Cal. July 31, 2019) ................................................................. 18

*SellPoolSuppliesOnline.com LLC v. Ugly Pools Ariz. Inc.*,
    No. CV-15-01856-PHX-BSB, 2019 U.S. Dist. LEXIS 38507
    (D. Ariz. Mar. 11, 2019) ................................................................. 15

*Song Fi, Inc. v. Google, Inc.*,
    No. C 14-5080, 2016 U.S. Dist. LEXIS 104404
    (N.D. Cal. Aug. 8, 2016) ................................................................. 15, 16

*Thomas v. Girardi*,
    611 F.3d 1027 (9th Cir. 2010) ................................................................. 17

*Tom Growney Equip. v. Shelley Irrigation Dev.*,
    834 F.2d 833 (9th Cir. 1987) ................................................................. 15

*Townsend v. Holman Consulting Corp.*,
    929 F.2d 1358 (9th Cir. 1990) ................................................................. 14, 22

*United Nat'l Ins. Co. v. R&D Latex Corp.*,
    242 F.3d 1102 (9th Cir. 2001) ................................................................. 15

*W. Coast Theater Corp. v. Portland*,
    897 F.2d 1519 (9th Cir. 1990) ................................................................. 18

*Zaldivar v. City of Los Angeles*,
    780 F.2d 823 (9th Cir. 1986) ................................................................. 14

1

2                                                                          **Page**

3

4  **STATUTES, RULES AND REGULATIONS**

5  28 U.S.C.
       §1927 ................................................................................................*passim*

6

7  Federal Rules of Civil Procedure
       Rule 11................................................................................................*passim*
       Rule 11(b)(3) ................................................................................. 14
       Rule 11(c) .......................................................................................... 19
       Rule 11(c)(4)...................................................................................... 19
       Rule 12(b)(6) .................................................................................... 22

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4827-7156-5994.v1

# I.    INTRODUCTION

As this Court has recognized, "Plaintiff's theory of the case is that Defendants conspired to create a false impression of reduced supply [of gasoline and diesel fuel], when in fact they possessed the inventory and production capacity to supply the California market."  ECF No. 86 ("MTD Order") at 7. [1]  Ignoring what this case is about, Defendant Alon USA Energy, Inc. ("Alon") has turned a scrivener's error into a motion for Rule 11 sanctions.  As set forth below, the case against Alon is even stronger upon correction and clarification of this insignificant error.  A minor mistake as to the exact timing of Alon's refinery shutdown is understandable, but an innocent explanation is harder to come by for Alon's misleading statements about its own refinery shutdowns.  For example, Alon's motion represents that "Alon decided to take all of its California refineries (not just Bakersfield) off line in December 2011 . . . *not in close temporal proximity to any other alleged refinery shutdown by any other Defendant*."  ECF No. 282-8 ("Mtn." or "Motion") at 8 (emphasis in original).  Emissions data expose the falsity of these (and other) representations: Alon's Bakersfield refinery was on line throughout January 2012 and until just before defendant BP West Coast Products LLC's ("BP") February 17, 2012 shutdown.

The only other basis for Alon's Motion – that Plaintiffs improperly characterized it as a participant in the California gasoline refinery market – is also false.  Alon's own Answers to Plaintiff Persian Gulf Inc. ("Plaintiff") and Consumer Plaintiffs' Complaints (ECF No. 76, "Complaint"; *Bartlett* ECF No. 44,[2] "Consumer Plaintiffs' Complaint") acknowledged that "because Plaintiff fails to define the term 'California gasoline refinery market,' *Alon lacks information sufficient to form a belief as to the truth of the allegations*, which are therefore denied."  ECF No. 115

---

[1]  Here, and throughout, citations are omitted and emphasis is added, unless otherwise noted.

[2]  References to "*Bartlett* ECF No." are to the docket entries *Bartlett v. BP West Coast Prods. LLC*, No. 3:18-cv-01374-L-AGS (S.D. Cal.).  "Consumer Plaintiffs" refers to plaintiffs Joshua Ebright, Paul Lee, and David Rinaldi in the *Bartlett* action.

3:15-cv-01749-L-AGS

1  ("Answer"), ¶137; *Bartlett* ECF No. 117, ¶30).  Obviously, this means that, depending

2  how one defines the "California gasoline refinery market," Alon may be a participant.

3  It is irresponsible for Alon to now claim that this same general allegation is "false"

4  and "untrue" and a basis for sanctions.  Mtn. at 3.

5        As set forth below, there is a stronger argument to sanction Alon for its

6  meritless Motion than for Plaintiffs' insignificant mistake and general

7  characterization.  Rather than resorting to tit-for-tat tactics, however, Plaintiffs simply

8  request that the Court deny Alon's Motion so we can focus on the merits.[3]

9  **II.    BACKGROUND**

10       For years, Californians have witnessed spikes in gasoline and diesel fuel prices,

11  seemingly contrary to normal market forces of supply and demand.   As the

12  Complaints detail, multiple and various anticompetitive acts on the part of the major

13  gas refineries in the state are the cause of these anomalous and costly results.  The

14  case centers around specific time periods when the crude oil markets experienced a

15  suspicious combination of constant demand, decreased (real or purported) production,

16  increased prices, and increased inventories.   "In a normally operating market,

17  competitors use their existing inventory and production capacity to increase their

18  individual market shares and/or to profit from any price increases caused by decreased

19  supply from other competitors."  MTD Order at 7.  This did not happen here.  Instead,

20  "Plaintiff's theory of the case is that Defendants conspired to create a false impression

21  of reduced supply [of gasoline and diesel fuel], when in fact they possessed the

22  inventory and production capacity to supply the California market."  *Id.* at 7.  As

23  alleged, Defendants' conspiracy involved:

24        several instances of tightly synchronized multiple refinery shutdowns,
          simultaneous exports during a short period of time, an orchestrated run

25

_____

26  [3]   If the Court is inclined to hold oral argument, counsel respectfully request it not be
     held the week of November 4-8, 2019, as necessary counsel for this issue has two
27  hearings in other matters in federal courts in New York, including a final approval
     hearing in *In re Payment Card Interchange Fee and Merchant Discount Antitrust
28  Litigation*, No. 1:05-MD-1720 (MKB)(JO) (E.D.N.Y.).

4827-7156-5994.v1

on the market, joint public exaggerations regarding supply disruptions, and other coordinated actions such as unnecessary refinery shutdowns, failure to repair a damaged refinery, idling a Jones Act tanker, and coordinated exports all occurring simultaneously during a time of rising prices.

*Id.* at 15. Another of the conspiracy's hallmarks was "Defendants' uniform practice of keeping to themselves the data concerning their industry and operations, including refinery shutdowns and planned output, while spreading misleading information to the public" because "[l]ack of reliable information renders a concentrated market more susceptible to manipulation." *Id.* at 6.

A.   **Alon's 2012 Shutdown**

1.   **Alon's Suspicious Actions and Representations Surrounding the Spring 2012 Price Spike**

The first period of pronounced price manipulation at issue here occurred in the spring of 2012. A fire at a West Coast BP refinery on February 17, 2012, was closely followed by several other refineries either voluntarily remaining closed or engaging in voluntary maintenance shutdowns. This behavior was highly suspect because, as the Court has observed, in a competitive market, maintenance would have been postponed to take advantage of rising West Coast prices. MTD Order at 11.

Leading up to the spring 2012 price spike, Alon participated in "Defendants' uniform practice of keeping to themselves the data concerning their industry and operations, including refinery shutdowns and planned output, while spreading misleading information to the public." MTD Order at 6. For example, on March 8, 2012, Alon issued a press release that represented that: "In light of the weak margin environment, we shutdown the California refineries in December to make minor revisions to hydrocracker . . . ." DEx. 21 at 2883.[4] Alon's Motion repeats this representation about the December 2011 shutdown, but provides a different justification, contending that the shutdown was "[d]ue to a seasonal downturn in its

---

[4] "DEx." references are to the exhibits attached to the Declaration of Carl W. Hittinger filed in support of Alon's Motion. ECF No. 282-1 to ECF No. 282-7.

primary asphalt market." Mtn. at 8. Leaving aside the contradicting explanations, both of these purported justifications are suspect because the representation of a December 2011 shutdown was, in fact, false. Emissions data from the San Joaquin Valley Air Pollution Control District show that Alon's Bakersfield, California refinery was on line until at least February 15, 2012. McCullough Decl., ¶¶12-13.[5]

In fact, Alon did not shut down its Bakersfield refinery until almost exactly when BP shut down its West Coast refinery due to a fire. So at a time when West Coast gasoline supplies were going to be constrained due to the BP fire, Alon chose to exacerbate the constraints by shutting down its Bakersfield refinery. This is precisely the kind of "'extreme action'" that the Court reasoned would have been against Alon's self-interest "'in the absence of advance agreement'" with others to also squeeze the market. MTD Order at 17. Alon's actions were so extreme, one of the analysts covering the company expressed his befuddlement during Alon's March 9, 2012 earnings call:

> I'm struggling a bit to understand why you're not operating the California system here in the first quarter, given what seems to be a decent environment that's developed year-to-date. So can you give us some help on what minimum parameters for crack spreads or crude spreads on the California feedstocks or asphalt margins are required to make that system economically viable?

DEx. 42 at 3329.

Alon's former Chief Executive Officer ("CEO") and President, Paul Eisman, responded to the question with more subterfuge:

> Yes. Gee, I don't know if I have that number, but I will tell you that you're right. I mean, margins have improved significantly on the West Coast, both as we got through this collapsed issue of these differentials but then also with the shutdowns, both for turnarounds and fires on the West Coast. We've seen significant improvements during the first quarter. And if we had known all that in advance, then we'd be running today. But I think the issue is that this happened recently – fairly recently, and you have to gear up to start buying crude. And we've got a 30- to 45-day lead time to purchase crude and plan to get the facilities restarted.

---

[5] "McCullough Decl." references are to the Declaration of Robert F. McCullough, filed concurrently herewith.

4827-7156-5994.v1

1  *Id.* at 3329-30.  As can be seen, Eisman concealed the fact that according to the

2  emissions data, Alon's Bakersfield refinery was operational at least during the first

3  half of the first quarter of 2012.  This fact reveals the deceptiveness of his "lead time"

4  excuse.  Moreover, even if Alon needed 30-45 days lead time after the February 17,

5  2012 BP fire, Bakersfield could have been up and running by early April at the latest.

6  Yet, Alon prolonged the Bakersfield shut down weeks longer, and other refineries

7  followed suit.  From April 27, 2012 through August 6, 2012, other Defendants shut

8  down one or more of their California refineries for at least six days.  *See* Complaint,

9  ¶37.

10  Moreover, Alon continued "spreading misleading information to the public"

11  regarding its Bakersfield refining activities.  For example, on August 6, 2012, Alon

12  issued a press release that quoted Eisman representing that: "In California, we

13  restarted operations at the Paramount refinery in April and **the Bakersfield**

14  **hydrocracker resumed operations in June**."  DEx. 23 at 2900.  Alon's Motion

15  perpetuates the notion that its Bakersfield refinery activities did not resume until June

16  2012: "[A]lon brought its Bakersfield refinery back on line by June 2012."  Mtn. 8 at

17  8; *see also* ECF No. 219-1 at 6-7 ("Alon took *all* its California refining operations

18  offline, including its Bakersfield hydrocracker, in December 2011 and did not restart

19  its Bakersfield hydrocracker until June 2012 for economic reasons unrelated to the

20  gasoline market.") (emphasis in original).  Irrespective of Alon's hydrocracker itself,

21  emissions data show that Alon's Bakersfield refinery was on line until February 15,

22  2012, and back on line no later than May 10, 2012.  McCullough Decl., ¶¶12-13.

23  Again, as the Court has recognized, "Plaintiff's theory of the case is that

24  Defendants conspired to create a false impression of reduced supply, when in fact they

25  possessed the inventory and production capacity to supply the California market."

26  MTD Order at 7.  In addition, "[l]ack of reliable information renders a concentrated

27  market more susceptible to manipulation."  *Id.* at 6.  It is apparent that Alon

28  committed the primary overt acts that fueled this conspiracy in the spring of 2012:  it

4827-7156-5994.v1

voluntarily shut down refining activities when it should have been expanding them, it prolonged the shut down when it should have restarted as quickly as possible, it repeatedly spread misleading information to the public about its activities – and it did all this during the same period when every other Defendant was also shutting down their California refineries amid rising prices.

## 2.    The McCullough Report and Responses to It

Industry expert Robert McCullough documented these suspicious refinery closures in a June 5, 2012 report (the "McCullough Report").  McCullough Decl., Ex. 2.  The McCullough Report has been publicly available on the McCullough Research website since its initial release on June 5, 2012. McCullough Decl., ¶3.  On June 7, 2012, the McClatchy news service published an article that referred to and quoted from the McCullough Report, including a specific reference to the report's table of production reductions that listed April 20, 2012 as the date of Alon's Bakersfield shutdown.  McCullough Decl., Ex. 3.  As can be seen, the McClatchy article did not note any errors, or even suspected errors, in the McCullough Report.

Also on June 7, 2012, U.S. Senator Maria Cantwell of Washington wrote to the Federal Trade Commission ("FTC") urging the agency "to investigate whether or not recent and inexplicable gas price spikes in Washington state are the result of deliberate efforts by West Coast refiners to keep gasoline inventories artificially low."  McCullough Decl., Ex. 6 at 3.  Senator Cantwell's letter expressly referenced and relied on the McCullough Report:

> As part of your investigation, I would appreciate your review of a new report by McCullough Research that questions whether today's historically low gasoline inventories were really just the inevitable result of the BP refinery fire and unfortunately timed refinery maintenance shutdowns.  The report also suggests that the current divergence from typical West Coast pricing trends may have generated significant windfall profits for West Coast suppliers. . . .

*Id.*  Senator Cantwell's referral letter did not note any errors, or even suspected errors, in the McCullough Report.

For years, leading up to Plaintiff's Complaint, it appears that Alon did not raise any errors, or even suspected errors, in the McCullough Report's reported April 20, 2012 shutdown date for the Bakersfield refinery.  Plaintiff Persian Gulf retained McCullough as an expert and, as part of his engagement, he reviewed drafts of Plaintiff's Complaint prior to its filing on September 22, 2016.  McCullough Decl., ¶14.  At the time of McCullough's review, he had no reason to doubt the accuracy of his Report's table, which listed Alon's Bakersfield refinery as having been shut down on April 20, 2012 and still shut down as of June 5, 2012.  *Id.*  If he had had any doubts as to the accuracy of this information, he would have shared them with counsel, but he had none, and therefore had nothing to share or correct regarding this information, which was alleged in the draft and filed Complaint.  *Id.*

Through multiple briefs on motions to dismiss, Alon did not raise any errors, or even any suspected errors, in the McCullough Report.  Nor did Alon ask the Court to take judicial notice of any documents to refute the McCullough Report's April 20, 2012 shutdown date entry, which was included in Plaintiff's Complaint.  McCullough himself was unaware of even the possibility of a mistake until April 2019.  Even Alon's Answer confirmed that its Bakersfield refinery was shut down as of April 20, 2012, which is consistent with the McCullough Report.  Answer, ¶37.

### 3.    Correcting the April 20, 2012 Allegation

Based on emissions data, the following row of the table set forth in ¶37 of the Complaint should have been changed from this:

| Date | Company | Refinery | Amount of Statewide Capacity | Type of Outage | Claimed Reason | Industry Sources |
|------|---------|----------|------------------------------|----------------|----------------|------------------|
| 4/20/12 | Alon | Bakersfield | 3.2% | Planned | Hydrocraker restarted | No Information |

To this:

| Date | Company | Refinery | Amount of Statewide Capacity | Type of Outage | Claimed Reason | Industry Sources |
|------|---------|----------|------------------------------|----------------|----------------|------------------|
| 2/16/12-5/9/12 | Alon | Bakersfield | 3.2% | Planned | "weak margin environment"; | San Joaquin Valley Air |

| Date | Company | Refinery | Amount of Statewide Capacity | Type of Outage | Claimed Reason | Industry Sources |
|------|---------|----------|------------------------------|----------------|----------------|------------------|
|      |         |          |                              |                | "minor revisions to hydrocracker" | Pollution Control District emissions data; Alon earnings release |

As can be seen, this correction would not in any way undermine, let alone conflict with, the alleged overarching conspiracy or Alon's role in it.  If anything, this correction and the additional facts set forth above make for an even more compelling allegation of Alon's participation in the conspiracy.

### B.   Alon's Participation in California's Gasoline Refinery Market

Alon's second argument is that the Court should sanction Plaintiff Persian Gulf for characterizing it as a participant in the California gasoline refinery market when Plaintiff filed its Complaint on September 22, 2016.[6]  Specifically, the Complaint alleged: "Each of the defendants is a participant in the California gasoline refinery market."  Complaint, ¶137.  In its Answer to this allegation, Alon stated:  "This paragraph alleges only conclusions of law to which no response is required.  To the extent a response is required, because the Plaintiff fails to define the term 'California gasoline refinery market,' *Alon lacks information sufficient to form a belief as to the truth of the allegations*, which are therefore denied."  Answer, ¶137.  This very same allegation about which Alon acknowledged was too general to provide it with "information sufficient to form a belief as to [its] truth" is now so "not true," "false," and "untrue" that Alon demands that the Court sanction Plaintiff?

The reality is that in its 2016 10-K (year ending December 31, 2015), Alon freely acknowledged that its "California refineries have the capability to produce

---

[6]   Alon makes the same argument as to the Consumer Plaintiffs.  *See* §IV. (addressing those arguments unique to the Consumer Plaintiffs).

4827-7156-5994.v1

gasoline, distillates, vacuum gas oil and asphalt." Ex. 1 at 4.[7]  Thus, Alon concedes that it was capable of making gasoline in California or refraining from doing so. Either way, it was arguably participating in the California gasoline refinery market by either increasing or decreasing supply – after all, a major focus of this case is that Defendants manipulated gasoline prices in California by cooperatively undersupplying gasoline to the California market.   Moreover, also in its 2016 10-K, Alon acknowledged that its "California refineries utilize product pipelines, truck racks and terminals to distribute refined products." *Id.* at 5. Alon further acknowledged that its "California refineries have a feedstock pipeline and terminal system that is capable of supplying untreated vacuum gas oil and other unfinished products to other Los Angeles Basin refineries and third-party terminals." *Id.*

Crucially, Alon's operations in California continued long after it stopped producing finished-product here.  The company continued to blend and trade diesel and gasoline for sale in California.  *See* Ex. B, §§I., II. The company's physical assets were used to store gasoline and diesel, and as a location for selling fuel to third parties.  *See id.*  Many of these operations were done in conjunction with the other Defendants through long-term agreements.  *See* Ex. B, §I.  Documents from the Defendants, and industry trade publications, show that Alon's operations were closely monitored, because any refinery represents a critical piece of California's production. *See* Ex. B, §§III., IV.  State regulators at the California Energy Commission continued to reference the Alon refineries as being operational until at least 2016, mirroring the statements from the company.  *See* Ex. B, §V.  Central to Plaintiffs' claims, Alon's continued sales and operations allowed it to benefit from the higher wholesale and retail gasoline prices that resulted from the conspiracy. "Each of the defendants is a participant in the California gasoline refinery market" (Complaint, ¶137) is certainly a

---

[7]   References to "Ex." are to the exhibits attached to the Declaration of Alexandra S. Bernay in support of Plaintiffs' Opposition to Alon's Motion ("Bernay Decl."), filed concurrently herewith.

broad enough allegation to include such activities.  After all, Plaintiff did ***not*** allege that Alon is refining crude oil in California.  Instead, Plaintiff's allegation was merely that Alon was a participant in the California gasoline refinery market – an allegation that Alon previously admitted was so general as to prevent Alon from affirmatively refuting it.

Alon was properly named as a Defendant and the Court's order denying the motion to dismiss was well-supported.[8]

### C.   Alon's Conduct Is Part and Parcel of the Pleaded Theory of Liability

The idling of Alon's California refineries represents a critical example of the type of conduct alleged in the Complaint.  Like other outages, Alon repeatedly provided misleading information and statements to the public about whether the refinery would come back online.  Plaintiff also provides an exhibit (Ex. A) detailing information related to the Bakersfield plant.  The chart in Exhibit A is replete with information regarding statements made about the plant, its opening and closings, as well as materials showing that during the relevant time period Alon had both the ability and stated intention to reopen the plant.  The eventual decision to permanently idle the facility does not negate the nearly four years of public representations that the refinery would be restarted in the near future.  This prolonged period of uncertainty about the refinery functioned in the same way other Defendants' misleading outages did: creating price volatility and keeping out third-party imports to resupply the state during gasoline shortages.

Emissions data from the San Joaquin Valley Air Pollution Control District also undercuts Alon's arguments about remaining closed.  According to that data, on dates that Alon claims the Bakersfield refinery was closed, the continuous emissions

---

[8]   Under the Court's Standing Order, Plaintiff Persian Gulf and the Consumer Plaintiffs are responding together to Alon's Motion, although Alon makes some different arguments as to the Consumer Plaintiffs.  Response by the Consumer Plaintiffs to specific arguments directed at them are set forth in §IV.

4827-7156-5994.v1

1   monitoring data reported to the government show it was producing emissions, a sign

2   that the refinery was operational, at least in some capacity, and for some period of

3   time.  McCullough Decl., ¶¶12-13.

4



15          Just like the other Defendants, Alon had the ability to blend and refine gasoline

16  in California.  Indeed, Alon's actions warrant increased scrutiny compared to the other

17  Defendants, as the company has limited its gasoline production far longer than any

18  other refiner.  This decision represents one of the largest cumulative actions to reduce

19  CARBOB production in the state of California during the period in question.[9]  And, as

20  discussed above, Alon continued to profit in the California gasoline market despite not

21  operating a fully operational plant.

        **D.    Other Indicia of Alon's Anticompetitive Conduct**

22          The Court also found participation in trade associations to be a plus factor

23  supporting the denial of the motion to dismiss.  *See* MTD Order at 19.  Alon tries to

24  exploit the fact that it was not a member of Western States Petroleum Association

25

26  _____

    [9]    As of 2016, the government had Alon as being capable making of about 3.5% of
27  total statewide capacity of CARB.  *See* Ex. 2.  Of the refineries on that list that can
    make CARB gasoline, the total capacity is 1,906,371 barrels per day.  Alon's refinery
28  is listed at 66,000 barrels per day. 66,000/1,906,371 = 3.46%.

4827-7156-5994.v1

1   ("WSPA"), but ignores allegations that it was a member of other, critical trade groups
2   where Plaintiff alleges coordinated conduct could be discussed.  *See* MTD Order at
3   6 n.1, 19 (trade association allegations are a plus factor).  Alon was a member of
4   American Fuel & Petrochemical Manufacturers ("AFPM") as well as Society of
5   Independent Gasoline Markets of America ("SIGMA").  Both entities held meetings
6   and conferences during the proposed Class Period and multiple other Defendants are
7   also members of the same trade groups.  Complaint, ¶¶98, 99, 103, 104.  Alon admits
8   "that it is a member of some trade associations."  *See* Answer, ¶98.  Alon further
9   admits that it was a member of AFPM and SIGMA and Petroleum Markets
10  Association of American ("PMAA") during 2012 and 2015.  *See id.*, ¶¶99, 103, 104.

11      **E.   Alon Waited Nearly Seven Years to Take Issue with Widely**
12          **Disseminated Information Regarding Its Bakersfield**
             **Refinery**

13          The primary basis upon which Alon's Motion rests is a claim that information
14  regarding its Bakersfield refinery, which appeared in the McCullough Report in June
15  2012, as well as in various press reports and in a statement by Senator Maria Cantwell
16  (D-Wa), is false and that Plaintiff's inclusion of this information in the operative
17  Complaint necessitates sanctions.  Yet, for ***nearly seven years*** Alon ignored the
18  statement regarding its Bakersfield plant in the McCullough Report or, more likely, it
19  changed litigation tactics and decided that rather than participating in the discovery
20  process, it would try to bully Plaintiff into ending its case against it.  Either way,
21  Alon's efforts are without merit and should be rejected.

22          In its motion to dismiss Persian Gulf's Complaint, Alon did not raise the issue
23  of the date on which it closed its Bakersfield refinery.  It never sought judicial notice
24  of any of the documents it now includes to support its sanctions Motion.  After the
25  Court denied its motion to dismiss, Alon did not immediately move for summary
26  judgment.  It submitted no declarations in 2016, 2017, or 2018, and even now, Alon
27  has yet to submit a declaration definitively stating when it purportedly did or did not
28  engage in refining and gasoline-trading activities in California from 2012 through

2016.[10]  Presumably, Alon and its lawyers did not just ignore an obvious way out of this case.  Rather, Alon's years-long delay in raising its arguments confirms that there are material disputes regarding the Bakersfield refinery and Alon's conduct.[11]

In sum, to anchor its misplaced sanctions Motion, Alon seeks to have the Court accept a self-serving narrative that ignores Alon's actual, active participation in the California gasoline refinery market.  Any fair reading of the Complaint, particularly in conjunction with the discovery record, shows Alon was a participant in the California gasoline refinery market throughout the time period covered by the Complaint.  The Motion should be denied.

## III.  PLAINTIFFS COMPLIED WITH RULE 11 AND ALON'S MOTION FOR SANCTIONS SHOULD BE DENIED

### A.  The "Extraordinary" Rule 11 Remedy Is to Be Exercised with "Extreme Caution"

"Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988).  Cases warranting imposition of sanctions for frivolous actions are "rare and exceptional." *Id.* at 1344.

Generally, sanctions are appropriately imposed on an attorney for a filing "if either a) the paper is filed for an improper purpose, or b) the paper is 'frivolous.'"

---

[10]  Alon owns three refineries in California and often refers to the three facilities as a "one integrated refinery." *See* Ex. 3 (Alon's 2015 10-K (for the year ending December 31, 2014)) at 5.  The plants are in Paramount, Long Beach and Bakersfield and are connected via pipelines. *Id.*  Thus, some of the information regarding Alon's "refinery" operations may include more than a single plant.

[11]  On Friday afternoon, October 18, 2019, Alon finally produced additional documents.  Those documents, coming months late, will not be able to be fully reviewed in the short time remaining between receipt and the Monday, October 21, 2019 deadline for this opposition.  Prior to Friday, October 18, 2019, Alon had produced only 346 documents throughout this entire litigation, and over a quarter of them were publicly available documents.  Then, on the Friday before a Monday filing deadline for this opposition, Alon dumped 8,488 documents on Plaintiff.  This kind of gamesmanship is never appropriate, but it is particularly hypocritical at a time when Alon is accusing Plaintiff of acting in bad faith.  Obviously, Plaintiff has not had the opportunity to fully review this belated production to determine if any of the documents would shed more light on Alon's shadowy operations.

1  *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (quoting

2  *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 832 (9th Cir. 1986)).  However, as the

3  Ninth Circuit has recognized, a special set of considerations pertain to Rule 11

4  motions directed at complaints.  Unlike other filings, complaints may be challenged

5  only for "frivolousness," which the Ninth Circuit uses as a "shorthand . . . to denote a

6  filing that is both baseless and made without a reasonable and competent inquiry."

7  *Townsend*, 929 F.2d at 1362.[12]  According to the Ninth Circuit, complaints, serve as

8  the legal "vehicle through which [the plaintiff] enforces his substantive legal rights,"

9  and "[e]nforcement of those rights benefits not only individual plaintiffs but may

10  benefit the public."  *Id.*  "[I]t would be counterproductive to use Rule 11 to penalize

11  the assertion of non-frivolous substantive claims, even when the motives for asserting

12  those claims are not entirely pure."  *Id.*  Further, Rule 11(b)(3)'s standard provides

13  simply that to the best of the certifying person's "knowledge, information, and belief,

14  formed after an inquiry reasonable under the circumstances" "the factual contentions

15  [therein] have evidentiary support or, if specifically so identified, will likely have

16  evidentiary support after a reasonable opportunity for further investigation or

17  discovery." Fed. R. Civ. P. 11(b)(3).  As Alon acknowledges, this standard is to be

18  applied objectively.  *See* Mtn. at 19 (citing *Townsend*, 929 F.2d at 1362).

19  　　　Alon also brings its motion under 28 U.S.C. §1927, which states:

20  　　　　　Any attorney or other person admitted to conduct cases in any
21  　　court of the United States or any Territory thereof who so multiplies the
      proceedings in any case unreasonably and vexatiously may be required
      by the court to satisfy personally the excess costs, expenses, and
22  　　attorneys' fees reasonably incurred because of such conduct.

23  28 U.S.C. §1927.  The imposition of sanctions under §1927 requires a finding of

24  recklessness, and "'must be supported by a finding of subjective bad faith.'"  *In re*

25  *Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996); *see also Fink v.*

26  

_____

27  [12]  Unlike the "'improper purpose'" inquiry, "'frivolousness'" is not concerned with
      the motivations of the signing attorney, and "subjective evidence of the signer's
28  purpose is to be disregarded" so long as the contested papers are not baseless.  *Id.*

*Gomez*, 239 F.3d 989, 993 (9th Cir. 2001); *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002). And notably, "[b]ecause [§1927] authorizes sanctions only for the 'multipli[cation of] proceedings,' it applies only to unnecessary filings and tactics once a lawsuit has begun." *Keegan*, 78 F.3d at 435. The Ninth Circuit has, on many occasions, "expressly held that §1927 cannot be applied to an initial pleading." *Id.* Alon, as the moving party "bears the burden to demonstrate why sanctions are justified" as to both Rule 11 and §1927. *Tom Growney Equip. v. Shelley Irrigation Dev.*, 834 F.2d 833, 837 (9th Cir. 1987) ("A party seeking the imposition of sanctions pursuant to §1927 has the burden of demonstrating "bad faith," which means either frivolity combined with recklessness or intentional harassment."); *accord SellPoolSuppliesOnline.com LLC v. Ugly Pools Ariz. Inc.*, No. CV-15-01856-PHX-BSB, 2019 U.S. Dist. LEXIS 38507, at *13-*16 (D. Ariz. Mar. 11, 2019). Alon has failed to carry its heavy burden.

A claim is "'well grounded in fact' if an independent examination reveals 'some credible evidence' in support of a party's statements." *Himaka v. Buddhist Churches of Am.*, 917 F. Supp. 698, 710 (N.D. Cal. 1995). A claim that has some plausible basis, even a weak one, is sufficient to avoid sanctions under Rule 11. *See United Nat'l Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1117-18 (9th Cir. 2001); *Song Fi, Inc. v. Google, Inc.*, No. C 14-5080 (CWx), 2016 U.S. Dist. LEXIS 104404, at *3-*4 (N.D. Cal. Aug. 8, 2016). Set forth herein, the two asserted bases for Alon's sanctions Motion are unsupported because the facts and available evidence reflect the claims asserted against Alon have a reasonable and well-grounded basis.

Critically, counsel for Plaintiff Persian Gulf properly consulted with its expert in drafting the operative Complaint. *See* McCullough Decl., ¶14. It is objectively reasonable for counsel to rely upon experts when filing suit. *See Avedisian v. Mercedes-Benz USA, LLC*, No. CV 12-00936 DMG (CWx), 2014 U.S. Dist. LEXIS 2127, at *10-*11 (C.D. Cal. Jan. 2, 2014) (in suit alleging vehicle defects in Mercedes, counsel's pre-filing investigation included "***consult[ations] with two***

*experts* to ascertain the scope of Mercedes vehicles affected by peeling chrome"; court holds "counsel's pre-filing investigation was objectively reasonable under the circumstances, and thus the FAC was not frivolous at the time of filing"); *see also CreAgri, Inc. v. Pinnaclife, Inc*., No. 11-CV-6635-LHK, 2014 U.S. Dist. LEXIS 77484, at \*38 (N.D. Cal. June 3, 2014) (in rejecting Rule 11 movant's charge that the plaintiff's patent-infringement claim was objectively baseless, court lists numerous factors including that "*[plaintiff] relied on its expert*, who in turn relied on documentary evidence from [defendant's] supplier of olive extract, to establish [alleged fact]"). And *see Coffey v. Healthtrust, Inc*., 1 F.3d 1101, 1104 (10th Cir. 1993) ("As long as reliance is reasonable under the circumstances, ***the court must allow parties and their attorneys to rely on their experts*** without fear of punishment for any errors in judgment made by the expert."); *see also id*. at 1104-05 (even though attorney was aware that study's authors disagreed with his expert's conclusions from same study, that still didn't warrant sanctions: "It is the obligation of counsel opposing the value of evidence, not the proponent, to expose weakness in evidence upon which an attorney relies for the filing of pleadings, motions and other papers.").

Alon's authorities are distinguishable.  In *Song Fi*, minimal sanctions were granted in part where the allegations were objectively baseless and circumstantial evidence did not provide an additional basis for some of the plaintiffs' allegations.  *Id*. at 5-6.  Here, by contrast, Plaintiff reasonably relied on materials from an expert, government reports, and the media.  A review of the available facts fully supports Plaintiff's claims.[13]  Particularly puzzling is why Alon cites and relies upon a 25-year-old Third Circuit securities fraud case, merely because Alon's lead counsel was

---

[13]  *In re Connetics Corp. Sec. Litig*., 542 F. Supp. 2d 996 (N.D. Cal. 2008), is also inapposite.  In that case, where the court struck some of plaintiffs' allegations under Rule 11, plaintiffs relied ***solely*** on another complaint as the basis for the allegations. Here, by contrast, Plaintiff relied on work done by its expert, in consultation with that expert as well as media reports for the specific allegation that Alon now argues is false. *Connetics*, moreover, recognizes that "an attorney may rely in part on other sources, such as a newspaper article as part of his or her investigation into the facts." *Id*. at 1005.

involved in that action. *See Garr v. U.S. Healthcare*, 22 F.3d 1274 (3rd Cir. 1994) (sanctions upheld as to two attorneys who did no independent investigation regarding any portion of a securities fraud complaint); Mtn. at 21. Alon even admits, as it must, that the Third Circuit has adopted a different standard than the Ninth Circuit. Mtn. at 21.[14] Thus, other than being a case about sanctions, there is little relevant in that case that could be applied here, despite Alon's contortions. In fact, the court in *Garr* specifically held that "[a] significant aspect of the Garr complaint was that U.S. Healthcare had been filing false and misleading quarterly reports with the Securities and Exchange Commission to the injury of Garr and the class. Yet inasmuch as the *Wall Street Journal* article never suggested that U.S. Healthcare had been filing false reports, Levin and Sklar could not reasonably have relied on the article for that information." *Garr*, 22 F.3d at 1281. Here, Plaintiff relied on a specific fact that was expressly included in the McCullough Report – after a U.S. senator had urged the FTC to open an investigation based on the same report, after years of Alon not disputing the fact or any other aspect of the report, and after retaining the expert who authored the report to, *inter alia*, review drafts of Plaintiff's Complaint. This case bares no

---

[14]  Alon's authorities under §1927 are similarly inapt. *Thomas v. Girardi*, 611 F.3d 1027 (9th Cir. 2010), upheld a grant of sanctions where detailed and overwhelming evidence showed that the attorneys knew that a document offered as evidence regarding a foreign judgment was incomplete and inaccurate. *Id.* at 1031. And the attorneys continued to make statements to the court regarding the document that were determined to be untrue following a lengthy evidentiary hearing. *Dig. Empire Ltd. v. Compal Elecs. Inc. Grp.*, No. 14cv1688 DMS (KSC), 2015 U.S. Dist. LEXIS 187449 (S.D. Cal. Dec. 11, 2015), is also unhelpful. In that infringement action the very products plaintiff claimed were at issue were not made by the defendants. And the court allowed §1927 sanctions where there was a long-running effort to thwart defendants, including by filing retaliatory motions to compel, refusing to participate in filing a joint discovery motion, and filing a groundless motion for leave to amend. *Id.* at *21. In *Ass'n of Women with Disabilities Advocating Access v. Mouet,* No. 06-CV-02240-JM(LSP), 2007 U.S. Dist. LEXIS 2258 (S.D. Cal. Jan. 11, 2007), the Court granted summary judgment and found allegations regarding the accessibility of a store were "materially false and misleading" because the store had actually been closed for two years. *Id.* at *14. Plaintiffs refused to dismiss and this necessitated the filing of a summary judgment motion. *Id.* Here, no such false and misleading statements have been made. Alon's vituperative argument that conduct here rises to the level in its cited authorities should be rejected as gross hyperbole.

1  resemblance to *Garr*, which Alon's counsel should know, even if it is a quarter-

2  century old and from a completely different circuit with a different legal standard.[15]

3        Alon has not come close to carrying its heavy burden here.  As set forth above,

4  the April 20, 2012 allegations, once corrected, are more damning to Alon than what

5  was alleged.  Alon's argument regarding ¶137 is even worse because it contradicts

6  Alon's own Answer to the Complaint and countless documents.[16]

7      **B.**    **Plaintiffs Have Not Vexatiously Increased the Litigation**

8        Contrary to Alon's claims that Plaintiffs have acted in a vexatious manner, as

9  demonstrated above there is ample reason to pursue this litigation as to Alon. Alon

10  claims it is entitled to sanctions under 28 U.S.C. §1927 based on an unsupported claim

11  that Plaintiffs have unreasonably and vexatiously multiplied the proceedings. Alon's

12  claims are nonsense and far from the type of conduct that could support sanctions.

13  "Sanctions under this section 'require a bad faith showing.'" *Reyes v. Flourshings*

14  *Plus, Inc*., No. 19cv261 JM (WVG), 2019 U.S. Dist. LEXIS 128049, at *3 (S.D. Cal.

15  July 31, 2019) (citing *W. Coast Theater Corp. v. Portland*, 897 F.2d 1519, 1526 (9th

16  Cir. 1990).  No such showing has been made.

17        Alon complains, for example, that it "had to" file a motion to compel Plaintiffs

18  to supplement interrogatory responses.  Mtn. at 17.  But this was a determination of

19  Alon's own making as Plaintiff Persian Gulf and the Consumer Plaintiffs both

20  provided interrogatory responses.  That Alon did not like the responses does not show

21  _____

[15] Alon claims, with no support, that a higher standard should be imposed because the
22  California Attorney General had not subpoenaed Alon during its earlier investigations.
There is no such heightened standard.

23  [16] Notably, at page 15 of its Motion, Alon seeks to import its own theory of
24  Plaintiff's case, seeming to implicitly understand that Plaintiff's allegations regarding
market participation are not as limited as Alon seeks to portray.  Plaintiffs note too
25  that idle refining capacity in California is of tremendous relevance to the antitrust
conspiracy at hand. In fact, when Defendant Equilon Enterprises LLC (d/b/a Shell Oil
26  Products US) attempted to close this same facility in 2004, California Attorney
General Lockyer, former Senator Barbara Boxer, and others stepped in to pressure the
27  company to sell the refinery instead of shut it down because of the potential impact on
gasoline supply and competition in the state that would occur if it were offline for
28  long periods of time.  Ex. 4.

1   bad faith on the part of Plaintiffs.  Judge Schopler, in granting Alon's motion to

2   compel supplemental responses, determined sanctions ***were not warranted for***

3   ***opposing the motion***, yet Alon claims it is entitled to sanctions now.  Ex. 5 (7/30/19

4   Hrg. Tr.) at 24:14-18.  Alon also complains that it is entitled to sanctions under §1927

5   because it received a signed verification about 48 hours late. Notwithstanding the fact

6   that Alon received timely supplemental interrogatory responses, multiple Defendants

7   in this case have served signed verifications after service of the responses.  Bernay

8   Decl., ¶6; Aguilar Decl., ¶5.[17]  This is not a bad faith litigation tactic.  Alon also

9   claims that Plaintiffs have pursued "grossly overbroad" document discovery, but this

10  is also false.  Mtn. at 17.  The discovery has been targeted and tailored and, to date,

11  Alon has provided little additional information in response to discovery requests since

12  April.[18]  It was only on Friday, October 18, that Alon finally provided any documents

13  beyond the self-selected 346 documents in the way of discovery, despite months of

14  delay.  The self-selected production that was the entirety of the production until days

15  ago was made on April 25, 2019, with little to no input from Plaintiffs on the scope or

16  contours of the production.  Despite Alon's claims that it could be forced to spend

17  "millions," Plaintiffs have in fact been mindful of both the proportionality

18  requirements of the federal rules and the discovery limitations imposed in this case at

19  the case management conference.[19]

20

---

21  [17]  References to "Aguilar Decl." are to the Declaration of George C. Aguilar in

22  Support of Plaintiff's Opposition to Alon's Motion, filed concurrently herewith.

23  [18]  In fact, Alon alone and with the Defendants have served more document requests

24  upon Plaintiffs (24) than Plaintiffs have served upon Defendants (15).  Bernay Decl., ¶8.

25  [19]  Alon also seeks a legally and factually unsupported "deterrent monetary sanction"

26  against Plaintiff Persian Gulf, the Consumer Plaintiffs, and both law firms involved in

    the action.  *See* Mtn. at 25.  Rule 11(c) does not contemplate sanctions to be paid

27  directly to a party, other than reasonable attorney's fees and other expenses "directly

    resulting" from a violation.  *See* Fed. R. Civ. P. 11(c)(4).  As detailed above, no

28  violation has occurred here and no payment should issue, particularly not one created
    by Alon, untethered to the law.

4827-7156-5994.v1

## IV.  THE CLAIMS AGAINST CONSUMER PLAINTIFFS LACK MERIT

Alon's Motion is brought jointly and separately against Consumer Plaintiffs. ECF No. 282 at 2.[20]  This opposition is brought jointly by Plaintiff Persian Gulf and Consumer Plaintiffs in compliance with the Court's Standing Order for Civil Cases. To the extent that the Motion makes claims that are particular to a specific party, the response to the specific claim is made on behalf of that party.  In many respects, however, the Motion's claims apply jointly to the Plaintiffs.  For example, Alon cites to the same two purported errors in the Consumer Plaintiffs' Complaint as those cited in the Persian Gulf operative Complaint.  Mtn. at 5-6; *Bartlett* ECF No. 44, ¶¶30, 40. Specifically, Alon complains that the Consumer Plaintiffs alleged that the Alon Bakersfield refinery was shut down on April 20, 2012 and that Alon is a participant in the California gasoline refinery market.  *Id.*  Consumer Plaintiffs adopt and incorporate herein each and all of the proofs cited *supra* that plainly demonstrate that: (1) the Bakersfield refinery was shut down between February 6, 2012 to May 9, 2012; (2) the listing in the chart in Plaintiffs' Complaints that reflected April 20, 2012 as the shutdown date for the Bakersfield refinery was an immaterial error both to the Plaintiffs' conspiracy and agreement theories as detailed in the Complaints, and to the Court's orders denying Alon's motions to dismiss; (3) Alon was and continues to be a participant in the California gasoline refinery market; and (4) Alon's failure to make any of the arguments it now makes to any part of its objections to the Complaints.  *See supra*, §§I., II.A.-II.C., II.E., III.A.; Ex. A (table and documents cited therein); Ex. B (table and documents cited therein).

The Consumer Plaintiffs' action also contains admissions and statements from Alon in its Answer and its motion to dismiss the action that further demonstrate the immaterial nature of any error in the Complaints and the falsity of the claims Alon now makes.  Alon's Answer to the operative Consumer Plaintiffs' Complaint states, as

---

[20]  Alon filed the identical Motion in the *Bartlett* docket.  *Bartlett* ECF No. 167.

4827-7156-5994.v1

it does in the *Persian Gulf* action, that its Bakersfield refinery was "not operating as of April 20, 2012" (*Bartlett* ECF No. 117, ¶40) and that Alon "lacks knowledge or information sufficient to form a belief as to the truth of the allegations" as to whether Alon conducted any gasoline refining operations in California since the end of 2012. *Id.*, ¶30.

Further, Alon's briefs in support of its motion to dismiss Consumer Plaintiffs' Complaint in September and October of 2018 make no mention of the purported errors. *Bartlett* ECF No. 59-2 at 2 ("the *only* specific allegations about Alon in the . . . Amended Complaint are: . . . [t]hat in April 2012 (well before the limitations period) Alon's Bakersfield refinery . . . experienced a single planned outage to restart its hydrocracker"); *Bartlett* ECF No. 74 at 6 ("For example, the *Persian Gulf* complaint pled that Alon restarted its Bakersfield hydrocracker on April 20, 2012, purportedly as part of a 2012 conspiracy to increase gasoline prices . . . paragraph 30 alleges that Alon 'is a participant in the California gasoline refinery market.'"). Despite chances to do so, Alon made no mention of purported errors in the Consumer Plaintiffs' Complaint to counsel for Consumer Plaintiffs until its responses to interrogatories on April 22, 2019, and a letter dated April 25, 2019, which contained selective arguments and documents that are refuted by the proof detailed in this opposition. Alon makes much of the idea that their April 25, 2019 letter was sent while its motion to dismiss the Consumer Plaintiffs' Complaint was pending before the Court. As shown above, Consumer Plaintiffs had ample grounds for believing that their allegations in the complaint against Alon had merit and would defeat Alon's motion to dismiss. Aguilar Decl., ¶2. Further, Alon made no attempt to bring its purported claims, even the public regulatory filings it relies on now, before the Court in support of its arguments to dismiss the Consumer Plaintiffs' Complaint.

Plaintiffs' show of the documents and events that provide support for the allegations for Alon's participation in the price-fixing conspiracy plainly defeats any Rule 11 or §1927 motion under the legal standard articulated and applied objectively

by *Townsend* and other supporting authorities.  *See* §III.A., *supra*; *Townsend*, 929 F.2d at 1362.  Further, Alon's articulation of the applicable legal standard under Rule 11 is incomplete.  Mtn. at 18-19.  The Ninth Circuit has long established that an attorney may not be sanctioned for a complaint that is determined to be well-founded at the time the Rule 11 motion is filed even where there was a failure to conduct a reasonable inquiry pre-filing.  *Keegan*, 78 F.3d at 434.  Thus, the Court must "consider after-acquired factual evidence that would have adequately supported the complaint." *Id.* at 434-35 ("We do little to undermine the deterrent goals of the Rule [11] by not sanctioning complaints which have merit on their face. The potential for such sanctions, however, may do much to increase the frequency of the collateral litigation that is Rule 11's unfortunate side effect. . . . [P]laintiffs' pretrial evidence was enough to render their complaint nonfrivolous.").  The Court's consideration of the documents and evidence cited to in this opposition and Alon's statements contained therein demonstrate the soundness of Plaintiffs' allegations.

Alon submits that Consumer Plaintiffs did not conduct an adequate investigation of the complaints they filed.  Mtn. at 20-21.  This argument ignores the discovery produced by Consumer Plaintiffs as part of their initial disclosures that documented the publicly available information, more than 1,200 pages, reviewed prior to the filing of their complaints.  Aguilar Decl., ¶3.  This information included the critical McCullough Report that detailed the price-fixing conspiracy among the Defendants and Alon's refinery closure.  Another critical fact ignored by Alon is that prior to the filing of the Consumer Plaintiffs, the Court denied the Rule 12(b)(6) motions filed by the Defendants in the *Persian Gulf* action.  Consumer Plaintiffs' counsel reviewed the ruling and assessed it in the context of the publicly available information.  *Id*.  These conscientious efforts more than satisfy the requirements of Rule 11 and §1927.  *See Johns v. Bayer Corp.*, No. 09CV1935 DMS (JMA), 2010 U.S. Dist. LEXIS 62804, at *4-*7 (S.D. Cal. June 24, 2010) (motion to strike allegations denied where attorney reviewed publicly available information regarding

certain allegations and distinguishing *Connetics*, 542 F. Supp. 2d at 1006, because plaintiffs there, who used allegations taken from an Securities Exchange Commission complaint, did not conduct independent investigation and did not inform the court of any other sources of information relied upon); *Cortina v. Wal-Mart Stores, Inc.*, No. 13-cv-02054-BAS-DHB, 2016 U.S. Dist. LEXIS 119192, at *9-*10 (S.D. Cal. Sept. 1, 2016) (denying motion for Rule 11 sanctions for filing a §1927 claim seeking a "staggering $575,000 in sanctions against [p]laintiff's counsel," where counsel had email conversation as part of pre-filing inquiry for filing §1927 motion, citing *Keegan* approvingly for holding that attorney may not be sanctioned for complaint that has merit where attorney's pre-filing inquiry was inadequate).

Finally, Alon refers to the late verifications of Consumer Plaintiffs' responses to Alon's interrogatories. Each of the plaintiffs have verified the responses and not sought to change or amend what are reasonably seen as contention interrogatories and are responses heavily laden with cites to the discovery record. Aguilar Decl., ¶4. It is worth noting that the Defendants, in many instances, have yet to serve verifications to interrogatory responses filed months before. *Id.*, ¶5.

As with the sanctions claims against Plaintiff Persian Gulf and their counsel, the Court should deny Alon's Motion as to Consumer Plaintiffs and their counsel.

## V.   ALON'S ALTERNATIVE REQUEST IS MERITLESS

In addition to its misplaced sanctions bid, Alon requests that the Court strike 10 paragraphs in the Complaint in the *Persian Gulf* matter and similar paragraphs in the Consumer Plaintiffs' Complaint. It then states that striking such paragraphs "eliminates" the allegations upon which the Court relied in denying prior motions to dismiss and thus all claims should then be dismissed with prejudice as to Alon. *See* Mtn. at 25. Further, Alon "[i]n the alternative" requests the Court strike those same paragraphs and grant Alon "leave to file renewed motions to dismiss." *Id.* As detailed extensively above, Alon's Motion is legally and factually suspect. Review of the 10 challenged paragraphs further demonstrates that Alon is acting in bad faith.

1  Many of the paragraphs Alon seeks to strike discuss and detail the theory of liability

2  and facts supporting that conduct.[21]  The Court should decline Alon's request to strike

3  and deny the alternative request to file renewed motions to dismiss.

4  **VI.   CONCLUSION**

5     Plaintiffs' cases against Alon have merit, as the Court found in denying the

6  motions to dismiss against Alon and the other Defendants.  Alon's late and suspect

7  claims of sanctionable conduct dissolve under the slightest scrutiny.  Alon plainly

---

[21]  Paragraph 3 details data from the Energy Information Administration that showed that West Coast refineries had capacity on hand to meet significant shortfalls, yet because of market concentration, following the Cherry Point fire, the timing of "various unscheduled maintenance shutdowns" became suspect.  Complaint, ¶3. Paragraph 4 details that in May and October of 2012, when some refineries were dealing with purported unplanned outages, other Defendants acted against their self-interest by not postponing scheduled maintenance and that as a result, there were two massive price spikes in California at that time.  *Id.*, ¶4.  Paragraph 35 contains allegations that major oil companies likely had advance, secret notice that Defendant ExxonMobil Refining & Supply Company would report problems with its Torrance refinery, in October 2012.  *Id.*, ¶35.  The paragraph also details that "'all the majors came out and bought'" citing a 2013 McCullough Report.  *Id.*  The paragraph also notes that NOx data do not support the claim of a full plant closure.  Paragraph 37, which Alon seeks to strike, details the various suspicious plant closings in 2012.  *Id.*, ¶37.  This paragraph has one line related to Alon in a multi-cell chart. Paragraph 70 details a review by Consumer Watchdog of export data which found that between August and September 2015, California refiners exported more than 80 million gallons of refined petroleum products.  *Id.*, ¶70.  Alon also seeks to strike ¶71.  That paragraph notes that California refiners' illicit profits were a result by Defendants to constrain supply or inject uncertainty into the market.  Paragraph 73 details how refiners kept tight control over data concerning their industry and operations and that there is no federal or state agency that maintains centralized information on current or historical refinery status.  *Id.*, ¶73.  Thus, the Complaint states the public remains in the dark about refinery operations and refiners, by contrast, are aware of information because of various exchange agreements and the like which allow for signaling to other market participants.  Paragraph 112 details how certain actions taken by Defendants were against an individual Defendant's economic self-interest, including by exporting gas out of California when the state's prices were the highest in the country.  *Id.*, ¶112.  The paragraph also details how Defendants decreased production for non-required maintenance, when other refineries were inoperable because of purported unplanned outages.  Paragraph 137 correctly states that each Defendant is a participant in the California gasoline refinery market.  *Id.*, ¶137. Finally, Alon seeks to strike ¶154 which summarizes the legal basis for Plaintiff's antitrust claims and states that the conspiracy alleged consisted of a continuing agreement, understanding or concerted action among the Defendants in furtherance of which Defendants fixed, maintained, or made artificial prices for gasoline sold in California during the Class Period through supply constraints (*e.g.*, exporting gas products, not importing sufficient gas products and maintaining low gas reserves), pretextual and/or willful refinery outages and roiling the markets by injecting misinformation. *Id.*, ¶154.

3:15-cv-01749-L-AGS

4827-7156-5994.v1

1  participated in the California gasoline refinery market.  The Bakersfield emission data

2  fully supports the suspect conduct alleged.   Both Plaintiff Persian Gulf and the

3  Consumer Plaintiffs conducted a proper pre-filing investigation as required by Rule

4  11.  Further, Plaintiff Persian Gulf was entitled to rely on its expert, and material

5  available in the discovery record has only strengthened the claims against Alon.  For

6  all these reasons, Alon's motion must be denied.

7  DATED:  October 21, 2019                    Respectfully submitted,

8                                              ROBBINS GELLER RUDMAN
                                                  & DOWD LLP
9                                              PATRICK J. COUGHLIN
                                               STEVEN W. PEPICH
10                                             DAVID W. MITCHELL
                                               ALEXANDRA S. BERNAY
11                                             CARMEN A. MEDICI
                                               LONNIE A. BROWNE
12

13                                                    s/ Alexandra S. Bernay

14                                             ALEXANDRA S. BERNAY

15                                             655 West Broadway, Suite 1900
                                               San Diego, CA  92101
16                                             Telephone:  619/231-1058
                                               619/231-7423 (fax)
17
                                               ROBBINS GELLER RUDMAN
18                                                & DOWD LLP
                                               ARMEN ZOHRABIAN
19                                             Post Montgomery Center
                                               One Montgomery Street, Suite 1800
20                                             San Francisco, CA  94104
                                               Telephone:  415/288-4545
21                                             415/288-4534 (fax)

22                                             Attorneys for Plaintiff Persian Gulf Inc.

23  DATED:  October 21, 2019                   ROBBINS ARROYO LLP
                                               GEORGE C. AGUILAR
24                                             JENNY L. DIXON

25

26                                                    s/ George C. Aguilar

27                                             GEORGE C. AGUILAR

28                                             5040 Shoreham Place

San Diego, CA 92122
Telephone: 619/525-3990
619/525-3991 (fax)

Attorneys for Plaintiffs Joshua Ebright,
Paul Lee, and David Rinaldi

## SIGNATURE CERTIFICATION

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures Manual, I hereby certify that the content of this document is acceptable to the above signatories, and that I have obtained each of the foregoing person's authorization to affix his or her electronic signatures to this document.

Dated:  October 21. 2019                        s/ Alexandra S. Bernay
                                                ALEXANDRA S. BERNAY

4827-7156-5994.v1