ROBBINS ARROYO LLP
GEORGE C. AGUILAR (126535)
gaguilar@robbinsarroyo.com
JENNY L. DIXON (192638)
jdixon@robbinsarroyo.com
5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

Attorneys for Plaintiffs Joshua
Ebright, Paul Lee, and David Rinaldi

[Additional counsel appear on signature page]

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERSIAN GULF INC., Individually and on Behalf of All Others Similarly Situated,<br><br>                 Plaintiffs,<br><br>     v.<br><br>BP WEST COAST PRODUCTS LLC, et al.,<br><br>                 Defendants. | Case No. 3:15-cv-01749-L-AGS<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DEFENDANT VALERO MARKETING AND SUPPLY COMPANY'S PRODUCTION OF DOCUMENTS**<br><br>Hearing Date:  November 21, 2019<br>Hearing Time: 4:00 p.m.<br>Courtroom:     5C<br>Judge:      Hon. Andrew G. Schopler |
| RICHARD BARTLETT, et al., on Behalf of Themselves and All Others Similarly Situated,<br><br>                 Plaintiffs,<br><br>     v.<br><br>BP WEST COAST PRODUCTS LLC, et al.,<br><br>                 Defendants. | Lead Case No. 3:18-cv-01374-L-AGS (Consolidated with Case No. 3:18-cv-01377-L-AGS)<br><br>**CLASS ACTION** |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................ 1

II.     SUMMARY OF THE ACTIONS AND DISCOVERY DISPUTE ............... 3

        A.     Relevant Meet and Confer History ....................................... 5

III.    LEGAL STANDARD ......................................................................... 8

IV.     ARGUMENT .................................................................................... 11

        A.     An Order Compelling Valero to Include the Additional Custodians
               Is Appropriate ............................................................... 11

               1.     Bill Day Is a Proper Custodian ................................. 12

               2.     Scott Lively Is a Proper Custodian ........................... 14

               3.     Eric Honeyman & David Sanders Are Proper Custodians ...... 15

        B.     An Order Compelling Valero to Run the Modified ESI Searches Is
               Appropriate ................................................................... 17

               1.     Valero's Approach to ESI Searches ........................... 17

               2.     Plaintiffs' Modified ESI Searches Are Proportionate ......... 22

V.      CONCLUSION ................................................................................ 23

MEET AND CONFER CERTIFICATE ................................................... 26

# TABLE OF AUTHORITIES

**CASES**

*Blankenship v. Hearst Corp.*,
    519 F.2d 418 (9th Cir. 1975) ............................................................. 10

*Cannata v. Wyndham Worldwide Corp.*,
    No. 2:10-cv-00068-PMP-VCF, 2012 WL 528224 (D. Nev. Feb.
    17, 2012) ........................................................................................ 10

*Cobb Theatres III, LLC v. AMC Entm't Holdings, Inc.*,
    No. 14-CV-00182-ELR-WEJ, 2016 WL 4059684 (N.D. Ga. Feb.
    25, 2016) ........................................................................................ 11

*Dobro v. Allstate Ins. Co.*,
    No. 16-CV-1197-AJB (BLM), 2016 WL 4595149 (S.D. Cal. Sept.
    2, 2016) .......................................................................................... 9

*Epstein v. MCA, Inc.*,
    54 F.3d 1422 (9th Cir. 1995). ........................................................... 9

*Family Wireless #1, LLC v. Auto. Techs., Inc.*,
    No. 3:15-cv-01310 (JCH), 2016 WL 2930887 (D. Conn. May 19,
    2016) .............................................................................................. 11

*Fenerjian v. Nong Shim Co., Ltd.*,
    No. 13-cv-04115-WHO (DMR), 2016 WL 1019669 (N.D. Cal.
    Mar. 15, 2016) ........................................................................... 17, 23

*Gottesman v. Santana*,
    No. 16-CV-2902 JLS (JLB), 2017 WL 5889765 (S.D. Cal. Nov.
    29, 2017) ........................................................................................ 10

*Hallett v. Morgan*,
    296 F.3d 732 (9th Cir. 2002) ............................................................ 9

*Henderlong v. S. Cal. Reg'l Rail Auth.*,
    No. CV 14-3610-DDP, 2015 WL 12806588 (C.D. Cal. Apr. 3,
    2015) .............................................................................................. 10

*In re Arby's Rest. Grp. Inc. Litig.*,
    No. 17-cv-0514-AT, 2018 WL 8666473 (N.D. Ga. Aug. 16, 2018) .......... 11, 15

*In re Seroquel Prods. Liab. Litig.*,
    244 F.R.D. 650 (M.D. Fla. 2007) ................................................................ 9

*Martinelli v. Johnson & Johnson*,
    No. 15-CV-1733 MCE DB, 2017 WL 9496074 (E.D. Cal. Feb. 13,
    2017) ............................................................................................................ 17

*Medtronic Sofamor Danek USA, Inc. v. Nuvasive, Inc.*,
    No. 08-CV-1512 MMA (AJB), 2010 WL 11452428 (S.D. Cal.
    Mar. 19, 2010) ....................................................................................... 13, 14

*Mt. Hawley Ins. Co. v. Felman Prod., Inc.*,
    269 F.R.D. 609 (S.D.W. Va. 2010) ......................................................... 15

*Osborne v. C.H. Robinson Co.*,
    No. 08C50165, 2011 WL 5076267 (N.D. Ill. Oct. 25, 2011) ................... 10

*Otto v. Abbott Labs.*,
    No. EDCV-12-1411-SVW, 2014 WL 12612682 (C.D. Cal. Mar.
    10, 2014) ...................................................................................................... 9

*Shaw v. Experian Info. Sols., Inc.*,
    306 F.R.D. 293 (S.D. Cal. 2015) ............................................................... 9

*Shoen v. Shoen*,
    5 F.3d 1289 (9th Cir.1993) ...................................................................... 20

*Stone Brewing Co. v. Molson Coors Brewing Co.*,
    No. 18-CV-331-BEN-LL, 2019 WL 2176792 (S.D. Cal. May 20,
    2019) ........................................................................................................... 10

*United States v. McGraw–Hill Cos.*,
    No. CV 13-779-DOC JCGx, 2014 WL 1647385(C.D. Cal. Apr.
    15, 2014) .................................................................................................... 22

*Urena v. Earthgrains Distrib., LLC*,
    No. SACV 16-00634-CJC, 2017 WL 8238274 (C.D. Cal. Apr. 21,
    2017) ........................................................................................................... 17

*Walker v. Life Ins. Co. of the Sw.*,
    No. CV 10-09198-JVS, 2018 WL 5905121 (C.D. Cal. Oct. 23,
    2018).............................................................................................. 17, 22, 23

*Watkins v. Hireright, Inc.*,
    No. 13-CV-1432-MMA (BLM), 2014 WL 11191092 (S.D. Cal.
    Feb. 21, 2014) ..................................................................................9

*William A. Gross Constr. Assocs. v. Am. Mfrs. Mut. Ins.*,
    256 F.R.D. 134 (S.D.N.Y. 2009) .....................................................9

**STATUTES, RULES & OTHER AUTHORITIES**

Federal Rules of Civil Procedure

    Rule 26(b)(1) ......................................................................................8
    Rule 26(b)(2)(B) ...........................................................................9, 10
    Rule 37(a)(1) ....................................................................................10

By this motion, plaintiffs Persian Gulf, Inc., Joshua Ebright, Paul Lee, and David Rinaldi (collectively, "Plaintiffs")[1] seek an order compelling defendant Valero Marketing and Supply Company ("Valero") to provide further responses to Plaintiffs' Revised First Request for Production to All Defendants and Plaintiffs' Second Set of Requests for Production to All Defendants (the "Requests" or, singularly, "Request") in the manner discussed herein.

In support of their motion, Plaintiffs submit the accompanying declaration of Jenny L. Dixon ("Dixon Decl."). Counsel for Plaintiffs have met and conferred with counsel for Valero regarding these requests pursuant to Local Rule 26.1 by telephone, letter, and email as set forth herein.

## I.   INTRODUCTION

Over the last several months, Plaintiffs have worked diligently and in good faith to arrive at an agreement with Valero regarding document custodians and search terms for collection of electronically stored information ("ESI"). On several occasions, Plaintiffs have agreed to withdraw proposed custodians and/or modify proposed ESI searches in order to move the discovery process forward and address concerns raised by Valero and its counsel. Despite these efforts, the parties have reached an impasse. Valero refuses to include four employees as custodians that Plaintiffs believe possess material relevant to core issues in this litigation. As explained herein, the significant role of each of these individuals, along with the likelihood they possess discoverable information, is corroborated by publicly available information, as well as the documents and communications produced by

---

[1] On August 9, 2018, the Court entered an order coordinating the above-captioned actions for discovery and other pre-trial purposes. No. 15-cv-01749, Dkt. 143; No. 18-cv-01374, Dkt. 46. In compliance with that order, the requests at issue in this motion were served jointly by direct action plaintiff Persian Gulf, Inc. and consumer plaintiffs Ebright, et al., and this motion is brought jointly by Plaintiffs and filed in both actions. However, Plaintiffs note that these actions are not consolidated and that there remain separate dockets for each case.

1  Valero in connection with various government investigations and recently
2  reproduced to Plaintiffs here.  Dixon Decl., ¶20.

3      In addition, Valero also refuses to accept certain reasonable modifications
4  (discussed herein) to several of its proposed ESI searches.  *Id.*, ¶¶11-12, 15-18, 21.
5  Valero's refusal is significant because Plaintiffs' proposed revisions are narrowly
6  tailored to capture highly relevant information and are entirely consistent with the
7  ESI searches (and modifications) agreed to by other Defendants[2] in this action. *Id.*
8  Valero's unwillingness to agree to Plaintiffs' proposed modifications to certain ESI
9  searches is even more significant because Valero has—in stark contrast to other
10 Defendants in this action—agreed to run ***just five*** ESI searches in response to the
11 Requests.  Valero maintains that it will collect responsive ESI and run searches
12 across its custodians only once.  *Id.*, ¶11.  As such, this approach forestalls
13 modifications or clarifications to the search protocol to address any deficiencies that
14 Plaintiffs identify once their review of Valero's materials begins.

15     Valero's refusal to add custodians or accept reasonable modifications to
16 several of its proposed ESI searches make it an outlier, as it is the only defendant to
17 date for which Plaintiffs have needed to bring a motion to compel in connection with
18 their Requests.  While an agreement with Valero remains elusive, Plaintiffs are in
19 the process of reviewing approximately 2 million documents produced by other
20 Defendants in response to the Requests.

21     For these reasons, as well as those discussed herein, Plaintiffs respectfully
22 submit that this motion is timely filed and should be granted.

23

24

25 _____

26 [2] "Defendants" refers collectively to Valero Tesoro Refining & Marketing Company
   LLC, BP West Coast Products LLC, Chevron U.S.A. Inc., Equilon Enterprises LLC
27 (d/b/a Shell Oil Products US), Exxon Mobil Corporation and ExxonMobil Refining
   & Supply Co., Phillips 66, and Alon USA Energy, Inc.
28

## II.     SUMMARY OF THE ACTIONS AND DISCOVERY DISPUTE

These actions concern Defendants' illegal conspiracy to manipulate and maintain the prices of gasoline in California at supracompetitive prices.  Plaintiffs' complaints allege that Defendants have engaged in a multi-year scheme to illegally manipulate the market for gasoline by, among other illicit actions, collusively fixing pricing, supply, and production levels, causing the price of gasoline sold in California to spike to historical levels in 2012, 2015, and beyond.

Plaintiffs have worked diligently to obtain discovery from Valero in order to support their federal and state antitrust claims.  Dixon Decl., ¶¶2-19.  The present dispute centers on document requests contained in Plaintiffs' First Request for Production of Documents (originally served August 31 and September 4, 2018), as revised on December 17, 2018, and Plaintiffs' Second Set of Requests for Production to All Defendants, served on Valero, along with all other Defendants, on November 15, 2018.  *Id.*, ¶2 & Exs. 1-2. [3]   The purpose of these Requests was to obtain documents and other materials concerning, among other things, various investigations by government agencies into Defendants' businesses practices, gasoline sales, gasoline production, refinery outages and shutdowns, shipments of refined and unrefined products, imports and exports, and profitability. *Id.*, ¶3 & Exs. 1-2.  The Requests also sought communications among Defendants, as well as communications between Defendants and any media outlets, industry trade groups, or associations. *Id.*

Plaintiffs and Defendants commenced discussions regarding the appropriate custodians and search terms to be applied to any ESI collected during the meet and confer on the Requests, and, on November 15, 2018, Plaintiffs circulated a

---

[3] Unless otherwise noted, all exhibit references ("Ex. __") are to the exhibits attached to the Dixon Decl.

preliminary draft of search terms and questions regarding each Defendants' ESI practices and systems. *Id.*, ¶5 & Ex. 5.

Valero served its responses and objections on December 17, 2018, and January 16, 2019 (the "Responses"). *Id.*, ¶4 & Exs. 3-4. The parties jointly moved the Court for an order extending the deadline for filing a motion to compel with respect to all Defendants' responses, including Valero's, on January 18, 2019. No. 15-cv-01749, Dkt. 176. The Court set a March 4, 2019 deadline. No. 15-cv-01749, Dkt. 177. Subsequently, on February 11, 2019, the Court amended its rules for this case allowing parties to file a motion to compel within 60 days after a dispute arose. No. 15-cv-01749, Dkt. 188; No. 18-cv-01374, Dkt. 91. On March 4, 2019, negotiations with defendant Valero were still underway and no dispute had yet arisen as discussed below. Dixon Decl., ¶8. Plaintiffs understood that the March 4, 2019 deadline was mooted by the February 11, 2019 order and requested that Defendants notify Plaintiffs if their interpretation differed. Dixon Decl., ¶8 & Ex. 7. No Defendant responded with a contrary interpretation or advised that they disagreed. Dixon Decl., ¶8.

For months, the parties have met and conferred extensively regarding the Requests and Valero's Responses thereto. *Id.*, ¶¶9-19. Specifically, counsel for Plaintiffs and counsel for Valero have exchanged numerous letters and emails, and have conducted several telephonic meetings, in an effort to reach an agreement about Valero's production of documents, including the selection of appropriate document custodians and ESI searches. *Id.*, ¶¶9-19 & Exs. 6-17.

Despite these efforts, the parties have been unable reach an agreement. As a result, Valero has only produced documents responsive to Request No. 1, which requested that Valero reproduce any material previously provided to state and federal agencies in connection with various governmental investigations. *Id.*, ¶22. To date, Valero's document production to Plaintiffs has been limited to the

1  government productions, and Valero has not produced any other materials in
2  response the Requests.[4]  *Id.*

3  **A.    Relevant Meet and Confer History**

4        On January 25, 2019, counsel for Plaintiffs and Valero met and conferred
5  regarding the Responses and addressed search terms and custodians.  Dixon Decl.,
6  ¶6 & Ex. 6.  Counsel for Valero informed Plaintiffs that Valero's preference was to
7  formulate searches based on "specific requests."  *Id*.  The parties agreed to continue
8  discussion thereafter.   Over the next several months, counsel for Valero made
9  repeated assurances that it was actively in the process of preparing a comprehensive
10 list of ESI search terms, along with a list of approximately 50 individual custodians.
11 *Id.*, ¶¶9-10 & Exs. 6, 8-9.

12       Plaintiffs did not receive Valero's proposed ESI search terms and custodians
13 until June 5, 2019.  *Id.*, ¶11 & Ex. 10.  In a letter dated June 5, 2019, Valero
14 identified just 19 custodians across its entire organization.  *Id.*, ¶11 & Ex. 10 at 10-
15 12.  In addition, the June 5th letter outlined, for the first time, Valero's position that
16 it would run just one ESI search for each Request, that, in Valero's view, was likely
17 to generate responsive material.  *Id.*, ¶11 & Ex. 10 at 1-2, 6-9.  As a result, Valero's
18 letter proposed a mere five ESI searches—corresponding to Requests 2, 3, 4, 5, &
19 8—which it claimed were likely to generate responsive material.[5]  *Id.*, ¶11 & Ex. 10
20 at 6-9.

21       Plaintiffs responded to Valero in a letter dated June 25, 2019. *Id.*, ¶12 & Ex.
22 11.  Plaintiffs explained that they were concerned by the limited nature of Valero's

---

[4] Valero produced 42 excel spreadsheets in connection with the service of its supplementary interrogatory responses.  These documents are unrelated to the Requests. *Id.*

[5] Valero did not propose search terms for any other Requests, claiming that "[s]earch terms are not necessary for Valero to locate documents responsive the non-objectionable portions of Request Nos. 1, 6 and 7." *Id.*, ¶11 & Ex. 10 at 2.

proposed list of custodians and plan to run just five ESI searches when other Defendants had agreed to run dozens of ESI searches.  *Id.*  Nevertheless, Plaintiffs, in an effort to move discovery forward, accepted Valero's proposal to run five ESI search terms on the condition Valero first agree to certain modifications to each ESI search.  *Id.*  In addition, Plaintiffs outlined an additional 23 custodians likely to possess relevant information that they had identified through public sources and/or Plaintiffs' review of Valero's government production.  *Id.*

Valero responded by letter dated July 23, 2019.  *Id.*, ¶14 & Ex. 13.  Eight of Plaintiffs' proposed twenty-three custodians were on Valero's new list, but Valero refused to consider the remaining fifteen until Plaintiffs "provide[d] a factual basis for expanding" the custodian list.  *Id.*, ¶14 & Ex. 13 at 1-2, 10-15.  Similarly, Valero refused many of the proposed modifications to the ESI searches until Plaintiffs "expla[ined]…why the current search terms are insufficient."  *Id.*, ¶14 & Ex. 13 at 2-3.  Valero's July 23 letter disclosed that Valero had "added to its list of custodians" as a result of its continued "document collection and review process."  *Id.*, ¶14 & Ex. 13 at 2.  However, these additions to the custodian list were made unilaterally, without any input from Plaintiffs.

Plaintiffs responded on August 5, 2019.  *Id.*, ¶15 & Ex. 14.  Plaintiffs informed Valero that it was difficult to provide documents or other evidence to justify the inclusion of a particular custodian and/or modification to an ESI search given the limited nature of Valero's document production, which consisted of approximately 67,610 documents that had been produced to government agencies. *Id.*, ¶15 & Ex. 14 at 1.  Nevertheless, in an effort to move toward an agreement, Plaintiffs agreed to withdraw another four of the custodians from the June 26, 2019 letter and further narrowed their modifications to the proposed ESI searches.  *Id.*, ¶15 & Ex. 14 at 1-4.  Plaintiffs also reiterated their request that Valero agree to add the remaining eleven custodians from the June 26, 2019 letter or explain the rationale for their continued exclusion.  *Id.*, ¶15 & Ex. 14 at 1-2.

Valero responded in a letter dated August 15, 2019. *Id.*, ¶16 & Ex. 15. Valero indicated that it would not agree to any of the additional custodians unless Plaintiffs "provide specific information to support their request" and, as discussed below, only included vague explanations why certain custodians were excluded. *Id.*, ¶16 & Ex. 15 at 1-2. The letter also outlined Valero's objections to the revised modifications to the ESI searches outlined in Plaintiffs' August 5, 2019 letter. *Id.*, ¶16 & Ex. 15 at 2-4.

Plaintiff responded by letter dated August 30, 2019. *Id.*, ¶17 & Ex. 16. In the letter, Plaintiffs again agreed to withdraw an additional six custodians based on representations made by Valero in its August 15 letter and in an effort to reach an agreement. *Id.*, ¶17 & Ex. 16 at 1. Plaintiffs, however, maintained that four of their proposed custodians—Bill Day, Scott Lively, Eric Honeyman, and David Sanders— were appropriate. *Id.*, ¶17 & Ex. 16 at 1. Plaintiffs' letter outlined the factual basis for why each was a proper custodian and should be included, and detailed how the objections raised by Valero were inapplicable to these individuals. *Id.*, ¶17 & Ex. 16 at 1-2. In addition, Plaintiffs' letter further revised the proposed modifications to the ESI search terms and provided specific explanations why each revision was warranted. *Id.*, ¶17 & Ex. 16 at 2-6.

On September 20, 2019, the parties met and conferred telephonically regarding search terms and custodians. *Id.*, ¶18. During the call, Valero informed Plaintiffs, for the first time, that due to Valero's use of Clearwell, what its counsel described as an antiquated system, it was only willing to run a list of agreed upon search terms against a list of agreed upon custodian documents ***one time***. *Id.* Plaintiffs asked how Valero intended to respond to documents requested in Plaintiffs' third set of document requests and later discovery. *Id.* Valero did not provide a response but seemingly acknowledged that more discovery was likely. *Id.* Valero then informed Plaintiffs that it would only accept a full agreement on the terms it was proposing and there was no room to negotiate. *Id.* In other words it

was a "take it or leave it" offer. *Id.*  With respect to custodians, Valero stated it would accept Bill Day as a custodian but would only search his documents that contained communications with third parties outside Valero, such as media outlets, trade publications, and regulatory agencies. *Id*.  Valero added the further condition that any search for internal communications between Day and other Valero personnel would be limited to documents that contained the phrase "off the record." *Id*.  Lastly, without providing any justification or rationale, Valero told Plaintiffs it would not consider any c-suite individuals as custodians. *Id.*

With respect to the search terms, Valero informed Plaintiffs it would not remove any Near20 or Near50 proximity terms or consider running any co-defendant domains for inter-defendant communications. *Id.*  Valero did state it would accept Plaintiffs' proposed searches for Request Nos. 4 and 8, but only if Plaintiffs accepted all of its other conditions. *Id*.  On September 30, 2019, the parties met and conferred telephonically again to address some confusion that had arisen regarding aspects of Plaintiffs' proposal. *Id.*, ¶19.  No further progress was made, and Plaintiffs confirmed Valero's position on the various points of contention regarding search terms and custodians by letter dated October 16, 2019. *Id.*, ¶19 & Ex. 17.

Valero's refusal to accept the reasonable proposal outlined in Plaintiffs' August 30, 2019 letter forms the basis of the present motion.

## III.   LEGAL STANDARD

Rule 26(b)(1) provides that discovery may be obtained regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).[6]  "Relevant information for discovery purposes includes any information 'reasonably calculated to lead to the

---

[6] Unless otherwise noted, all references to "Rule __" are to the Federal Rules of Civil Procedure.

discovery of admissible evidence,' and need not be admissible at trial to be discoverable." *Shaw v. Experian Info. Sols., Inc.*, 306 F.R.D. 293, 296 (S.D. Cal. 2015) (citing Fed. R. Civ. P. 26(b)(1)); *Watkins v. Hireright, Inc.*, No. 13-CV-1432-MMA (BLM), 2014 WL 11191092, at *2 (S.D. Cal. Feb. 21, 2014) (same).  District courts have broad discretion to determine relevancy for discovery purposes. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002); *Dobro v. Allstate Ins. Co.*, No. 16-CV-1197-AJB (BLM), 2016 WL 4595149, at *2 (S.D. Cal. Sept. 2, 2016) (same).

Electronically stored information ("ESI") is exempted from discovery only if both (1) it is "not reasonably accessible because of undue burden or cost" and (2) there is no "good cause." Fed. R. Civ. P. 26(b)(2)(B).   Courts routinely acknowledge the propriety of using search terms and custodians in connection with the production of ESI in complex cases.[7]   Additionally, the selection of custodians and search terms is intended to be an iterative process among the parties. *See Otto v. Abbott Labs.*, No. EDCV-12-1411-SVW (DTBx), 2014 WL 12612682, at *4 (C.D. Cal. Mar. 10, 2014) (observing that requesting party should be "sufficiently involved in the [custodian] selection process to ensure a fulsome production of responsive

---

[7] *See*, *e.g.*, *William A. Gross Constr. Assocs. v. Am. Mfrs. Mut. Ins.*, 256 F.R.D. 134, 136 (S.D.N.Y. 2009) ("Electronic discovery requires cooperation between opposing counsel and transparency in all aspects of preservation and production of ESI. Moreover, where counsel are using keyword searches for retrieval of ESI, they at a minimum must carefully craft the appropriate keywords, with input from the ESI's custodians as to the words and abbreviations they use, and the proposed methodology must be quality control tested to assure accuracy in retrieval and elimination of 'false positives.'"); *In re Seroquel Prods. Liab. Litig.*, 244 F.R.D. 650, 651-52, 662 (M.D. Fla. 2007) ("while key word searching is a recognized method to winnow relevant documents from large repositories, use of this technique must be a cooperative and informed process").  Here, as throughout, all emphasis is deemed added and citations and footnotes are omitted unless otherwise noted.

1   documents" and instructing the responding party to "provide six additional ESI

2   custodians ... the identities of which shall be agreed to by the parties").[8]

3      Rule 37(a)(1) permits a party to move for an order compelling discovery,

4   upon "certification that the movant has in good faith conferred" with the opposing

5   party "in an effort to obtain [the requested discovery] without court action."  Fed. R.

6   Civ. P. 37(a)(1).  Once relevance is shown, "the party opposing discovery has the

7   burden of showing that the discovery should be prohibited, and the burden of

8   'clarifying, explaining and supporting its objections.'"  *Stone Brewing Co. v. Molson*

9   *Coors Brewing Co.*, No. 18-CV-331-BEN-LL, 2019 WL 2176792, at *2 (S.D. Cal.

10  May 20, 2019); *Henderlong v. S. Cal. Reg'l Rail Auth.*, No. CV 14-3610-DDP

11  (PLAx), 2015 WL 12806588, at *2 (C.D. Cal. Apr. 3, 2015) ("The burden is on

12  defendant to show that discovery should not be allowed; it is not up to defendant to

13  decide what plaintiff needs to pursue this action, or to withhold documents whose

14  relevance 'it is difficult [for defendant] to understand.'") (alteration in original)).

15     Further, "[o]n a motion to compel discovery ..., the party from whom

16  discovery is sought must show that the information is not reasonably accessible

17  because of undue burden or cost."  Fed. R. Civ. P. 26(b)(2)(B); *see Gottesman v.*

18  *Santana*, No. 16-CV-2902 JLS (JLB), 2017 WL 5889765, at *3 (S.D. Cal. Nov. 29,

19  2017) ("Those opposing discovery are 'required to carry a heavy burden of showing'

20  why discovery should be denied.") (citing *Blankenship v. Hearst Corp.*, 519 F.2d

21  418, 429 (9th Cir. 1975)).

22  _____

23  [8] *See also Osborne v. C.H. Robinson Co.*, No. 08C50165, 2011 WL 5076267, at *7

24  (N.D. Ill. Oct. 25, 2011) ("Electronic discovery is often an iterative process and the
    parties should allow for refinement of search terms as their understanding of the

25  issues develops." (citing The Sedona Principles, Second Edition (2007), Cmt. 11.a.));
    *see also Cannata v. Wyndham Worldwide Corp.*, No. 2:10-cv-00068-PMP-VCF,

26  2012 WL 528224, at *4 (D. Nev. Feb. 17, 2012) ("The parties will work together to
    implement a iterative process for finalizing the search terms and custodian/data sites

27  list, whereby the plaintiffs can initially propose up to 30 search terms to be used in

28  searching up to 30 e-mail custodian accounts or other defined data storage sites.").

## IV.   ARGUMENT

### A.   An Order Compelling Valero to Include the Additional Custodians Is Appropriate

Courts routinely grant motions to compel and order the inclusion of additional custodians, where, as here, the requesting party can demonstrate that: (i) the omitted individuals possess material relevant to claims or defense at issues; and (ii) the requested information is proportionate to the needs of the case.  *See, e.g.*, *Family Wireless #1, LLC v. Auto. Techs., Inc.*, No. 3:15-cv-01310 (JCH), 2016 WL 2930887, at *3 (D. Conn. May 19, 2016) (ordering defendants to "expand[] the ESI search to include three additional custodians" where plaintiffs made a "sufficient showing … the electronic files of [the additional custodians], [were] likely to include information that is relevant to the claims at stake and proportional to the needs of this case"); *In re Arby's Rest. Grp. Inc. Litig.*, No. 17-cv-0514-AT, 2018 WL 8666473, at *3 (N.D. Ga. Aug. 16, 2018) (ordering defendant to include two additional custodians where plaintiff showed they "may provide relevant, discoverable material" and finding that "the relative burden of [adding] only two more custodians" did "not violate the Rule 26 proportionality principle"); *Cobb Theatres III, LLC v. AMC Entm't Holdings, Inc.*, No. 14-CV-00182-ELR-WEJ, 2016 WL 4059684, at *1 (N.D. Ga. Feb. 25, 2016) (ordering responding party to "collect and produce non-privileged, responsive documents from additional custodians" where moving party demonstrated that omitted individuals "[we]re relevant custodians").

As set forth below, the four additional custodians requested are each likely to possess material relevant to the price fixing conspiracy alleged by Plaintiffs, and Valero has failed to demonstrate any basis for excluding the custodians on proportionality grounds.

### 1.  Bill Day Is a Proper Custodian

Bill Day was Valero's Executive Director of Media Relations until he left the company in 2015.  Dixon Decl., ¶20 & Ex. 16 at 2-3. In his role at Valero, Mr. Day was aware of Valero's media relations strategy, including its strategy to keep media outlets informed (or uninformed) about the duration or rationale for unplanned and planned refinery outages and shutdowns during the relevant period.   In fact, documents produced by Valero to the government (and reproduced to Plaintiffs here) demonstrate that Mr. Day frequently communicated with various media outlets—such as Bloomberg, Energy News Today, Thomson Reuters, Platts, and Oil Price Information Service (OPIS)—regarding Valero's West Coast activities.[9]  *Id.*, ¶20 & Ex. 16 at 2-3.  Mr. Day's custodial documents will therefore help Plaintiffs establish what information Valero possessed regarding refinery shutdowns and outages, as well as what information it did (or did not) disclose to the media and why. *Id.*, ¶20 & Ex. 16 at 2-3.  This information is vital considering that Plaintiffs have specifically alleged that Defendants provided false and/or misleading information to various media sources regarding refinery outages, and that Defendants relied on Platt's and OPIS to communicate with one another in furtherance of the price fixing conspiracy.  *See* No. 15-cv-01749, Dkt. 76 ("PG Cpt."), ¶¶42, 47, 108-110; No. 18-cv-01374, Dkt. 44 ("Consumer Cpt."), ¶¶19, 38, 48, 120-21.

---

[9] Valero has offered to provide Mr. Day's external communications with third parties provided that Plaintiffs agree not to seek Mr. Day's internal communications unless they specifically include the term "off the record." Plaintiffs rejected Valero's proposal because Mr. Day's internal discussions concerning what information Valero possessed and did (and or did not share) share with the media are highly relevant to Plaintiffs' allegations that Valero (along with other Defendants) made false and/or misleading statements regarding refinery shutdowns and California gasoline prices. Indeed, without Mr. Day's internal communications, there is simply no way for Plaintiffs to test the accuracy or completeness of his external communications with third parties, including the media.  Dixon Decl., ¶20.

1    Defendants have refused to include Mr. Day as a custodian because, *inter alia*:

2    (i) "he left Valero in 2015"; (ii) "he worked in San Antonio, Texas; not California";

3    and (iii) "his information would be archived and very expensive to recover and

4    search." Ex. 15 at 2. None of these arguments are availing. First, the fact that Mr.

5    Day left the company in 2015 does nothing to relieve Valero of its obligation to

6    produce responsive material generated by Mr. Day before his departure. Indeed, the

7    conduct at issue in this litigation extends as far back as 2012, and Defendants

8    (including Valero) have agreed to a discovery period of January 2011 to August

9    2018. Accordingly, the fact that Mr. Day left the Company in 2015 provides no

10   basis to exclude his custodial documents.

11   Equally deficient is Valero's objection that Mr. Day worked in Texas, rather

12   than California. While it is true that Mr. Day's position was located in San Antonio,

13   this fact is of no moment. Although physically located in San Antonio, Mr. Day was

14   in charge of overseeing Valero's entire media strategy, and that strategy routinely

15   addressed Valero's substantial activities in California and the West Coast.[10]

16   Finally, Valero "has offered little evidence beyond … conclusory

17   characterizations" that adding Mr. Day imposes a disproportionate burden. *See*

18   *Medtronic Sofamor Danek USA, Inc. v. Nuvasive, Inc.*, No. 08-CV-1512 MMA

19   (AJB), 2010 WL 11452428, at *2 (S.D. Cal. Mar. 19, 2010). While Valero claims

20   accessing Mr. Day's "archived" materials will be difficult and "time consuming," it

21   has provided no explanation why that is in fact the case. *See* Ex. 15. Indeed, Valero

22   has not provided any estimate of the cost to access the materials beyond its

23   representation that doing so will be "very expensive."[11] *Id.* As such, Valero falls far

24   _____

25   [10] Curiously, Valero has opposed Mr. Day's inclusion based the physical location of
26   his job yet have agreed to provide the custodial documents of at least three other
     employees that were located in Texas.

27   [11] That Valero has already agreed to provide pre-2015 documents for other custodians
28   only calls into question the purported difficulty and expense of accessing Mr. Day's
     materials.

1    short of "demonstrat[ing] an unusual hardship beyond that which ordinarily
2    accompanies the discovery process." *Id.* (granting motion to compel and ordering
3    producing party to search "inaccessible" back-up tapes "estimated to cost as much as
4    $250,000).

5                 **2.    Scott Lively Is a Proper Custodian**

6           Scott Lively currently serves as Valero's Senior Vice President of Product
7    Supply & Trading, and previously held the position of Vice President of Trading.
8    Dixon Decl., ¶20 & Ex. 14 at 1.  In his current position, Mr. Lively is responsible for
9    overseeing various aspects of Valero's trading activities, including buying and
10   selling refined and unrefined petroleum products and related components, in order to
11   satisfy Valero's contractual obligations, including its obligations in California.[12]  *Id.*,
12   ¶20.  In addition, documents from various government investigations (and recently
13   reproduced to Plaintiffs here) demonstrate that Mr. Lively has knowledge of Valero's
14   financial conditional, including the profits it generated from the sale of CARBOB
15   and other refined and unrefined petroleum products in California.  *Id.*  In fact,
16   documents produced by Valero demonstrate that Mr. Lively routinely provides
17   information about the profitability of Valero's product slate to various executive-
18   level employees at Valero, and is even tasked with compiling and vetting
19   information about Valero's profits in advance of the company's quarterly earnings
20   calls.  *Id.*  Mr. Lively's custodial documents will likely show that Valero was making
21   record profits during 2012 and 2015, and substantiate allegations that various
22   refinery shutdowns and outages caused Valero to earn outsized profits during the
23   relevant period.  *See* PG Cpt., ¶¶2, 5, 13, 15; Consumer Cpt., ¶¶1, 9, 45, 79-90.

24          Defendants have refused to include Mr. Lively as a custodian on the grounds
25   that he was: (i) "too removed from West Coast operations to have responsive

26   _____

27   [12] Based on their review of materials produced by Valero to date, Plaintiffs believe
     that Mr. Lively had substantially the same responsibility prior to assuming his current
28   position.

1    information"; and/or (ii) "to the extent [he] ha[s] responsive information, [his]

2    records would be redundant to existing custodians." Ex. 15 at 2. Each of Valero's

3    stated reasons for excluding Mr. Lively fail to hold water. First, documents

4    produced by Valero contradict its rationale that Mr. Lively was "too removed from

5    West Coast operations." These materials demonstrate that Mr. Lively sent and/or

6    received granular information concerning the profitability of Valero's West Coast

7    operations. Ex. 16 at 2. In particular, Mr. Lively routinely vetted, reviewed, and/or

8    opined on various financial reports that specifically addressed the profitability of

9    Valero's product slate, including the products refined in California. *Id.*

10    Further, as the party resisting discovery, Valero is required to demonstrate

11    with *specificity* why the objected-to request is unreasonable or otherwise unduly

12    burdensome. This obligation is not satisfied by Valero's bald assertion that Mr.

13    Lively's materials "would be redundant to existing custodians." *Arby's Rest. Grp.*,

14    2018 WL 8666473, at *3 (observing that defendant's "assertion that all additional

15    information from new custodians will be duplicative appear[ed] to be *based on*

16    *assumptions rather than concrete data*" and ordering inclusion of additional

17    custodians). Accordingly, the fact that an unspecified amount of some of Mr.

18    Lively's documents may be duplicative does not warrant exclusion of his custodial

19    materials. *Mt. Hawley Ins. Co. v. Felman Prod., Inc.*, 269 F.R.D. 609, 620 (S.D.W.

20    Va. 2010) (granting motion to compel additional custodians even though it was

21    "highly likely that the [requested custodians] will produce ... duplicates of previously

22    produced materials," because "it is reasonable to believe that they will have

23    additional, highly relevant materials ... which were not shared with [existing

24    custodians]")).

25    **3.    Eric Honeyman & David Sanders Are Proper Custodians**

26    Eric Honeyman and David Sanders are Vice Presidents of Refinery

27    Operations and Regional Refinery Operations, respectively. Ex. 14 at 1-2. In their

28    positions, Messrs. Honeyman and Sanders are each charged with overseeing aspects

of refinery operations at Valero's California refineries.  Each play a direct role in managing refinery shutdowns and maintenance turnarounds, including the shutdowns and turnarounds at issue in this case.  Moreover, documents produced in discovery reveal that Messrs. Honeyman and Sanders also routinely report up to various high-level executives—such as Valero's Executive Vice President of Operations and its Chief Operating Officer—regarding refinery operation in California and the West Coast.[13]   Ex. 16 at 2.  Custodial documents of Messrs. Honeyman and Sanders will therefore likely yield candid discussions about the rationale and expected duration of various refinery shutdowns or maintenance turnarounds at issue.  This information is necessary to demonstrate allegations that Valero (along with other Defendants) relied on pretextual refinery outages and shutdowns to inflate the price of gasoline sold in California. *See* PG Cpt., ¶¶15-16; Consumer Cpt., ¶122.

Defendants have refused to add Messrs. Honeyman and Sanders as custodians because: (i) they are "too removed from West Coast operations to have responsive information"; and/or (ii) "to the extent they have responsive information, their records would be redundant to existing custodians."  Ex. 15 at 2.

Valero's rationale for excluding Messrs. Honeyman and Sanders are without merit. First, Valero's own documents demonstrate that Messrs. Honeyman and Sanders frequently sent and/or received communications concerning refinery operations in California.  In particular, these materials reveal that Messrs. Honeyman and Sanders were responsible for communicating with executive leadership at Valerio about the nature and duration of potential refinery shutdowns and outages in California, including a shutdown of Valero's Benicia Refinery.   Ex. 16 at 2. Moreover, Valero is simply incorrect that documents from Messrs. Honeyman and

---

[13] This is particularly significant because Valero "is not amenable to adding C-suite executives as custodians." Ex. 15 at 4.

1    Sanders would be "redundant to existing custodians."  Plaintiffs have uncovered
2    communications sent and/or received by Messrs. Honeyman and Sanders concerning
3    refinery operations in California that did not include any of the custodians agreed to
4    by Valero.  Accordingly, Messrs. Honeyman and Sanders are proper custodians.

5    **B.    An Order Compelling Valero to Run the Modified ESI Searches Is Appropriate**
6

7    Courts routinely grant motions to compel and order the modification or
8    addition of ESI searches, where, as here, the requesting party can demonstrate that:
9    (i) the modification and/or additional searches are likely to generate material
10   relevant to claims or defenses at issue; and (ii) the requested information is
11   proportional to the needs of the case.  *See, e.g.*, *Fenerjian v. Nong Shim Co., Ltd.*,
12   No. 13-cv-04115-WHO (DMR), 2016 WL 1019669, at *6 (N.D. Cal. Mar. 15, 2016)
13   (granting motion to compel and ordering responding party to run additional search
14   where "the discovery requests were relevant, and th[e] [additional] ESI search would
15   not likely cause an undue burden"); *Walker v. Life Ins. Co. of the Sw.*, No. CV 10-
16   09198-JVS (JDEx), 2018 WL 5905121, at *2 (C.D. Cal. Oct. 23, 2018) (granting
17   motion to compel and ordering party to run additional ESI search designed to
18   capture documents identified by the requesting party as "very likely relevant to the
19   issues in the case"); *Urena v. Earthgrains Distrib., LLC*, No. SACV 16-00634-CJC
20   (DFMx), 2017 WL 8238274, at *1 (C.D. Cal. Apr. 21, 2017) (granting in part
21   motion to compel and ordering defendant to run "five additional search terms
22   identified in the moving papers"); *Martinelli v. Johnson & Johnson*, No. 15-CV-
23   1733 MCE DB, 2017 WL 9496074, at *1-2 (E.D. Cal. Feb. 13, 2017) (directing
24   defendants to "meet and confer with plaintiff to develop a list of additional search
25   terms and additional custodians").

26   **1.    Valero's Approach to ESI Searches**

27   Valero has adopted an approach to its ESI searches that differs markedly from
28   that employed by all other Defendants that have agreed to produce material in

1    response to the Requests.   Dixon Decl., ¶¶11-12.   While other Defendants have

2    agreed to run a multitude of ESI searches, Valero has stated that it will run just five

3    ESI searches.  *Id.*, ¶12 & Ex. 10.   In addition, Valero alone has insisted that each of

4    its ESI searches be tied to a specific Request.   *Id.*, ¶12.   In an effort to move

5    discovery forward, Plaintiffs agreed to adopt Valero's approach for ESI searches, but

6    this decision was conditioned on the understanding that Valero would agree to

7    reasonable modifications to the proposed ESI searches.   As outlined below,

8    however, Valero has refused to adopt many of the modifications proposed by

9    Plaintiffs to Searches #2, #3 and #5[14] even though the modifications are narrowly

10   tailored and consistent with the ESI searches (and revisions) agreed to by other

11   Defendants.   Given that Valero has agreed to run just five ESI searches, it is

12   imperative that Plaintiffs' modifications, which were designed to capture information

13   necessary to support the claims at issue, be incorporated into Searches #2, #3, and

14   #5.

15                          **a.      Search #2**

16        Plaintiffs believe their proposed modifications to Search #2 are necessary to

17   capture documents and relevant material responsive to the Requests.  *Compare* Ex.

18   15 at 6 (Valero's proposed search), *with* Ex. 16 at Ex. A, p. 1 (Plaintiffs' proposed

19   modified search).   Search #2 is intended to respond to Request No. 2, which seeks,

20   among other things, inter-defendant communications concerning refinery outages,

21   pricing, supply, and distribution.[15] These communications, and other information

22

23   [14] The identified "Searches" correspond to Plaintiffs' Requests (e.g., "Search #2"

24   relates to Request No. 2).

25   [15] Request No. 2 states:

26        All documents regarding or constituting communications YOU had
         with any other Defendant regarding: refinery operations with respect

27        to California, including planned, unplanned, delayed or foregone
         maintenance, shutdowns or outages (sometimes referred to as

28        "Turnarounds"); the pricing of gasoline products, including CARBOB

1    responsive to Request No. 2, are critical to establishing that Defendants conspired to

2    manipulate the price of gasoline sold in California.

3        From the outset, Valero has insisted that each document pulled by Search #2:

4    (i) hit on three different sets of terms; and (ii) that there can be no more than 50

5    words between the second and third terms.  Ex. 15 at 6.  In addition, Valero has

6    refused to modify the search to include the additional terms proposed by Plaintiffs—

7    such as "delay!,"[16] "postpone!," "forgo!" and "canel!"—even though these terms

8    plainly address the very heart of the conduct alleged in this action—namely, that

9    Valero (along with other Defendants) coordinated refinery shutdowns and gasoline

10   imports and exports in order to drive up the prices in California.  *Id.*

11       Valero's proposed limitations and refusal to modify the terms of Search #2

12   serve no purpose other than to prevent Plaintiffs from obtaining evidence clearly

13   responsive to Request No. 2, and, ultimately, relevant to the federal and state

14   antitrust claims at issue here.  Indeed, Plaintiffs can envision myriad instances where

15   the proposed limitations and/or refusal to accept the modified terms would result in

16   otherwise responsive material being excluded from production.  For instance, under

17   Valero's limitations to Search #2, an email exchange between a Valero employee

18   and another defendant coordinating the timing of refinery shutdowns would ***not*** be

19   captured if the individuals failed to specify the exact type of petroleum product, or

20   identify the West Coast region, within 50 words of their discussion regarding the

21   timing of the refinery shutdown.  Such arbitrary limitations are contrary to the letter

22   and spirit of applicable discovery rules.  *See Epstein v. MCA, Inc.*, 54 F.3d 1422,

---

24        gasoline, with respect to California; the supply and distribution of
         gasoline products, including CARBOB gasoline, as well as the import
25       and export of such products with respect to California; and alleged,
         actual, attempted or potential anticompetitive business practices in the
26       Oil and Gas Industry.

27   [16] Here "!" is being used as a wildcard character.  It signifies that a search a will
28   include all documents that contain the letters preceding the character "!".

1423 (9th Cir. 1995) ("The Federal Rules of Civil Procedure creates a 'broad right of discovery' because 'wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth.'")  (citing *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir.1993)).  Accordingly, Valero should be compelled to run Search #2 as modified by Plaintiffs.

### b.    Search #3

Search #3 is intended to respond to Request No. 3, which seeks, among other things, documents and communications concerning any meeting with Valero employees and any other Defendant where the following topics were discussed: refinery operations (including planned or unplanned shutdowns and or maintenance turnarounds); the pricing of refined petroleum products with respect to California; and the import and export of such products.[17]  *Compare* Ex. 15 at 7 (Valero's proposed search), *with* Ex. 16 at Ex. A, p. 2 (Plaintiffs' proposed modified search). Documents and communications concerning meetings where Valero and other parties discussed these topics are critical to establishing the nature and scope of Defendants' alleged price fixing conspiracy.  Nevertheless, Valero has insisted that each document pulled by Search #3: (i) hit on four different sets of terms; and (ii) that there can be no more than 50 words between the second, third, and fourth terms.

---

[17] Request No. 3 states:

 If not captured by Request for Production No. 2, all documents or communications reflecting the identity of the attendees, the agenda, the minutes, transcripts, recording, and expense reports, or any other materials distributed, collected, or prepared for any meeting involving two or more of the defendants in which the following subjects were discussed: refinery operations with respect to California, including planned, unplanned, delayed or foregone maintenance, shutdowns or outages (sometimes referred to as "Turnarounds"); the pricing of gasoline products, including CARBOB gasoline, with respect to California; the supply and distribution of gasoline products, including CARBOB gasoline, as well as the import and export of such products with respect to California; and alleged, actual, attempted or potential anticompetitive business practices in the Oil and Gas Industry.

Ex. 15 at 7.   In addition, Valero has refused to modify the search to include additional terms proposed by Plaintiffs—such as "talk!," "spoke!," "speak!," "dinner" or "drinks"—even though such terms would very likely be used to describe a meeting between Valero and other Defendants regarding the alleged pricing fixing conspiracy.   *Id.*   Accordingly, for these reasons and those discussed in section IV.B.1.a *supra*, Valero should be compelled to run Search #3 as modified by Plaintiffs.

### c.   Search #5

Search #5 is intended to respond to Request No. 5, which seeks, among other things, documents and communications concerning any external communications made by Valero (or its employees) regarding refinery operations, gasoline prices, supply, gasoline inventory, or gasoline trading activities in California.[18]   *Compare* Ex. 15 at 9 (Valero's proposed search), *with* Ex. 16 at Ex. A, p. 4 (Plaintiffs' proposed modified search).   Documents and communications of this nature are necessary to substantiate claims that Valero (along with other Defendants) made false and/or misleading statements about refinery operations, supply, and trading activities in order to drive up the price of gasoline.   Despite the importance of this information, Valero has insisted that each document pulled by Search #5 must: (i) hit on four different sets of terms; and (ii) that there can be no more than 50 words between the second and third terms.   Ex. 15 at 9.   In addition, Valero has refused to

---

[18] Request No. 5 states:

> All documents and communications regarding or constituting the public or external release or dissemination of information about: the supply of gasoline (including supply disruptions) in California; California gasoline prices, inventory, demand, or trading activity, or imports or exports of gasoline to or from California; California refinery operations or refinery operations producing gasoline for the California market, including refinery shutdowns, maintenance and repairs, planned or unplanned outages, production levels, and product output mix.

1  modify the search to include additional terms proposed by Plaintiffs —such as "off

2  the record," "delay!," "postpone!," "cancel!," or "flar!"[19]—even though such terms

3  would have likely been used in the documents and communications discussing

4  Valero's external communications.  *Id.*  Accordingly, for these reasons and those

5  discussed in section IV.B.1.a *supra*, Valero should be compelled to run Search #3 as

6  modified by Plaintiffs.

7  **2.    Plaintiffs' Modified ESI Searches Are Proportionate**

8  Valero has attempted to justify its refusal to modify the proposed ESI searches

9  on the ground such revisions are "patently unreasonable" and "would result in

10  hundreds of thousands of irrelevant hits."  Ex. 15 at 2.  Yet, to date, Valero has

11  provided nothing beyond bald assertions to meet their burden of demonstrating that

12  Plaintiffs' proposed modifications to the ESI searches are improper and/or

13  disproportionate to the needs of the case.  *See Walker*, 2018 WL 5905121, at *2

14  ("Upon a motion to compel discovery, the movant has the initial burden of

15  demonstrating relevance. In turn, ***the party opposing discovery has the burden*** of

16  showing that discovery should not be allowed, and also has the burden of clarifying,

17  explaining and supporting its objections with competent evidence.") (citing *United*

18  *States v. McGraw–Hill Cos.*, No. CV 13-779-DOC JCGx, 2014 WL 1647385, at *8

19  (C.D. Cal. Apr. 15, 2014)).  In fact, Valero has, with one exception,[20] refused to

20  provide hits counts for the modified ESI searches.  Dixon Decl., ¶21.  In addition,

21  Valero has failed to provide any cost estimate for running Searches #2, #3, and #5 as

22

23  [19] "Flaring" is a safety procedure intended to burn off excess hydrocarbons that
24  cannot    be    recaptured    during    the    refining    process.  *See*
   https://www.exxonmobil.com.sg/en-sg/Company/Overview/Who-we-
   are/Understanding-flares (last accessed Oct. 21, 2019).

25
26  [20] Valero recently indicated that running Search #2 with all of Plaintiffs' proposed
   modifications (Ex. 16 at Ex. B) would generate approximately 141,000 additional
27  documents than if Valero ran part of Plaintiffs' proposed Search #2 (Ex. 16 at Ex. A,
   p.1) by omitting any thorough search of communications via inter defendant domains.
28  *Id.*, ¶21.

1  modified, despite repeated requests from Plaintiffs.  *Id.*  Valero's continued

2  unwillingness to substantiate its assertions is suspect, given that Plaintiffs have

3  already agreed to work within Valero's ESI search framework in order to address its

4  concerns about the cost of responding to the Requests.  Regardless, Valero's

5  unsubstantiated claims of burden are insufficient to demonstrate the modified

6  searches should be disallowed.  *See Walker*, 2018 WL 5905121, at *1 (granting

7  motion to compel and ordering responding party to run additional search where it

8  failed to "offer[] any evidence, as opposed to argument, regarding the asserted

9  burden, in terms of cost or time"); *Fenerjian*, 2016 WL 1019669, at *6 (ordering

10 responding party to perform additional ESI search where responding "put forth no

11 evidence that the requested discovery is disproportionate or unduly burdensome").

12 Accordingly, Plaintiffs request that Valero be compelled to run ESI searches #2, #3,

13 and #5 as modified by Plaintiffs.

14 **V.     CONCLUSION**

15      For all the reasons set forth above, Plaintiffs respectfully request that the

16 Court grant this motion and enter an order compelling Valero to: (i) search the

17 custodial materials of Bill Day, Scott Lively, Eric Honeyman, and David Sanders;

18 (ii) and run the ESI searches as modified in Exhibit 16 of the Dixon Decl.

19

20 DATED: October 22, 2019                    Respectfully submitted,

21                                            ROBBINS ARROYO LLP

22                                            *s/ Jenny L. Dixon*

23                                            GEORGE C. AGUILAR
                                             JENNY L. DIXON
24                                            5040 Shoreham Place
                                             San Diego, CA 92122
25                                            Telephone: (619) 525-3990
                                             Facsimile: (619) 525-3991
26                                            gaguilar@robbinsarroyo.com
                                             jdixon@robbinsarroyo.com
27

28                                            *Counsel for Plaintiffs Joshua Ebright, Paul*

1                 *Lee, and David Rinaldi*

2

3                 ROBBINS GELLER
                  RUDMAN & DOWD LLP

4

5                 *s/ Lonnie A. Browne*

                PATRICK J. COUGHLIN (111070)

6                 STEVEN W. PEPICH (116086)

7                 DAVID W. MITCHELL (199706)
                ALEXANDRA S. BERNAY (211068)

8                 CARMEN A. MEDICI (248417)

9                 LONNIE A. BROWNE (293171)
                655 West Broadway, Suite 1900

10                San Diego, CA 92101
                Telephone: (619) 231-1058

11                Facsimile: (619) 231-7423

12                patc@rgrdlaw.com
                stevep@rgrdlaw.com

13                davidm@rgrdlaw.com
                xanb@rgrdlaw.com

14                cmedici@rgrdlaw.com
                lbrowne@rgrdlaw.com

15

16                ARMEN ZOHRABIAN(230492)
                Post Montgomery Center

17                San Francisco, CA 94101
                Telephone: (415) 288-4545

18                Facsimile: (415) 288-4534
                azohrabian@rgrdlaw.com

19

20                HARTLEY LLP
                JASON S. HARTLEY (192514)

21                101 W. Broadway, Suite 820
                San Diego, CA 92101

22                Telephone: (619) 400-5822
                Facsimile: (619) 400-5832

23                hartley@hartleyllp.com

24                *Counsel for Plaintiff Persian Gulf Inc.*

25

26

27

28

1

2

## **SIGNATURE CERTIFICATION**

3

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative

4

Policies and Procedures Manual, I hereby certify that the content of this document is

5

acceptable to Lonnie Browne, counsel for plaintiff Persian Gulf Inc., and that I have

6

obtained his authorization to affix his electronic signature to this document.

7

*s/ Jenny L. Dixon*

8

JENNY L. DIXON

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>MEET AND CONFER CERTIFICATE</u>

In accordance with Rule 37(a)(1) of the Federal Rules of Civil Procedure and Rule 26.1 of the Local Rules of Practice for the United States District Court for the Southern District of California, undersigned counsel for plaintiffs Joshua Ebright, Paul Lee, and David Rinaldi certifies that counsel for Plaintiffs met and conferred with counsel for Valero in good faith via written correspondence, emails, and telephonic conferences concerning the issues raised in this motion prior to requesting Court action.

_s/ Jenny L. Dixon_
JENNY L. DIXON
ROBBINS ARROYO LLP
5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
jdixon@robbinsarroyo.com

*Counsel for Plaintiffs Joshua Ebright, Paul Lee, and David Rinaldi*

1394711