Robert A. Mittelstaedt (State Bar No. 60359)
ramittelstaedt@jonesday.com
David C. Kiernan (State Bar No. 215335)
dkiernan@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700

Rasha Gerges Shields (State Bar No. 218248)
rgergesshields@jonesday.com
JONES DAY
555 South Flower Street, 50th Floor
Los Angeles, CA 9007
Telephone: (213) 489-3939
Facsimile: (213) 243-2539

Cheryl L. O'Connor (State Bar No. 173897)
coconnor@jonesday.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612
Telephone: (949) 851-3939
Facsimile: (949) 553-7539
Attorneys for Defendant
TESORO REFINING & MARKETING COMPANY LLC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

PERSIAN GULF INC., Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

BP WEST COAST PRODUCTS LLC, et al.,

Defendants.

CASE NO. 3:15-cv-01749-DMS-AGS

**CLASS ACTION**

**MEMORANDUM IN SUPPORT OF TESORO REFINING AND MARKETING COMPANY'S MOTION TO COMPEL PLAINTIFFS' RESPONSES TO TESORO'S INTERROGATORIES AND REQUESTS FOR ADMISSION**

Date: March 17, 2020
Time: 4:00 p.m.
Courtroom: 5C
Magistrate Judge: Hon. Andrew G. Schopler

RICHARD BARTLETT, et al., Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

BP WEST COAST PRODUCTS LLC, et al.,

Defendants.

Lead Case No. 3:18-cv-01374-DMS-AGS
*(Consolidated with Case No. 3:18-cv-01377-DMS-AGS)*

**CLASS ACTION**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 1

III. LEGAL STANDARD ..... 5

IV. ARGUMENT ..... 6

A. Tesoro's Discovery Requests Seek Relevant, Non-Privileged Information And Are Not Premature ..... 6

B. Listing Non-Responsive Documents Is Insufficient ..... 9

C. Plaintiffs' Boilerplate Objections Are Improper ..... 11

D. The Court Should Deem RFA Nos. 1, 2, And 5-9 Admitted ..... 12

V. CONCLUSION ..... 13

# TABLE OF AUTHORITIES

**Page**

**CASES**

*A. Farber & Partners, Inc. v. Garber*,
234 F.R.D. 186 (C.D. Cal. 2006) ... 11

*Asea, Inc. v. S. Pac. Transp. Co.*,
669 F.2d 1242 (9th Cir. 1981) ... 12

*Cable & Comput. Tech. v. Lockheed Saunders*,
175 F.R.D. 646 (C.D. Cal. 1997) ... 9

*City of Santa Clara v. Astra USA, Inc.*,
2009 WL 2868428 (N.D. Cal. Sept. 2, 2009) ... 7

*Conlon v. United States*,
474 F.3d 616 (9th Cir. 2007) ... 13

*Duran v. Cisco Sys., Inc.*,
258 F.R.D. 375 (C.D. Cal. 2009) ... 11

*Flemming v. Escort, Inc.*,
2011 WL 573599 (D. Idaho Feb. 13, 2011) ... 9

*Folz v. Union Pac. RR. Co.*,
2014 WL 357929 (S.D. Cal. 2014) ... 7

*Franklin v. Smalls*,
2012 WL 5077630 (S.D. Cal. Oct. 18, 2012) ... 5

*Gamevice, Inc. v. Nintendo Co.*,
2019 WL 2763008 (N.D. Cal. July 2, 2019) ... 9

*Heilman v. Cook*,
2017 WL 491737 (S.D. Cal. Feb. 6, 2017) ... 6

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
2012 WL 4111728 (N.D. Cal. Sept. 17, 2012) ... 5, 7, 8

*In re Questar Pharms., Inc.*,
2014 WL 12570960 (C.D. Cal. 2014) ... 7

*La. Pac. Corp. v. Money Mkt. 1 Inst'l Inv. Dealer*,
285 F.R.D. 481 (N.D. Cal. 2012) ... 6, 9

*Logtale, Ltd. v. IKOR, Inc.*,
2013 WL 3967750 (N.D. Cal. July 31, 2013) ... 9

*M2 Software, Inc. v. M2 Communications, L.L.C.*,
217 F.R.D. 499 (C.D. Cal. 2003) ... 11

*Mancini v. Ins. Corp. of New York*,
2009 WL 1765295 (S.D. Cal. June 18, 2009) .......... 10

*Nehad v. Browder*,
2016 WL 1428069 (S.D. Cal. 2016) .......... 9

*Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*,
2016 WL 2757289 (S.D. Cal. May 12, 2016) .......... 12

*Reinsdorf v. Skechers U.S.A., Inc.*,
2012 WL 12882125 (C.D. Cal. May 11, 2012) .......... 10

*Scott v. Keller*,
2010 WL 1267772 (E.D. Cal. Mar. 31, 2010) .......... 13

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(b)(1) .......... 5

Fed. R. Civ. P. 33(d) .......... 9, 10

Fed. R. Civ. P. 36(a)(1) .......... 6

Fed. R. Civ. P. 36(a)(4) .......... 6, 12

Fed. R. Civ. P. 36(a)(6) .......... 6

Fed. R. Civ. P. 36 advisory committee's note .......... 13

# I. INTRODUCTION

The principal disagreement between plaintiffs and Tesoro is the timing of when plaintiffs must set forth evidence they claim supports their allegations against Tesoro, or admit they have none.

This action has been pending since 2015. Substantial discovery has been completed over the last 17 months. The discovery cut-off is in less than two months, on March 27. Tesoro's position is that, without further delay, plaintiffs should answer the pending discovery and set forth the evidence (if any) on which they relied in suing Tesoro and anything further they have obtained to date, subject to supplementing if and when they obtain anything further. Plaintiffs acknowledge that they must answer these discovery requests at some point but refuse to do so before the discovery cutoff date. Indeed, plaintiffs refuse to commit to any date by which they will comply with these discovery requests.[1]

# II. BACKGROUND

At this stage of the case, it is a matter of fundamental fairness that plaintiffs disclose the evidence on which they sued Tesoro and anything else they have obtained since then. The complaints do not suffice for that purpose. They refer mostly to "defendants," "major oil companies," "refiners" and other undifferentiated terms that do not disclose which allegations pertain to which defendants. (*See e.g., Persian Gulf* Dkt. 76, ¶¶ 35, 71, 112, 154; *Bartlett* Dkt. 44, ¶¶ 38, 72, 123, 158.) Tesoro is mentioned by name only with respect to four types of conduct: the February 2015 labor strike that shut down the Martinez refinery and other allegedly "suspicious" refinery outages (*id.*, ¶¶ 18, 37, 48, 54); a product exchange agreement with Exxon (*id.*, ¶ 56); "supracompetitive" profits (*id.*, ¶ 76);

[1] Tesoro's first and second set of interrogatories and requests for admission are described below. The requests and plaintiffs' responses are also attached as exhibits to the Declaration of Cheryl L. O'Connor filed in support of this motion.

and lawful, First Amendment-protected membership in trade associations (*id.*, ¶¶ 98-107).

Discovery began in August 2018. The twice-extended deadline to complete fact discovery is March 27, 2020. Discovery has largely been one-sided, with plaintiffs taking much more discovery than Tesoro and the other defendants. Plaintiffs served Tesoro with 22 requests for documents and 17 interrogatories. (O'Connor Decl., ¶ 2.) In response, Tesoro produced nearly one million documents on a rolling basis, starting with nearly some 444,000 documents from September 2018 and March 2019. (*Id.*, ¶ 3.) By August 2019, Tesoro had produced another 439,000 documents. (*Id.*) Tesoro has since produced 5,800 additional documents. (*Id.*) Tesoro also responded to interrogatories on a rolling basis, with an initial and supplemental responses from March to September 2019, including producing another 253,000 data and document files. (*Id.*) Tesoro has answered over 80 follow-up questions regarding its interrogatory responses. (*Id.*) Plaintiffs have deposed one Tesoro employee and noticed four others. (*Id.*, ¶ 2.)

Tesoro served its first and second sets of interrogatories and requests for admissions on plaintiffs in November and December 2019. (*Id.*, ¶¶ 4-5, Exs. A, B, C, D.) These discovery requests require plaintiffs to identify any specific acts by Tesoro that plaintiffs contend are part of the alleged conspiracy, to provide the supporting evidence known to plaintiffs at this time, and to admit or deny that they have no evidence to support certain allegations. If provided on a timely basis, this information may serve as a basis for further discovery, additional Rule 11 motions and Rule 56 motions and, if required, trial preparation.

More specifically, the interrogatories at issue require plaintiffs to describe the facts that support their contentions that Tesoro acted as part of the alleged conspiracy or "against [its] economic self-interest" (Nos. 1 and 2); had refinery outages, shutdowns or maintenance that were "suspicious" or without legitimate business justification (No. 3); decided whether to import or export gasoline as part

of the conspiracy, or "hid information about imports and exports to create an unnecessarily volatile gas market and to drive up prices" (No. 4); decided whether to sell gasoline from inventory as part of the conspiracy (No. 5); made "pretextual" or "erroneous" public statements, including "[i]rregularities in [Tesoro's] record keeping" that "bring into doubt the accuracy and reliability of the maintenance and outage reports (No. 6); and could have safely operated, and produced gasoline at, its refinery in Martinez, California during the labor strike (No. 8). Interrogatory No. 9 requires plaintiffs to identify any communications between a Tesoro trader or employee with any other person not affiliated with Tesoro that was part of the alleged conspiracy. Interrogatory No. 7 seeks all facts that support plaintiffs' denials in response to Requests for Admission Nos. 3 and 4.[2] (O'Connor Decl., ¶¶ 4-5, Exs. A at 7-8, C at 32.)

Like the interrogatories, the requests for admission are tied directly to the complaints. They ask plaintiffs to admit or deny that they are unaware of any evidence to support allegations that Tesoro "had advance secret notice that Exxon would report problems with its Torrance refinery in October 2012" (RFA 1); that Tesoro emissions data contradicted any reports made by Tesoro (RFA 2); that Tesoro "inexplicably moved forward" and refinery maintenance schedules (RFA 3); that Tesoro permitted unsafe conditions at its refineries (RFA 4); that any increase in the price of refined products by Tesoro was against Tesoro's unilateral self-interest (RFA 5); that Tesoro's CEO ever said that Tesoro could refine products at its Martinez refinery despite the labor strike (RFA 6); that Tesoro or any other defendant used any communication by a Tesoro trader or employee to increase the price of refined products (RFA 7); that Tesoro used any information obtained in connection with any trade association for purposes of implementing the

---

[2] Interrogatory Nos. 7 and 10 originally sought all facts that support any response to Tesoro's RFAs other than an unqualified admission. During negotiations with plaintiffs, Tesoro agreed to limit Interrogatory No. 7 and to withdraw Interrogatory No. 10. (*See* O'Connor Decl. ¶ 13, Ex. O.)

alleged conspiracy (RFA 8); and that any defendant used any information obtained from Tesoro for purposes of implementing the alleged conspiracy. (RFA 9.) (O'Connor Decl., ¶¶ 4-5, Exs. B at 18-19, D at 42-43.)

Plaintiffs served their objections and responses to the first and second sets of requests on January 13 and 30, 2020. (O'Connor Decl., ¶¶ 6, 11, Exs. E, F, G, H, K, L, M, N.) In addition to various boilerplate objections, plaintiffs asserted that the interrogatories were premature and could not be answered until additional discovery is completed. (*Id.*) Plaintiffs provided nothing but objections to Interrogatory Nos. 1, 2, 5, and 8-10. (*Id.*, ¶ 6, 11, Exs. E, F, K, L.) For the others, in addition to objecting, they also listed some documents but gave no statement of how any of those documents supposedly was responsive. (*Id.*, ¶ 6, Exs. E & F.) In response to Interrogatory No. 3 ("suspicious" refinery outages), they listed a wide range of documents including OPIS reports, market reviews, internal emails about maintenance, and the like. None of those documents supports the allegation that any refinery outage was "suspicious" or without a legitimate business justification. In fact, many of the documents identify the equipment failure that led to the outage and describe Tesoro's efforts to mitigate the disruption. (*Id.*, ¶ 7a.) For Interrogatory No. 4 (imports/exports), plaintiffs listed documents that show Tesoro considered and made some export sales of gasoline, but none suggests Tesoro acted against its own economic self-interest in doing so. (*Id.*, ¶ 7b.) And for Interrogatory No. 6 (false or misleading public statements), plaintiffs identified internal Tesoro emails and copies of news reports, but none of the listed documents suggests that Tesoro provided incorrect information to anyone. (*Id.*, ¶ 7c.)

Plaintiffs objected to each RFA as premature and improperly calling for legal conclusions. Despite these objections, plaintiffs denied RFA Nos. 3 (refinery maintenance "inexplicably moved forward") and 4 (dangerous conditions at refineries), but refused to admit or deny any of the other seven RFAs, claiming

they need additional time to review discovery and asserting that the requests are improper "trial by request-for-admission." (O'Connor Decl., ¶¶ 6, 11, Exs. G, H, M, & N.)

On January 17, 2020, Tesoro sent a letter to plaintiffs outlining deficiencies in the discovery responses and requesting to meet and confer. (*Id.*, ¶ 8.) On January 28 and February 3, 2020, Tesoro and plaintiffs conferred on the responses to the first and second sets of discovery requests. (*Id.*, ¶ 9, 12.) Plaintiffs conceded that Tesoro and other defendants have provided substantial discovery and that—at some point—plaintiffs need to provide complete answers. But plaintiffs refused to provide a date certain or even an estimate of when they will do so. They would not even commit to provide complete responses by the discovery cut-off. Plaintiffs represented that their other objections would not prevent them from answering the discovery requests. (*Id.*)

## III. LEGAL STANDARD

Rule 26 provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "A party answering interrogatories has an affirmative duty to furnish any and all information available to the party." *Franklin v. Smalls*, 2012 WL 5077630, at *6, (S.D. Cal. Oct. 18, 2012) (internal quotation marks omitted). "At bottom, the party answering interrogatories must furnish such information as is available to the party." *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 2012 WL 4111728, at *4 (N.D. Cal. Sept. 17, 2012) (internal quotation marks omitted). "If [the party is] unable to supply the requested information, the party may not simply refuse to answer, but must state under oath that he is unable to provide the information and set forth the efforts he used to obtain the information." *Id.* (internal quotation marks omitted).

Rule 36 provides that "[a] party may serve on any other party a written request to admit . . . the truth of any matters within the scope of Rule 26(b)(1) relating to . . . facts, the application of law to fact, or opinions about either." Fed. R. Civ. P. 36(a)(1). If a responding party does not admit a matter, the party "must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4). "[W]hen good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." *Id.* A court that finds that an RFA answer does not comply with Rule 36 "may order either that the matter is admitted or that an amended answer be served." Fed. R. Civ. P. 36(a)(6).

"If the party requesting discovery is dissatisfied with any of the responses, the party may move to compel further responses by informing the court which discovery requests are the subject of [the] motion to compel, and, for each disputed response, inform the [c]ourt why the information sought is relevant and why [the opposing party's] objections are not justified." *Heilman v. Cook*, 2017 WL 491737, at *1 (S.D. Cal. Feb. 6, 2017) (Schopler, M.J.) (quoting *United States v. Baisden*, 881 F. Supp. 2d 1203, 1205 (E.D. Cal. 2012) (internal quotation marks omitted). "Once this burden is met, 'the party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections with competent evidence.'" *Id.* (quoting *La. Pac. Corp. v. Money Mkt. 1 Inst'l Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012)).

## IV. <u>ARGUMENT</u>

### A. Tesoro's Discovery Requests Seek Relevant, Non-Privileged Information And Are Not Premature

Plaintiffs do not dispute that Tesoro's discovery requests seek relevant, non-privileged information. Indeed, the requests are directly tied to plaintiffs' allegations and identify the specific paragraphs in the complaints for which Tesoro

seeks evidence.  (*See* O'Connor Decl., ¶¶ 4-5, Exs. A, C  (Interrogatory Nos. 2, 3, 4, 6), B, D  (Requests for Admission Nos. 1-4 & 6).

Contrary to plaintiffs' primary objection, the discovery requests are not "premature."  Contention interrogatories must be answered upon "the substantial completion of pretrial discovery." *Folz v. Union Pac. RR. Co.*, 2014 WL 357929 (S.D. Cal. 2014).  While the Ninth Circuit has not set a bright line rule regarding when substantial discovery is deemed completed, courts in this district have consistently held that substantial discovery is completed where less than two months of discovery remain.  *See In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 2012 WL 4111728, at *4 (contention interrogatories not premature where core case pending for three years and fact discovery set to close in less than two months); *City of Santa Clara v. Astra USA, Inc.*, 2009 WL 2868428, at *2 (N.D. Cal. Sept. 2, 2009) (refusing to delay responses to contention interrogatories when less than two months of discovery remained).  Measuring by a different yardstick, other courts have found discovery substantially completed where the plaintiffs had a month to review the bulk of the defendant's document production.  *See In re Questar Pharms., Inc.*, 2014 WL 12570960, at *1 (C.D. Cal. 2014).

As shown above, Tesoro has substantially completed complying with plaintiffs' discovery requests.  Discovery has been ongoing for over 17 months.  Defendants have produced over 3 million documents.  Tesoro alone has produced approximately 900,000 documents, most of which were provided by August 13, 2019—six months ago.  (O'Connor Decl., ¶ 3.)  The additional documents Tesoro has provided in follow-up responses amount to approximately 0.5% of its total production.  This is more than sufficient to trigger plaintiffs' obligation to respond.  *Questar*, 2014 WL 12570960, at *1.  Moreover, Tesoro has responded to all of plaintiffs' interrogatories and over 80 follow-up questions regarding their interrogatories.  (O'Connor Decl., ¶ 3.)  Plaintiffs have had six months to review

the majority of Tesoro's discovery responses, far more time than in *Questar*. And as in *NCAA Student Athlete* and *City of Santa Clara*, this case has been pending for years, and is now on the brink of the discovery cut-off. Indeed, during the meet and confer, plaintiffs conceded that a number of defendants, "including Tesoro," had completed substantial discovery. (O'Connor Decl., ¶¶ 9, 12.)

Contrary to plaintiffs' argument, antitrust cases are no exception to the rule that plaintiffs cannot wait until the end of discovery to answer contention interrogatories. *NCAA Student Athlete* was an antitrust class action with multiple defendants, in which not all defendants had completed their document productions, including the defendant seeking to compel discovery. In fact, that defendant had just produced 48% of its documents only one month earlier. But because the case had been pending for three years, discovery was set to close in less than two months, and the requests sought information relevant to summary judgment and class certification motions, the court ordered that plaintiffs must "respond to [the defendant's] contention interrogatories before completing discovery from [that defendant]." 2012 WL 4111728, at *4. Surely, then, plaintiffs' stalling based on *other* defendants' recently-produced discovery here cannot pass muster. If plaintiffs think that documents produced by other defendants are evidence that Tesoro conspired, they can and should supplement their answers when they obtain and review those documents. But that is no excuse to refuse to set forth, now, the evidence, if any, on which they based their allegations and may have discovered in the 18 months since the operative complaints were filed.

Nor is plaintiffs' decision to depose only one Tesoro employee to date a sufficient excuse for delaying their answers to the contention interrogatories. That timing was a matter of plaintiffs' own choosing. And plaintiffs' failure to move to compel other defendants to produce documents more quickly does not justify avoiding Tesoro's requests. A contrary rule "would create a perverse incentive: If a party did not want to respond to contention interrogatories, it would just conduct

all its discovery at the very end of the discovery period and then claim that it cannot respond to the interrogatories because not enough discovery has been done." *La. Pac. Corp.*, 285 F.R.D. at 492.

"Plaintiffs are not entitled to withhold information until they obtain to their own satisfaction all discovery to which they believe they are entitled. They must provide their responses now based on the information they presently have available." *Nehad v. Browder*, 2016 WL 1428069, at *6 (S.D. Cal. 2016) (citation omitted); *see also Cable & Comput. Tech. v. Lockheed Saunders*, 175 F.R.D. 646, 652 (C.D. Cal. 1997) (holding that the plaintiffs "must answer [the contention] interrogatories with information as they now possess"). If they have no information to support their contentions against Tesoro, they must admit that now.

**B. Listing Non-Responsive Documents Is Insufficient**

Plaintiffs list thousands of documents in lieu of a narrative response to Interrogatory Nos. 3, 4, 6, and 7. These document dumps are an improper application of Rule 33(d).

"Rule 33(d) applies to fact interrogatories, but courts have consistently held that it cannot be used with respect to contention interrogatories. That makes sense because the legal contentions of a party are not contained in old business records, and so must be explained by counsel in an answer to an interrogatory." *Flemming v. Escort, Inc.*, 2011 WL 573599, at *2 (D. Idaho Feb. 13, 2011) (citations omitted). Indeed, courts have found that even a response of "a one or two sentence narrative" and reference "to various documents" is "not sufficient" in responding to contention interrogatories. *Logtale, Ltd. v. IKOR, Inc.*, 2013 WL 3967750, at *3 (N.D. Cal. July 31, 2013). Rather, plaintiffs must provide sufficient narrative responses, as "[t]here is no way [defendants] can look through a stack of documents and discover [plaintiffs'] contentions." *Gamevice, Inc. v. Nintendo Co.*, 2019 WL 2763008, at *2 (N.D. Cal. July 2, 2019). Plaintiffs have failed to provide a single narrative response to Tesoro's interrogatories, and will

not commit to doing so in future supplemental responses. (O'Connor Decl., ¶ 9.) This is plainly insufficient.

This is especially true because it is not apparent from the documents how they support plaintiffs' contentions. Indeed, in many cases, the documents appear to support *Tesoro's defenses*. For example, in response to Interrogatory No. 3, plaintiffs cite various documents as evidence of "suspicious" shutdowns, or shutdowns made "without legitimate business justification." Instead, the documents discuss various non-conspiratorial and non-suspicious business plans, such as postponing maintenance to increase production in a period of tight supply, developing contingency procedures if a specified refinery unit needed to be taken down, and legitimate business issues for responding to the USW strike. (*Id.*, ¶ 7.) In response to Interrogatory No. 4, the documents cited by plaintiffs do not support the allegations; they show only that Tesoro considered and made some export sales of gasoline out of California or the West Coast generally, not that those decisions were against Tesoro's economic self-interest. (*Id.*) Without some narrative explanation, it is unclear why plaintiffs believe these decisions were conspiratorial, or that Tesoro "hid" these decisions at all, much less for a nefarious reason.

Even if it Rule 33(d) applied to contention interrogatories under some circumstances, plaintiffs' application remains deficient. Rule 33(d) requires that the producing party specify responsive business records "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d); *see Reinsdorf v. Skechers U.S.A., Inc.*, 2012 WL 12882125, at *2 (C.D. Cal. May 11, 2012) ("Plaintiff's reliance on Rule 33(d), using thousands of pages of documents, failed to provide a reasonable response to this interrogatory."); *Mancini v. Ins. Corp. of New York*, 2009 WL 1765295, at *2 (S.D. Cal. June 18, 2009) ("[R]eferring to a wide universe of documents does not specify the records in sufficient detail."). But in response to Interrogatory No. 3 ("suspicious" outages, shutdowns, or maintenance), for

example, plaintiffs identify a Bates ranges of over 23,000 documents ("TRMC-00146183-TRMC-00170104; TRMC-00465942-TRMC-00489863"), with no explanation as to how these documents are relevant. Nor is relevance apparent from the documents themselves, which appear to be a random collection of Tesoro trader Eric Pestano's documents without any support for plaintiffs' contention that any Tesoro outage, shutdown, or maintenance was "suspicious" or without legitimate business justification. This is not a proper response to Tesoro's contention interrogatories.

**C. Plaintiffs' Boilerplate Objections Are Improper**

Plaintiffs' boilerplate objections are similarly improper. Plaintiffs object that Tesoro's discovery requests impose burdens or duties beyond those imposed by any applicable rules, seek information protected by privacy, are subject to privilege, are not relevant or proportional to the needs of the case, seek facts relied on by plaintiffs and their counsel in drafting the complaint, require legal conclusions, and are vague, ambiguous, overly broad, burdensome, duplicative, and cumulative. (O'Connor Decl., ¶¶ 6, 11, Exs. E, F, G, H, K, L, M, & N.) These "unexplained and unsupported boilerplate objections are improper." *Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 379 (C.D. Cal. 2009). For example, plaintiffs cannot sweepingly object that Tesoro's interrogatories seek information protected by privacy and are vague, ambiguous, overly broad, burdensome, duplicative, or cumulative without identifying the purportedly private information sought, the allegedly vague and ambiguous terminology, or any evidentiary support explaining why the requests are overly broad, burdensome, duplicative, or cumulative. *See M2 Software, Inc. v. M2 Communications, L.L.C.*, 217 F.R.D. 499, 501 (C.D. Cal. 2003) ("General Objections are not sufficient to raise any substantial, meaningful or enforceable objections to any particular discovery request."); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("As an initial matter, general or boilerplate objections such as 'overly burdensome and

harassing' are improper—especially when a party fails to submit any evidentiary declarations supporting such objections."). Indeed, plaintiffs appear to recognize these objections are infirm, and agreed in the meet and confer that these objections would not prevent them from answering Tesoro's discovery requests. (O'Connor Decl. ¶¶ 9, 11.)

**D. The Court Should Deem RFA Nos. 1, 2, And 5-9 Admitted**

Plaintiffs' refusal to admit or deny seven RFAs on the hope that they might find some evidence in the future is improper and violates Rule 36, as this Court already held in compelling them to answer Chevron's RFAs. *See* Dkt. 236 & 237. ("[T]he requests for admission are not premature. They do not require further discovery . . . they are requesting materially factual information."). Similarly, plaintiffs do not require further discovery to answer whether they are aware of any evidence in response to Tesoro's RFAs.

"[A]n evasive denial, one that does not 'specifically deny the matter,' or a response that does not set forth 'in detail' the reasons why the answering party cannot truthfully admit or deny the matter, may be deemed and admission." *Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1245 (9th Cir. 1981); *see also Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 2016 WL 2757289, at *2 (S.D. Cal. May 12, 2016) (characterizing objections to RFAs as "evasive [and] insufficient under Rule 36(a)(4)" and deeming the RFAs admitted). Plaintiffs' repeated assertion of improper objections and infirm responses to RFAs cannot be seen as good faith. Accordingly, the Court should not simply compel plaintiffs to provide further responses, as it did before. Instead, it should deem plaintiffs' deficient responses to Tesoro's RFA Nos. 1, 2, and 5-9 to be admissions.

Plaintiffs' objection that Tesoro's RFAs improperly ask plaintiffs "to either affirm or refute important aspects of their allegations" and constitute "trial-by-request-for-admission" fares no better. Tesoro's RFAs target specific factual allegations and ask plaintiffs to admit or deny that they are unaware of any

evidence to support those allegations. This falls squarely within the "two vital purposes" Rule 36 serves—"first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be." Fed. R. Civ. P. 36 advisory committee's note; *see also Conlon v. United States*, 474 F.3d 616, 622 (9th Cir. 2007) (RFAs "are sought, first, to facilitate proof with respect to issues that cannot be determined from the case, and second, to narrow the issues by eliminating those that can be."); *Scott v. Keller*, 2010 WL 1267772, at *1 (E.D. Cal. Mar. 31, 2010) (The goal of requests for admissions is to "eliminate from the trial matters as to which there is no genuine dispute." (internal quotation marks omitted)). Plaintiffs' attempt to avoid admitting or denying the RFAs on this basis also warrants deeming the RFAs admitted, or, in the alternative, compelling further responses.

## V. <u>CONCLUSION</u>

For all these reasons, plaintiffs should be ordered to provide full and complete narrative answers to Interrogatory Nos. 1-9, and to do so within one week or such other time that the Court deems appropriate. Tesoro also respectfully requests that the Court deem Requests for Admission Nos. 1, 2, and 5-9 admitted, or alternatively, compel plaintiffs to provide supplemental responses admitting or denying these requests within one week or such other time that the Court deems appropriate.

Dated: February 12, 2020 JONES DAY

By: <u>*/s/ Cheryl L. O'Connor*</u>
Cheryl L. O'Connor

Attorneys for Defendant
TESORO REFINING & MARKETING COMPANY LLC