ROBBINS GELLER RUDMAN & DOWD LLP
PATRICK J. COUGHLIN (111070)
STEVEN W. PEPICH (116086)
DAVID W. MITCHELL (199706)
ALEXANDRA S. BERNAY (211068)
CARMEN A. MEDICI (248417)
LONNIE A. BROWNE (293171)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
patc@rgrdlaw.com
stevep@rgrdlaw.com
davidm@rgrdlaw.com
xanb@rgrdlaw.com
cmedici@rgrdlaw.com
lbrowne@rgrdlaw.com

Attorneys for Plaintiff Persian Gulf Inc.
[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERSIAN GULF INC., Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>BP WEST COAST PRODUCTS LLC, et al.,<br><br>Defendants. | Case No. 3:15-cv-01749-DMS-AGS<br><br>CLASS ACTION<br><br>DATE: March 6, 2020<br>TIME: 1:30 p.m.<br>CTRM: 13A<br>JUDGE: Hon. Dana M. Sabraw |
| RICHARD BARTLETT, et al., Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BP WEST COAST PRODUCTS LLC, et al.,<br><br>Defendants. | Lead Case No. 18-cv-01374-DMS-AGS (consolidated with No. 18-cv-01377-DMS-AGS)<br><br>CLASS ACTION |

PLAINTIFFS' RESPONSE IN OPPOSITION TO TESORO REFINING AND MARKETING COMPANY'S MOTION FOR SANCTIONS UNDER RULE 11

4831-5841-4517.v1

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | BACKGROUND | 2 |
| | A. The Earnings Call | 2 |
| | B. Plaintiff's Original Complaint | 3 |
| | C. Tesoro's Motion to Dismiss the OC and Request for Judicial Notice | 4 |
| | D. Plaintiff's First Amended Complaint | 5 |
| |    1. Tesoro's Motion to Dismiss the FAC and Request for Judicial Notice | 7 |
| |    2. The FAC's Allegations Against Tesoro Far Transcend the Earnings Call | 8 |
| III. | ARGUMENT | 9 |
| | A. Tesoro's Failure to Request Judicial Notice Dooms Its Belated Argument | 9 |
| | B. Tesoro's Motion Is Meritless | 10 |
| IV. | CONCLUSION | 13 |

4831-5841-4517.v1

# TABLE OF AUTHORITIES

Page

**CASES**

*Barber v. Miller*,
  146 F.3d 707 (9th Cir. 1998) .................................................................................. 4

*Bertucelli v. Carreras*,
  467 F.2d 214 (9th Cir. 1972) ................................................................................ 11

*Himaka v. Buddhist Churches of Am.*,
  917 F. Supp. 698 (N.D. Cal. 1995) ...................................................................... 11

*Hinrichsen v. Quality Loan Serv. Corp.*,
  No. 16cv0690 DMS (BLM), 2017 WL 4844531
  (S.D. Cal. Aug. 31, 2017) ..................................................................................... 10

*Hunt v. Sunny Delight Beverages Co.*,
  No. 8:18-cv-00557-JLS-DFM, 2018 WL 6786265
  (C.D. Cal. Dec. 18, 2018) ........................................................................ 11, 12, 13

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ................................................................................ 9

*Operating Eng'rs Pension Tr. v. A-C Co.*,
  859 F.2d 1336 (9th Cir. 1988) .............................................................................. 10

*Retail Flooring Dealers of Am., Inc. v. Beaulieu of Am., LLC*,
  339 F.3d 1146 (9th Cir. 2003) ................................................................................ 4

*Song FI, Inc. v. Google, Inc.*,
  No. C 14-5080 CWx, 2016 WL 4180214
  (N.D. Cal. Aug. 8, 2016) ............................................................................... 11, 13

*Townsend v. Holman Consulting Corp.*,
  929 F.2d 1358 (9th Cir. 1991) ........................................................................ 10, 11

*United Nat'l Ins. Co. v. R&D Latex Corp.*,
  242 F.3d 1102 (9th Cir. 2001) .............................................................................. 11

**Page**

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 11 ................................................................................................................*passim*
    Rule 11(b)(3) ................................................................................................................ 10
    Rule 12 ............................................................................................................... 4, 7, 9

## I. INTRODUCTION

Defendant Tesoro Refining and Marketing Company's ("Tesoro") motion for sanctions ("motion") is ill-advised and ill-tempered. ECF No. 353. Nearly a dozen pages of mudslinging and other diversions boil down to a single paragraph and a single row of a table that Tesoro seeks to strike from the First Amended Complaint ("FAC") that Persian Gulf Inc. ("Plaintiff" or "Persian Gulf"), filed in 2016. ECF No. 76. The challenged paragraph and row both contain accurate quotes and descriptions of Tesoro CEO Geoff Goff's comments during a transcribed February 12, 2015 earnings call. Tesoro's belated argument is doubly dubious because its motion fails to acknowledge that the FAC ensured there would be no misunderstandings as to Goff's comments by including a hyperlink to a website containing the transcript. This is why Tesoro's motion to dismiss the FAC and its reply brief, filed 40 and 39 months ago, respectively, did not ask the Court to take judicial notice of the transcript or contest the accuracy of the FAC's quotes and descriptions – additional facts Tesoro omits from its motion.[1]

The most logical explanation for Tesoro's repeated failure to contest the accuracy of the FAC's quotes and descriptions of Goff's transcribed statements is that there was no good-faith basis to do so. Over three years later, however, Tesoro has eschewed good faith and decorum for a Rule 11 motion that it never should have filed. Rule 11 motions are extreme, and they can have career-altering consequences. It is improper for Tesoro to file such a motion under the circumstances here, and Persian Gulf respectfully requests that the Court deny Tesoro's motion in its entirety.

---

[1] Tesoro brings this motion against both Persian Gulf and plaintiffs David Rinaldi, Joshua Ebright and Paul Lee ("Consumer Plaintiffs"). The Consumer Plaintiffs' complaint (CP ECF No. 44 ("CP Cpt.")) includes the same information regarding Tesoro as the complaint filed earlier by Persian Gulf. References to "CP ECF No." are to the docket entries in *Bartlett v. BP West Coast Products LLC*, No. 3:15-cv-01374-DMS-AGS (S.D. Cal.). The Consumer Plaintiffs adopt in full the arguments set forth here and note that Tesoro also never raised this issue during any of the briefing related to the Consumer Plaintiffs' complaint.

## II. BACKGROUND

### A. The Earnings Call

On February 12, 2015, Tesoro hosted an earnings call (the "Earnings Call") during which its CFO (Steven Sterin) and CEO (Greg Goff) made multiple statements regarding Tesoro's refinery capabilities in the face of a recently "declared . . . strike at several locations across the country" (O'Connor Ex. 2 at 5),[2] including the following:

> This guidance assumes the strike continues on through the end of the first quarter, as we are prepared to continue safely operating our facilities.
>
> The throughput and manufacturing costs assume our Martinez facility will remain on terminal operations until the end of the strike. ***However, we're in the process of developing plans to restart the facility*** . . . .[3]

*Id.* at 4 (Sterin).

> We were notified late on January 31 that the USW-represented employees at our Anacortes, Washington refinery; the Carson portion of our Los Angeles, California refinery; and our Martinez refinery, filed notices of intent to strike effective February 1.
>
> Our comprehensive contingency planning has prepared us to safely operate our facilities. We successfully completed the transitions and are operating the Carson portion of our Los Angeles refinery and our Anacortes refinery. Given the USW decision to strike during planned ongoing maintenance at our Martinez refinery, the safest operating option ***at the time*** was to safely idle the remaining process units.

*Id.* at 5 (Goff).

Analyst Neil Mehta apparently understood these statements to mean that Tesoro could restart its Martinez refinery even if the strike persisted:

> And then also, you made a comment that you theoretically could restart Martinez even if the strike persists. How would you approach doing that?

*Id.* at 6 (Mehta). Far from disabusing Mehta of this impression, Goff reinforced it:

---

[2] References to "O'Connor Ex." are to the exhibits attached to the Declaration of Cheryl L. O'Connor in support of Tesoro's motion. ECF Nos. 353-2 and 353-3.

[3] Emphasis is added and citations are omitted here and throughout, unless otherwise noted.

> And then finally at Martinez, I think it's important that we were in the process of a major maintenance effort at the refinery when the USW, the international, elected to call a strike. We were just a few days away from turning the process units over from maintenance to the operating groups, so that they could begin the startup process.
>
> Because of the timing of the strike, we made the decision that was in our best interest to be very responsible and just shutdown the remaining units. Because one of the most critical things is a restart of a refinery after it's been down for maintenance.
>
> ***Since that time, we are now developing plans to go back in and restart the refinery and get it up into an operating condition. And that's what we're working on right now. And we'll continue to do that so we can do it in a very safe and efficient manner***.

*Id.* at 6 (Goff). In responding to additional analyst questions, Goff continued to emphasize that notwithstanding the strike, plans were under way to restart the Martinez refinery and that Tesoro was "very comfortable" it could continue running its refineries with its current staffing levels:

> So as we see going now into 2015, the impact of the downtime on Martinez was already felt by the market because it had been down before the disruption. And it's only been a few days since that's happened, that we shut down the rest of the processing units. ***And we'll develop our plan to be able to restart the refinery***.

*Id.* at 9 (Goff responding to question from BofA Merrill Lynch Analyst Doug Leggate).

> Well first, the industry hasn't had a strike like this for 35 years, so it's been a long time. But everyone goes through pretty extensive planning, because the people working in the refineries have to be certified. So there is extensive training, planning that goes on to do that. And ***we feel very comfortable that we can continue on running with the staffing levels we have, the trained and experience people have operating the refineries for – and it's a very long period of time***, Paul.

*Id.* at 15 (Goff responding to question from Barclays Capital analyst Paul Cheng).

### B.   Plaintiff's Original Complaint

This portion of the background section is included for the completeness of the procedural history of this case. The Court should disregard Tesoro's arguments regarding Persian Gulf's original complaint (ECF No. 1-3, Ex. 1 ("OC")) and its initial opposition to Tesoro's first motion to dismiss the OC because they are untimely. Tesoro failed to ask Plaintiff to withdraw any allegations in the OC and

1  failed to ask Plaintiff to withdraw any arguments in its opposition to Tesoro's first
2  motion to dismiss.  Ultimately, Tesoro's motion was rendered moot when the FAC
3  replaced the OC.  Therefore, Tesoro did not, and cannot, comply with Rule 11's 21-
4  day safe-harbor provision as to these filings, which is why Tesoro's motion seeks no
5  relief as to them.  *See, e.g.*, *Retail Flooring Dealers of Am., Inc. v. Beaulieu of Am.,*
6  *LLC*, 339 F.3d 1146, 1150 (9th Cir. 2003) ("We have stated that '[t]he purpose of the
7  safe harbor . . . is to give the offending party the opportunity, within 21 days after
8  service of the motion for sanctions, to withdraw the offending pleading ***and thereby***
9  ***escape sanctions***.  A motion served after the complaint had been dismissed [does] not
10 give [the offending party] that opportunity.'") (quoting *Barber v. Miller*, 146 F.3d
11 707, 710 (9th Cir. 1998)) (emphasis in original).

12     Plaintiff filed the OC in state court on July 7, 2015.  ECF No. 1-3.  Two
13 paragraphs of the OC contained allegations concerning Goff's statements on the
14 Earnings Call.  OC, ¶¶34 & 36.  Rather than contribute to the confusion on which
15 Tesoro's motion depends, Plaintiff will not waste the Court's time comparing the OC
16 to the Earnings Call.

17     **C.  Tesoro's Motion to Dismiss the OC and Request for Judicial Notice**
18
19     On March 7, 2016, Tesoro filed its motion to dismiss the OC (ECF No. 47,
20 "MTD I").  Accompanying Tesoro's MTD I was a Request for Judicial Notice ("RJN
21 I"), in which Tesoro observed that:

22     When deciding a Rule 12 motion, a court may "take into account
23     documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to
24     the [plaintiff's] pleading.'" *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (internal citation omitted). The Ninth Circuit has further held
25     that the "rationale of the 'incorporation by reference' doctrine applies with equal force to internet pages as it does to printed material." *Id.*
26     District courts in the Ninth Circuit routinely take judicial notice of "webpages or documents [that were] specifically referred to in the
27     [complaint]." *See, e.g.*, *In re iPhone 4S Consumer Litig.*, 2013 WL 3829653, at *6 (N.D. Cal. July 23, 2013).

28

ECF No. 47-2 at 2-3.[4]  Tesoro's request extended to six different documents cited in the OC.  Tesoro did ***not*** ask the Court to take judicial notice of the Earnings Call transcript cited in the OC, and Tesoro's MTD I did ***not*** contest the OC's characterization and quotation of Goff's Earnings Call statements.

On April 6, 2016, Plaintiff filed its opposition to Tesoro's MTD I (ECF No. 58, "Opp I").

On April 28, 2016, Tesoro filed its reply to Plaintiff's Opp I (ECF No. 63, "Reply I").  CP ECF No. 76 (Oct. 22, 2018).  Again, Tesoro did ***not*** ask the Court to take judicial notice of the Earnings Call transcript or contest Opp I's characterization in its Reply I.

### D. Plaintiff's First Amended Complaint

On September 22, 2016, Persian Gulf filed its First Amended Complaint.  The FAC featured two references to Goff's statements on the Earnings Call.  Plaintiff used standard punctuation marks to indicate when it was characterizing (*i.e.*, inferring the meaning of) Goff's statements versus quoting them:

> On February 2, 2015, Tesoro shut down its Martinez refinery in the face of a steelworkers' strike, citing "safety" reasons, rather than allowing it to run at less than full capacity during planned maintenance.  Weeks later, Tesoro CEO Geoff Goff told investors that the company could continue to operate refineries indefinitely with reduced staffing levels despite the strike.  Indeed, Tesoro's CEO responded to the strikes by saying, "And we feel very comfortable that we can continue on running with the staffing levels we have, the trained and experience people have operating the refineries for – and it's a very long period of time."

FAC, ¶48; CP Cpt., ¶¶49-50.

> Refineries can run without a full staff once operations are well under way.  Weeks later Tesoro's CEO, Geoff Goff, told investors that the company could continue to operate its refineries indefinitely with reduced staffing levels despite the strike.  Steelworkers complained that management increasingly used contract workers to run refineries.  They would have also been available to run the Martinez facility, raising questions about the "safety" reason for full closure of Martinez.

---

[4] Tesoro's motion to dismiss was filed in the Consumer Plaintiffs' action on September 7, 2018 (CP ECF No. 60).

1  FAC, ¶54; CP Cpt., ¶58.  The FAC not only included a citation to the Earnings Call
2  transcript, but the citation was a hyperlink to a webpage reflecting the transcript.  FAC
3  at 25 n.40.

4       Tesoro's motion does not dare present a side-by-side comparison between the
5  Earnings Call transcript and the language it seeks to strike from the FAC because, as
6  demonstrated below, such a comparison confirms that there is no substantive
7  distinction between the two:

| Earnings Call Transcript | Language Tesoro Seeks to Strike |
|---|---|
| And then finally at Martinez, I think it's important that we were in the process of a major maintenance effort at the refinery when the USW, the international, elected to call a strike. We were just a few days away from turning the process units over from maintenance to the operating groups, so that they could begin the startup process.<br><br>Because of the timing of the strike, we made the decision that was in our best interest to be very responsible and just shutdown the remaining units. Because one of the most critical things is a restart of a refinery after it's been down for maintenance.<br><br>Since that time, we are now developing plans to go back in and restart the refinery and get it up into an operating condition. And that's what we're working on right now. And we'll continue to do that so we can do it in a very safe and efficient manner.<br><br>O'Connor Ex. 2 at 6 (Goff).<br><br>Well first, the industry hasn't had a strike like this for 35 years, so it's been a long time. But everyone goes through pretty extensive planning, because the people working in the refineries have to be certified. So there is extensive training, planning that goes on to do that. And ***we feel very comfortable that we can*** | On February 2, 2015, Tesoro shut down its Martinez refinery in the face of a steelworkers' strike, citing "safety" reasons, rather than allowing it to run at less than full capacity during planned maintenance.  Weeks later, Tesoro CEO Geoff Goff told investors that the company could continue to operate refineries indefinitely with reduced staffing levels despite the strike. Indeed, Tesoro's CEO responded to the strikes by saying, "And we feel very comfortable that we can continue on running with the staffing levels we have, the trained and experience people have operating the refineries for – and it's a very long period of time."<br><br>FAC, ¶48; CP Cpt., ¶¶49-50.<br><br>Refineries can run without a full staff once operations are well under way.  Weeks later Tesoro's CEO, Geoff Goff, told investors that the company could continue to operate its refineries indefinitely with reduced staffing levels despite the strike.  Steelworkers complained that management increasingly used contract workers to run refineries.  They would have also been available to run the Martinez facility, raising questions about the "safety" reason for full closure of Martinez.<br><br>FAC, ¶54; CP Cpt., ¶58. |

| Earnings Call Transcript | Language Tesoro Seeks to Strike |
|---|---|
| *continue on running with the staffing levels we have, the trained and experience people have operating the refineries for – and it's a very long period of time*, Paul.<br><br>*Id.* at 15 (Goff responding to question from Barclays Capital analyst Paul Cheng). | |

### 1. Tesoro's Motion to Dismiss the FAC and Request for Judicial Notice

On October 17, 2016, Tesoro filed its motion to dismiss the FAC (ECF No. 81, "MTD II"). Accompanying Tesoro's MTD II was another Request for Judicial Notice ("RJN II"), in which Tesoro observed that:

> When deciding a Rule 12 motion, a court may "take into account documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (internal citation omitted). The Ninth Circuit has further held that the "rationale of the 'incorporation by reference' doctrine applies with equal force to internet pages as it does to printed material." *Id.*

ECF No. 81-2 at 2. Tesoro's request extended to three different documents cited in the FAC. *Id.* at 1-2. In a tacit admission of the fairness and accuracy of the FAC's quotation and description of Goff's Earnings Call statements, Tesoro once again did ***not*** ask the Court to take judicial notice of the Earnings Call transcript cited in the FAC or contest the FAC's quotation and description.

On November 11, 2016, Plaintiff filed its opposition to Tesoro's MTD II (ECF No. 82, "Opp II"). Again, as set forth above, the Court should disregard Tesoro's arguments as to Persian Gulf's Opp II because they are untimely and Tesoro does not seek to strike any language from the Opp II.

On November 23, 2016, Tesoro filed its reply to Plaintiff's Opp II (ECF No. 85, "Reply II").

Now, more than three years later, Tesoro claims that the exact same publicly available Earnings Call transcript cited in the FAC and ignored in Tesoro's MTD II,

RJN II, and Reply II somehow proves that FAC ¶¶48 and 54's characterization of Goff's comments and Opp II's characterization of FAC ¶48 are "false" and sanctionable. It is irresponsible for Tesoro to seek Rule 11 sanctions under these irrefutable circumstances.[5]

### 2. The FAC's Allegations Against Tesoro Far Transcend the Earnings Call

Plaintiff's allegations regarding Tesoro go far beyond the lone shutdown Goff addressed during the Earnings Call. Indeed, over half (9) of the 17 outages detailed in ¶54 are Tesoro outages, and 8 of the 9 *post-dated* the Earnings Call by 2-10 months – 3 were for refineries *other than* Martinez. FAC, ¶54; CP Cpt., ¶58. In fact, the first Tesoro suspicious shutdown the FAC alleges occurred almost three years **before** the Earnings Call. FAC, ¶37; CP Cpt., ¶40. As the FAC repeatedly makes clear, the most suspicious aspect of all of defendants' shutdowns, including Tesoro's, is their temporal proximity to other alleged coconspirators' shutdowns – not simply the questionable relationship to the strike for one of Tesoro's many alleged shutdowns.

Tesoro's motion refers to this lone February 2015 shutdown as the "central claim" of the case (ECF No. 353-1 at 8), but this shutdown is just 1 of 10 Tesoro shutdowns detailed in the FAC. Tesoro has not taken issue with any of the others. And, as also detailed in the FAC, the company admitted that the labor disruption and other planned maintenance increased margins (profits): "There's no question that during the first quarter [of 2012] with what happened to Tesoro as a result of the disruption at the Martinez refinery because of the labor disruption and then with other operating and planned maintenance things across the whole system, it was very supportive to the margin environment there." Rory Carroll, *Labor dispute at Tesoro refinery boosted margins: CEO*, Reuters (May 8, 2015), https://www.reuters.com/

---

[5] Tesoro's answer to the FAC also demonstrates the weakness of the current motion. In their Answer to the FAC, Tesoro states as to ¶48 that "[t]o the extent Paragraph 48 purports to quote or otherwise discuss the contents of a Tesoro Corporation conference call transcript, no response is required as the document speaks for itself." ECF No. 129 (Tesoro's Answer to FAC), ¶48.

article/us-gasoline-prices-california/labor-dispute-at-tesoro-refinery-boosted-margins-ceo-idUSKBN0NU00N20150509.

## III. ARGUMENT

### A. Tesoro's Failure to Request Judicial Notice Dooms Its Belated Argument

At the pleading stage, a Court is not "'required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Moreover, a "'court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.'" *Id.* As Tesoro repeatedly acknowledged in its multiple successful for requests for judicial notice:

> When deciding a Rule 12 motion, a court may "take into account documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (internal citation omitted). The Ninth Circuit has further held that the "rationale of the 'incorporation by reference' doctrine applies with equal force to internet pages as it does to printed material." *Id.* . . .

ECF No. 47-2 at 2-3; ECF No. 81-2 at 2. Accordingly, in moving to dismiss the OC and the FAC, Tesoro knew that the Court was in no way bound to accept the characterization of Goff's Earnings Call statements if they were "unwarranted deductions" from, "unreasonable inferences" from, or contradicted by, Goff's actual Earnings Call statements. Tellingly, against this backdrop, Tesoro elected not to contest the characterizations in Plaintiff's OC, FAC, Opp I, or Opp II. Tesoro also elected not to include the Earnings Call transcript among the multiple documents it successfully moved the Court to judicially notice. Either Tesoro's lawyers repeatedly committed legal malpractice – and we do not believe they did – by not reviewing the Earnings Call transcript underlying these "important" allegations (ECF No. 353-1 at 11) or they reviewed the transcript and rightly concluded that they lacked a good-faith basis to attack the FAC's quotations and descriptions of Goff's statements. Either way, at Tesoro's implicit invitation, the Court agreed with Plaintiff's characterization

of Goff's Earnings Call statements in its June 19, 2018 order denying Tesoro's MTD II. ECF No. 86 at 10 ("Tesoro's CEO told investors that the refinery could have continued to operate indefinitely with reduced staffing despite the strike.").

### B. Tesoro's Motion Is Meritless

"'Rule 11 is an extraordinary remedy, one to be exercised with extreme caution.'" *Hinrichsen v. Quality Loan Serv. Corp.*, No. 16cv0690 DMS (BLM), 2017 WL 4844531, at *1 (S.D. Cal. Aug. 31, 2017) (Sabraw, J.) (quoting *Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988)). Cases warranting imposition of sanctions for frivolous actions are "rare and exceptional." *Operating Eng'rs*, 859 F.2d at 1344.

As the Ninth Circuit has observed, complaints serve as the legal "vehicle through which [the plaintiff] enforces his substantive legal rights," and "[e]nforcement of those rights benefits not only individual plaintiffs but may benefit the public." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1991). "[I]t would be counterproductive to use Rule 11 to penalize the assertion of non-frivolous substantive claims, even when the motives for asserting those claims are not entirely pure." *Id.* Allegations in complaints may be challenged only for "'frivolousness,'" which the Ninth Circuit uses as a "shorthand . . . to denote a filing that is both baseless and made without a reasonable and competent inquiry." *Id.*[6] Further, Rule 11(b)(3)'s standard provides simply that to the best of the certifying person's "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" "the factual contentions [therein] have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). This standard is to be

---

[6] Unlike the "'improper purpose'" inquiry, "'frivolousness'" is not concerned with the motivations of the signing attorney, and "subjective evidence of the signer's purpose is to be disregarded" so long as the contested papers are not baseless. *Townsend*, 929 F.2d at 1362.

applied objectively, as Tesoro admits. *See* ECF No. 353-1 at 7; *see also Townsend*, 929 F.2d at 1362.

Under the irrefutable circumstances here, it is Tesoro's motion, not the FAC, that is frivolous. Tellingly, Tesoro's motion never actually identifies as false or lacking evidentiary support any specific language from the two paragraphs it seeks to strike. Of course, this failure to identify begets another failure: Tesoro fails to establish the actual falsity of any language from the two paragraphs it seeks to strike. Rather than even attempting to carry its burden, Tesoro just resorts to mudslinging and diverting the Court's focus from the FAC to other filings ***that are no longer subject to Rule 11 due to Tesoro's years-long delay in raising its arguments***. A simple comparison of the actual language of the Earnings Call transcript to the actual language Tesoro seeks to strike from the FAC confirms why Tesoro did not attempt to carry its burden and why it resorted to improper tactics: the Earnings Call transcript provides the evidentiary support for ¶48 and the portion of ¶54 that Tesoro seeks to strike.[7] Therefore, it is Tesoro's belated motion that is "both baseless and made without a reasonable and competent inquiry." *Townsend*, 929 F.2d at 1362.

Tesoro's reliance on *Hunt v. Sunny Delight Beverages Co.*, No. 8:18-cv-00557-JLS-DFM, 2018 WL 6786265 (C.D. Cal. Dec. 18, 2018), is bizarre.[8] In that case, the plaintiffs claimed certain product labels were misleading and attached images the

---

[7] A claim "is 'well-grounded in fact' if an independent examination reveals 'some credible evidence' in support of a party's statements." *Himaka v. Buddhist Churches of Am.*, 917 F. Supp. 698, 710 (N.D. Cal. 1995). A claim that has some plausible basis, even a weak one, is sufficient to avoid sanctions under Rule 11. *See United Nat'l Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1117-18 (9th Cir. 2001); *Song FI, Inc. v. Google, Inc.*, No. C 14-5080 CWx, 2016 WL 4180214, at *1 (N.D. Cal. Aug. 8, 2016). The FAC's accurate quotations and descriptions of Goff's Earnings Call statements clear this bar by a wide margin.

[8] Tesoro's reliance on *Bertucelli v. Carreras*, 467 F.2d 214, 215 (9th Cir. 1972), is also misplaced. In that civil rights case brought on behalf of a prisoner, the complaint claimed that an arrest warrant was not signed by a magistrate as required by California law. *Id*. at 215 n.4. Reference to the public record demonstrated this was not true. This is a far cry from the instant case where the material quoted is accurately cited and Tesoro's argument is related to Plaintiff's characterization of the meaning of the properly quoted language.

1. plaintiffs claimed were true and accurate depictions of the labels. *Hunt*, 2018 WL 6786265, at *1. The defendant sought to introduce evidence that the labels were not true and accurate depictions of its products' actual labels. *Id*. at *2. The court, however, declined to take judicial notice of the defendant's evidence, accepted the plaintiffs' allegations as true, "including the accuracy of the disputed image," and relied on the plaintiffs' representations in denying the defendant's motion to dismiss. *Id*. Almost immediately thereafter, the defendant moved "for Rule 11 sanctions against Plaintiffs, alleging that Plaintiffs defrauded the Court by knowingly including inaccurate images of the 'Orange Strawberry' and 'Orange Pineapple' Products' labels in the First Amended Complaint and inducing the Court to rely on such images and related allegations in its consideration of Defendant's motion to dismiss." *Id*. Among the evidence the defendant submitted in support of its motion were its actual product labels and "deposition testimony from Plaintiff Jones and Plaintiff Hunt confirming that the disputed images embedded in the First Amended Complaint are not in fact 'true and accurate representations' of the labels Plaintiff Jones or Plaintiff Hunt actually purchased." *Id*. at *3.

The disparity between *Hunt* and the case at bar could not be greater. The *Hunt* defendant challenged the complaint's depictions of its labels in its motion to dismiss. Tesoro did ***not*** challenge Plaintiff's characterizations in any of its motions to dismiss or reply briefs. The *Hunt* defendant asked the court to consider the actual labels in connection with its motion to dismiss. Tesoro did ***not*** ask this Court to review the actual Earnings Call transcript in connection with its motions to dismiss. The *Hunt* defendant filed its Rule 11 motion, which was based on the same argument as its motion to dismiss, less than six months after filing its motion to dismiss and almost immediately after the Court denied the motion to dismiss. Tesoro filed its Rule 11 motion, which is based on a completely new argument that Tesoro chose not to raise in its motion to dismiss, more than three years after filing its motion to dismiss and more than 18 months after this Court denied the motion to dismiss. The *Hunt*

- 12 -   3:15-cv-01749-DMS-AGS

defendant's Rule 11 motion was based on an objectively and admittedly false allegation. Tesoro's Rule 11 motion is based on objectively accurate quotations and characterizations of objectively verifiable statements. Tesoro's resort to such a disparate case highlights the baselessness and recklessness of its motion.[9]

## IV. CONCLUSION

Tesoro's motion is unsupported and unsupportable – in addition to being over three years late. Irrespective of what Tesoro hoped to gain by its filing, the motion is legally and factually meritless and should be denied.

DATED: February 21, 2020

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
PATRICK J. COUGHLIN
STEVEN W. PEPICH
DAVID W. MITCHELL
ALEXANDRA S. BERNAY
CARMEN A. MEDICI
LONNIE A. BROWNE

s/ Alexandra S. Bernay
ALEXANDRA S. BERNAY

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
ARMEN ZOHRABIAN
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)

---

[9] Tesoro's citation of *Google*, 2016 WL 4180214, is equally perplexing and revealing. There, the "Plaintiffs present[ed] no evidence to support" their allegations. *Id*. at *3. In stark contrast, here the FAC itself contained a hyperlink to the very transcript the FAC accurately quoted and described.

|  |  |
|---|---|
|  | HARTLEY LLP<br>JASON S. HARTLEY<br>101 West Broadway, Suite 820<br>San Diego, CA  92101<br>Telephone:  619/400-5822<br>619/400-5832 (fax) |
|  | Attorneys for Plaintiff Persian Gulf Inc. |
| DATED:  February 21, 2020 | ROBBINS LLP<br>GEORGE C. AGUILAR<br>JENNY L. DIXON<br>MICHAEL J. NICOUD |
|  | s/ George C. Aguilar<br>GEORGE C. AGUILAR |
|  | 5040 Shoreham Place<br>San Diego, CA 92122<br>Telephone: 619/525-3990<br>619/525-3991 (fax) |
|  | Attorneys for Plaintiffs Richard Bartlett, Kristine Snyder, Joshua Ebright, Paul Lee and David Rinaldi |

## SIGNATURE CERTIFICATION

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures Manual, I hereby certify that the content of this document is acceptable to the above signatories, and that I have obtained each of the foregoing person's authorization to affix his or her electronic signatures to this document.

Dated:  February 21, 2020
                            s/ Alexandra S. Bernay
                            ALEXANDRA S. BERNAY

4831-5841-4517.v1