ROBBINS GELLER RUDMAN & DOWD LLP
PATRICK J. COUGHLIN (111070)
STEVEN W. PEPICH (116086)
DAVID W. MITCHELL (199706)
ALEXANDRA S. BERNAY (211068)
CARMEN A. MEDICI (248417)
LONNIE A. BROWNE (293171)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
patc@rgrdlaw.com
stevep@rgrdlaw.com
davidm@rgrdlaw.com
xanb@rgrdlaw.com
cmedici@rgrdlaw.com
lbrowne@rgrdlaw.com

Attorneys for Plaintiff
[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERSIAN GULF INC., Individually and on Behalf of All Others Similarly Situated,<br>Plaintiff,<br>vs.<br>BP WEST COAST PRODUCTS LLC, et al.,<br>Defendants. | Case No. 3:15-cv-01749-DMS-AGS<br><br>CLASS ACTION<br><br>DATE: April 8, 2020<br>TIME: 4:00 p.m.<br>CTRM: 5C/Fifth Floor<br>JUDGE: Hon. Andrew G. Schopler |

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF PERSIAN GULF INC.'S MOTION SEEKING FINDINGS OF FACT AND CONCLUSIONS OF LAW AS TO DEFENDANT CHEVRON U.S.A. INC.

**[REDACTED]**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1
II. STATEMENT OF RELEVANT FACTS ..... 3
A. Procedural History ..... 3
B. Relevant Factual History ..... 4
1. Chevron's Excuses for Its Failures to Preserve Relevant Documents Are Not Credible ..... 4
2. Chevron's Claim that Chat Logs Were "Personal" Is Belied by Substantial Evidence ..... 4
III. LEGAL ARGUMENT ..... 7
A. The Court Possesses Broad Authority to Deal with Discovery Failures ..... 7
1. Chevron Had an Obligation to Preserve Chat Logs and Instant Messages, but Failed to Do So ..... 9
2. Chevron Acted with a Culpable State of Mind ..... 10
3. The Evidence Lost Was Relevant ..... 10
IV. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

Page

## CASES

*AmeriPride Servs., Inc. v. Valley Indus. Serv., Inc.*,
No. S-00-113 LKK/JFM, 2006 WL 2308442
(E.D. Cal. Aug. 9, 2006) ........ 8

*Apple Inc. v. Samsung Elecs. Co. Ltd.*,
888 F. Supp. 2d 976 (N.D. Cal. 2012) ........ 9

*Brooks v. Felker*,
No. 2:08-cv-2512 KJM KJN P, 2011 WL 2313021
(E.D. Cal. June 9, 2011) ........ 4

*Compass Bank v. Morris Cerullo World Evangelism*,
104 F. Supp. 3d 1040 (S.D. Cal. 2015) ........ 9

*Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*,
No. C 06-3359 JF (RS), 2009 WL 1949124
(N.D. Cal. July 2, 2009),
*modified by* 2009 WL 248556 (N.D. Cal. Aug. 12, 2009) ........ 11

*HM Elecs., Inc. v. R.F. Techs., Inc.*,
No. 12cv2884-BAS-MDD, 2015 WL 4714908
(S.D. Cal. Aug. 7, 2015),
*vacated in part*, 171 F. Supp. 3d 1020
(S.D. Cal. 2016) ........ 10

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
No. 13 Civ. 7789 (LGS), 2016 WL 5108131
(S.D.N.Y. Sept. 20, 2016) ........ 11

*In re London Silver Fixing, Ltd., Antitrust Litig.*,
332 F. Supp. 3d 885 (S.D.N.Y. 2018) ........ 11

*In re Napster, Inc. Copyright Litig.*,
462 F. Supp. 2d 1060 (N.D. Cal. 2006) ........ 4, 8, 9, 10

**Page**

*In re NTL, Inc. Sec. Litig.*,
244 F.R.D. 179 (S.D.N.Y. 2007),
*aff'd sub nom. Gordon Partners v. Blumenthal*,
No. 02 Civ. 7377 (LAK), 2007 WL 1518632
(S.D.N.Y. May 17, 2007) ........ 8, 10, 11

*In re Petters Co., Inc.*,
606 B.R. 803 (Bankr. D. Minn. 2019) ........ 12

*In re Telxon Corp. Sec. Litig.*,
No. 5:98CV2876, 2004 WL 3192729
(N.D. Ohio July 16, 2004) ........ 7

*Leon v. IDX Sys. Corp.*,
464 F.3d 951 (9th Cir. 2006) ........ 7

*Lopez v. Santoyo*, No. 09cv00108 W(RBB),
2012 WL 5427957 (S.D. Cal. Nov. 7, 2012) ........ 4, 9

*Nursing Home Pension Fund v. Oracle Corp.*,
254 F.R.D. 559 (N.D. Cal. 2008) ........ 8

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
306 F.3d 99 (2d Cir. 2002) ........ 8, 10, 11

*Thompson v. Dep't of Housing and Urban Dev.*,
219 F.R.D. 93 (D. Md. 2003) ........ 4

*U.S. Legal Support, Inc. v. Hofioni*,
No. 2:13-cv-1770 LKK AG, 2014 WL 172336
(E.D. Cal. Jan. 15, 2014) ........ 4

*World Courier v. Barone*,
No. C 06-3072 TEH, 2007 WL 1119196
(N.D. Cal. Apr. 16, 2007) ........ 8

*Zubulake v. UBS Warburg LLC*,
229 F.R.D. 422 (S.D.N.Y. 2004) ........ 10

**Page**

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
Rule 30(b)(6) .......... 5

## I. INTRODUCTION

The facts here demonstrate that in the face of a litigation hold and with explicit knowledge of the types of materials that were requested, Defendant Chevron U.S.A. Inc. ("Chevron") failed to preserve evidence relevant to this litigation, including crucial evidence related to Chevron's gasoline trading business (trader chat logs and instant messages) and its communications with other co-defendants. This failure has prejudiced Plaintiff Persian Gulf Inc. ("Persian Gulf" or "Plaintiff"), who now seeks findings of fact related to Chevron's spoliation of evidence. Persian Gulf wants a complete factual record for the District Court to consider the appropriate recourse at later stages of this litigation (*e.g.*, an adverse inference at summary judgment, adverse-inference instruction at trial, etc.).

The facts here are simple: In July 2015, after Persian Gulf commenced this case in state court and served document requests specifically seeking trader communications and instant messages, Chevron instituted a litigation hold for a number of witnesses, including West Coast Trader, Rick Pluimer. Despite this hold, Chevron now claims that it failed to preserve Pluimer's (or any other relevant custodians') instant messages for two reasons. First, Chevron claims it did not save such messages because it was not company practice to do so. Of course, that is the primary purpose of a litigation hold. Second, Chevron claims that the instant message platform and account Pluimer used was a personal account not connected to Chevron's systems and therefore Chevron was not responsible for preserving such messages. This claim defies reality. Chevron traders, like its co-defendants, rely heavily on instant message platforms such as Yahoo! to conduct Chevron's business in the form of millions of dollars' worth of trades of gasoline. They use these systems to trade, to exchange information (often non-public information) and to conduct other company business. Employees include their Yahoo! or ICE messaging account in

their work-email signatures and the few preserved snippets of chats demonstrate that Pluimer's chats contain important and highly relevant information.[1]

When Plaintiff sought additional information regarding why the instant messages were not turned over, Chevron claimed that it did not understand until September 2018 that Plaintiff had sought instant messages. But Plaintiff's requests for production had specifically called for such information and documents, yet Chevron failed to preserve them.[2] In short, Chevron knew exactly what Plaintiff sought, but failed to ensure these relevant materials were kept. As such, Plaintiff respectfully requests that the Court adopt its proposed findings of fact and conclusions of law regarding the destroyed instant message communications.[3]

---

1 In a few isolated instances Mr. Pluimer's chat transcripts were copied and pasted into emails that were then produced in this litigation. Also, in a few instances chats between Mr. Pluimer and co-defendant traders were produced by those other co-defendants. These snippets provide tantalizing clues about what the full record of chat logs would reveal.

2 In Plaintiff's First Request for Production of Documents to Chevron, served in July 2015, Request for Production No. 9 specifically asks Chevron to "[p]rovide all documents or data files that refer, relate to or capture conversations between your traders or operators and other entities, including affiliates, or conversations between or among your traders and your operators." Ex. 1 at 7 (Emphasis is added and citations and footnotes are omitted, unless otherwise noted. Unless otherwise noted, references to "Ex." are to the exhibits attached to the Declaration of Alexandra S. Bernay in Support of Plaintiff Persian Gulf Inc.'s Motion Seeking Findings of Fact and Conclusions of Law as to Defendant Chevron U.S.A. Inc. ("Bernay Decl."), filed concurrently.). Request for Production No. 10 called for "[r]ecordings of trader telephone conversations, emails, or IMM conversations that related in any way to buying or selling petroleum products at least part of which was sold within California." *Id.* at 8. While Chevron refused to produce documents related to these 2015 requests, the original complaint and requests put them on notice and did in fact result in Chevron issuing a litigation hold, which should have meant these specifically requested records were preserved. They were not. Thus, by the time Plaintiff was permitted to propound requests for production after removal to this federal court, Chevron's failure to preserve such records effectively mooted Plaintiff's requests, which also extended to Yahoo! Messenger instant messages relevant to this case.

3 [redacted] Chevron's argument that Yahoo! accounts are "personal" even less credible.

## II. STATEMENT OF RELEVANT FACTS

### A. Procedural History

Since July 2015, Plaintiff Persian Gulf has sought materials related to defendants' (including Chevron's) gasoline trading business, including trader chat logs and instant messages. Despite this, Chevron did not produce chat logs or instant messages, except for less than 30 snippets of messages that had been cut and pasted into emails. As discovery has progressed, and the productions were reviewed, Plaintiff realized that unlike many other defendants, Chevron failed to produce chat logs and instant messages. When the parties began the process of scheduling depositions in mid-December 2019, counsel for Persian Gulf specifically raised the issue of Pluimer's missing chat logs and instant messages and requested clarity regarding the issue since the depositions were coming up. *See* Bernay Decl., ¶3. Counsel for Persian Gulf wrote a detailed letter regarding the matter on January 23, 2020, after not receiving enough information regarding the status of the chat logs and instant messages. *Id.*, ¶4. On February 11, 2020, counsel for Chevron sent a lengthy letter denying that it had failed to preserve relevant materials and claiming that the chat logs and instant messages did not need to be preserved because its employees' Yahoo! accounts were "personal" and that the messages need not be retained because it was not Chevron's practice to do so. *Id.*, ¶5. On February 14, 2020, counsel for Persian Gulf responded to the February 11, 2020 letter detailing how and why Chevron's claims were unavailing and requesting a final meet and confer regarding the matter. *Id.*, ¶6. The parties further met and conferred regarding the issue on February 19, 2020 and on February 26, 2020, but did not come to any resolution. *Id.*, ¶7.

### B. Relevant Factual History

#### 1. Chevron's Excuses for Its Failures to Preserve Relevant Documents Are Not Credible

Chevron's "company policy" claim holds no sway because "'[o]nce the duty to preserve attaches, a party must "suspend any existing policies related to deleting or destroying files and preserve all relevant documents related to the litigation."'" *Lopez v. Santoyo*, No. 09cv00108 W(RBB), 2012 WL 5427957, at *7 (S.D. Cal. Nov. 7, 2012) (citing *Brooks v. Felker*, No. 2:08-cv-2512 KJM KJN P, 2011 WL 2313021 (E.D. Cal. June 9, 2011)). "'[T]he failure to preserve electronic or other records, once the duty to do so has been triggered, raises the issue of spoliation of evidence and its consequences.'" *U.S. Legal Support, Inc. v. Hofioni*, No. 2:13-cv-1770 LKK AG, 2014 WL 172336, at *3 (E.D. Cal. Jan. 15, 2014) (citing *Thompson v. Dep't of Housing and Urban Dev.*, 219 F.R.D. 93, 100 (D. Md. 2003)). *See also In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1070 (N.D. Cal. 2006) (holding that, even if the accused party had a "'long standing polic[y]'" of deleting emails, it was "required to cease deleting emails once the duty to preserve attached"). Here, Chevron's claims that it was not its policy to save chats or instant messages is of no weight because it knew by July 2015 that such messages were specifically mentioned in document requests and that issues related to gasoline trading were part and parcel of the state court complaint. Once Chevron had that knowledge, it should have ensured that custodians held chat logs and instant messages and its wholesale failure to do so has prejudiced Plaintiff.

#### 2. Chevron's Claim that Chat Logs Were "Personal" Is Belied by Substantial Evidence

Chevron's secondary claim, that the chat logs were "personal" and thus outside the ambit of its litigation hold is patently ridiculous. [redacted]

4811-8958-2262.v1



[4] See Ex. 33 (TRMC-03176244). Chevron's Rule 30(b)(6) witness, Chris Yates specifically testified See Ex. 34 (Yates Tr.) at 166:9-14. Indeed, Testimony by other defendants' employees further demonstrates In their depositions, traders Eric Pestano and Hunter Henderlite See Ex. 35 (Pestano Tr.) at 126:2-20; Ex. 36 (Henderlite Tr.) at 147:1-14. See Ex. 36 (Henderlite Tr.) at 144:10-22. Ex. 37 (Roveda Rough Tr.) at 231:8-234:23. Use of these platforms was so ubiquitous that when Yahoo! Messenger scrapped its older systems, numerous stories appeared in the national press about the change because "tens of thousands of oil traders around the globe have relied on the Yahoo system when logging trades for

---

[4] *See, e.g.*, Exs. 3-33 (*see, e.g.*, BPWC-PG-00609702, BPWC-PG-00639986, BPWC-PG-00640329, BPWC-PG-00640331, BPWC-PG-00645122, BPWC-PG-00645224, BPWC-PG-00691785, BPWC-PG-00716169, BPWC-PG-00716253, BPWC-PG-00900268, BPWC-PG-00900284, BPWC-PG-01833131, BPWC-PG-01833278, BPWC-PG-01833284, CUSA_PG-BAR-000053035, CUSA_PG-BAR-000059299, CUSA_PG-BAR-000277837, CUSA_PG-BAR-000304675, CUSA_PG-BAR-000389424, CUSA_PG-BAR-000393012, CUSA_PG-BAR-000955777, CUSA_PG-BAR-000956120, CUSA_PG-BAR-000958022, CUSA_PG-BAR-000958732, CUSA_PG-BAR-000959531, CUSA_PGBAR-000960498, CUSA_PG-BAR-000965083, TRMC-03172994, TRMC-03174132, TRMC-03174153, TRMC-03176244).

millions of barrels of crude and fuels such as gasoline every day." Ex. 38 at 1. The new version of Yahoo! Messenger made some changes, including the inability to archive chats, that "d[id] not meet the industry's standards for compliance." *See also* Ex. 39 at 2-3 ("Oil traders on Friday were lamenting the imminent demise of their main communication tool, Yahoo Messenger, which has been an industry standard since the late 1990s. . . . Its free instant messaging technology revolutionized the industry, helping usher in a new era of high-speed communication that changed the way millions of barrels of oil traded daily.").

Chats provided by other defendants between other traders and Pluimer show that key issues in the case [5] [6] Pluimer's chats in other defendants' productions while minimal, show that he was communicating with other traders regarding matters central to the litigation. These

[5]

[6] These issues and others that are central to this case were routinely discussed via instant messenger

other chats provide evidence that what was lost by Chevron's failure to preserve was relevant to the litigation.

## III. LEGAL ARGUMENT

### A. The Court Possesses Broad Authority to Deal with Discovery Failures

Spoliation of evidence can result in severe prejudice.

In *Leon v. IDX Sys. Corp.*, 464 F.3d 951 (9th Cir. 2006), the Ninth Circuit affirmed the district court's finding of prejudice and dismissal of plaintiff Leon's claims of violations of the False Claims Act, Title VII, the Americans with Disabilities Act and state law, and imposition of monetary sanctions against Leon based upon Leon's spoliation of evidence. *Leon*, 464 F.3d at 955. Leon had deleted 2,200 files from a laptop computer issued by his employer, defendant IDX Systems Corporation ("IDX"). *Id.* The court found that the failure to preserve and, indeed, the destruction of the files "'threatened to distort the resolution' of the case . . . because any number of the 2,200 files could have been relevant to IDX's claims or defenses, although it is impossible to identify which files and how they might have been used." *Id.* at 960.

Indeed, prejudice can take myriad forms, as in *In re Telxon Corp. Sec. Litig.*, No. 5:98CV2876, 2004 WL 3192729 (N.D. Ohio July 16, 2004), where the court found that the parties seeking sanctions had been prejudiced by third-party defendant auditor PricewaterhouseCooper, LLP's ("PwC") failure to cooperate in discovery in at least three ways:

> (1) PwC's failure to [properly] produce [evidence] adversely affected [their] decisions as to whom to depose and which questions to ask deponents; (2) . . . deprived [them] of the opportunity to examine how PwC's audit evolved and the timing, nature, extent, and purpose of changes in the audit; and (3) . . . slowed [their] discovery of relevant information and [i]ncreased the cost of discovery.

*Id.* at *34. The court concluded that "[b]ecause PwC's conduct has made it impossible to try this case with any confidence in the justice of the outcome, PwC should bear the burden created by its conduct." *Id.* at *35.

Chevron had an obligation to preserve evidence at the time it was destroyed; Chevron destroyed the evidence knowing it was obligated to preserve it; and the evidence destroyed by Chevron was likely to have been highly relevant to Plaintiff's claims such that a reasonable trier of fact could find that the destroyed evidence would support Plaintiff's claims. *See World Courier v. Barone*, No. C 06-3072 TEH, 2007 WL 1119196, at *1-*2 (N.D. Cal. Apr. 16, 2007); *Napster*, 462 F. Supp. 2d at 1078; *see also In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 192-93 (S.D.N.Y. 2007), *aff'd sub nom. Gordon Partners v. Blumenthal*, No. 02 Civ. 7377 (LAK), 2007 WL 1518632 (S.D.N.Y. May 17, 2007).

Finally, it should be noted that Chevron need not have acted in bad faith. A finding of bad faith is not necessary. Rather: "'simple notice of "potential relevance to the litigation"'" is sufficient to satisfy the culpable state-of-mind requirement. *AmeriPride Servs., Inc. v. Valley Indus. Serv., Inc.*, No. S-00-113 LKK/JFM, 2006 WL 2308442, at *9 (E.D. Cal. Aug. 9, 2006); *Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 566 (N.D. Cal. 2008); *see also World Courier*, 2007 WL 1119196, at *2 (negligence satisfies culpable state-of-mind requirement); *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002) (same); *NTL*, 244 F.R.D. at 198-99 (same culpable state-of-mind requirement satisfied where no adequate litigation hold was ever put in place).

The Ninth Circuit has approved the use of adverse inferences as sanctions for spoliation of evidence, but has not set forth a precise standard for determining when such sanctions are appropriate.

> Trial courts have widely adopted the Second Circuit's three-part test, which provides that "a party seeking an adverse inference instruction based on the destruction of evidence must establish[:] (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."

*Apple Inc. v. Samsung Elecs. Co. Ltd.*, 888 F. Supp. 2d 976, 989-99 (N.D. Cal. 2012). Plaintiff easily meets this three-part test.

**1. Chevron Had an Obligation to Preserve Chat Logs and Instant Messages, but Failed to Do So**

In July 2015, Plaintiff Persian Gulf first filed suit against Chevron and other defendant gas refiners in California state court. ECF No. 1-3, Ex. 1. In late July 2015 Plaintiff served Chevron and other defendants with detailed requests for production of documents. Included in those requests were the following:

Request for Production No. 9 asked Chevron to "[p]rovide all documents or data files that refer, relate to or capture conversations between your traders or operators and other entities, including affiliates, or conversations between or among your traders and your operators." Ex. 1 at 7.

Request for Production No. 10 called for "[r]ecordings of trader telephone conversations, emails, or IMM conversations that related in any way to buying or selling petroleum products at least part of which was sold within California." *Id.* at 8.

"A party must preserve evidence it knows or should know is relevant to a claim or defense of any party, or that may lead to the discovery of relevant evidence." *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1051 (S.D. Cal. 2015) (citing *Lopez*, 2012 WL 5427957, at *6).

"As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, or is the subject of a pending discovery request." *Id.* (citing *Napster*, 462 F. Supp. 2d at 1067). Here, Chevron was under a duty to preserve instant messages as they were the clear subject of a pending discovery request as of July 2015 and because it should have reasonably known such evidence was relevant to the action. Chevron admits that it issued a litigation hold and that Mr. Pluimer received a litigation hold in July 2015. Bernay Decl., ¶5. It further

admits that despite Chevron's knowledge that the instant messages and other trader communications were requested, that it did not retain such materials. "After a litigation hold has been implemented, counsel has a continuing duty to monitor a client's compliance with a litigation hold." *HM Elecs., Inc. v. R.F. Techs., Inc.*, No. 12cv2884-BAS-MDD, 2015 WL 4714908, at *21 (S.D. Cal. Aug. 7, 2015) (citing *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 423, 431-32 (S.D.N.Y. 2004)), *vacated in part*, 171 F. Supp. 3d 1020 (S.D. Cal. 2016).[7]

**2. Chevron Acted with a Culpable State of Mind**

To show a culpable state of mind, a party need only demonstrate negligence. *Residential*, 306 F.3d at 108 (culpable state of mind requirement satisfied by demonstrating that destruction of or failure to produce evidence was negligent); *Napster*, 462 F. Supp. 2d at 1078 (finding gross negligence to be sufficient culpability to justify an adverse inference); *NTL*, 244 F.R.D. at 198 (culpable state of mind requirement satisfied where no adequate litigation hold was ever put in place). This is not a case where a party accidentally destroyed relevant documents. The only inference to be drawn from Chevron's conduct here is that in the face of specific document requests, it either took no steps to ensure employees preserved materials or willfully failed to ensure compliance with its litigation hold. Such conduct easily satisfies a negligence, gross negligence, ***and*** even a reckless or willfulness standard.

**3. The Evidence Lost Was Relevant**

The evidence Chevron failed to preserve was relevant. Plaintiff has demonstrated that a trier-of-fact could find that the destroyed evidence would support Plaintiff's claims or, at the very least, be detrimental to Chevron's defense. *See* §II.B.2, *supra*. Moreover, the type of evidence destroyed here – messages between

---

[7] Chevron may try to argue that because the action was sent to federal court this somehow nullified any duty it had to preserve chat logs and instant messages as called for in the original discovery requests. But this is a red herring. Chevron's duty to preserve relevant evidence was not extinguished when the case was sent to federal court. *See, e.g.*, *Napster*, 462 F. Supp. 2d at 1070 (adverse inference granted and continuing duty to preserve documents found to exist even after dismissal of suit).

co-defendants in an antitrust action– has been found relevant in other conspiracy cases. *See, e.g.*, *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13 Civ. 7789 (LGS), 2016 WL 5108131 (S.D.N.Y. Sept. 20, 2016) (antitrust conspiracy conducted through private chat groups and instant message platforms); *In re London Silver Fixing, Ltd., Antitrust Litig.*, 332 F. Supp. 3d 885, 901 (S.D.N.Y. 2018) ("The chat messages included in the TAC are direct evidence of an anticompetitive agreement to manipulate the silver markets.").

Additionally, courts have held that where a party destroys evidence with knowledge of impending litigation, such behavior suggests that the evidence would have been threatening to defendants and is therefore relevant in an evidentiary sense. Where, as here, bad faith destruction is evident, "'that bad faith alone is sufficient circumstantial evidence from which a reasonable fact finder could conclude that the missing evidence was unfavorable to that party.'" *NTL*, 244 F.R.D. at 199 (quoting *Residential*, 306 F.3d at 109).

The same holds true for evidence destroyed in a grossly negligent manner or the grossly negligent untimely production of evidence. *Id.* at 199-200; *Residential*, 306 F.3d at 109. Because Plaintiff has demonstrated that the information contained in the chat logs would be highly relevant to showing Chevron's misconduct in the action, and because Chevron failed to preserve relevant evidence with knowledge of the litigation in which this very misconduct would be coming under scrutiny, and was the subject of specific document requests as well as allegations in the complaint, there is no question that Plaintiff has established the relevance of the destroyed evidence. "In the Ninth Circuit, spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it." *Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*, No.

C 06-3359 JF (RS), 2009 WL 1949124, at *10 (N.D. Cal. July 2, 2009), *modified by* 2009 WL 248556 (N.D. Cal. Aug. 12, 2009).[8]

## IV. CONCLUSION

Chevron's failed to preserve relevant and specifically requested documents. To complete the factual record for the District Court's later determination of the proper recourse for the prejudice Chevron's failure caused (*e.g.*, an adverse inference for use at summary judgment and/or trial), Plaintiff respectfully requests that this Court adopt the proposed findings of fact and conclusions of law included in Plaintiff's proposed order.

DATED: February 28, 2020

Respectfully submitted,

ROBBINS GELLER RUDMAN
& DOWD LLP
PATRICK J. COUGHLIN
STEVEN W. PEPICH
DAVID W. MITCHELL
ALEXANDRA S. BERNAY
CARMEN A. MEDICI
LONNIE A. BROWNE

s/ Alexandra S. Bernay
ALEXANDRA S. BERNAY

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

[8] Chevron argues, weakly, that because it has produced many documents it is somehow relieved of its wrongdoing in relation to the instant messages. Chevron is wrong. A recent case in Minnesota faced an identical argument. "Defendant argues that the information has been replaced as 'millions of pages of documents' have been produced and dozens of depositions have been taken in this adversary proceeding. This is a red herring. Defendant does not get to select what evidence it wants to produce or from what sources. The Federal Rules require a party to produce all responsive documents. Regardless of how many millions of pages of documents have been produced from various third parties and other sources, the appropriate focus here is whether the information contained on the destroyed backup tapes can be replaced." *In re Petters Co., Inc.*, 606 B.R. 803, 824-25 (Bankr. D. Minn. 2019). That Chevron has produced many documents says ***nothing*** about what was lost by its failure to preserve and produce the chat logs and instant messages.

ROBBINS GELLER RUDMAN
& DOWD LLP
ARMEN ZOHRABIAN
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)

HARTLEY LLP
JASON S. HARTLEY
101 West Broadway, Suite 820
San Diego, CA 92101
Telephone: 619/400-5822
619/400-5832 (fax)

Attorneys for Plaintiff