1  Michael P. Lehmann (SBN 77152)
   Christopher L. Lebsock (SBN 184546)
2  Samantha J. Stein (SBN 302034)
   HAUSFELD LLP
3  600 Montgomery Street, Suite 3200
   San Francisco, CA 94111
4  Telephone: (415) 633-1908
   Facsimile: (415) 358-4980
5  mlehmann@hausfeld.com
   clebsock@hausfeld.com
6  sstein@hausfeld.com
7
   *Counsel for Interested-Party*
8  *Plaintiff Pacific Wine Distributors, Inc.*
9
   [Additional Counsel Listed on Signature Page]
10

11             **UNITED STATES DISTRICT COURT**

12           **SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 13  PERSIAN GULF INC., *Individually and on Behalf of All Others Similarly Situated*, | Case No. 3:15-cv-01749-DMS-AGS |
| 15        Plaintiff, | **RESPONSE TO PLAINTIFFS' NOTICE OF RELATED CASES BY INTERESTED PARTY, PACIFIC WINE DISTRIBUTORS, INC.** |
| 16  v. | |
| 17  BP WEST COAST PRODUCTS LLC, et al., | **Re: ECF No. 414** |
| 19        Defendants. | |
| 20  RICHARD BARTLETT, *et al., Individually and on Behalf of All Others Similarly Situated*, | Lead Case No. 18-cv-01374-DMS-AGS (consolidated with No. 18-cv-01377-DMS-AGS) |
| 22        Plaintiffs, | |
| 23  v. | Re: ECF No. 280 |
| 24  BP WEST COAST PRODUCTS LLC, et al., | |
| 25        Defendants. | |

26

27

RESPONSE TO NOTICE TO RELATE                    No. 3:15-cv-01749-DMS-AGS

## I.   INTRODUCTION

The plaintiffs in the above-captioned actions, *Bartlett v. BP West Coast Products LLC*, No. 3:18-cv-01374-DMS-AGS (S.D. Cal.) ("*Bartlett* action") and *Persian Gulf Inc. v. BP West Coast Products LLC*, No. 3:15-cv-01749-DMS-AGS (S.D. Cal.) ("*Persian Gulf* action") (together, the "Refinery Case Plaintiffs") have filed a notice of related cases pursuant to Civil Local Rule 40.1(e). ECF No. 414; *Bartlett* action, ECF No. 280 ("Notice").[1] In doing so, the Refinery Case Plaintiffs identified as one of those cases the action brought by Pacific Wine Distributors, Inc. ("PWDI") in the Northern District of California (*Pacific Wine Distributors, Inc. v. Vitol Inc., et al.*, No. 3:20-cv-03131-JSC (N.D. Cal., filed May 6, 2020) (the "*PWDI* action")), as well as eight other actions, only one of which was filed in this district (*Cleveland v. SK Energy Americas, Inc.*, No. 3:20-CV-00893-WQH-LL (S.D. Cal., filed May 13, 2020) (the "*Cleveland* action")).

Accordingly, PWDI requests leave to file the following response to the Refinery Case Plaintiffs' Notice in order to correct certain inaccuracies in that filing and to assist the clerk's review of the nine actions identified in the Notice pursuant to Civil Local Rule 40.1(h). As explained further below, the Refinery Case Plaintiffs' actions involve different defendants and different "transactions, happenings, or events." They are not "related" within the meaning of Civil Local Rule 40.1.

## II.   LEGAL STANDARD

Southern District of California Civil Local Rule 40.1(e) provides the criteria for determining whether an action is related: An action may be considered related where the actions appear:

---

[1] ECF citations herein refer to the Persian Gulf action docket (3:15-cv-01749-DMS-AGS), unless otherwise indicated.

1

(1) to arise from the same or substantially identical transactions, happenings, or events; or (2) involve the same or substantially the same parties or property, or (3) involve the same patent or the same trademark, except where in one or both of the actions concerned, the same patent or trademark is joined with other patents or trademarks which do not cover the same or substantially identical things or devices; or (4) call for determination of the same or substantially identical questions of law; or (5) where a case is refiled within one year of having previously been terminated by the Court; or (6) for other reasons would entail substantial duplication of labor if heard by different judges.

L.R. 40.1(e). "There is no precise acid test for determining the 'relatedness' of two actions." *In re Jamster Mktg. Litig.*, No. 05-CV-0819JM(CAB), 2008 WL 4482307, at *4 (S.D. Cal. Sept. 29, 2008). Ultimately, "[t]he purpose of the related-case rule is to allow cases to be heard in a way that most efficiently uses judicial resources." *Univ. of Cal. v. Eli Lilly & Co.*, No. C-90-0373-DLJ (JSB), 1991 WL 332056, at *10 (N.D. Cal. Nov. 4, 1991).

## III.  ARGUMENT

As set forth below, PWDI respectfully submits that these cases are not related because they do not satisfy Civil Local Rule 40.1's criteria, and their coordination would create no judicial efficiencies.[2]

### A.  These Cases Involve Different Defendants and Do Not Arise From the Same or Similar Transactions or Events.

There are effectively three different litigations at issue here.

*First*, there is the California Attorney General's civil action, which was filed

---

[2] To the extent that the Refinery Case Plaintiffs are suggesting that this Court transfer the newly-filed, out-of-district cases to its docket, PWDI notes that there is no mechanism under the Local Rules for that; nor would it be proper to do so pursuant to a motion to consolidate under Fed. R. Civ. P. 42. *See* 9A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2382 (3d ed. 2008) ("Actions pending in different districts may not be consolidated under Rule 42(a)") (footnote omitted).

RESPONSE TO NOTICE TO RELATE                    No. 3:15-cv-01749-DMS-AGS

1   in San Francisco Superior Court on May 4, 2020 against defendants Vitol, Inc.

2   ("Vitol"), SK Energy Americas, Inc. ("SK Energy"), and SK Trading International

3   Co. Ltd. ("SK Trading") for alleged violations of the California Cartwright Act (Cal.

4   Bus. & Prof. Code §§ 16720 *et seq.*) and the California Unfair Competition Law

5   (Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL")). *See* Lebsock Decl., Ex. A

6   (Attorney General's Compl.).

7   　　　Specifically, the Attorney General's complaint arises out of an investigation it

8   undertook that uncovered agreements between Vitol and SK Energy—two

9   companies that specialize in trading and importing fuel and fuel products into the

10   United States and who are ***not*** named Defendants in the Refinery Case Plaintiffs'

11   actions—to manipulate the California spot markets for wholesale gasoline. The

12   Attorney General alleges this misconduct started not later than February 2015 and

13   continued until one of the traders left his position at the end of 2016. The Attorney

14   General seeks injunctive relief, civil penalties and damages and restitution—for itself

15   and as *parens patriae* for natural persons residing in California. The Attorney

16   General's action does not name any of the defendants named by the Refinery Case

17   Plaintiffs in the above-captioned cases.

18   　　　***Second***, there are the nine related class actions filed after the Attorney

19   General's action, which name the same Defendants as the Attorney General did and

20   involve the same alleged misconduct. PWDI filed the first proposed class action in

21   the Northern District of California on May 6, 2020. Lebsock Decl., Ex. B (PWDI

22   Compl.). Like the Attorney General, PWDI alleges violations of the Cartwright Act

23   and the UCL and adds a claim under Section 1 of the Sherman Act (15 U.S.C. §1) as

24   well. PWDI's claim is both broader and narrower than the Attorney General's action

25   in certain respects. For example, the Attorney General seeks civil penalties that are

26   not available to private plaintiffs. However, PWDI's claim seeks damages and

27

RESPONSE TO NOTICE TO RELATE　　　　　　　　No. 3:15-cv-01749-DMS-AGS

1  restitution for a broader class than the Attorney General can represent pursuant to its

2  *parens patriae* authority, which is limited to natural persons residing in California.

3  Thus, PWDI, a business, purports to represent a class of any persons or entities that

4  purchased gasoline in California between February 18, 2015 and December 31, 2016.

5  *See id.* (PWDI Compl.) ¶ 30. The *PWDI* action would have been subject to removal

6  jurisdiction of the federal courts, and thus, PWDI elected to file in federal court in

7  the first instance.

8     Since PWDI filed its case, four other actions have been filed in the Northern

9  District of California alleging substantially the same facts and claims, and each of

10  them largely copies the sources and allegations first set forth by PWDI, including a

11  number of charts and other graphics: *Fricke-Parks Press, Inc. et al v. SK Energy

12  Americas, Inc., et al*, No. 3:20-cv-03148-LB (N.D. Cal., filed May 7, 2020); *Hudson,

13  et al., v. Vitol, Inc., et al*, No. 5:20-cv-03217-NC (N.D. Cal., filed May 11, 2020);

14  *Johnston v. Vitol, Inc., et al*, No. 4:20-cv-03238-KAW (N.D. Cal., filed May 12,

15  2020); *Bogard Construction, Inc. v. Vitol Inc., et al*, No. 3:20-cv-03267-SK (N.D.

16  Cal., filed May 13, 2020). PWDI has moved to relate these actions to the *PWDI*

17  action in the Northern District of California pursuant to N.D. Cal. Civil Local Rule

18  3-12.

19     The *Cleveland* action—which similarly substantially copies the allegations

20  and graphics from the PWDI complaint—was filed in this District on May 13, 2020.

21  On May 18, 2020, PWDI sought leave to intervene in the *Cleveland* action for the

22  limited purpose of requesting transfer of the action to the Northern District of

23  California pursuant to 28 U.S.C. § 1404(a) and the first-to-file rule. *See Cleveland*

24  action, ECF No. 3.

25     There is also currently one related case pending in the Central District, *Carpe

26  Carma LLC v. SK Energy Americas, Inc., et al*, No. 2:20-CV-4312-JAK-PJW (C.D.

27

4

1   Cal., filed May 12, 2020) (the "*Carpe Carma* action"). Another action, captioned

2   *Long v. SK Energy Americas, Inc.*, No. 2:20-CV-4266-PA-JPR (C.D. Cal., filed May

3   11, 2020), was dismissed immediately after the court in that action issued an order

4   to show cause why the case should not be transferred to the Northern District of

5   California. *See* Lebsock Decl., Ex. C. Similarly, in the *Carpe Carma* action, the court

6   has issued an order to show cause why that case should not be transferred to the

7   Northern District of California. *See id.*, Ex. D. All of these cases allege the same

8   misconduct asserted in the Attorney General's action. Thus, PWDI refers to its case

9   along with these other proposed class actions as the "AG-Related Cases" below.

10         ***Third,*** and finally, there are the Refinery Case Plaintiffs' cases, which, as the

11   Refinery Case Plaintiffs acknowledge, are scheduled for trial in May of 2021. These

12   cases were brought several years ago (starting in 2015) as proposed class actions

13   against several different "refineries": BP, Chevron, Tesoro, Shell, ExxonMobil,

14   Valero, ConocoPhillips, and Alon (the "Refinery Defendants"). The Refinery Case

15   Plaintiffs' operative complaints do ***not*** name or otherwise identify Vitol, SK Energy,

16   or SK Trading as defendants or as co-conspirators. *See* ECF No. 76; *Bartlett* action,

17   ECF No. 44.

18         While the AG-Related Cases and the Refinery Case Plaintiffs' claims

19   generally involve allegations of price-fixing of gasoline sold in the State of

20   California, the allegations in the various cases are fundamentally different—and

21   contradictory. Specifically, the Refinery Case Plaintiffs allege that "oil refiners in

22   the state squeezed the market and reaped supracompetitive profits through

23   unprecedented [increases in] exports of gasoline from California and by taking an

24   unprecedented number of refineries off line for suspicious, frequently unscheduled

25   maintenance" and "[b]y controlling and creating apparent shortages of local supplies

26   of gasoline[.]" ECF No. 76, ¶¶ 15–16. The core of the Refinery Case Plaintiffs' cases

27

RESPONSE TO NOTICE TO RELATE                    No. 3:15-cv-01749-DMS-AGS

1   is that the refiners were fixing gasoline prices at supracompetitive levels by creating

2   artificial shortages and constricting supply. The Refinery Case Plaintiffs seek to

3   represent a class of "[a]ll persons or entities that purchased gasoline directly from a

4   defendant during the Class Period (February 2012 through the end of December 2012

5   and December 2014 to present) and were damaged thereby" (*id.* ¶ 139) as well as

6   "[a]ll persons or entities that purchased or paid the retail price for gasoline for

7   consumption by themselves, their families, or their members, employees, or insureds

8   in California that was refined or produced by a defendant during the Class Period

9   (February 1, 2012 to present) and were damaged thereby" (*Bartlett* action, ECF No.

10  44, ¶ 142).

11      By contrast, the Attorney General's case and the AG-Related Cases *do not*

12  allege that the Refinery Defendants agreed to constrict the supply of gasoline in the

13  California market, but instead that other market participants—Vitol, SK Energy, and

14  SK Trading—manipulated the price of gasoline on the two wholesale spot markets

15  located in California in order to raise the price of key fuel additives whose prices are

16  directly tethered to the price of premium gasoline. *See, e.g.*, Lebsock Decl., Ex. B

17  (PWDI Compl.), ¶¶ 2–8. The AG-Related Cases specifically involve allegations that

18  one key fuel additive—alkalytes—were imported into California by Vitol, SK

19  Energy, and SK Trading after a refinery explosion in Torrance eliminated a

20  substantial portion of the domestic production of this fuel additive in February 2015.

21  *See* ECF No. 76, ¶¶ 74–85. The Refinery Case Plaintiffs also refer to the Torrance

22  Refinery explosion in their operative complaints, but they allege that the Refinery

23  Defendants—not Vitol, SK Energy, or SK Trading—used that explosion to further

24  their collusive goals to increase gas prices. *See id.* ¶ 68 (following the explosion,

25  "Exxon's failure to resupply the California market, when it easily could have,

26  occurred while other companies like Chevron were exporting gasoline from

27

6

1   California to further diminish supply, suggesting a collusive effort to manipulate the

2   gasoline market and drive up profits"); ¶ 71 ("California refiners' illicit profits are

3   the direct result of Defendants' agreement to constrain supply or inject uncertainty

4   into the market, *inter alia*, Exxon's decision not to use its available tanker to resupply

5   the market after its Torrance refinery's shutdown created a gasoline shortage in

6   Southern California"). In contrast, the Refinery Defendants are direct *victims* of the

7   price-fixing scheme alleged in the Attorney General's action and the AG-Related

8   Cases because they paid more for a necessary fuel additive than they should have in

9   the absence of the anticompetitive spot market trading engaged in by Vitol, SK

10  Energy, and SK Trading.

11      Thus, these cases present notably divergent theories of liability against totally

12  different defendants and cannot be "related" within the meaning of Local Rule 40.1

13  and similar rules in other districts. *See ESS Tech., Inc. v. PC-Tel, Inc.*, No. C-01-

14  1300 VRW, 2001 WL 1891713, at *6 (N.D. Cal. Nov. 28, 2001) ("[A]lthough the

15  three cases all share a common issue . . . , further examination of the pleadings . . .

16  shows that resolution of this issue is dependent of a multitude of case-specific facts

17  and issues. Consequently, it does not appear that relating these cases would likely

18  conserve judicial resources and promote their efficient determination."); *see also*

19  *Jackson v. City & Cty. of San Francisco*, No. C 09-2143 RS, 2010 WL 11582918, at

20  *1 (N.D. Cal. Dec. 16, 2010) (declining to relate cases because it would "be unfair

21  to plaintiffs in this action to force them to be involved in an action of a much broader

22  scope than the one they chose to initiate.").

23      Moreover, the Attorney General's action and the AG-Related Cases are based

24  on a comprehensive investigation by the Attorney General's office, and the discovery

25  of specific facts about how two long-time friends who worked as traders for Vitol

26  and SK Energy conspired to manipulate California's spot markets. That investigation

27

RESPONSE TO NOTICE TO RELATE                          No. 3:15-cv-01749-DMS-AGS

1    apparently *did not* find evidence that the Refinery Defendants participated in the

2    anticompetitive conduct engaged in by Vitol, SK Energy, and SK Trading because

3    they have not been sued by the Attorney General, or in any of the AG-Related Cases.

4    Nor have they been accused of wrongdoing in any of these actions.

5         Tellingly, although the Refinery Case Plaintiffs say that "[a] tremendous

6    amount of work has already been done in the *Persian Gulf* and *Bartlett* actions

7    developing the record on issues common to the newly-filed cases" (Notice at 3), there

8    is *no* indication that the Refinery Case Plaintiffs uncovered any facts in their cases

9    relevant to the Attorney General's action or the AG-Related Cases, or that they have

10   been working on issues that are genuinely common to these new cases. For example,

11   the Refinery Case Plaintiffs *did not* even mention SK Energy or Vitol in their

12   Complaints or identify these entities in their responses to a defendant's

13   interrogatories (ECF No. 406-9). The Refinery Case Plaintiffs' blithe assertion that

14   their cases and the AG-Related Cases involve the "same conspiracy" (Notice at 3)

15   does not make it so. *See Ortiz v. CVS Caremark Corp.*, No. C-12-05859(EDL), 2013

16   WL 12175002, at *2 (N.D. Cal. Oct. 15, 2013) (rejecting related case motion where

17   "[t]he interstore transfer theory of liability that is the backbone of the *Ortiz* claims is

18   never mentioned in the *Howard* complaint."). ‼

19        Although the Refinery Case Plaintiffs' cases and the AG-Related Cases

20   involve claims pursuant to some of the same statutes—the Cartwright Act, the

21   Sherman Act, and the UCL—the factual determinations that will need to be made

22   under those laws are significantly different, including the nature of the

23   anticompetitive agreement at issue, the identity of the conspirators, the manner in

24   which the alleged conspiracy was effectuated, and how that conduct harmed

25   plaintiffs and the proposed class. Notably, fact discovery is closed in the Refinery

26   Case Plaintiffs' cases (*see* ECF No. 396), yet nothing in the record suggests that there

27

RESPONSE TO NOTICE TO RELATE                    No. 3:15-cv-01749-DMS-AGS

1   is a substantial identity of defendants or material facts that overlap the Refinery Case

2   Plaintiffs' cases and the AG-Related Cases.

3           **B.**       **There is No Efficiency to Be Gained by this Court Relating the**

4                        **Cleveland Action to this Docket.**

5           The Refinery Case Plaintiffs argue that "there would be a substantial

6   duplication of labor if these cases were heard by different judges" (Notice at 3), but

7   aside from this conclusory statement, they provide no support for this contention.[3]

8   Moreover, the proposal to relate the *Cleveland* action—the lone AG-Related Case

9   actually pending in this district—ignores the fact that seven other virtually identical

10   actions exist (or existed) in the Northern District of California and the Central

11   District of California. It also ignores the fact that the Central District of California

12   has already issued orders to show cause why the cases that were filed there should

13   not be transferred to the Northern District of California, where the majority of the

14   AG-Related cases have been filed. Moreover, a motion to transfer the *Cleveland*

15   action to the Northern District of California is already pending on Judge William Q.

16   Hayes' docket—which, if granted, will eliminate any further need to consider

17   relating that case to the above-captioned actions. *See Cleveland* action, ECF No. 3.

18           Additionally, if the Court relates the *Cleveland* action to this docket, there will

19   also be significant delay and a waste of time and resources in the actions pending in

20   this Court. It would involve restarting the process of settling the pleadings through

21   Rule 12 and personal jurisdiction motions (SK Trading is headquartered in Korea)

22   and then will involve reopening what will surely be a renewed, costly, and

23

24

25   [3] Indeed, the Refinery Case Plaintiffs are not advocating for the transfer of the
Attorney General's case (which is pending in San Francisco Superior Court). That

26   concession, by itself, demonstrates that there is no possible way to eliminate the

27   alleged duplication of effort that they claim justifies a related case finding here.

RESPONSE TO NOTICE TO RELATE            No. 3:15-cv-01749-DMS-AGS

time-consuming discovery process that might well include requests for international judicial assistance from the Seoul District Court.

In situations like this one, where the Refinery Cases Plaintiffs' cases are "significantly more procedurally advanced" and set for a trial next year (Notice at 3–4)—courts typically decline to relate later-filed actions. *See, e.g.*, *Smith v. Barrow Neurological Inst. of St. Joseph's Hosp. & Med. Ctr.*, No. CV 10-01632-PHX-FJM, 2012 WL 4359057, at *2 (D. Ariz. Sept. 21, 2012) (district court declined to relate cases where first case was filed more than two years earlier "[b]ecause the cases are at very different stages of litigation and address different issues"); *Pac. Coast Fed'n of Fishermen's Ass'n v. Locke*, No. C 10-04790 CRB, 2011 WL 289927, at *2 (N.D. Cal. Jan. 27, 2011) (holding that "[b]ecause the claims in the two suits are of a different nature" and different evidence would be needed, "there is unlikely to be unduly burdensome duplication of labor and expense or conflicting results if the cases are tried before different judges."); *Hodges v. Akeena Solar, Inc.*, No. CV 09-02147 JW, 2010 WL 2756536, at *1 (N.D. Cal. July 9, 2010) (declining to relate where the first action was "further along procedurally" and had "already survived a Motion to Dismiss and is moving toward class certification" but the second action "was only recently" filed).[4]

## IV.   CONCLUSION

For all of the foregoing reasons, PWDI respectfully requests that this Court

---

[4] Additionally, relating the *Cleveland* action to this docket could create conflict of interest problems for the Refinery Case Plaintiffs, who allege that the Refinery Defendants violated the antitrust law, whereas the plaintiff in the *Cleveland* action and in the other AG-Related Cases allege, in effect, that the Refinery Defendants were victims of wrongdoing by Vitol, SK Energy, and SK Trading.

RESPONSE TO NOTICE TO RELATE                              No. 3:15-cv-01749-DMS-AGS

1  decline to relate the *Cleveland* action to the Refinery Plaintiffs' Cases. [5]

2

3  DATED: May 20, 2020                    HAUSFELD LLP

4                                          By:   *s/ Christopher L. Lebsock*
                                           Michael P. Lehmann (SBN 77152)
5                                          Christopher L. Lebsock (SBN 184546)
                                           Samantha J. Stein (SBN 302034)
6                                          HAUSFELD LLP
                                           600 Montgomery St., Suite 3200
7                                          San Francisco, CA 94111
                                           Telephone: (415) 633-1908
8                                          Facsimile: (415) 358-4980
                                           mlehmann@hausfeld.com
9                                          clebsock@hausfeld.com
                                           sstein@hausfeld.com
10

11

12                                         Brian Murray (*pro hac vice* to be filed)
                                           Lee Albert (*pro hac vice* to be filed)
13                                         GLANCY  PRONGAY  &  MURRAY
                                           LLP
14                                         230 Park Avenue, Suite 530
                                           New York, NY 101689
15                                         Telephone: (212) 682-5340
                                           Facsimile: (212) 884-0988
16                                         Email: bmurray@glancylaw.com
                                                      lalbert@glancylaw.com
17

18                                         *Attorneys for Interested-Party Plaintiff*
                                           *Pacific Wine Distributors, Inc.*
19

20

21

22

23

24

25

26  [5] It appears that the Refinery Case Plaintiffs did not serve Vitol, SK Energy, or SK Trading, who may have their own concerns about the "relatedness" of the AG-Related Cases to those here.

27

11