ROBBINS LLP
GEORGE C. AGUILAR (126535)
gaguilar@robbinsllp.com
MICHAEL J. NICOUD (272705)
mnicoud@robbinsllp.com
5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

Attorneys for Plaintiffs Joshua
Ebright, Paul Lee, and David Rinaldi

[Additional counsel appear on signature page]

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERSIAN GULF INC., Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>BP WEST COAST PRODUCTS LLC, et al.,<br><br>     Defendants. | Case No. 3:15-cv-01749-TWR-AGS<br><br>**<u>CLASS ACTION</u>**<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT TESORO REFINING & MARKETING COMPANY LLC'S MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: July 28, 2021<br>Hearing Time: 1:30 p.m.<br>Courtroom:  3A<br>Judge:   Hon. Todd W. Robinson<br>***Special Briefing Schedule Ordered*** |
| RICHARD BARTLETT, et al., on Behalf of Themselves and All Others Similarly Situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>BP WEST COAST PRODUCTS LLC, et al.,<br><br>     Defendants. | Lead Case No. 3:18-cv-01374-TWR-AGS (Consolidated with Case No. 3:18-cv-01377-TWR-AGS)<br><br>**<u>CLASS ACTION</u>**<br><br><br>**PUBLIC REDACTED VERSION** |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................1

II. LEGAL STANDARD ..................................................................................2

III. ARGUMENT ...............................................................................................5

    A. Plaintiffs Have Uncovered Evidence of Coordination Regarding Refinery Outages and Maintenance .....................................................5

    B. Plaintiffs Present Evidence Demonstrating Tesoro's Export Decisions, Like the Other Defendants', Were Part of the Conspiracy ..................................................................................................8

    C. Tesoro's Participation in Exchange Agreements Is Further Evidence of the Conspiracy .................................................................10

    D. Tesoro's Purchasing and Selling Activity Further Evidences the Conspiracy .................................................................................................12

        1. Tesoro's Purchases in 2012 Are Evidence of the Conspiracy ..12

        2. Tesoro's Sales of Gasoline to ExxonMobil Following the Torrance Explosion in 2015 Further Demonstrate the Conspiracy ...........................................................................................12

        3. Tesoro Offers Objectionable Evidence to Attempt to Rebut Certain Parallel Pricing Practices ..............................................14

        4. Certain of Tesoro's Trades Were Wash Trades ........................15

    E. Tesoro's Interfirm Communications Demonstrate Its Participation in the Conspiracy ....................................................................................15

IV. CONCLUSION .........................................................................................17

# TABLE OF AUTHORITIES

**CASES**                                                                          **PAGE(S)**

*Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*,
620 F.2d 1360 (9th Cir. 1980) ...................................................................3

*Big Apple BMW, Inc. v. BMW of N. Am., Inc.*,
974 F.2d 1358 (3d Cir. 1992) ....................................................................3

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.*,
370 U.S. 690 (1962) ...................................................................................3

*David v. Caterpillar, Inc.*,
324 F.3d 851 (7th Cir. 2003) .....................................................................4

*Durham v. Navient Sols., LLC*,
No. 1:18-CV-03147-CAP,
2019 U.S. Dist. LEXIS 160401 (N.D. Ga. Sept. 17, 2019) .........................4

*Friedman v. Live Nation Merch., Inc.*,
833 F.3d 1180 (9th Cir. 2016) ...................................................................2

*Hom, Tr. of Allen Ernest Hom Tr. Dated Aug. 19, 1992 v. RBB Bancorp*,
No. 17-CV-1109 DMS (MDD),
2019 WL 4266557 (S.D. Cal. Jan. 24, 2019) ..............................................6

*Home Depot, U.S.A., Inc. v. E.I. DuPont de Nemours & Co.*,
No. 16-CV-04865-BLF,
2019 WL 3804667 (N.D. Cal. Aug. 13, 2019) ........................................3, 14

*In re Citric Acid Litig.*,
191 F.3d 1090 (9th Cir. 1999), *motion to certify appeal denied*, 2019 WL
6171063 (N.D. Cal. Nov. 20, 2019) ........................................................3, 8

*In re High-Tech Emp. Antitrust Litig.*,
856 F. Supp. 2d 1103 (N.D. Cal. 2012) .......................................................3

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ..........................................................................6, 9, 17

*Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.*,
998 F.2d 1224 (3d Cir. 1993) ..........................................................3, 6, 9, 17

*Ricks v. BMEzine.com LLC*,
727 F. Supp. 2d 936 (D. Nev. 2010) ...........................................................4

*Stanislaus Food Prod. Co. v. USS-POSCO Indus.*,
  803 F.3d 1084 (9th Cir. 2015)............................................................................3

*Tauscher v. Phoenix Bd. of Realtors, Inc.*,
  931 F.3d 959 (9th Cir. 2019)..............................................................................2

*United States v. Falstaff Brewing Corp.*,
  410 U.S. 526 (1973) ...........................................................................................5

*Wilson v. Bradlees of New England, Inc.*,
  250 F.3d 10 (1st Cir. 2001) ................................................................................4

**STATUTES, RULES & OTHER AUTHORITIES**

Fed. R. Civ. P. 26...................................................................................................4

Fed. R. Civ. P. 37...................................................................................................4

Fed. R. Civ. P. 37(c) ..............................................................................................4

Plaintiffs Persian Gulf, Inc., Joshua Ebright, Paul Lee, and David Rinaldi (collectively, "Plaintiffs") respectfully submit this memorandum of points and authorities in opposition to Defendant Tesoro Refining & Marketing Company LLC's Motion for Summary Judgment ("MSJ").[1]

## I. INTRODUCTION

Tesoro's MSJ focuses on two related concepts: first, Tesoro upends the standard of review, seeking to have the Court view all evidence in the light most favorable to Defendants; and second, Tesoro relies almost exclusively on a litany of self-serving, improper declarations from the very Tesoro employees implicated by Plaintiffs' evidence of wrongful conduct. Unsurprisingly, these employees claim they did nothing improper.

Tesoro's Introduction attempts to distract the Court from the relevant analysis by claiming that Plaintiffs have changed their theories throughout the litigation and that Plaintiffs now "brand" "long-standing, ordinary business practices … as conspiratorial." Tesoro MSJ at 2. This is not the case. Tesoro and the rest of Defendants have been on notice of Plaintiffs' theories through the many depositions that were taken, the expert reports that have been exchanged, and most notably, the hundreds of pages of written interrogatory answers Defendants forced Plaintiffs to provide them. Now, Defendants wish to pretend that they do not have these answers and that they are still confused about "shifting theories." The reality is that: a) Plaintiffs' theories have not changed, but have developed as discovery has progressed, as is typical in complex litigation; and b) Defendants know what Plaintiffs' theories and

---

[1] "Defendants" refers collectively to Tesoro Refining and Marketing Company LLC ("Tesoro"), BP West Coast Products LLC ("BP"), Equilon Enterprises LLC (d/b/a Shell Oil Products US) ("Shell"), Chevron U.S.A. Inc. ("Chevron"), Exxon Mobil Corporation and ExxonMobil Refining & Supply Co. ("ExxonMobil"), Valero Marketing and Supply Company ("Valero"), Phillips 66, and Alon USA Energy, Inc. ("Alon"). Citations to the memorandum in support of Tesoro's MSJ will appear as "Tesoro MSJ at __."

arguments are, but chose instead to focus on strawmen arguments and misinterpretations of those arguments. *See also* Jnt. MSJ Opp., n.9.[2]

Despite Tesoro's characterization of Plaintiffs' arguments and evidence, the actual arguments and evidence put forth by Plaintiffs, as discussed here, and more fully in Plaintiffs' Opposition to Defendants' Joint MSJ, show that summary judgment must be denied.[3] Plaintiffs demonstrate conduct far from legitimate "ordinary business practices," including instances where some of the largest companies in the world "bent over backwards" for their so-called competitors when they faced trouble, where traders regularly shared confidential information about refinery operations and supply issues, and where Defendants coordinated to ensure that the supply of gasoline in California remain low so that they can profit from supracompetitive pricing.

## II. LEGAL STANDARD

When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences in the light most favorable to the nonmoving party. *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1184 (9th Cir. 2016); *Tauscher v. Phoenix Bd. of Realtors, Inc.*, 931 F.3d 959, 962 (9th Cir. 2019) ("Summary judgment is appropriate only if, taking the evidence and all reasonable inferences in the light most favorable to the non-moving party, there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law.").[4] "In antitrust cases, these general standards are applied even more stringently and summary

---

[2] "Jnt. MSJ Opp." or "Opposition to Defendants' Joint MSJ" refers to the concurrently filed Plaintiffs' Memorandum of Points and Authorities in Opposition to Joint Motion for Summary Judgment of Defendants Chevron U.S.A. Inc., Phillips 66, Equilon Enterprises LLC (D/B/A Shell Oil Products US), and Valero Marketing and Supply Co.

[3] Plaintiffs fully incorporate herein their Opposition to Defendants' Joint MSJ and the concurrently filed oppositions to each of the individual Motions for Summary Judgment filed by Defendants Alon, BP, and ExxonMobil.

[4] Here, as throughout, all citations and footnotes are omitted and all emphasis is deemed added unless otherwise noted.

judgments granted ***more sparingly***." *Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*, 620 F.2d 1360, 1364 (9th Cir. 1980).[5]

Most recently, the Ninth Circuit reaffirmed that "context is key" when considering circumstantial evidence of a conspiracy. *Stanislaus Food Prod. Co. v. USS-POSCO Indus.*, 803 F.3d 1084, 1089 (9th Cir. 2015).

"In antitrust conspiracy cases, 'plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each.... [T]he character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole...." *In re High-Tech Emp. Antitrust Litig.*, 856 F. Supp. 2d 1103, 1118 (N.D. Cal. 2012) (quoting *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962) (alterations in original)).

Even ***if*** Defendants rebut plaintiffs allegations of conspiracy by showing plausible and justifiable reasons for their conduct that is consistent with proper business practice—which they have not—each of Defendants' MSJs should be denied because Plaintiffs have "provide[d] specific evidence tending to show that [] [D]efendant[s] w[ere] not engaging in permissible competitive behavior." *Home Depot, U.S.A., Inc. v. E.I. DuPont de Nemours & Co.*, No. 16-CV-04865-BLF, 2019 WL 3804667, at *4 (N.D. Cal. Aug. 13, 2019) (citing *In re Citric Acid Litig.*, 191 F.3d 1090, 1094 (9th Cir. 1999)), *motion to certify appeal denied*, 2019 WL 6171063 (N.D. Cal. Nov. 20, 2019). "[T]he crucial question is whether all the evidence considered as a whole can reasonably support the inference that [defendants] conspired … to fix prices." *Id.* (citing *Citric Acid*, 191 F.3d at 1097 (first and third alterations in original)).

---

[5] "'[A] non-movant's burden in defending against summary judgment in an antitrust case is no different than in any other case.'" *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.*, 998 F.2d 1224, 1230 (3d Cir. 1993) (quoting *Big Apple BMW, Inc. v. BMW of N. Am., Inc.* , 974 F.2d 1358, 1363 (3d Cir. 1992)).

Defendants have submitted certain declarations in support of their summary judgment motion from individuals who were not previously identified in initial or supplemental disclosures in violation of Rule 26 of the Federal Rules of Civil Procedure which requires that a party disclose names of individuals likely to have discoverable information and to supplement initial disclosures on an ongoing basis. *See* Fed. R. Civ. P. 26. Failure to so disclose requires exclusion of that witness unless the failure to disclose was substantially justified or harmless. Fed. R. Civ. P. 37. The party facing potential exclusion bears the burden of proving that failure to disclose was justified or harmless. *See Wilson v. Bradlees of New England, Inc.*, 250 F.3d 10, 21 (1st Cir. 2001). The declarations of William Eckhard and Carla Mayfield submitted by Tesoro must be excluded as these witnesses were never disclosed by Tesoro and thus were never deposed by Plaintiffs. Tesoro has not and cannot show that such failure was justified or harmless. As to these witnesses, Tesoro must be completely precluded from relying upon their declarations in support of summary judgment. *See Ricks v. BMEzine.com LLC*, 727 F. Supp. 2d 936, 950 (D. Nev. 2010) (striking declaration submitted at summary judgment of witness who was not identified in initial disclosures finding "no justification for its failure to identify Walters as a witness"); *see also Durham v. Navient Sols., LLC*, No. 1:18-CV-03147-CAP, 2019 U.S. Dist. LEXIS 160401, at *15-16 (N.D. Ga. Sept. 17, 2019) (finding a violation of Fed. R. Civ. P. 37(c) and declining to consider at summary judgment a declaration of witness not disclosed in corporation's disclosures). The "'sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless.'" *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).[6] The declarations must be stricken along with all references to these

[6] Another set of witnesses were previously deposed, but they too were not listed in disclosures and as such, those declarations also should be stricken, as Plaintiffs could not anticipate that additional statements would be offered from those witnesses beyond their sworn deposition testimony. Defendants provide no basis for improperly springing these objectionable declarations on Plaintiffs at summary judgment. Those

declarations in Defendants' motions.  Other Tesoro witness declarations also contain objectionable material, and those evidentiary issues are detailed in Appendix 1 to Plaintiffs' Opposition to Defendants' Joint MSJ.

## III.  ARGUMENT

Tesoro attempts to attack a variety of Plaintiffs' arguments, misconstruing Plaintiffs' evidence and arguments, trying to change the standard on a motion for summary judgment in its favor, and relying on self-serving declarations from the very people implicated in the wrongdoing.  None of these arguments justify granting any of Defendants' Motions for Summary Judgment.

### A.  Plaintiffs Have Uncovered Evidence of Coordination Regarding Refinery Outages and Maintenance

Tesoro argues that "[n]o evidence supports plaintiffs' allegation that Tesoro conspired with other refiners to coordinate the timing or length of refinery outages." Tesoro MSJ at 5.  This is not the case. Plaintiffs have developed a great deal of such evidence, including direct evidence of Defendants sharing information regarding outage timing and the impact caused by outages, which is detailed in Plaintiffs' Opposition to Defendants' Joint MSJ.  *See* Jnt. MSJ Opp., §III.A.  The evidence demonstrates that Defendants routinely shared with each other specific confidential details of planned and unplanned outages, and the status and operational levels of refineries during those outages.  These pieces of information allowed Defendants to calibrate their operations with a much clearer understanding of relevant supply and demand factors than outside participants.  While Tesoro may suggest that Plaintiffs need to also prove that these communications came with explicit instructions on how to limit supply or fix prices with that information, that is clearly not what the law

witnesses who also did not appear on initial or supplemental disclosures are Rickey Pluimer of Chevron and Steve Rodrick of Shell. Similarly, the ***day before*** Defendants filed their motions for summary judgment, Valero disclosed two individuals—Mark Phair and John Tulino—for the first time. Both individuals offer declarations in support of Defendants' motions for summary judgment.

requires. Indeed, "circumstantial evidence is the lifeblood of antitrust law." *United States v. Falstaff Brewing Corp.*, 410 U.S. 526, 534 n.13 (1973). In fact, "a nonmovant plaintiff in a section 1 case does not have to submit direct evidence, i.e., the so-called smoking gun, but can rely solely on circumstantial evidence and the reasonable inferences drawn from such evidence." *Petruzzi's*, 998 F.2d at 1230; *accord. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

Tesoro attempts with its motion to reduce Plaintiffs' case to an overly "myopic examination" that Defendants have continually tried to misconstrue. *See Hom, Tr. of Allen Ernest Hom Tr. Dated Aug. 19, 1992 v. RBB Bancorp*, No. 17-CV-1109 DMS (MDD), 2019 WL 4266557, at *5 (S.D. Cal. Jan. 24, 2019) (recognizing that "[t]hese arguments invite a myopic examination of the RBB merger and overlook Plaintiff's overarching theory of fraud—a potential 'forest for the trees' problem. As discussed below, the trier of fact should be presented with all relevant evidence to fully evaluate Plaintiff's circumstantially based fraud claims"). Tesoro discusses the purported reasons for various outages that Plaintiffs have said were suspicious (Tesoro MSJ at 5-7), and wants the Court to conclude that because the outages may have had legitimate causes, that nothing about these outages is suspicious or supports Plaintiffs' allegations of a conspiracy. This misconstrues Plaintiffs' arguments by viewing it in the most narrow light possible.

Plaintiffs' complaints provided a list of suspicious refinery outages during price spikes in California. Plaintiffs alleged the outsized impact of the outages on prices brought the circumstances around these outages into question. Clearly—something was causing enormous price spikes around even small refinery outages. Discovery has revealed the causes, just as Plaintiffs alleged: Defendants, including Tesoro, freely shared confidential scheduling information with each other regarding planned and unplanned refinery maintenance and outage events, as well as providing further details as to specific refinery operations during these maintenance and outage events. These acts allowed the companies to calibrate operations and schedules.

Unexpected refinery outages quickly reverberate through the California gasoline market—for example, when the ExxonMobil Torrance outage caused the price of gasoline to skyrocket in 2015. Critically, traders shared this information almost exclusively within the circle of Defendants, meaning the companies had access to detailed planning information, while third party trading companies that would otherwise compete in California, could not gain an informational edge and operate in the state. Plaintiffs detail this evidence in full in their Opposition to Defendants' Joint MSJ.

Tesoro is well aware that Plaintiffs' theory is broader than that Defendants "agreed to engage in 'suspicious' temporary outages at various refineries." Tesoro MSJ at 1. For one, Tesoro is aware of this because of Plaintiffs' exhaustive responses to Tesoro's interrogatories, which attempted to force Plaintiffs into setting forth their entire case. Now, after forcing Plaintiffs to go through that exercise, it ignores what is convenient for it to ignore, including that Plaintiffs said "the outages and maintenance events listed in the Complaint are suspicious as a whole, and suspicious in terms of how close in proximity they were to each other." Nicoud Decl., Ex. 1 at 19.[7] Plaintiffs also said that "Defendants often had better information from each other than what was publicly available from outlets like Bloomberg and other services." *Id.* at 22. Further, in response to Tesoro's incredibly broad interrogatory that demanded:

> Without limiting the scope of ANY other Interrogatories, for ANY COMMUNICATION between ANY Tesoro trader or other Tesoro employee AND ANY other PERSON not affiliated with Tesoro that was part of the conspiracy alleged in the COMPLAINT, IDENTIFY EACH COMMUNICATION AND DESCRIBE how EACH COMMUNICATION supported the alleged conspiracy[,]

---

[7] "Nicoud Decl." refers to the declaration of Michael J. Nicoud submitted herewith in support of this opposition.

Plaintiffs provided dozens of pages of responses, including telling Tesoro and the other Defendants that "[t]raders exchanged information frequently and in a candid and unfiltered manner. They also received and exchanged information about turnarounds and actively planned to make up for each other during outages, including through exchange agreements." *Id.*, Ex. 2 at 26. This included numerous references to Tesoro's trader, Eric Pestano (*id.*), who is also referenced heavily throughout Plaintiffs' Opposition to Defendants' Joint MSJ. Tesoro ignores these arguments and evidence. When viewed in totality, Plaintiffs' evidence demonstrates why the outages listed in the complaints, and others like it, as demonstrated in Plaintiffs' Opposition to Defendants' Joint MSJ, are demonstrative of the conspiracy.

**B.    Plaintiffs Present Evidence Demonstrating Tesoro's Export Decisions, Like the Other Defendants', Were Part of the Conspiracy**

Tesoro's claim that "Plaintiffs present no evidence that Tesoro agreed with any other defendant to make [certain] exports" is dependent upon viewing Plaintiffs' evidence in the exact opposite way in which it must be viewed on a motion for summary judgment. Tesoro MSJ at 8. However, contrary to viewing the evidence in the light Tesoro wishes for it to be portrayed in, based on self-serving declarations from its own employees, "the evidence must, on summary judgment, be construed to the greatest extent reasonably possible in favor of finding an antitrust violation." *Citric Acid*, 191 F.3d at 1106, n.10.

Similarly, Tesoro's comment that "Plaintiffs point to no communications in which Tesoro's traders discussed with any other company exporting gasoline to restrict supply or fix or manipulate prices," is just an attempt to morph the standard into one requiring a smoking gun. Tesoro MSJ at 9. But, again, Plaintiffs have demonstrated direct evidence of Defendants, including Tesoro, engaging in such practices— including the dual-certification of gasoline to allow shipping it out of state, and sharing export scheduling information with each other, as detailed in Plaintiffs' Opposition to Defendants' Joint MSJ at Section III.B.4. Moreover, "[a] nonmovant plaintiff in a

section 1 case does not have to submit direct evidence, i.e., the so-called smoking gun." *Petruzzi's*, 998 F.2d at 1230; *accord Matsushita*, 475 U.S. at 588.

Plaintiffs have presented evidence that Defendants collectively engaged in a concerted effort to keep gasoline inventories low enough to sustain supracompetitive pricing, and that one of the ways they did so was through exporting gasoline out of California, as discussed in detail in Plaintiffs' Opposition to Defendants' Joint MSJ at Section III.B.4.

Similarly, Tesoro's argument that "[n]or does any evidence support plaintiffs' assertion that Tesoro used traders to coordinate exports," again relies on Tesoro's own interpretation of Plaintiffs' evidence, based on a self-serving declaration of the very trader implicated by the conduct at issue. Tesoro MSJ at 9. At best, Pestano's claim that his own conduct relating to "communicat[ing] with other refiners about exports and imports of gasoline[,]" was engaged in "to complete transactions in Tesoro's unilateral self-interest and gather information about market conditions" (T.A. at 104-05 (¶¶63-65)) creates an issue of material fact. Defendants cannot simply put forth declarations from every witness with a damning document or piece of testimony, denying their own culpability, and expect the Court to grant summary judgment.

Moreover, this self-serving declaration demonstrates its own unreliability. Pestano asserts in his declaration that "I understand that one of the documents on which plaintiffs rely attributes to me the statement that Tesoro was interested in exploring 'export opportunity' with another refiner." T.A. at 104-05 (¶65). However, then, he admits that "I do not recall that specific statement." *Id.* Yet, despite this admission, Tesoro provides his speculation, which unsurprisingly, paints his conduct in a positive light. He goes on to describe "the export opportunities I ***may have*** been interested in." *Id.* This type of selective memory is typical for Defendants' witnesses, who claim to forget anything that paints them in a bad light, but demonstrate a perfect recollection of how their conduct was innocent. Pestano's remarks in this regard are objectionable as speculation and lack of personal knowledge, given that he admitted he did not

remember the statement but nevertheless can somehow explain how it must be innocent. Tesoro's declarations, as with the other declarations Defendants have submitted, do nothing but illustrate and highlight the questions of material fact which show its MSJ must be denied.

Nevertheless, Tesoro is right that the sharing of confidential information amongst traders, "helped [Pestano] make informed judgments about the potential market for supply that Tesoro might need or have available to sell"—though that merely demonstrates why this type of information was competitively valuable and would not be shared by competitors absent the quid-pro-quo arrangement provided by Defendants' conspiracy. Tesoro MSJ at 9.

### C. Tesoro's Participation in Exchange Agreements Is Further Evidence of the Conspiracy

As Plaintiffs explain in detail in their Opposition to Defendants' Joint MSJ, Defendants' participation in exchange agreements is further evidence of the conspiracy. Jnt. MSJ Opp., §III.B.3.

Once again, Tesoro acts as though all that is required for the Court to grant summary judgment is for it to have its own self-serving statements denying any participation in a conspiracy and denying that certain evidence—in this case, exchange agreements—have an anticompetitive purpose. Tesoro MSJ at 10 ("As Tesoro's witnesses explained, Tesoro's agreements were done for efficiency reasons"). This is not a proper subject for this witness to opine on and, Plaintiffs have objected to these declarations, as detailed further in Plaintiffs' Opposition to Defendants' Joint MSJ and Appendix 1 to the same. Thus, the Court should not consider these declarations, or any references thereto, in any of Defendants' motions for summary judgment.

All Tesoro's declarations accomplish is highlighting a genuine issue of material fact regarding the true purpose of these agreements and how they function.

Further, even Tesoro's own employees, attempting to absolve themselves, fail to establish that there was no collusive impact of these exchange agreements or that there

is no issue of material fact. For example, Pestano claims Plaintiffs are "incorrect" to assert that an exchange agreement "did not make independent economic sense for Tesoro because Tesoro received more gasoline from ExxonMobil in September 2012 than it delivered to ExxonMobil that month, which meant that Tesoro was obligated to make up that 'imbalance' by delivering additional barrels to ExxonMobil in October 2012 when prices were higher." T.A. at 84 (¶20). While Pestano provides his biased view of the contract, he points out the inconsistency in how the contracts were supposed to be administered and how they were actually administered. He states, "[a]s stated in the contract, the parties intended that the volumes exchanged *would be kept in balance on a monthly basis, which would minimize the impact of any differences in prices over time*." *Id.* However, even Pestano acknowledged that "[o]n occasion, imbalances may occur in a given month," though he attributes that to "things like logistics issues or inaccurate market forecasts[,]" which the contract says nothing about. *Id.*

This imbalance loophole was pointed out by Plaintiffs' expert Robert McCullough. For example, McCullough concluded "on October 1, 2012, ExxonMobil was able to procure CARBOB at a much lower cost than market – product it could purchase and return at a later date after the crisis had passed." Nicoud Decl., Ex. 3, ¶287. McCullough explained that one of the issues with this arrangement is that "two competitors could borrow or lend products on a month to month basis without a 'true up.' This is all the more surprising since the price volatility of petroleum is extremely high." *Id.*, ¶296. Further, McCullough concluded that "[t]he economic value of such agreements is enormous." *Id.*, ¶300. Contrary to Tesoro's assertion that McCullough "ignores the long-term nature of the exchange and the parties' expectation that the effect of any short-term price differences would balance out over time" (Tesoro MSJ at 10), McCullough was recognizing what even Pestano admits in his deposition: the reality was that there *were imbalances*, allowing Defendants to take advantage of these agreements when circumstances were ripe for such abuse.

Tesoro, and the other Defendants', use of exchange agreements is further evidence of the conspiracy, despite the self-serving declarations of Tesoro's employees.

**D. Tesoro's Purchasing and Selling Activity Further Evidences the Conspiracy**

Tesoro asserts that various of the selling and purchasing decisions it made were innocent, but the evidence developed in this case demonstrates otherwise.

**1. Tesoro's Purchases in 2012 Are Evidence of the Conspiracy**

Tesoro again attempts to change the standard for a motion for summary judgment, merely disagreeing with the evidence regarding, and McCullough's analysis of, certain suspicious trades. Tesoro MSJ at 12. McCullough concluded that certain purchases of gasoline made by Tesoro on October 3, 2012 were "clearly … over the competitive price," recognizing that "October 3, 2012 set an unusually high level for the OPIS L.A. CARBOB differential - $1.425/gallon." Nicoud. Decl., Ex. 3 ¶¶404-05. Further, in his rebuttal report, McCullough recognized that "[]when Tesoro's Senior Vice-President of Refining was asked" later about October 2012 trading, he remarked "my understanding is we went out and bought some high-priced product to help supply ***and didn't even make a return back***." *Id.*, Ex. 4, ¶55 (citing TRMC-01767333). This is further support for the contention that these trades were suspicious and consistent with the conspiracy, driving prices up and allowing Tesoro "to offset the cost of its purchases through contracts linked to the OPIS index." *Id.*, Ex. 3, ¶404.

**2. Tesoro's Sales of Gasoline to ExxonMobil Following the Torrance Explosion in 2015 Further Demonstrate the Conspiracy**

Tesoro misconstrues the argument made by Plaintiffs and their expert Mr. McCullough, claiming that they argued that Tesoro should have "boycott[ed] sales to ExxonMobil." Tesoro MSJ at 14. Plaintiffs have not made this argument, nor has McCullough. The actual argument is that in a truly competitive market, ExxonMobil would have had difficulty covering such a massive supply loss absent a conspiracy.

However, Defendants like Tesoro ensured that ExxonMobil could continue operating as usual.

In fact, Tesoro's argument highlights exactly how this conspiracy worked—Defendants simply understood they would do each other favors when needed, without any fear that a competitor would actually try to take advantage of their weakness in the face of an outage or shortage. This meant that Defendants all reduced their risks. For example, Tesoro argues that "Tesoro would have had to believe that no other refiner would supply ExxonMobil, that no third-party traders would supply ExxonMobil, and that ExxonMobil would not be able to import supply quickly enough to retain its customers." Tesoro MSJ at 14. Tesoro also argues that "Tesoro would have faced the dual risks that ExxonMobil's customers would opt to buy from other California suppliers rather than from Tesoro and that any customers that did switch to Tesoro would not do so in sufficient numbers (and over a sufficiently long time period) to outweigh Tesoro's lost profits from not selling directly to ExxonMobil." *Id.* at 15. However, these arguments amount to Tesoro saying it wanted to take no risk whatsoever, and that it would simply provide gasoline to ExxonMobil at whatever price ExxonMobil asked. That attitude is supported by the evidence.

Tesoro ended up doing a number of favors for ExxonMobil in the wake of the explosion, and even "bent over backwards" for them. In mid-2015, ExxonMobil's trader Perez described how Tesoro had agreed to use two Tesoro terminals in LA to help ExxonMobil, noting that "Tesoro has been *extremely accommodating* to us, even though they have a planned 45 day HC T/A underway at Carson. They are a very good West Coast *partner*." Nicoud Decl., Ex. 5 at 000061751. In another email in mid-2015, Perez acknowledged that "Tesoro has *bent over backwards* on the Products side to help out during the ongoing issues … at the [Torrance refinery]," once again calling them an "excellent *partner*." *Id.*, Ex. 6 at 000084266. The same exchange recognized that Tesoro was "*asking Quid pro quo action from us*, to maintain the counterparty relationship," given that "Tesoro's position is that they have not been holding

ExxonMobil responsible for late interest payments from multiple late invoices for Mogas." *Id.* ExxonMobil approved waiving the late interest payment for Tesoro. *Id.* An internal Tesoro IM chat showed a Tesoro employee describing in April 2015 that their "[s]ystem [was] short in LA due to ***exxon short we have taken on***." *Id.*, Ex. 7 at 02519758.

This activity is also entirely consistent with the conspiracy, and akin to the "co-opertition" seen as a plus factor in a case where defendants "sold titanium dioxide to each other at below market prices and swapped raw materials needed for manufacture." *Home Depot*, 2019 WL 3804667, at *9. Crucially, this was "conduct that normally would not be expected between market rivals" (*id.*), just like Tesoro's conduct here in the wake of the Torrance outage.

### 3. Tesoro Offers Objectionable Evidence to Attempt to Rebut Certain Parallel Pricing Practices

Tesoro attempts to challenge the allegation that "Tesoro and three other defendants changed prices to their dealers 'by nearly the same amount' in February 2016." Tesoro MSJ at 16. Tesoro does not dispute the price change. *See id.* However, Tesoro cites to two Tesoro employee declarations to argue that this was simply a unilateral increase. One of these two declarations was from a Tesoro employee that was never disclosed in Tesoro's disclosures, and, thus, must be stricken in its entirety. *See infra*, Section II. Moreover, Plaintiffs further object to the three declaration paragraphs across the two declarations cited by Tesoro as follows:

Eckard Declaration, ¶26: Objectionable on foundation and lack of personal knowledge grounds, as Eckard purported to speak on behalf of "suppliers in the market," and talks about "a common and frequently used inventory management strategy."

¶27: Objectionable on speculation, foundation, and lack of personal knowledge grounds to the extent he talks about reported spot prices reaching lows, prices "remain[ing] depressed," "spot prices rebound[ing]," and the idea that "[s]pot market

prices suggested that Tesoro was not alone in having high inventories of winter-grade gasoline that it needed to sell."

Pestano Declaration, ¶47: Objectionable on speculation, foundation, and lack of personal knowledge grounds, as Pestano talks about his "belie[f] that others were in a similar situation" and attempts to say that "I attributed this selling activity and the resulting large price drop to refiners and trading companies having produced or imported more winter-blend gasoline than it turned out was necessary to address feared shortages resulting from several refinery outages at the time."  Additional objections to these witnesses are provided in Plaintiffs' Opposition to Defendants' Joint MSJ and Appendix 1 to the same.

### 4. Certain of Tesoro's Trades Were Wash Trades

Tesoro recognizes that Plaintiffs' expert McCullough characterized certain trades as improper wash trades, done to manipulate the price of gasoline rather than engage in a legitimate exchange of product.    Tesoro responds with a self-serving denial from the very trader who was engaged in the wrongful conduct. Tesoro MSJ at 16.  Tesoro offers their trader Pestano's word that "the trade I negotiated with SK Energy Americas, Inc. on July 23, 2015, was not a wash trade."  T.A. at 88-89 (¶29). If Defendants want to call Pestano to the stand at trial to make this denial, that is one thing, but such self-serving declarations serve no purpose on a motion for summary judgment.  Moreover, Pestano's declaration is also objectionable to the extent he talks about OPIS's threshold for a transaction to be included in their benchmark prices (*id.*) on the grounds of foundation, speculation, and lack of personal knowledge.

### E. Tesoro's Interfirm Communications Demonstrate Its Participation in the Conspiracy

Plaintiffs explain in detail in their Opposition to Defendants' Joint MSJ how the interfirm communications of Defendants, including Tesoro, demonstrate their participation in the conspiracy.   Jnt. MSJ Opp., §§III.A, III.B.2-4, III.D.   Tesoro

attempts to explain away some of these references, again, with self-serving declarations of the very people involved in the wrongdoing.   Tesoro MSJ at 17-19.

To begin with, Tesoro argues that because in its view "courts have uniformly recognized that buying and selling among competitors is lawful," that "communications legitimately occur … as the parties explore legitimate trading opportunities and provide or obtain information that will help them make informed judgments about the market and the availability of gasoline to buy or sell." *Id.* at 17. In essence, Tesoro is suggesting that because Defendants buy and sell product from each other, ***anything*** they say to each other in connection with those sales is a legitimate communication that could not support a finding of conspiracy.  That is not the law.

Moreover, Tesoro's self-serving explanations do nothing to refute the nature of these exchanges. For example, Tesoro's trader Pestano provided his competitor with information about his refinery's maintenance schedule, telling a trader at Shell that it "looks like my turnaround in the bay is running a bit long."  *Id.* at 17.  Pestano's explanation is that "I believed it would be helpful to make it clear to him that I had a definite need for a specific volume within a short period of time, which I felt would make it more likely he would make the effort to determine whether Shell had product available to sell to me."  T.A. at 102 (¶60).  First, this explanation does not excuse his conduct because he does not deny sharing the information or that it was confidential. Second, this pained interpretation makes no sense: if Pestano wanted to convey he had "a definite need for a specific volume within a short period of time," all he had to do was say exactly that.

Similarly, Tesoro suggests that its "traders were engaged in the normal give-and-take of a sales negotiation and using their own business judgment as to what would be helpful in completing or identifying transactions."  Tesoro MSJ at 17-18.  Again, this implies that traders can say ***anything*** they want, so long as they deem it to be within "their own business judgment." This standard, paired with Tesoro's self-serving declarations, would eviscerate antitrust law.

Similarly, Tesoro's argument that "[n]or do plaintiffs offer any evidence that any of these communications were in fact used to restrict supply or fix prices" (*id.* at 18) ignores the copious evidence as demonstrated in Plaintiffs' Opposition to Defendants' Joint MSJ. It is also wrong in implying that Plaintiffs need to show a smoking gun— which, again, is not the law. *Petruzzi's*, 998 F.2d at 1230; *accord Matsushita*, 475 U.S. at 588. As explained in detail in Plaintiffs' Opposition to Defendants' Joint MSJ, Plaintiffs have shown conduct of the Defendants that tends to exclude independent action and from which damages models attribute billions of dollars of damages.

## IV. CONCLUSION

Tesoro's attempt to write-in a requirement that Plaintiffs show a smoking gun, combined with its strained interpretations of the evidence Plaintiffs have developed and their litany of self-serving declarations, falls far from demonstrating that there are no issues of material fact in this case. Thus, Tesoro's motion must be denied.

DATED: May 28, 2021

Respectfully submitted,

ROBBINS LLP

*s/ Michael J. Nicoud*

MICHAEL J. NICOUD
GEORGE C. AGUILAR
5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
gaguilar@robbinsllp.com
mnicoud@robbinsllp.com

*Counsel for Plaintiffs Joshua Ebright, Paul Lee, and David Rinaldi*

ROBBINS GELLER
  RUDMAN & DOWD LLP

*s/ Alexandra S. Bernay*

PATRICK J. COUGHLIN (111070)
STEVEN W. PEPICH (116086)

ALEXANDRA S. BERNAY (211068)
CARMEN A. MEDICI (248417)
LONNIE A. BROWNE (293171)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423
patc@rgrdlaw.com
stevep@rgrdlaw.com
davidm@rgrdlaw.com
xanb@rgrdlaw.com
cmedici@rgrdlaw.com
lbrowne@rgrdlaw.com

HARTLEY LLP
JASON S. HARTLEY (192514)
101 W. Broadway, Suite 820
San Diego, CA 92101
Telephone: (619) 400-5822
Facsimile: (619) 400-5832
hartley@hartleyllp.com

*Counsel for Plaintiff Persian Gulf Inc.*

## SIGNATURE CERTIFICATION

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures Manual, I hereby certify that the content of this document is acceptable to Alexandra S. Bernay, counsel for plaintiff Persian Gulf Inc., and that I have obtained her authorization to affix her electronic signature to this document.

*s/ Michael J. Nicoud*
MICHAEL J. NICOUD

1522107

- 18 -