UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERSIAN GULF INC., Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BP WEST COAST PRODUCTS LLC, et al.,<br><br>Defendants. | Case No.: 15cv1749-JO-KSC and 18cv1374-JO-KSC<br><br>**ORDER ON DEFENDANT ALON'S MOTIONS FOR SANCTIONS** |
| RICHARD BARTLETT, et al., Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>BP WEST COAST PRODUCTS LLC, et al.,<br><br>Defendants. | Lead Case No. 18cv1374-JO-KSC (consolidated with No. 18cv1377-JO-KSC) |

In these putative class actions for antitrust conspiracy, Defendant Alon USA Energy, Inc. filed identical motions for sanctions under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927 against Plaintiff Persian Gulf Inc. and individual consumer plaintiffs Joshua

Elbright, Paul Lee, and David Rinaldi (collectively, "Plaintiffs"). Dkt. 282; *Bartlett et al. v. BP West Coast Products LLC et al.*, 18cv1374-JO-AGS, Dkt. 167 (together, "Alon's Sanc. Mots."). For the reasons below the Court denies Alon's motions for sanctions.

## I. BACKGROUND

Plaintiff Persian Gulf Inc. ("Persian Gulf"), the operator of a retail gas station, initiated its antitrust lawsuit on behalf of retail stations in California on July 7, 2015. *See* Dkt 1.[1] On September 22, 2016, Persian Gulf filed an Amended Complaint. Dkt. 76 ("Amend. Compl."). On June 21, 2018, Richard Bartlett, Kristine Snyder, Joshua Ebright, Paul Lee, and David Rinaldi ("Consumer Plaintiffs") filed two separate antitrust lawsuits on behalf of consumers who purchased gasoline in California. *See Bartlett*, Dkt. 1;[2] *Rinaldi et al. v. BP West Coast Products LLC et al.*, 18cv1377-JO-AGS, Dkt. 1. On July 25, 2018, the Court consolidated the two Consumer Plaintiffs' cases into one action. *Bartlett*, Dkt. 37; *Rinaldi*, Dkt. 35. On August 8, 2018, the Consumer Plaintiffs filed a Consolidated Complaint. *Bartlett*, Dkt. 44 ("Cons. Compl."). Thereafter, the Court ordered the coordination of Persian Gulf's and Consumer Plaintiffs' cases for discovery and motion briefing because the allegations were nearly identical. *See* Dkt. 143; *Bartlett*, Dkt. 46.[3]

Persian Gulf's and Consumer Plaintiffs' complaints alleged that nine current and former gas refiners in California—Defendants BP, Chevron, Phillips 66, Tesoro, Shell, Valero, ExxonMobil, Kern Oil, and Alon (collectively, "Defendants")—conspired to fix gas prices in California from 2012 to 2015 in violation of § 1 of the Sherman Act, the Cartwright Act, California Business & Professions Code §16700, *et seq.*, and California's Unfair Competition Law, California Business and Professions Code § 17200, *et seq. See*

---

[1] This case was originally filed in state court and removed to this Court on August 6, 2015. Dkt. 1. Unless otherwise noted, citations to "Dkt." alone refer to *Persian Gulf, Inc. v. BP West Coast Products LLC, et al.*, 15cv1749-JO-AGS.

[2] References to "*Bartlett*, Dkt." refer to the consolidated individual consumer case, *Bartlett et al. v. BP West Coast Products LLC et al.*, 18cv1374-JO-AGS.

[3] Plaintiffs Bartlett and Snyder were dismissed from the consolidated individual consumer case on June 15, 2020. *Bartlett*, Dkt. 293.

Amend. Compl.; Cons. Compl.

On April 25, 2019, approximately two years and seven months after the filing of Persian Gulf's Amended Complaint and eight months after the filing of the Consumer Plaintiffs' Consolidated Complaint, Alon sent letters to Plaintiffs' counsel challenging the accuracy of both complaints. *See* Alon's Sanc. Mots. at 7:12–21, 9:7–9; 11:25–27; 24:5–9. On October 4, 2019, Alon moved for sanctions against Persian Gulf and Consumer Plaintiffs, challenging two allegations contained in these complaints. Alon's Sanc. Mots.

Alon first challenged the veracity of Plaintiffs' inclusion of Alon's Bakersfield refinery in a chart of "suspicious plant closings in 2012, while the price of gasoline spiked and maintained high levels compared to the rest of the country" ("Shutdown Allegation"). Alon's Sanc. Mots. at 8–21, 26:21–27:10 (challenging Amend. Compl. ¶ 37 (Cons. Compl. ¶ 40)). This chart indicated that Alon had planned an outage of its Bakersfield refinery on April 20, 2012 while publicly claiming that the shutdown was due to a "hydrocracker restart[]." Amend. Compl. ¶ 37; Cons. Compl. ¶ 40. In its sanction motions, Alon argued that its Bakersfield refinery did not suspiciously shut down for a short duration but was in fact non-operational for the six-month period from December 2011 to June 2012. Alon's Sanc. Mots. It asserted this information was available in its own public statements, including filings with the Securities and Exchange Commission, transcripts of investor conference calls, and press releases. *Id.*

Alon also challenged as false and unfounded Plaintiffs' allegation that Alon "is a participant in the California gasoline refinery market" ("Market Participant Allegation"). Alon's Sanc. Mots. at 12–14, 20:11–21:19 (challenging Amend. Compl. ¶ 137 (Cons. Compl. ¶ 30)); *see also* Dkt. 897, May 7, 2024 Transcript of Proceedings ("Hr'g Tr.") at 92:12–94:21. Alon argues this allegation was false because it had suspended refining operations in California after December 2011. Alon's Sanc. Mots. at 12–14, 20:11–21:19.

In its sanctions motion, Alon alleges Plaintiffs and their counsel knew or should have known these factual allegations were false but included them in their complaints without conducting a reasonable pre-filing investigation and inquiry. Alon's Sanc. Mots. Alon

also alleges that Plaintiffs "unreasonably and vexatiously multiplied proceedings" against Alon by refusing to withdraw their claims after Alon refuted these allegations in its April 2019 letter. *Id.* at 16:16–19.

On May 7, 2020, the district judge previously assigned to this case denied Alon's motions for sanctions.[4] Dkt. 410; *Bartlett*, Dkt. 276. Defendants appealed and the Ninth Circuit Court of Appeals vacated the Court's denial of sanctions. *Persian Gulf, Inc. v. Alon USA Energy, Inc.*, No. 22-56016, 2023 WL 8889557, at *2 (9th Cir. Dec. 26, 2023). The Court was ordered to "hold an evidentiary hearing to further develop the record as to what investigation Plaintiffs' Counsel undertook for the two factual allegations at issue in the motion for sanctions, both at the time of filing the complaints and at the time of receipt of Alon's letter disputing the allegations." *Id.*

On May 7, 2024, the Court conducted the required evidentiary hearing. Dkt. 892. The Court received into evidence over 200 exhibits from Plaintiffs and six exhibits from Alon and heard testimony from six witnesses. Dkts. 894–96. Based on the evidence in the record, including the testimony and exhibits presented at the May 7, 2024 evidentiary hearing, the Court issues its findings of fact and conclusions of law.

## II.    EVIDENTIARY OBJECTIONS

Before turning to its findings of fact and conclusions of law, the Court first addresses some preliminary evidentiary issues. Throughout the evidentiary hearing, Alon's counsel made certain assertions that could be construed as objections. Accordingly, the Court resolves them here.

**A. Persian Gulf's Exhibits 138 and 139 and Consumer Plaintiffs' Exhibits**

The Court OVERRULES Alon's objections to Persian Gulf and Consumer Plaintiffs' exhibits for lack of foundation or relevance. Hr'g Tr. at 31:13–16 ("So, there's five volumes of [Plaintiffs' exhibits] that they produced here. None of those documents

---

[4] This case was transferred to the undersigned on January 3, 2022. Dkt. 794.

indicate when they got them, when they looked at them, who looked at them. It's just a pile of stuff they're just going to throw on you."); *see also* Dkt. 901. Persian Gulf has provided credible testimony that its Exhibits ("PG's Exs.") 138 and 139 detail the documents that its counsel considered before filing the Amended Complaint and after receiving Alon's April 25, 2019 letter. Hr'g Tr. at 35:21–37:5; 41:20–42:18; 43:15–44:10. Consumer Plaintiffs also provided credible testimony that they reviewed certain documents before or after filing the Consolidated Complaint as catalogued in Consumer Plaintiffs' Exhibit ("Cons. Pls.' Ex.") 231. *Id.* at 149:14–153:14, 155:14–158:4, 158:22–159:23. The above testimony provides the foundation that the documents listed in these exhibits are those that Plaintiffs' counsel reviewed before bringing their allegations against Alon and in deciding to continue prosecuting their case against Alon. *Id.* The above testimony also establishes that these documents are relevant to the central inquiry of this sanctions motion, i.e., what Plaintiffs' counsel considered in bringing and continuing to prosecute their allegations. *Id.*

To the extent that Alon objects that Plaintiffs relied on documents or discovery outside the "frozen" record permitted by the Court, *id.* at 40:6–10, the Court OVERRULES those objections. The Court finds that in advance of the evidentiary hearing, Persian Gulf provided Alon a detailed exhibit list, PG's Ex. 147, that included a table with a "Cited In" column that listed where each exhibit had previously been cited, used, or exchanged prior to the May 7, 2020 record cut-off date. Hr'g Tr. at 40:19–41:5.

**B. Involvement of Attorney-Witness Armen Zohrabian**

To the extent that Alon objects to the testimony of Armen Zohrabian ("Zohrabian") as undisclosed, Hr'g Tr. at 72:25–73:1, the Court OVERRULES this objection for the following reasons. Zohrabian's name was on the caption and signature pages of Persian Gulf's Amended Complaint, filed on September 22, 2016. Dkt. 76 at 1, 74. Further, Plaintiffs identified Zohrabian as a potential witness at the February 21, 2024 status conference regarding the evidentiary hearing. Dkt. 883, February 21, 2024 Tr. at 27:10.

### III. LEGAL STANDARDS

Rule 11 of the Federal Rules of Civil Procedure allows a party to request sanctions

if the opposing party has filed a frivolous lawsuit or engaged in abusive litigation practices. Rule 11 further requires that an attorney certify that pleadings, motions or other court filings are "not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and the factual contentions in those filings either "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(a), (b)(1), (b)(3). "Where, as here, the complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent inquiry' before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (quoting *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997)). The central purpose of Rule 11 is to deter unsubstantiated filings in district court and streamline administration and procedure of the federal courts. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

In the Ninth Circuit, "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Operating Engineers Pension Trust v. A-C Company*, 859 F.2d 1336, 1345 (9th Cir. 1988). The party seeking Rule 11 sanctions bears the burden of demonstrating that the allegations were "both baseless and made without a reasonable and competent inquiry." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990); *see also In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 434 (9th Cir. 1996) (applying *Townsend* "to the factual basis for a claim"). The test is whether counsel had "***some*** plausible basis" for the allegation; even "a weak one" will suffice. *United Nat'l Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1117–18 (9th Cir. 2001) (emphasis in original). Thus, "Rule 11 sets a low bar: It deters 'baseless filings' by requiring a 'reasonable inquiry' that there is some plausible basis for the theories alleged." *Strom v. United States*, 641 F.3d 1051, 1059 (9th Cir. 2011).

A sanction under 28 U.S.C. § 1927 is appropriate when opposing counsel has

needlessly prolonged litigation and/or made it more expensive. Section 1927 provides:

> [a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorney's fees reasonably incurred because of such conduct.

*Id*. Under § 1927, the party seeking to impose sanctions bears the burden of proving that the opposing party acted with "subjective bad faith." *Kohler v. Flava Enters., Inc.*, 779 F.3d 1016, 1020 (9th Cir. 2015). Subjective bad faith exists "when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *B.K.B. v. Maui Police Department*, 276 F.3d 1091, 1107 (9th Cir. 2002) (internal citation and quotation omitted). As is the case with Rule 11 sanctions, the imposition of sanctions under §1927 "is an extraordinary remedy." *Keegan*, 78 F.3d at 437.

## IV.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. The California gasoline market is characterized by its geographic isolation from other refining centers and alternative sources of supply. It is regularly described as a "gasoline island." PG's Exs. 43, 56 at 1, 98 at 20. Moreover, California mandates a high-quality gasoline known as CARBOB that is only produced at specific refineries across the world. PG's Ex. 98 at 20.

2. As summarized by Judge Lorenz in his June 18, 2018 order on Defendants' Motion to Dismiss, Persian Gulf's case centered around allegations that gasoline refining companies like Alon "conspired to create a false impression of reduced supply [of gasoline], when in fact they possessed the inventory and production capacity to supply the California market." Dkt. 86 at 7. Persian Gulf further alleged that this conspiracy involved several instances of unnecessary refinery shutdowns, simultaneous exports during a short period of time, an orchestrated run on the market, and other coordinated actions. *Id.*

3. As of October 13, 2011, Alon owned three refineries in California:

Bakersfield, Long Beach, and Paramount. PG's Ex. 4 at 3. Alon purchased its Bakersfield refinery in 2010. *Id.*

4.  The California Energy Commission's Energy Almanac reported that as of November 2014 Alon was one of seven gasoline refiners (along with Defendants Chevron, Exxon, Phillips 66, Shell, Tesoro, and Valero) that comprised 99% of California's CARBOB refining capacity.[5] *See* PG's Ex. 104 at 1–3.

**McCullough Reports**

5.  Persian Gulf retained economist Robert M. McCullough as an expert in June or July 2015 and relied on consultations with him in filing its Amended Complaint on September 26, 2016. Dkt. 294-13 ("McCullough Decl.") ¶ 1; Hr'g Tr. at 45:19–46:24, 77:2–21, 118:22–23, 119:6–13, 170:8–19.

6.  On June 5, 2012 and November 15, 2012, three years before Persian Gulf retained him, McCullough had issued a series of reports analyzing rising gasoline prices on the West Coast ("McCullough Reports"). McCullough Decl. ¶ 2. These reports described California as a "gasoline island" and discussed its unique challenges in accessing gasoline supply. PG's Exs. 23, 51. McCullough's June 5, 2012 report, titled "Analysis of West Coast Gasoline Prices" (the "June 2012 Report"), examined "a suspicious combination of rising supplies, falling demand, increasing inventories, and increasing prices" in gasoline prices on the West Coast. PG's Ex. 23 at 1. Both McCullough Reports contained a table of gasoline refinery shutdowns that occurred in spring 2012 and examined the role of these shutdowns in causing a spike in gasoline prices at that time. PG's Exs. 23 at 1–2, 51 at 2, 8 (Cons. Pls.' Exs. 180 at 1–2; 181 at 2, 8). The table of shutdowns listed Alon's Bakersfield refinery as having been shut down on April 20, 2012 and indicated that it remained closed as of June 6, 2012. PG's Exs. 23 at 2, 51 at 2, 8; McCullough Decl.,

---

[5] All nine California refiners were included as defendants in Persian Gulf's first complaint ("Original Complaint"), but the smallest of the nine, Kern Oil & Refining Co., was dismissed by agreement prior to the filing of the Amended Complaint. Dkts. 59 at 1–2; 60.

Ex. 2. By including Alon's Bakersfield refinery in this chart, the McCullough Reports also implied that Alon was a California gasoline refinery that had colluded with the other refinery Defendants to decrease gasoline supply. *See* PG's Exs. 23, 51.

7. In addition to authoring the above reports on the gasoline industry, McCullough has bachelor's and master's degrees in economics, Hr'g Tr. at 113:9–15; McCullough Decl., Ex. 1, and nearly 30 years of experience performing economic analyses in various markets. Hr'g Tr. at 113:16–114:2. McCullough has been retained as an expert by the states of California, Illinois, New York, Maine, Montana, Oregon, and Washington, and by the United States Department of Justice to provide economic analysis in suits involving various energy and utility industries, including the gasoline industry. McCullough Decl. Ex. 1; Hr'g Tr. at 117:22–118:2 (states); Hr'g Tr. at 118:35 (Department of Justice).

8. Prior to filing the Amended Complaint, Persian Gulf conferred with McCullough regarding the accuracy of the drafts of the Amended Complaint, including its allegations that Alon was a participant in the gasoline refinery market and that it had conspired to shut down its Bakersfield refinery in the April 2012 time frame. Hr'g Tr. at 45:19–46:24, 76:23–77:21, 118:22–119:1, 119:6–13, 170:8–19.

**Media Accounts**

9. Plaintiffs also considered the following media accounts in concluding that Alon was a participant in the gasoline refinery market in the 2012 to 2016 time frame as alleged by in the Market Participant Allegation, and that its Bakersfield refinery was shut down in April 2012 pursuant to joint action among the Defendants as alleged by the Shutdown Allegation.

**A. Market Participant Allegation – Amend. Compl. ¶ 137, Cons. Compl. ¶ 30**

10. Plaintiffs relied on Alon's own public statements, market reports, media reports, and (later) internal emails in asserting in its 2016 Amended Complaint that "Alon is a participant in the California gasoline refinery market." Amend. Compl. ¶ 137 (Con. Compl. ¶ 30); *see, e.g.*, PG's Exs. 64 at 5, 66 at 6, 69 at 4, 70 at 10, 71 at 4, 72 at 2, 80 at

1, 82 at 1, 87 at 3, 90 at 5, 7, 13, 91 at 1, 94 at 2, 95 at 3, 96 at 1, 107 at 2, 112 at 10, 114 at 1–2, 126 at 10, 127; Cons. Pls.' Exs. 205, 211–213, 215, 217–218, 220, 221 at CP00009185, 222 at CP000009242–43, 227 at CP00013455, 228 at CP00013901–03, 08, 229 at CP00014079, 82.

11. Plaintiffs consulted Alon's emissions data for dates that Alon claims the Bakersfield refinery was closed and determined that Alon was producing emissions, a sign that the refinery was operational at least in some capacity during the 2012 timeframe. PG's Ex. 130, ¶¶ 12–13; Hr'g Tr. at 110:20–23.

12. Plaintiffs also considered public information such as the Petroleum Market Advisory Committee's discussion at a 2016 meeting about "potential supply constraints unique to California." Cons. Pls.' Ex. 193 at CP00000788. In connection with this topic, the committee had "asked about the potential of utilizing more California refining capacity, specifically what's been off line like ALON in Bakersfield, whether we could bring that back on line in order to help." *Id.*

13. Based on information from public sources, such as the California Energy Commission's Energy Almanac on California Oil Refineries, Plaintiffs also determined that between October 2012 through 2016, Alon's Bakersfield refinery was capable of producing gasoline, distillates, and vacuum gas oil (including 66,000 barrels of CARBOB per day), even if its actual refining activities had been limited to blending after 2012. PG's Exs. 76 at 2–3, 102 at 1, 104 at 2–3, 112 at 9, 114 at 1–2.

14. In addition to confirming Alon's blending activities and its latent refining capacity, Plaintiffs determined that Alon actively participated in California's gasoline refinery market well into 2017 in other ways. As confirmed by its own February 21, 2017 Form 10-K, Alon's "California refineries utilize[d] product pipelines, truck racks and terminals to distribute refined products" throughout this time frame. PG's Ex. 126 at 10.

15. Based on Plaintiffs' counsel's examination of these varied sources of information, they determined that as of 2016, Alon continued to be part of the California refining capacity landscape.

**B. Shutdown Allegation – Amend. Compl. ¶ 37, Cons. Compl. ¶ 40**

16. Plaintiffs also reviewed and relied on the following media accounts and Alon's public statements in concluding that Alon's Bakersfield refinery was temporarily shut down in April 2012 as part of a scheme to reduce supply rather than the refinery being non-operational as Alon alleges. Hr'g Tr. at 34:16–36:7; PG's Exs. 18 at 2, 19 at 3, 20 at 1, 21 at 10, 22 at 1, 138.

17. Plaintiffs examined multiple sources which documented the fact that seven California refiners, including Alon, experienced similarly timed refinery shutdowns during periods of rising prices in 2012. *See, e.g.*, PG's Exs. 18 at 2, 19, 20 at 1, 21, 23, 24, 26 at 1, 27 at 1–2, 28 at 1, 29, 30 at 1, 35 at 1, 41 at 1–2, 43 at 2, 44 at 2–3, 50 at 1, 53 at 1, 54 at 2, 55 at 1–4; Cons. Pls.' Exs. 168 at CP00000032, 186 at CP00000318–21, 196 at CP00000996–98, 200 at CP00001068–70, 203 at CP00001124.

18. In concluding that Alon's 2012 Bakersfield refinery shutdown was likely the result of collusion, Plaintiffs' counsel also examined reports that analyzed data from refinery shutdowns that occurred between 2012 and 2015 and confirmed the connection between refinery shutdowns and rising gasoline prices. *See, e.g.*, PG's Exs. 85 at 1–2, 86, 87 at 3, 5, 88, 92, 98 at 31, 99 at 1–4; Cons. Pls.' Exs. 172 at CP00000052, 176 at CP00000072–74, 177 at CP00000081, 190 at CP00000347, CP00000356, 191 at CP00000361, 199, 203 at CP00001123.

19. Persian Gulf and Consumer Plaintiff's investigations also included reviewing multiple sources that discussed suspicions of market manipulation and called for investigation of the gasoline industry. *See, e.g.*, Cons. Pls.' Exs. 160, 162 at CP00000008–11, 163 at CP00000014, 164 at CP00000017, 167 at CP00000028–29, 168 at CP00000032, 169 at CP00000037, CP00000041–45, 171 at CP00000051, 172 at CP00000052–53, 173 at CP00000058, 178 at CP00000084, 179 at CP00000091–92, 186, 187, 188 at CP00000330, 189 at CP00000383, 192 at CP00000376, 196 at CP00000996–98, 197 at CP00001002, 198 at CP00001057–58, 199, 200 at CP00001068–69, 201.

20. Oftentimes, the public did not have access to information regarding refinery

operations—only the refiners had direct access to information specifying the dates and refineries that were operational. *See, e.g.*, PG's Ex. 58a at 20 (Western States Petroleum Association's report stating companies did not announce planned shutdowns nor the specific units involved).

21. Plaintiffs concluded that Alon's company statements could not always be relied on after they uncovered multiple instances where Alon's statements concerning its refinery operations were inconsistent with emissions data and/or inconsistent with its subsequent statements. For example, Plaintiffs considered the fact that Alon's emissions data did not always match its claims that the Bakersfield refinery was closed on particular dates. Hr'g Tr. at 110:20–23. They determined that Alon was producing emissions, a sign that the refinery was operational at least in some capacity during the 2012 timeframe. *See id.*; PG's Ex. 130 ¶¶ 12–13. Another example of an inconsistency with Alon's public statements occurred on May 4, 2012, when Alon stated that its "Paramount refinery was restarted in April and [] expect[ed] to restart the Bakersfield refinery including the hydrocracker [that month]," PG's Ex. 16 at 3, even though Alon had previously stated in October 2013 that it was running the Paramount, Long Beach, and Bakersfield refineries "as one integrated refinery." PG's Ex. 4 at 3.

**No Corrective Response Despite Widespread Media and Political Attention**

22. Plaintiffs also relied on the fact that neither Alon, nor anyone else, refuted public assertions—that Alon was a participant in the gasoline industry and shut down its refinery in Bakersfield in the April 2012 time frame—despite the fact that the McCullough Reports had received widespread and substantial attention from the press.

23. These media accounts included more than 80 contemporaneous press reports, mentions in major newspapers on the West Coast, and coverage in industry journals. PG's Exs. 25, 50, 55 at 1–3, 57, 130 at 1.

24. After publication of the June 2012 Report, multiple articles, reports, and statements from elected officials addressed the possible connection between the spring 2012 refinery shutdowns and rising gasoline prices. Many of these media accounts

expressly referred to the McCullough Reports and at least one article attributed a reduction in gasoline production to "Alon's hydrocracker restart in Bakersfield, Calif., on April 20, [2012]." *See, e.g.*, PG's Exs. 24 at 1–3, 26 at 1, 27 at 1–2, 28 at 1, 29, 30 at 1, 35 at 1, 41 at 2, 42 at 1, 43 at 1, 44 at 1–2, 50 at 1, 53 at 1, 54 at 2, 55 at 1, 3–4, 138; Cons. Pls.' Exs. 167 at CP00000027–28, 168 at CP00000032, 171 at CP00000051, 186 at CP00000318–21, 196 at CP00000996–98, 200 at CP00001068–70, 203 at CP00001124, 231–232.

25. Multiple investigations conducted by California legislators and members of the United States Congress also expressly relied on the McCullough Report without triggering any response from Alon refuting the accuracy of the information contained in these reports about its role in this industry or its Bakersfield refinery shutdown. Hr'g Tr. at 116:13–15, 149:4–9; PG's Exs. 24–28, 50 at 1–3, 54 at 2, 55 at 1, 3–4; Cons. Pls.' Exs. 167 at CP00000028–29, 186 at CP00000318, CP00000321–22, 196 at CP00000996–97, 200 at CP00001068.

26. The Western States Petroleum Association ("WSPA"), a non-profit trade association representing petroleum companies in Arizona, California, Nevada, Oregon, and Washington with the goal of "disseminat[ing] accurate information on industry issues,"[6] issued a report addressing and refuting some of the findings contained in the McCullough Reports. PG's Ex. 58a. The WSPA report spanned 24 pages and criticized several aspects of the November 2012 Report, but did not question, challenge, or correct any information regarding Alon's role in the gasoline refinery market or its Bakersfield refinery shutdown. *Id.*; Hr'g Tr. at 116:19–117:11.

**No Corrective Response from Alon Despite Litigation**

27. In filing its Amended Complaint, Persian Gulf also relied on the fact that Alon failed to refute the assertion that Alon was a participant in the California gasoline refinery market (Market Participant Allegation) or that it had shut down its Bakersfield refinery in

---

[6] Western States Petroleum Association, https://www.wspa.org/about/ (last accessed March 18, 2025).

April 2012 (Shutdown Allegation) despite the fact that Persian Gulf initiated litigation on August 6, 2015 with its Original Complaint.

28. In response to Persian Gulf's Original Complaint, which named Alon as a defendant in this price fixing scheme and alleged that it took actions to reduce gasoline supply, Alon did not reach out to clarify that it had suspended operations and was not conducting any refining operations in California after December 2011 and therefore could not have been a participant of the California gasoline refining market as of 2015.

29. On March 7, 2016, Defendants, including Alon, requested that the Court take judicial notice of the McCullough Reports. Dkt. 47-2. Thus, Alon was aware of these reports and the tables stating that Alon had shut down its Bakersfield refinery on April 20, 2012 to reduce supply, but did not reach out to Plaintiffs to correct this information or to communicate that it did not shut down its Bakersfield refinery on April 20, 2012—that, in fact, it had earlier suspended all California refining operations in December 2011. Hr'g Tr. at 48:20–24; *see* Dkt. 47-2.

30. Persian Gulf filed its Amended Complaint on September 22, 2016, containing the Shutdown Allegation and Market Participant Allegation. Amend. Compl. ¶¶ 37, 137.

31. Given the lack of transparency into the Alon's actions, in filing its Amended Complaint on September 22, 2016, Persian Gulf's counsel reasonably relied on the above—McCullough's reports, his guidance as their expert, and media reports—to conclude that a plausible basis existed to allege that Alon was a participant in the gasoline industry during the time periods alleged in the Amended and Consolidated Complaints, and that Alon's Bakersfield refinery had shut down on April 20, 2012 pursuant to a scheme to reduce supply.

32. Alon and Defendants jointly moved to dismiss the Amended Complaint on October 17, 2016. Dkt. 81. In the motion, Alon argued that its Bakersfield refinery shutdown a "routine scheduled maintenance event[]" rather than an effort to raise prices. Dkt. 81-1 at 18:16–19:4. However, it again did not reach out to explain that this refinery had been non-operational from December 2011 to June 2012. *See generally* Dkt. 81-1.

33. Following the Court's denial of Alon's motion to dismiss, Alon answered Plaintiffs' allegation that it was "a participant in the California gasoline refinery market" by objecting that this characterization called for a legal conclusion, and that Persian Gulf and Consumer Plaintiffs had failed to define the term "California gasoline refinery market." Dkt. 115 ¶ 137 ("Alon's Ans. to Amend. Compl."); *Bartlett*, Dkt. 117 ¶ 30 ("Alon's Ans. to Cons. Compl."). Alon neither denied the truth of these allegations, *see id.*, nor reached out to Plaintiffs to explain that it had stopped refining in California as of December 2011 and that the Bakersfield refinery had been closed between December 2011 and June 2012.

34. Consumer Plaintiffs filed their Consolidated Complaint on August 8, 2018. Cons. Compl. Consumer Plaintiffs' counsel reasonably relied on McCullough's Reports (although they did not directly consult with McCullough, unlike Persian Gulf); the district court's dismissal of Alon's motion to dismiss Persian Gulf's Amended Complaint; and media reports in concluding that a plausible basis existed to allege that Alon was a participant in the gasoline industry during the time periods alleged in the Consolidated Complaints and that Alon's Bakersfield refinery had shut down on April 20, 2012 pursuant to a scheme to reduce supply. Additionally, by the time the Consolidated Complaint was filed, Alon had already requested that the Court judicially notice the McCullough Reports and had answered Persian Gulf's Amended Complaint without reaching out to Plaintiffs' counsel to dispute that it was involved in the gasoline industry or clarifying that its Bakersfield refinery had already been shut down rather than temporarily closed. *See* Dkt. 47-2; Alon's Ans. to Amend. Compl.

35. Moreover, Alon's Answer to the Consolidated Complaint admitted that it did indeed have at least the latent capacity to refine significant amounts of CARBOB gasoline, stating "its Bakersfield refinery *has* a nominal crude capacity of 70,000 barrels per day." Alon's Ans. to Cons. Compl. ¶ 29 (emphasis added).

36. Multiple witnesses testified that throughout their investigation, which included the above responses from Alon and the gasoline industry, they did not come across anything that gave them reason to doubt the accuracy of allegations, which Alon did not

challenge until two years and seven months after the Amended Complaint's filing and eight months after Consolidated Complaint's filing. Hr'g Tr. at 53:5–22, 117:4–11, 119:23–120:6, 142:20–143:9, 144:13–21, 153:15–154:24, 170:5–172:1. Having observed Plaintiffs' witnesses' demeanor, including their body language, facial expressions and eye contact, as well as the tone and content of their testimony, the Court finds them to be credible. The Court especially notes that attorney Alexandra S. Bernay gave testimony that demonstrated a thorough and earnest regard for the truth and took pains to avoid overreaching or inaccurate testimony. *See e.g.*, Hr'g Tr. at 34:16–111:25. Alon presented no evidence or testimony calling into question the credibility of the attorney witnesses.

**Plaintiffs' Investigation Following Alon's Challenge to the Accuracy of Complaints**

37. Alon first contested the accuracy of Plaintiffs' allegations in a letter dated April 25, 2019. *See* Alon's Sanc. Mots. at 7:12–21, 9:7–9; 11:25–27; 24:5–9; PG's Ex. 128 ("Alon's April 25, 2019 Letter").

38. In this letter, Alon primarily relied on its own public statements to dispute Plaintiffs' allegations that it closed its Bakersfield refinery in April 2012 to reduce gasoline supply (Shutdown Allegation). *See* Alon's Sanc. Mots. at 7:12–21, 9:7–9; 11:25–27; 24:5–9. Alon asserted that instead of temporarily shutting down this refinery as a scheme to reduce supply, it had in fact it ceased operations at its California refineries as of December 2011. Alon's April 25, 2019 Letter at 4–5.

39. In response to this letter, Persian Gulf and Consumer Plaintiffs' counsel reviewed the information provided by Alon and compared the materials they had previously considered. Hr'g Tr. at 41:22–45:3, 54:1–7, 103:6–15; 155:14–156:22; *see* PG's Ex. 139; Cons. Pls.' Exs. 231, 232. They also examined additional documents that included several transcripts of Alon's earnings releases, earnings calls, SEC Filings, and presentations. Hr'g Tr. at 41:22–45:3, 54:1–7, 103:6–15; 155:14–156:22; PG's Exs. 5, 10, 12, 16, 34, 139.

40. Persian Gulf and Consumer Plaintiffs' counsel also consulted with Persian Gulf's expert McCullough regarding Alon's letter. Hr'g Tr. at 54:8–11, 54:18–25; 157:21–

158:4. In October 2019, during the course of these discussions, McCullough provided to Plaintiffs for the first time emissions data that Alon had previously provided to the San Joaquin Valley Air Pollution Control District. *Id.* at 54:8–11, 54:18–25, 134:1–135:4, 157:4–20. This data was authored by Bill Clemons, an Alon employee, and produced by Alon to the San Joaquin Valley Air Pollution Control District in 2012. Hr'g Tr. at 111:7–13; 134:1–135:4, 157:4–20; PG's Exs. 131 at 1–3, 132 at 2–4. This emissions data indicated that the Bakersfield refinery had not been closed as of December 2011 but instead was only temporarily shut down from February 16, 2012 to May 9, 2012. Hr'g Tr. at 54:18–55:18.

41. Despite the contradictory information about the Bakersfield refinery operations contained in Alon's public statements, Plaintiffs reasonably relied on the emissions data and the information discussed above to conclude that it remained at least plausible that the Bakersfield refinery had been temporarily shut down in the spring of 2012 rather than completely closed between December 2011 to June 2012, as Alon asserted. H'rg Tr. at 54:8–11, 54:18–25; 157:4–158:4. Given the inconsistencies and inaccuracies in Alon's other public statements, *see supra* ¶ 21, and the abundance of information supporting their conclusion, Plaintiffs' conclusions were reasonable. They did, however, react to the information that Alon provided them by modifying their conclusion regarding the exact dates and causes of Alon's Bakersfield refinery shutdown based on their investigation.

42. After receiving the above information, on October 21, 2019, Plaintiffs filed with the Court a correction to replace ¶ 37, which reads:

| Date | Company | Refinery | Amount of Statewide Capacity | Type of Outage | Claimed Reason | Industry Sources |
|---|---|---|---|---|---|---|
| 4/20/12 | Alon | Bakersfield | 3.2% | Planned | Hydrocracker restarted | No Information |

with the following revised allegation:

| Date | Company | Refinery | Amount of Statewide Capacity | Type of Outage | Claimed Reason | Industry Sources |
|---|---|---|---|---|---|---|
| 2/16/12-5/9/12 | Alon | Bakersfield | 3.2% | Planned | "weak margin environment"; "minor revisions to hydrocracker" | San Joaquin Valley Air Pollution Control District emissions data; Alon earnings release |

Dkt. 294 at 12–13; Hr'g Tr. at 54:18–55:18; *Bartlett*, Dkt. 175 at 12–13.

43. Based on the information in the media, the McCullough reports, counsel's consultation with expert McCullough, and Alon's lack of corrective response despite widely known information in the media and known allegations raised during the course of litigation, the Court finds that Persian Gulf and Consumer Plaintiffs' counsel conducted a thorough, conscientious, and reasonable inquiry regarding its allegations that Alon (1) was "a participant in the California gasoline refinery market" as of the filing of the Amended Complaint and (2) had shut down its Bakersfield refinery in the spring of 2012. Amend. Compl. ¶¶ 37, 137 (Cons. Compl. ¶¶ 40, 30).

44. The Court also finds that Persian Gulf and Consumer Plaintiffs' counsel conducted a reasonable investigation after Alon's August 2019 letter by comparing the information contained in the August 2019 letter with information previously available, Alon's public statements, and Alon's emission data previously provided to the San Joaquin Valley Air Pollution Control District.

45. Based upon the foregoing factual findings and in the exercise of its discretion, the Court finds Alon failed to prove by a preponderance of the evidence that the allegations alleged against it in ¶¶ 37 and 137 of the Amended Complaint and ¶¶ 30 and 40 of the Consolidated Complaint were baseless. *Tom Growney Equip., Inc. v. Shelley Irr. Dev.,*

*Inc.*, 834 F.2d 833, 837 (9th Cir. 1987).

46. Based upon the foregoing factual findings and in the exercise of its discretion, the Court finds that Persian Gulf's and Consumer Plaintiffs' counsel conducted a reasonable inquiry regarding the alleged conspiracy, including Alon's role in it.

47. Based upon the foregoing factual findings and in the exercise of its discretion, the Court finds that there was a plausible basis for the Amended Complaint and the Consolidated Complaint's alleged theories of liability as to Alon.

48. Based upon the foregoing factual findings and in the exercise of its discretion, the Court finds that Alon did not meet its burden to demonstrate that Plaintiffs' Counsel multiplied the proceedings in this case unreasonably and vexatiously or that they acted with subjective bad faith.

49. For the reasons stated above, the Court denies Alon's motions for sanctions pursuant to Rule 11 and 28 U.S.C. § 1927. Dkt. 282; *Bartlett*, Dkt. 167.

50. The Clerk of Court is directed to CLOSE this case, and the consolidated individual consumer cases at 18cv1374-JO-KSC and 18cv1377-JO-KSC.

**IT IS SO ORDERED.**

Dated: March 19, 2025

Honorable Jinsook Ohta
United States District Judge